# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL AND
SANDRA Y. CORNEAL

        vs.

JACKSON TOWNSHIP, Huntingdon
County, Pennsylvania,
W. THOMAS WILSON, Individually and
in his Official Capacity as Supervisor of
Jackson Township, MICHAEL YODER,
Individually and in his Official Capacity as
Supervisor of Jackson Township,
RALPH WEILER, Individually and in his
Official Capacity as Supervisor of Jackson
Township, BARRY PARKS, Individually
and in His Official Capacity as Sewage
Enforcement Officer of Jackson Township,
DAVID VAN DOMMELEN, Individually
and in his Official Capacity as Building
Permit Officer, ANN I. WIRTH,
Individually and in her Official Capacity as
Secretary of Jackson Township, and

CASE NO. 1:00-CV-1192

**JURY TRIAL DEMANDED**

**FILED**
**HARRISBURG, PA**

MAY 2 3 2002

MARY E. D'ANDREA, CLERK
Per _____

## DEFENDANTS' JACKSON TOWNSHIP, W. THOMAS WILSON, MICHAEL YODER, RALPH WEILER, BARRY PARKS, DAVID VAN DOMMELEN AND ANN I. WIRTH'S
## MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56(c)

**NOW COMES** Defendants, Jackson Township, W. Thomas Wilson, Michael

Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth by and

through their counsel of record, Mayer, Mennies & Sherr, LLP and pursuant to

F.R.C.P. 56(c) move that summary judgment be entered in their favor with regard

to all claims, which have been asserted against them by Plaintiffs and in support of

their Motion, Defendants aver the following:

1.    On June 30, 2000, Plaintiffs, David and Sandra Corneal filed a Complaint in the United States District Court for the Middle District of Pennsylvania against Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth.

2.    Jackson Township is a second class township of approximately 816 residents located in Huntingdon County, Pennsylvania;[1] the Board of Supervisors of Jackson Township meet monthly and the members included Defendants, W. Thomas Wilson, Michael Yoder and Ralph Weiler.

3.    The Township Secretary is Defendant, Ann I. Wirth.

4.    The Township Sewage Enforcement Officer is Defendant, Barry Parks; the Building Permit Officer is Defendant, David Van Dommelen.

5.    The Township Solicitor is Larry Newton.

6.    The Corneals purchased a tract of land in Jackson Township in 1998.[2]

7.    Mr. Corneal is an attorney and teaches business law and entrepreneurship at Pennsylvania State University.  (See Exhibit "3", p. 8).

---

[1] A true and correct copy of Plaintiffs' Amended Complaint is Exhibit "1" of the Appendix to be filed separately with Defendants' Brief, see p. 3; a true and correct copy of the deposition testimony of W. Thomas Wilson is Exhibit "2" of the Appendix to be filed separately with Defendants' Brief, see p. 114.

[2] A true and correct copy of the deposition testimony of Plaintiff, David Corneal is Exhibit "3" of the Appendix to be filed separately with Defendants' Brief, see p. 21.

8.    In approximately 1997 or 1998, the Board began discussions with regard to the development of a subdivision and land development ordinance (hereinafter referred to as SALDO).[3]

9.    Thereafter, a two year process ensued wherein a proposed ordinance was drafted and revised.[4]

10.    The Board of Supervisors relied on Richard Stahl of the Huntingdon County Planning Commission (hereinafter referred to as HCPC), the Pennsylvania Association of Township Supervisors (hereinafter referred to as PSAT) and its Solicitor, Larry Newton for assistance and advice in drafting the SALDO. (Exhibit "2", p. 32, Exhibit "4", p. 23, Exhibit "5", p. 37).

11.    Ultimately, the proposed draft was sent to the Huntingdon County Planning Commission for review. (Exhibit "2", pp. 104, 107-108).

12.    The County suggested various changes (Exhibit "2", pp. 107-108), and the final version was sent to Solicitor Larry Newton for review. (Exhibit "2", p. 106).

13.    The SALDO was passed at the July 10, 2000 meeting, along with privy and driveway ordinances.

---

[3] A true and correct copy of the relevant deposition testimony of Ann I. Wirth is Exhibit "4" of the Appendix to be filed separately with Defendants' Brief, see p. 59.

[4] A true and correct copy of the deposition testimony of Larry Newton is Exhibit "5" of the Appendix to be filed separately with Defendants' Brief, see p. 22.

