FILED
HARRISBURG, PA 5-24-0

MAY 2 3 2002

MARY E. D'ANDREA, CLERK
Per _____

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL AND       :
SANDRA Y. CORNEAL          :    CASE NO. 1:00-CV-1192
                           :
vs.                        :
                           :    JURY TRIAL DEMANDED
JACKSON TOWNSHIP, ET AL    :

DEFENDANTS, JACKSON TOWNSHIP, W. THOMAS WILSON,
MICHAEL YODER, RALPH WEILER, BARRY PARKS,
DAVID VAN DOMMELEN AND ANN I. WIRTH'S
STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT

1. On June 30, 2000, Plaintiffs, David B. and Sandra Y. Corneal filed a Complaint in the United States District Court for the Middle District of Pennsylvania against Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen, Ann I Wirth and Larry Newton; on November 6, 2001 by leave of Court, Plaintiffs filed an Amended Complaint. (A true and correct copy of Plaintiffs' Amended Complaint is Exhibit "1" of the Appendix to be filed with Defendants' Brief).

2. By Order of Court dated March 29, 2001, Defendant, Larry Newton was dismissed from this matter. (See this Court's Order, dated March 29, 2001).

3. Plaintiffs' Amended Complaint includes claims for purported federal deprivations redressable through 42 U.S.C. §1983, state law civil conspiracy, state law intentional interference with performance of contract and state constitutional

claims. (See Amended Complaint).

4. Jackson Township is a second class Township of approximately 816 residents located in Huntingdon County, Pennsylvania. (See Amended Complaint).

5. The Board of Supervisors of Jackson Township meet monthly and the members include Defendants, W. Thomas Wilson, Michael Yoder and Ralph Weiler. (See Amended Complaint).

6. Mr. Ralph Weiler completed the 12th grade and attended a couple of short courses namely in the area of farming; other than working as a Supervisor, Mr. Weiler used to be a farmer. He owns his own farm.

7. Mr. W. Thomas Wilson also graduated from high school and attended two years at Penn State in Turf Management in the Agronomy Department.

8. He did not receive a degree from that nor does he hold any certificates or licenses of any other type.

9. Mr. Weiler is the President of Eagle Excavation, an excavating company; he has performed excavating work for approximately 12 years and prior to that was the golf course superintendent at the Elks Country Club in Boalsburg, Pennsylvania. (A true and correct copy of the deposition testimony of Defendant,

W. Thomas Wilson is Exhibit "2" of the Appendix to be filed with Defendants' Brief, p. 12).

10. Mr. Michael Yoder is a high school graduate, has not taken any post high school courses and holds no certificates or licenses. Mr. Yoder has lived in Jackson Township his whole life and currently resides next door to his home farm.

11. The Township Secretary is Defendant, Ann I. Wirth. (See Amended Complaint).

12. Plaintiffs, the Corneals purchased a tract of land in Jackson Township in 1998. (A true and correct copy of the deposition testimony of Plaintiff, David Corneal is Exhibit "3" of Appendix to be filed with Defendants' Brief, p. 21).

13. Mr. Corneal is an attorney and teaches business law and entrepreneurship at Pennsylvania State University. (See Exhibit "3", p. 8).

14. In approximately 1997 or 1998, the Board began discussions with regard to the development of a subdivision and land development ordinance (hereinafter referred to as "SALDO"). (A true and correct copy of the deposition testimony of Ann I. Wirth is Exhibit "4" of Appendix to be filed with Defendants' Brief, p. 59).

3

15. A proposed subdivision and land development ordinance was drafted and revised over a two-year period. (A true and correct copy of the deposition testimony of Larry Newton is Exhibit "5" of Appendix to be filed with Defendants' Brief, p. 22; see also Exhibit "2", p. 104).

16. The Board of Supervisors relied and consulted with Richard Stahl of the Huntingdon County Planning Commission (hereinafter "HCPC"), the Pennsylvania Association of Township Supervisors (hereinafter "PSAT"), and its Solicitor, Lawrence Newton for assistance and advice in drafting the Jackson Township SALDO. (Exhibit "2", p. 32, Exhibit "4", p. 23, Exhibit "5", p. 37).