3

14.    The meeting was advertised prior to July and copies of the proposed ordinance were available at the Daily News, the County Library and the Office of the Township Secretary, Ann I. Wirth.[5]

15.    In January 2000, prior to the adoption of the SALDO, the Board imposed a moratorium on subdivision development.[6]

16.    The Township contacted its Solicitor, Larry Newton to determine whether a moratorium on subdivisions was permissible; Attorney Newton advised the Township that he believed the Township could impose a moratorium. (Exhibit "5", p. 45).

17.    Plaintiffs allege that in the fall of 1999, they hired Mr. David Simpson to perform a survey of the property and to prepare sewage modules. (Exhibit "3", pp. 31, 35, 57-58).

18.    The surveyor, David Simpson recommended to Mr. Corneal that he needed to get test pits dug and the Sewage Enforcement Officer involved. (Exhibit "3", pp. 57-58).

19.    The Corneals contacted Defendant, Barry Parks, the Sewage Enforcement Officer of Jackson Township in order to perform tests to identify the

---

[5] A true and correct copy of the Daily News ad is Exhibit "6" of the Appendix to be filed separately with Defendants' Brief.
[6] A true and correct copy of the Minutes of the January 2000 meeting of the Board of Supervisors of Jackson Township is Exhibit "7" of the Appendix to be filed separately with Defendants' Brief.

4

portions of their property, if any, which were suitable for an on-lot septic tank. (Exhibit "3", p. 33).

20.    At the time the test pits were dug, Plaintiffs contemplated subdividing the property into approximately five or six lots.  (Exhibit "3", p. 41).

21.    When purchased, the lot included a house and a barn, and there was a stream that ran across Plaintiffs' property.  (Exhibit "3", pp. 24, 47-48).

22.    Mr. Corneal hired Eagle Excavation to dig the sewage pits, which is owned, in part, by Supervisor Thomas Wilson.  (Exhibit "3", p. 37).

23.    Mr. Corneal testified that Mr. Wilson advised him that while there were no subdivision requirements in the Township, Mr. Corneal needed the SEO's approval on the sewage test pits, which then had to be submitted to the Township. (Exhibit "3", pp. 56-57).

24.    Mr. Wilson testified that at some point, he advised Mr. Corneal that if he was going to subdivide, he should do it before the year 2000 because the Township had been working on an ordinance.  (Exhibit "2", p. 50).

25.    Mr. Parks testified that he signed the percolation test.[7]

26.    After Mr. Parks received the proposed sewage modules from Mr. Simpson, he reviewed them and signed the same.

---

[7] A true and correct copy of the Notes of Testimony of Barry Parks, Township Sewage Enforcement Officer is

27.    Mr. Simpson was also retained to prepare a subdivision proposal for the Corneals.[8]

28.    Mr. Simpson testified that initially Mr. Corneal expressed a desire to lay out approximately nine lots.  (Exhibit "9", p. 14).

29.    On or about January 25, 2000, Mr. Simpson contacted the Township Secretary in order to determine the date of the Township's next monthly meeting; he recalled that Ms. Wirth may have informed him that the Township was working on adopting a Township subdivision ordinance and there was a moratorium on new subdivisions within the Township.  (Exhibit "9", p. 16).

30.    Mr. Simpson conveyed this information to Mr. Corneal.  (Exhibit "9", p. 16).

31.    Mr. Simpson further testified that as of January 25, 2000, he had not completed the plans for the proposed subdivision; rather, the earliest date that there was a completed subdivision plan is February 4, 2000.  (Exhibit "9", p. 17).

32.    Mr. Corneal presented the initial set of subdivision plans or sketches to the Board of Supervisors at the February 2000 meeting.

33.    After learning of the moratorium, Corneal submitted the initial

---

Exhibit "8" of the Appendix to be filed separately with Defendants' Brief, see p. 57.

[8] A true and correct copy of the Notes of Testimony of David Allen Simpson is Exhibit "9" of the Appendix to be filed separately with Defendants' Brief.

subdivision plans or sketches to the Huntingdon County Planning Commission.

34.    Township Solicitor Larry Newton testified that the Board was acting in accordance with practice and procedure utilized in Huntingdon County.  (Exhibit "5", p. 93).

35.    Ms. Wirth testified that since she has been with the Township, every proposed subdivision has been taken to the County or to Richard Stahl at the HCPC. (Exhibit "4", pp. 118-119).