17. The Jackson Township Board of Supervisors utilized the Township Code and the Municipal Planning Act to formulate the ordinance. (See Exhibit "2", p. 103).

18. The proposed SALDO draft was sent to the Huntingdon County Planning Commission for review prior to its adoption; the HCPC sent back the draft copy with recommendations of changes to the ordinances, additions and deletions. (Exhibit "2", pp. 104, 107-108).

19. The County suggested various changes, and the final version was sent to Solicitor Larry Newton for review. (See Exhibit "2", pp. 106-108).

20. The July 10, 2000 Jackson Township Board of Supervisors' meeting was advertised prior to July and copies of the proposed SALDO were available at the Daily News, the County Law Library and the Office of the Township Secretary, Ann I. Wirth. (A true and correct copy of the Daily News Ad is Exhibit "6" of the Appendix to be filed with Defendants' Brief).

21. The Jackson Township's SALDO was passed at the July 10, 2000 meeting along with privy and driveway ordinances. (A copy of the July 10, 2000 Minutes is Exhibit "17" " of the Appendix to be filed with Defendants' Brief).

22. Prior to the adoption of the SALDO, the Jackson Township Board of Supervisors imposed a moratorium on subdivision development. (A true and correct copy of the Minutes of the January 2000 meeting of the Jackson Township Board of Supervisors is Exhibit "7" " of the Appendix to be filed with Defendants' Brief).

23. Township Solicitor Lawrence Newton advised the Township that he believed that the Township could legally impose a moratorium and further testified that he believed this to be true, even though there was no subdivision ordinance in effect. (See Exhibit "5", p. 45).

24. In the fall of 1999, Plaintiffs hired Mr. David Simpson to perform a survey of their property and to prepare sewage modules and a subdivision plan.

(Exhibit "1", ¶16; Exhibit "3", pp. 31, 35, 57-58).

25. Mr. Simpson recommended to Mr. Corneal that Mr. Corneal needed to get test pits dug and the Sewage Enforcement Officer involved. (See Exhibit "3", pp. 57-58).

26. The Corneals contacted Defendant, Barry Parks, the Sewage Enforcement Officer of Jackson Township in order to perform tests to identify the portions of their property, if any, which were suitable for an on-lot septic tank. (Exhibit "1", ¶17; Exhibit "3", p. 33).

27. At the time the test pits were dug, Plaintiffs contemplated subdividing the property into approximately five or six lots. (See Exhibit "3", p.41).

28. When Mr. Corneal purchased the lot, it already included an existing house and a barn; there was also a stream that ran across Plaintiffs' property. (See Exhibit "3", pp. 24, 47-48).

29. Mr. Corneal was advised that if he was going to subdivide, Mr. Corneal should do it before the year 2000 because the Township had been working on an ordinance. (See Exhibit "2", p. 50).

30. After the sewage test pits were dug, approximately six to eight weeks

elapsed before the soil percolation tests were performed. (See Exhibit "3", pp. 43-44).

31. Mr. Parks testified that he signed the initial percolation test and after he received the proposed sewage modules from Mr. Simpson he reviewed them and signed them. (A true and correct copy of the Notes of Testimony of Barry Parks, Township Sewage Enforcement Officer is Exhibit "8", " of the Appendix to be filed with Defendants' Brief p. 57).

32. Mr. Simpson testified that Mr. Corneal expressed a desire to lay out approximately nine lots. (A true and correct copy of the Notes of Testimony of David Allen Simpson is Exhibit "9" " of the Appendix to be filed with Defendants' Brief, pp. 6, 14).

33. On or about January 25, 2000, Mr. Simpson contacted the Ms. Wirth to determine the date of the Township's next monthly meeting. (Exhibit "9", p. 16).

34. Mr. Simpson advised Mr. Corneal that the Township would be putting a moratorium in place. (Exhibit "9", p. 16).

35. Mr. Simpson testified that he did not contact the Township at any time prior to January 25, 2000 with respect to the work that he was doing for Mr. Corneal in his subdivision. (Exhibit "9", p. 17).