36.    Mr. Simpson testified, "... that in any subdivision, the Township Supervisors were required by the Pennsylvania DEP to review and approve subdivision plans whether or not they had an ordinance, this was strictly in compliance with the Department of Environmental Protection Policies." (Exhibit "9", p. 23).

37.    By letter dated February 24, 2000, the Huntingdon Valley Planning Commission recommended denial of Plaintiffs' initial plans or sketches.[9]

38.    Mr. Corneal's plans were revised by Mr. Simpson at Corneal's request on April 7, 2000; the new draft contained only two proposed lots including one small lot with the existing house and barn and a second lot, which was the remainder of property, and provided for the construction of an apartment, garage and/or art

---

[9] A true and correct copy of the letter dated February 24, 2000 from the HCPC to Ann Wirth is Exhibit "10" of the

subdivision plans or sketches to the Huntingdon County Planning Commission.

34.     Township Solicitor Larry Newton testified that the Board was acting in accordance with practice and procedure utilized in Huntingdon County.  (Exhibit "5", p. 93).

35.     Ms. Wirth testified that since she has been with the Township, every proposed subdivision has been taken to the County or to Richard Stahl at the HCPC. (Exhibit "4", pp. 118-119).

36.     Mr. Simpson testified, "… that in any subdivision, the Township Supervisors were required by the Pennsylvania DEP to review and approve subdivision plans whether or not they had an ordinance, this was strictly in compliance with the Department of Environmental Protection Policies."  (Exhibit "9", p. 23).

37.     By letter dated February 24, 2000, the Huntingdon Valley Planning Commission recommended denial of Plaintiffs' initial plans or sketches.[9]

38.     Mr. Corneal's plans were revised by Mr. Simpson at Corneal's request on April 7, 2000; the new draft contained only two proposed lots including one small lot with the existing house and barn and a second lot, which was the remainder

---

[9] A true and correct copy of the letter dated February 24, 2000 from the HCPC to Ann Wirth is Exhibit "10" of the Appendix to be filed separately with Defendants' Brief.

of property, and provided for the construction of an apartment, garage and/or art studio. (Exhibit "5", pp. 85-86).

39.   On April 3, 2000 at the regular monthly meeting of the Township Supervisors, Mr. Corneal requested that the Supervisors sign sewage modules.[10]

40.   Essentially, the Supervisors would not sign the sewage modules because they did not have any subdivision plans. (Exhibit "2", p. 121).

41.   Further, Mr. Wilson testified that the Supervisors, "... were not signing five sewer modules for one house." (Exhibit "2", p. 127).

42.   The Supervisors advised Mr. Corneal that they were not issuing any building permits for a property that they believed was going to be subdivided. (Exhibit "11").

43.   The SEO, Mr. Parks testified that Mr. Corneal requested a privy permit. (Exhibit "8", p. 63).

44.   Pursuant to DEP regulations, Parks told Mr. Corneal he could not use a privy on his property at that time because the Corneals had piped water on the property and water under pressure. (Exhibit "8", pp. 64-66).

45.   Parks testified that neither the Supervisors nor Ann Wirth ever

---

[10] A true and correct copy of the Minutes of the Jackson Township Board of Supervisors meeting dated April 3, 2000 is Exhibit "11" of the Appendix to be filed separately with Defendants' Brief; a true and correct copy of the Minutes of Jackson Township Board of Supervisors meeting in March 2000 is Exhibit "12" of the Appendix to be filed separately with Defendants' Brief.

instructed him not to assist the Corneals in developing their property. (Exhibit "8", p. 159).

46.   By letter dated April 20, 2000, the Huntingdon County Planning Commission "recommended" conditional approval of the revised plan pending adoption of the subdivision and land development ordinance by the Township.[11]

47.   On or about April 27, 2000, Mr. Corneal requested a building permit from the Township Permit Officer, Mr. David Van Dommelen.[12]

48.   Mr. Van Dommelen testified that he denied Mr. Corneal's request for a building permit because Mr. Corneal did not have proper documentation. (Exhibit "14", pp. 17, 44, 55).

49.   Mr. Van Dommelen testified that Mr. Corneal indicated that he intended to build a four bay garage with an art studio on top of it, which Mr. Van Dommelen believed required septic use. (Exhibit "14", pp. 66-67).