36. The earliest plan completed for the Corneal property is February 4, 2000. (Exhibit "9", p. 17).

37. At the February 2000 Township Board of Supervisors meeting, Mr. Corneal was advised that there was a moratorium on subdivision development. (Exhibit "2", p. 81).

38. Thereafter, at the suggestion of the Township, Corneal submitted the initial subdivision plans or sketches to the Huntingdon County Planning Commission.

39. Since Ms. Wirth has been with the Township, every proposed subdivision plan has been reviewed by the County or the HCPC. (Exhibit "4", p. 119).

40. Township Solicitor Larry Newton testified that the Board was acting in accordance with the practice and procedure utilized in Huntingdon County. (Exhibit "5", p. 93).

41. Mr. David Simpson testified, "... that in any subdivision, the Township Supervisors were required by the Pennsylvania DEP to review and approve subdivision plans whether or not they had an ordinance, this was strictly in

compliance with the Department of Environmental Protection policies." (Exhibit "9", p. 23).

42. By letter dated February 24, 2000, the Huntingdon County Planning Commission recommended denial of Plaintiffs' initial plans or sketches. (A true and correct copy of the letter dated February 24, 2000 from the HCPC to Ms. Ann Wirth is Exhibit "10" of the Appendix to be filed with Defendants' Brief).

43. On or about April 7, 2000, Mr. David Allen Simpson revised Mr. Corneal's plan. (Exhibit "9", p. 20).

44. The plans or draft dated April 7, 2000 included only two proposed lots; a plot containing the existing house and bar and the remaining acreage. (Exhibit "9", pp. 20-21).

45. The remainder lot provided for construction of an apartment, garage and/or art studio. (Exhibit "5", pp. 85-86).

46. On April 3, 2000, at the regular monthly meeting of the Township Supervisors, Mr. Corneal demanded that the Supervisors sign the proposed sewage modules. (A true and correct copy of the Minutes of the Jackson Township Board of Supervisors meeting dated April 3, 2000 is Exhibit "11" of the Appendix to be filed with Defendants' Brief).

47. Mr. Corneal did not provide revised subdivision plans to the Township at that time.

48. Supervisor Wilson testified that the Supervisors, "... were not signing five sewer modules for one house." (Exhibit "2", p. 127).

49. Mr. Corneal requested a privy permit from Barry Parks. (Exhibit "8", p. 63).

50. Mr. Parks advised Mr. Corneal that he could not use a privy on his property at the time because the Corneals had piped water on the property and, also, water under pressure, which under DEP regulations precluded use of a privy. (Exhibit "8", pp. 64-66).

51. Mr. Parks told Mr. Corneal that Parks would try to think of a way in which Corneal could use a privy under the regulations. (Exhibit "8", pp. 66-67).

52. On or about April 27, 2000, Mr. Corneal requested a building permit from the Township Permit Officer, David Van Dommelen. (A true and correct copy of the Notes of Testimony of David Van Dommelen is attached to Defendants' is Exhibit "14" of the Appendix to be filed with Defendants' Brief).

53. When Mr. Corneal arrived at Mr. Van Dommelen's house in order to request a permit, Mr. Van Dommelen asked him, "... what are you building," and

Mr. Corneal reportedly said, "a garage and a house". (Exhibit "14", pp. 46-47).

54. Mr. Van Dommelen denied Mr. Corneal's request for a building permit because Mr. Corneal did not have proper documentation. (Exhibit "14", pp. 17, 44, 55).

55. Even if Mr. Corneal wanted to build only one structure on one piece of his property, it would constitute a subdivision because of the existing farmhouse structure. (Exhibit "14", p. 49).

56. When Mr. Corneal came to Mr. Van Dommelen's home, the only drawings he had with him were for a four stall garage, with a second story for a studio, which Mr. Van Dommelen believed required septic use. (Exhibit "14", pp. 66-67).