50.   While Van Dommelen reported that he was advised not to issue a building permit since Mr. Corneal had not subdivided properly and had not gotten the correct septic tank approval, Van Dommelen reiterated that even if Corneal wanted to build one structure on one piece of property, it is still a subdivision

---

[11] A true and correct copy of the letter dated April 20, 2000 from the HCPC to Ms. Wirth is Exhibit "13" of the Appendix to be filed separately with Defendants' Brief.

[12] A true and correct copy of the Notes of Testimony of Mr. David Van Dommelen is Exhibit "14" of the Appendix to be filed separately with Defendants' Brief.

because of the existing farmhouse structure.  (Exhibit "8", pp. 21-23, 28-38, Exhibit "14", p. 49).

51.    Mr. Van Dommelen recalled receiving a letter from Mr. Corneal dated May 5, 2000, but he did not forward this to the Township, although he may have mentioned it to Ann Wirth.[13]

52.    Van Dommelen testified that he would have issued a permit given the proper documentation for a subdivision and sewage.  (Exhibit "14", p. 119).

53.    Van Dommelen testified further that neither Tom Wilson nor Ann Wirth ever expressed any dislike of Mr. Corneal nor did they express any conflict that they were having with Mr. Corneal.  (Exhibit "14", pp. 49-50).

54.    On or about June 30, 2000, Plaintiffs filed this purported civil rights actin in the United States District Court for the Middle District of Pennsylvania.

55.    On July 10, 2000, the Township Board of Supervisors adopted the SALDO, as well as a driveway ordinance and holding tank ordinance.[14]

56.    On July 28, 2000, Township Solicitor Lawrence Newton forwarded a letter to the Corneals advising that they were in violation of the Township's permit

---

[13] A true and correct copy of the May 5, 2000 letter is Exhibit "15" of the Appendix to be filed separately with Defendants' Brief.

[14] A true and correct copy of the SALDO adopted July 10, 2000 is Exhibit "16" of Appendix to be filed with Defendants' Brief; a true and correct copy of the Jackson Township Board of Supervisors Minutes dated July 10, 2000 is Exhibit "17" of the Appendix to be filed separately with Defendants' Brief.

ordinance since they had begun construction on their property without first obtaining the requisite building permits.[15]

57.    The letter requested that they cease and desist any and all further construction until a building permit is obtained.

58.    By letter dated August 3, 2000, Mr. Corneal requested the appropriate applications from Mr. Newton.[16]

59.    On August 18, 2000, Mr. Corneal again requested the appropriate application forms for building permits as well as a schedule of permit fees required for the building permits.[17]

60.    On August 29, 2000, Mr. Newton forwarded the Jackson Township building permit application to Mr. Corneal.[18]

61.    On August 31, 2000, Mr. Corneal forwarded a letter to the Township Secretary, Ann Wirth enclosing three building permit applications along with a check for each.[19]

---

[15] A true and correct copy of the letter dated July 28, 2000 is Exhibit "18" of the Appendix to be filed separately with Defendants' Brief.

[16] A true and correct copy of the letter dated August 3, 2000 from David Corneal to Lawrence Newton is Exhibit "19" of the Appendix to be filed separately with Defendants' Brief.

[17] A true and correct copy of the letter from David Corneal to Larry Newton dated August 18, 2000 is Exhibit "20" of the Appendix to be filed separately with Defendants' Brief.

[18] A true and correct copy of this correspondence from Newton to Corneal dated August 29, 2000 is Exhibit "21" of the Appendix to be filed separately with Defendants' Brief.

[19] A true and correct copy of this correspondence from Corneal to Wirth dated August 31, 2000 is Exhibit "22" of the Appendix to be filed separately with Defendants' Brief.

62.    On September 1, 2000, Mr. Corneal forwarded the rough drawings of the art studio on the house, which were not enclosed with the previous building permit applications.[20]

63.    On October 10, 2000, Mr. Corneal's applications were denied because a building permit cannot be issued without a sewage permit and because he failed to comply with the Township subdivision and land development ordinance as well as for other inadequacies.[21]

64.    On November 10, 2000, the Corneals appealed the Building Permit Officer's decision of October 10, 2000.[22]

65.    Mr. Corneal previously completed construction of a dwelling on the property.

66.    On October 18, 2001, this Court granted Plaintiffs' Motion for Leave to Amend Their Complaint with regard to state law constitutional claims.