57. Mr. Van Dommelen testified that, "... it was difficult to keep track of when he [Mr. Corneal] was saying what." (Exhibit "14", p. 113).

58. Mr. Corneal began construction of a driveway on his property in April or May of 2000.

59. On July 28, 2000, Township Solicitor Lawrence Newton forwarded a letter to the Corneals advising that they were in violation of the Township's building permit ordinance since they had begun construction on their property without first

obtaining the requisite building permits. (A true and correct copy of this letter is Exhibit "18" of the Appendix to be filed with Defendants' Brief).

60. Mr. Corneal has built a garage and house on his property, without first obtaining the requisite permits and/or approval. (Exhibit "22" and "23"; a true and correct copy of deposition testimony of Terry Williams is Exhibit "26" of the Appendix to be filed with Defendants' Brief, pp. 10, 14, 26).

61. Mr. Williams, Mr. Corneal's attorney for the building permit process and Township state action apparently became involved in the case after the Township filed the cease and desist action. (Exhibit "26", pp. 9-10).

62. Mr. Williams involvement related to the building permit process, not with the instant civil rights action. (Exhibit "26", p. 10).

63. At the time Mr. Williams became involved with the Corneal property, construction had already commenced on the property. (Exhibit "26", p. 10).

64. On November 14, 2000, Mr. Williams met with Larry Newton at the Huntingdon County Courthouse. (Exhibit "26", pp. 12-14).

65. Mr. Williams testified that his, "... purpose in being there was to find out what it was the Township was trying to do to get the building permit, sewage

12

permit, driveway permit, ... to get those matters taken care of." (Exhibit "26", p. 14).

66. In this regard, Mr. Williams was concerned that Mr. Corneal was in the process of building without the benefit of those permits and Mr. Williams wanted to get that corrected. (Exhibit "26", p. 14).

67. Mr. Williams testified at his deposition that after this meeting, he, "... had a laundry list of things that they [the Township] wanted accomplished, principally being that he obtain a septic permit, building permit and driveway access permit, that the principal holdup ... was the modification or correction of the plan that was attached to the sewer module and that was important because that plan, as attached to the module, showed a subdvision ..." (Exhibit "26", p. 22).

68. At the first meeting with the Township, Mr. Williams agreed that they would file an application for a driveway permit; the Roadmaster wanted reconstruction of the driveway throat including stabilization of where the driveway intersects the highway in order to facilitate water drainage. (Exhibit "26", p. 32).

69. At the time of Mr. Williams' deposition, on July 10, 2001, a driveway permit had been issued. (Exhibit "26", p. 37).

13

70. There was a meeting with the DEP officials after the first meeting with the Township. (Exhibit "26", p. 43).

71. At the second meeting with the Township, the SEO properly raised the issue about the soil site having been driven over and having become unstable. (Exhibit "26", p. 44).

72. Mr. Williams testified that Mr. Corneal originally filed an application for subdivision. (Exhibit "26", p. 63).

                                       **MAYERS, MENNIES & SHERR, LLP**

                               BY: _____
                                    ANTHONY R. SHERR, ESQUIRE
                                    Attorney for Defendants

                                    3031 Walton Road, Building A
                                    Suite 330, P.O. Box 1547
                                    Blue Bell, PA 19422-0440
                                    (610) 825-0300
                                    Fax (610) 825-6555

## CERTIFICATE OF SERVICE

I, Cheryl Zeigler, hereby certify that on the 22nd day of May, 2002, a true and correct copy of Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth's Statement of Material Facts in Support of their Motion for Summary Judgment was served by first class regular mail, postage prepaid upon the following:

Bridget E. Montgomery, Esquire
Adam Sheinvold, Esquire
Eckert, Seamans Cherin & Mellott
213 Market Street, 8th Floor
Harrisburg, PA 17101

Michele J. Thorp, Esquire
**Thomas, Thomas & Hafer, LLP**
305 North Front Street, 6th Floor
P.O. Box 999
Harrisburg, PA 17108

BY: _____
Cheryl Zeigler
Legal Assistant to Anthony R. Sherr