67.    On November 6, 2001, Plaintiffs' filed an Amended Complaint including a Fourth Count purportedly based on state constitutional claims.  (Exhibit "1").

---

[20] A true and correct copy of the letter from Corneal to Wirth dated September 1, 2000 is Exhibit "23" of the Appendix to be filed separately with Defendants' Brief.

[21] A true and correct copy of the letter from Van Dommelen to the Corneals dated October 10, 2000 is Exhibit "24" of the Appendix to be filed separately with Defendants' Brief.

[22] A true and correct copy of the letter from Terry J. Williams, Esquire to the Board of Supervisors is Exhibit "25" of the Appendix to be filed separately with Defendants' Brief.

68.    In the Amended Complaint, Count I alleges a claim for a violation of 42 U.S.C. §1983.

69.    In Count II, Plaintiffs allege a claim for state law civil conspiracy.

70.    In Count III, Plaintiffs allege a claim for state law intentional interference with performance of a contract against the individual Defendants; the Township was previously dismissed from this claim.

71.    In Count IV, Plaintiffs purport to allege a claim for state constitutional claims.

72.    Defendants now move this Court for summary judgment.

73.    Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c).

74.    However, "... the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

75.    Rule 56(c) mandates that the entry of summary judgment against a party who fails to produce evidence sufficient to establish an essential element of its case,

13

on which he will bear the burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

76.    The undisputed material facts of record demonstrate that Plaintiffs had not been deprived of their substantive due process rights.

77.    Federal Court is not a forum for remedying violations of state law. <u>Midnight Sessions Ltd. v. City of Phila.</u>, 945 F.2d 667, 684 (3d Cir. 1991).

78.    Recovery under §1983 is strictly limited to deprivations of federally protected rights. <u>Midnight Sessions Ltd. v. City of Phila.</u>, 945 F.2d at 684.

79.    In order to establish a substantive due process claim, a Plaintiff must prove that he or she was deprived of a protected property interest by "arbitrary or capricious government action." <u>Taylor Investment Ltd. v. Upper Darby Twp.</u>, 983 F.2d 1285, 1290 (3d Cir. 1993).

80.    Economic and social legislation is subject to rational basis review, wherein a law need only be rationally related to a legitimate state interest in order to be constitutional. <u>Shumaker v. Nix</u>, 965 F.2d 1262, 1266 (3d Cir. 1992).

81.    In this case, the law or regulation at issue is the moratorium on new development and, at the time the Jackson Township Board of Supervisors imposed the moratorium on new subdivisions, moratoriums were endorsed by the Courts. <u>See</u>

Naylor v. Township of Hellum, 717 A.2d 629, 633 (Pa. Cmwlth. 1998), reversed 565 Pa. 397, 773 A.2d 770 (2001).

82.    At the relevant time period, this legislative scheme or regulation clearly comported with notions of substantive due process.

83.    There is no evidence, which demonstrates that Defendants' actions were motivated by bad faith or improper motive.

84.    There is absolutely no record evidence that the moratorium was enacted for any improper purpose.

85.    The record evidence also demonstrates that there were no improper actions taken by Township officials, which in any way interfered with Plaintiffs' land development; rather, the record evidence demonstrates only that Jackson Township relied heavily on the advice of HCPC as well as that of the Department of Environmental Protection.

86.    Further, DEP, by way of the Sewage Facilities Act, requires review and approval of proposed subdivisions.  See 35 P.S. §750.2 and §750.7.

87.    In this regard, the Township's insistence on proper sewage tests, modules and permits was not capricious, but rather was mandated by DEP standard and regulations.

15

88.    Also, Mr. Wilson testified that the Supervisors were not sure as to what Mr. Corneal's plans were at any given time because he had "several stories". (Exhibit "2", pp. 127-128).

89.    Mr. Corneal apparently also requested a permit for a privy and a building permit on April 3, 2000.

90.    The Supervisors advised Mr. Corneal that they were not issuing any building permits for a property they believed was going to be subdivided.  (Exhibit "11".

91.    Again, the Supervisors, at the time, believed they had properly and lawfully enacted a subdivision moratorium based on their Solicitor's advice.

92.    Even if Mr. Corneal wanted to build one structure on one piece of property, such would constitute a subdivision because of the existing farmhouse structure.  (Exhibit "14", p. 49).

93.    The undisputed testimony demonstrates that the Supervisors, as well as the various Township Enforcement Officers, believed that the second lot would require septic use and, as such, required both that approval as well as appropriate subdivision approval.

94.    Mr. Corneal ultimately did construct an apartment on top of the garage,

16

without the requisite permits and/or approval.[23]  (Exhibits "22" and "23").

95.    In sum, the record evidence fails to demonstrate that Defendants' actions were improperly motivated by bad faith such that Plaintiffs can demonstrate a claim for substantive due process violation.

96.    On this basis, their Motion for Summary Judgment must be granted.

97.    Similarly, Plaintiff's claims for any procedural due process violation likewise fail.

98.    Additionally, the individual Defendants are entitled to qualified immunity since "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

99.    The question is whether a reasonable official could have believed his conduct was lawful in light of clearly established law and the information the official possessed. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

100.   In Brown v. Grabowski, the Third Circuit Court of Appeals interpreted the Anderson, supra, standard to require the Court to examine the specific conduct

---

[23] A true and correct copy of deposition testimony of Terry J. Williams is Exhibit "26" of Appendix to be filed with Defendants' Brief, pp. 10, 14, 26).

17

of each Defendant claiming qualified immunity.  <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111 (3d Cir. 1990).

101.  There is absolutely no evidence of record that the individual Defendants, including the members of the Board of Supervisors, the Township Building Permit Officer, Sewage Enforcement Officer and the Township Secretary acted in any way other than reasonably in this matter particularly in light of the facts of record and that each of the individual Defendants believed that the building moratorium was lawful.

102.  Accordingly, based on their reasonable behavior under the circumstances, Defendants are entitled to qualified immunity and must be dismissed from this action with prejudice.

103.  Finally, Defendants are entitled to summary judgment on Plaintiffs' state law claims.

104.  Because the federal claims against Defendants must be dismissed, the decision to entertain or dismiss the supplemental state law claims is within this Honorable Court's discretion.  28 U.S.C. §1367(c)(3).

105.  Courts should ordinarily decline to exercise supplemental jurisdiction over state claims when the federal claims are dismissed.  See <u>United Mine Workers</u>

v. Gibbs, 383 U.S. 715, 726 (1966); Bibby v. Phila. Coca-Cola Bottling Co., 85 F.

Supp. 2d 509, 519 (E.D. Pa. 2000).

106.   This Court should exercise its discretion to dismiss Plaintiffs' state law

claims.

107.   Alternatively, should this Court consider Plaintiffs' state law claims,

they are not viable.

108.   The undisputed material facts of record fail to demonstrate a civil

conspiracy.  Skipworth by Williams v. Lead Industries Assoc., 547 Pa. 224, 690

A.2d 169, 174 (1997); McKeeman v. CoreStates Bank, 751 A.2d 655, 659 (Pa.

Super. 2000).

109.   Similarly, the record evidence fails to support a claim for intentional

interference with contractual relations.   42 Pa. C.S. §8541 et seq.; Triffen v.

Janssen, 426 Pa. Super. 57, 626 A.2d 571, 573 (1993).

110.   Finally, Count IV of Plaintiffs' Amended Complaint, which purportedly

alleges state constitutional claims likewise, fails since Commonwealth constitution

does not grant a cause of action for alleged violations of its provisions.

**WHEREFORE**, Defendants, Jackson Township, W. Thomas Wilson,

Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I.

Wirth respectfully request that this Honorable Court grant their Motion for Summary Judgment and dismiss this action with prejudice.

**MAYERS, MENNIES & SHERR, LLP**

BY: _____
ANTHONY R. SHERR, ESQUIRE
Attorney for Defendants

3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440
(610) 825-0300
Fax (610) 825-6555

## CERTIFICATE OF SERVICE

I, Cheryl Zeigler, hereby certify that on the 22nd day of May, 2002, a true and correct copy of Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth's Motion for Summary Judgment was served by first class regular mail, postage prepaid upon the following:

Bridget E. Montgomery, Esquire
Adam Sheinvold, Esquire
Eckert, Seamans Cherin & Mellott
213 Market Street, 8th Floor
Harrisburg, PA 17101

Michele J. Thorp, Esquire
**Thomas, Thomas & Hafer, LLP**
305 North Front Street, 6th Floor
P.O. Box 999
Harrisburg, PA 17108

BY: _____
Cheryl Zeigler
Legal Assistant to Anthony R. Sherr