



# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL and : NO. 1:CV-00-1192
SANDRA Y. CORNEAL,  :
                    Plaintiffs : JURY TRIAL DEMANDED
          v.        :
                    : RAMBO, J.     **FILED**
JACKSON TOWNSHIP,   :              HARRISBURG, PA
Huntingdon County, Pennsylvania, :
*et al.*,           :              JUN 2  2002
                    Defendants :
                              MARY E. D'ANDREA  CLERK
                              Per _____
                                      Deputy Clerk

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Date: June 24, 2002       ECKERT SEAMANS CHERIN & MELLOTT, LLC
                          Bridget E. Montgomery, Esquire
                          Adam M. Shienvold, Esquire
                          213 Market Street
                          8th Floor
                          Harrisburg, PA  17101
                          717-237-6000

{L0249051.1}

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ III

I.     INTRODUCTION ................................................................................. 1

II.    PROCEDURAL HISTORY .................................................................. 1

III.   STATEMENT OF FACTS .................................................................... 2

IV.    STATEMENT OF QUESTIONS PRESENTED ................................... 8

      A.    Where it is Undisputed That a Municipality Has No Properly
           Enacted Subdivision and Land Development Ordinance, May
           the Municipality Enact a Blanket "Moratorium" on all New
           Subdivisions and Land Development under Pennsylvania Law? ........ 8

      B.    Where it is Undisputed that a Municipality Has No Properly
           Enacted Subdivision and Land Development Ordinance but
           Implements a Blanket "Moratorium" on all Subdivision and
           Land Development, and the Municipality Denies a Landowner
           Building and Land Development Permits on the Basis that Any
           Construction on the Property Would Violate the Moratorium,
           Does the Moratorium Effect a Violation of a Landowner's
           Constitutional Right to Use and Enjoy his Property? ......................... 8

      C.    Is It a Violation of a Landowner's Constitutional Rights For a
           Municipality to Direct its Permit Officers to Refuse to Issue any
           Building or Land Use Permits Where the Landowner Otherwise
           Would be Entitled to Such Permits? ..................................................... 8

      D.    Where the Defendants Enacted the Moratorium in Violation of
           both the Municipalities Planning Code and the Second Class
           Township Code, and Acted With Deliberate and Concerted Bias
           Against the Plaintiffs, Are the Defendants Entitled to
           Legislative Immunity or Qualified Immunity? ..................................... 8

V.     ARGUMENT ........................................................................................ 9

      A.    Standard for Summary Judgment ......................................................... 9

B.    The Corneals have a Recognized Property Interest Entitled to Due Process Protection...................................................................... 10

C.    The Township Violated the Corneals' Constitutional Right to Develop and Enjoy their Property by Imposing the Moratorium in Clear Violation of the Municipalities Planning Code.................... 12

D.    The Township's Actions in Deliberately Interfering with the Issuance of Building Permits and Septic Permits to which the Corneals Otherwise Were Entitled is a Clear Violation of the Corneals' Substantive and Procedural Due Process Rights.............. 15

E.    Defendants Are Not Entitled to Absolute Immunity or Qualified Immunity ............................................................................................ 24

     1.    The Supervisor Defendants are Not Entitled to Legislative Immunity Because the Moratorium was Neither Substantively Nor Procedurally Legislative in Nature. ................................................................................. 25

     2.    None of the Defendants Are Entitled to any Qualified Immunity Because Each Participated in a Coordinated, Deliberate Effort to Deprive the Corneals of Their Constitutionally Protected Right to Use and Develop Their Property. ....................................................................... 27

F.    Summary Judgment Is Appropriate on Plaintiffs' State Law Claims............................................................................................... 34

VI.    CONCLUSION........................................................................................ 38

# TABLE OF AUTHORITIES

Page

**Cases**

Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994).......................................... 25

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)........................... 9

Arlington Heights v. Metro. Housing Corp., 429 U.S. 252, 263, 97 S. Ct. 555 (1973) .............................................................................................. 11

Blanche Road Corp. v. Bensalem Township, 57 F.3d 253, 67-68 & n.15 (3d Cir. 1995) ........................................................................................ 15

Boron Oil Co. v. Kimple, 445 Pa. 327, 284 A.2d 744, 747-48 (1971).................. 13

Coffman v. Wilson Police Dept., 739 F. Supp. 257, 266 (E.D. Pa. 1990) ............. 37

Cranberry Park Assocs. ex rel. Viola v. Cranberry Twp. Zoning Hearing Bd., 561 Pa. 456, 751 A.2d 165 (2000)....................................................... 26

DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592 (3d Cir. 1995) ..................... 11

Holland Enters. v. Joka, 64 Pa. Commw. 129, 136, 439 A.2d 876, 881 (1982)............................................................................................ 37

Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996)........ 9

Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 n.12 (3d Cir. 1997)........................................................... 11

King Properties, 535 Pa. 321, 635 A.2d 128, 131 n.6 (1993)................................ 36

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)....................................................................... 9

Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667, 679 (3d Cir. 1991)......... 10

Naylor v. Township of Hellam, 565 Pa. 397, 404, 773 A.2d 770, 774 (2001)12, 13, 33

Naylor v. Twp. of Hellam, 717 A.2d 629 (Pa. Commw. 1998)............ 28, 31, 32, 34

## I.    INTRODUCTION

This case is not, as the defendants claim, a land use dispute.  This case is about the most egregious abuse of governmental power.  It is about a Township Board of Supervisors and their representatives who did everything they could to prevent David Corneal, "that trouble-making yuppie from over the mountain," from using and enjoying his property based on nothing more than personal animus. David Corneal and his wife, Sandra Corneal, had to endure unconscionable administrative contrivances and personal attacks by nearly every representative of the Jackson Township local government before they finally were forced to bring this lawsuit under 42 U.S.C. § 1983 to compel the Township to allow them simply to build their home, nearly two full years after they purchased their property.

## II.    PROCEDURAL HISTORY

Plaintiffs David B. Corneal and Sandra Y. Corneal commenced this litigation by Complaint dated June 30, 2000.  All defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12.  By order dated March 29, 2001, the Court granted the motion to dismiss as to defendant Larry Newton, and denied the motion of all other defendants, except that the Court dismissed the § 1983 claims in Count I for alleged violations of plaintiffs' state constitutional rights, and the court dismissed Count III against the Township only.  On September 12, 2001, the Court denied plaintiffs' motion for reconsideration of the

Order dismissing the Complaint against defendant Newton, but on October 18, 2001, granted plaintiffs' request for leave to file an amended complaint to allow them to plead separately their state law constitutional claims. Plaintiffs filed their Amended Complaint on November 6, 2001.

On May 23, 2002, defendants filed a motion for summary judgment. On or about June 6, 2002, defendants filed their memorandum of law in support of motion for summary judgment. Plaintiffs now file their cross-motion for summary judgment, and a combined brief in support of summary judgment and in opposition to defendants' motion for summary judgment.

## III.    STATEMENT OF FACTS

In October 1998, the Corneals purchased an approximately 95-acre tract of land located in Jackson Township, Huntingdon County, Pennsylvania, that previously had belonged to the grandfather of defendant Wilson. The Corneals purchased the property with the intention of subdividing and selling off a 26-acre portion of the Property that included a farmhouse and barn to recoup their investment costs, and to keep the residue of approximately 60 acres on which to build a house, art studio and garage. The Corneals never had lived in Jackson Township before, and never before had any contact with the local government in Jackson Township. At every step of the way, however, Jackson Township officials did virtually everything they could think of to interfere with the Corneals' attempt

to subdivide and develop their property, including inducing the breach of a contract of sale between the Corneals and John B. Hewett, Jr. and Joann F. Smith.[1]

Prior to July 2000, Jackson Township never had a subdivision and land development ordinance. Despite the fact that the Township had no subdivision ordinance, Township Supervisor Thomas Wilson told David Corneal that, before he could subdivide his property, he needed to present a complete subdivision plan to the Township for approval. On the basis of that representation, during 1999, David Corneal hired an engineer to draft a subdivision plan, hired defendant Wilson's private excavating business to assist in locating suitable sites for on-lot septic systems for each of the proposed new lots, paid the Township Sewage Enforcement Officer, Barry Parks, to prepare sewage modules for each of the proposed subdivision lots, and prepared a complete subdivision application to be submitted to the Township.

On February 7, 2000, David Corneal presented a subdivision plan for the Property to the Jackson Township Board of Supervisors at the regular monthly meeting of the Township Board. Upon presentation of the subdivision plan, the Supervisors, much to the surprise of David Corneal, announced that they would not review or approve the Corneal subdivision plan because, at the previous meeting in January, the Supervisors had enacted a "moratorium" on new development in

---

[1] For ease of reference, John Hewett and JoAnn Smith will be referred to collectively herein as "the Hewetts".

3

Jackson Township, notwithstanding the fact that Jackson Township did not have a

subdivision and land development ordinance upon which to base such a

moratorium (or any other land use restriction, for that matter). The Township

Supervisors simply decided that they would impose a moratorium pending the

adoption of the subdivision and land development ordinance that they were in the

process of drafting for implementation in the Township. Furthermore, the

Supervisors of Jackson Township adopted the moratorium on the basis of a simple

statement by the Supervisors at the January meeting – the Township did not

advertise that it was considering implementing a moratorium; it did not advertise

that the moratorium would be considered at the January meeting; it did not publish

or otherwise advertise the content of the moratorium; and after the supervisors

voted to implement the moratorium, the Township did not publish or otherwise

advertise that the moratorium had been implemented, the duration of the

moratorium, or the effect of the moratorium. In no way did the implementation of

the moratorium comply with the applicable law for enactment of ordinances – in

fact, the supervisors did not even know the appropriate procedures for

implementing new ordinances.

Despite the fact that the Township did not have a subdivision and land

development ordinance (or even a pending ordinance), the Township refused to

approve or even review the Corneals' land development plan (the Supervisors also

failed to advise Mr. Corneal that he was not required to even submit a subdivision plan because Jackson Township did not have a subdivision ordinance) on the basis of the "moratorium." Instead, the Township and Supervisors used every artifice available to them to interfere with all of the Corneals' efforts to improve the Property. The Township first refused to approve the sewer modules that the Township Sewage Enforcement Officer already had approved, instead requiring that the septic test pits be re-evaluated – a requirement that the Township never had imposed on any other landowner in the collective memory of the SEO or the supervisors. When the Corneals requested that the Township issue them a privy permit so that they could begin construction on the art studio, the defendant supervisors telephoned the SEO, defendant Parks, and directed him not to allow the Corneals to have a privy permit, or any other sewage permit for the Property.

Furthermore, despite the Sewage Enforcement Officer approving numerous sites on the Property for location of on-lot septic disposal, one of the defendants, believed to be either Defendant Wilson or Defendant Wirth, initiated a private, anonymous complaint against the Corneals with the Commonwealth of Pennsylvania Department of Environmental Protection and the U.S. Army Corps of Engineers, alleging that the Corneals were engaging in wetlands violations. The complaint, of course, was determined by both agencies to be without merit.

Similarly, the Supervisors unlawfully interfered with the Corneals' ability to obtain building permits. The supervisors directed the Township Building Permit Officer, defendant Van Dommelen, not to give Mr. Corneal even an application for a building permit, and in no event to allow Mr. Corneal to have a building permit for any purpose for the Property; defendant Van Dommelen, of course, agreed with the decision not to give an application to "that trouble-making yuppie from over the mountain." Even more egregious, defendant Wirth, the Township Secretary, later received from Mr. Corneal completed building permit applications and a check for the appropriate filing fee, but deliberately failed to transmit those forms to the building permit officer. The building permit officer then issued a letter to Mr. Corneal denying his building permit applications – defendant Van Dommelen later admitted that he was a bit uncomfortable sending that letter, however, because he wrote it at the direction of the Supervisors without ever having seen Mr. Corneal's applications. He did not object to the Supervisors "usurping" his authority, however, because he did not want to "shake the boat."

Finally, after months of ridiculous delays and obstacles that cost the Corneals hundreds of thousands of dollars in delay costs and lost property income, the Corneals initiated construction of their garage, art studio and home on the Property in accordance with the Municipalities Planning Code and the Township building permit ordinance. Having run out of administrative contrivances to

interfere with the Corneals' ability to develop their property, the Township initiated a lawsuit in the Court of Common Pleas of Huntingdon County seeking to enjoin the construction on the Corneals' Property on the frivolous basis that the Corneals had not received the proper building permits and that they had not complied with the Township's subdivision and land development ordinance.

The Corneals filed this lawsuit on June 30, 2000.  Since that time, the Township has granted to the Corneals all the necessary permits to proceed with the development of the property, including building permits, sewage permits and a driveway permit.

## IV.   STATEMENT OF QUESTIONS PRESENTED

**A.**   **Where it is Undisputed That a Municipality Has No Properly Enacted Subdivision and Land Development Ordinance, May the Municipality Enact a Blanket "Moratorium" on all New Subdivisions and Land Development under Pennsylvania Law?**

Suggested Answer:  No.

**B.**   **Where it is Undisputed that a Municipality Has No Properly Enacted Subdivision and Land Development Ordinance but Implements a Blanket "Moratorium" on all Subdivision and Land Development, and the Municipality Denies a Landowner Building and Land Development Permits on the Basis that Any Construction on the Property Would Violate the Moratorium, Does the Moratorium Effect a Violation of a Landowner's Constitutional Right to Use and Enjoy his Property?**

Suggested Answer:  Yes

**C.**   **Is It a Violation of a Landowner's Constitutional Rights For a Municipality to Direct its Permit Officers to Refuse to Issue any Building or Land Use Permits Where the Landowner Otherwise Would be Entitled to Such Permits?**

Suggested Answer:  Yes

**D.**   **Where the Defendants Enacted the Moratorium in Violation of both the Municipalities Planning Code and the Second Class Township Code, and Acted With Deliberate and Concerted Bias Against the Plaintiffs, Are the Defendants Entitled to Legislative Immunity or Qualified Immunity?**

Suggested Answer:  No.

## V.    ARGUMENT

### A.    Standard for Summary Judgment

Under the familiar standard, summary judgment should issue when the movant shows that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Once the movant has carried this initial burden, the non-moving party "must come forward with 'specific facts showing that there is a <u>genuine issue for trial</u>.'"  <u>Ideal Dairy Farms, Inc. v. John Labatt, Ltd.</u>, 90 F.3d 737, 743 (3d Cir. 1996), <u>quoting</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)(emphasis in original).  Indeed, although a summary judgment movant is virtually always presented with some fact that the nonmovant urges is disputed, not just any disputed fact will suffice to avoid summary judgment.  The genuineness and materiality requirements demand that the nonmoving party point to specific evidence of record that could lead a reasonable jury to return a verdict in its favor under the elements of the legal claims presented.  The question of whether a disputed fact is material, therefore, must be governed by the applicable substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Stradling v. Southland Corp.</u>, 924 F. Supp. 38, 39 (M.D. Pa. 1996) (citations omitted).  In this case, the governing law is Pennsylvania's substantive law of land development and regulation.

In sum, although the defendants may point to some fact that they claim to be disputed, summary judgment may be avoided only if the fact is disputed, genuine and material under the law applicable to the claim. In the instant case, there is undisputed factual evidence of record, much of which consists of the defendants' own testimony, that demonstrates clearly that summary judgment must be granted in favor of the Corneals in this action.

## B. The Corneals have a Recognized Property Interest Entitled to Due Process Protection

In order to receive the benefits of due process protection, the Corneals must have a protected property interest. When seeking to prove a substantive due process claim, a plaintiff must prove that the governmental authority "infringed a property interest encompassed by the Fourteenth Amendment.'" See Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667, 679 (3d Cir. 1991).

The Third Circuit consistently has recognized that an owner's "use and enjoyment" of land is a property interest entitled to substantive due process protection. Substantive due process protection is available to landowners challenging local governmental land use decisions when those decisions are arbitrary, irrational or biased. "[F]ederal courts are reluctant to sit as appeal boards for disputes between land developers and a Township's planning body. On the other hand, developers have a due process right to be free from 'arbitrary and irrational zoning actions.'" Woodwind Estates, Ltd. v Gretkowski, 205 F.3d 118,

122 (3d Cir. 2000), quoting <u>Arlington Heights v. Metro. Housing Corp.</u>, 429 U.S.

252, 263, 97 S. Ct. 555 (1973).

Similarly, in <u>DeBlasio v. Zoning Bd. of Adjustment</u>, 53 F.3d 592 (3d Cir.

1995), the Third Circuit stated:

> We think it consistent with <u>Bello</u> [<u>v. Walker</u>, 840 F.2d
> 1124 (3d Cir. 1988)] to conclude that ownership is a
> property interest worthy of substantive due process
> protection.  Thus, in the context of land use regulation, that
> is, in situations where the governmental decision in
> question impinges upon a landowner's use and enjoyment
> of property, a land-owning plaintiff states a substantive due
> process claim where he or she alleges that the decision
> limiting the intended land use was arbitrarily or irrationally
> reached.  Where a plaintiff so alleges, the plaintiff as, as a
> matter of law, impliedly established possession of a
> property interest worthy of substantive due process
> protection.

<u>DeBlasio</u> at 601; <u>see also</u> <u>Volk v. Heydt</u>, 135 F.3d 768 (3d Cir. 1997).  "'[C]ases

involving zoning decisions, building permits, or other governmental permission

required for some intended use of land owned by the plaintiffs' implicated the kind

of property interest protected by substantive due process." <u>Woodwind Estates</u> at

123, quoting <u>Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth.</u>, 103

F.3d 1165, 1179 n.12 (3d Cir. 1997).

In this matter, it is uncontested that the Corneals own the subject Property

and sought to use the Property in a lawful manner, i.e., to subdivide and to

construct a house, art studio and garage.  It further is uncontested that the

defendants have objected to the use and have restricted the Corneals from pursuing

that use by refusing to issue approvals or permits for subdivision, on-lot septic,

construction and road access.  These uncontested facts alone give rise to a clear

property interest in the use and enjoyment of the Property.

**C.    The Township Violated the Corneals' Constitutional Right
to Develop and Enjoy their Property by Imposing the
Moratorium in Clear Violation of the Municipalities
Planning Code**

The Municipalities Planning Code ("MPC") is the statutory mechanism that

governs all land development in the Commonwealth of Pennsylvania.  See 53 P.S.

§ 10101, et seq.  Section 105 of the MPC sets forth the purpose of the Act, which is

to protect the general welfare by guiding and protecting development and growth

and to permit municipalities to minimize such problems as may exist or may be

foreseen.  See 53 P.S. § 10105; Naylor v. Township of Hellam, 565 Pa. 397, 404,

773 A.2d 770, 774 (2001) (hereinafter cited as Naylor II).  The MPC, however,

does not grant unlimited power to municipalities to regulate land use – the MPC

grants municipalities broad authority to create and adopt a comprehensive

development plan and to regulate development by enacting subdivision and land

development ordinances, see 53 P.S. §§ 10301-02, 10501; 10601; Naylor II at 774,

but the MPC does not grant a municipality the authority to impose a moratorium

on subdivision approvals.  See Naylor II at 774.  To the contrary, "the power to

*suspend* land development has historically been viewed in this Commonwealth as a

power distinct from and not incidental to any power to *regulate* land development. Accordingly, as the MPC is silent regarding land planning through the temporary suspension of development, we decline to condone a municipality's exercise of such power." Naylor II at 775. "However much a rapidly expanding municipality may wish to declare a 'time out' and stop all development, such effect, by whatever means achieved, would be constitutionally impermissible." Id. at 776, quoting Boron Oil Co. v. Kimple, 445 Pa. 327, 284 A.2d 744, 747-48 (1971).[2]

Moreover, the undisputed facts demonstrate that Jackson Township was not a "rapidly expanding municipality." To the contrary, the building permit officer, defendant Van Dommelen, testified clearly that there had been no acceleration in the rate of new construction in the Township. The Moratorium was imposed merely to prevent David Corneal, "that trouble-making yuppie from over the mountain," from developing his property and from subdividing the farm that once belonged to defendant Wilson's grandfather.

Defendant Wilson knew since at least July 1999 that the Corneals had purchased and intended to subdivide the Property. Wilson knew that the Corneals had entered into a contract to sell the 26-acre parcel containing the farmhouse and barn the Hewetts. The Corneals hired Wilson's private excavating company to dig

---

[2] Although the Naylor II Court held that the MPC does not authorize moratoria on land development, the court cryptically rejected the appellant's argument that the sections 508 and 508(4) of the MPC *prohibit* moratoria on land development. See Naylor II at 777, n.7. This conclusion, however, was not material to the court's conclusion that the MPC does not authorize moratoria on land development, and therefore is properly regarded as *dictum*.

13

test pits and conduct percolation tests for the on-lot septic for the subdivision. The Corneals attempted to hire Wilson to improve the driveway on the Property. Wilson's nephew also approached the Corneals and expressed an interest in purchasing the 26-acre parcel. Defendant Wilson told the Corneals that they were required to submit the subdivision plan to the Township for approval. Notably, however, Defendant Wilson never told the Corneals that the Township was considering a moratorium on new land development, that the Township was considering a new subdivision and land development ordinance, or that Township approval of a land development plan was unnecessary because the Township did not have a subdivision ordinance.

Furthermore, the defendants used the Moratorium as a sword by which to undermine every attempt by the Corneals to improve their property. The Township refused to approve sewage modules for the property on the unfounded basis that the Moratorium prevented the Supervisors from considering them, even after David Corneal's representation to the Township that he was withdrawing his proposal for a subdivision. The Township then refused to approve the Corneals' request for building permits because building another house on the Property would constitute a "*de facto*" subdivision that is prohibited by the Moratorium. The Township then refused to approve the Corneals' request for building permits to

14

build the art studio and garage because those structures required on-lot septic, but the Township would not approve his sewage modules because of the Moratorium.

In sum, the Township's actions in enacting and enforcing the Moratorium were contrary to the law of the Commonwealth of Pennsylvania, and effectively deprived the Corneals of the use and enjoyment of their property. By implementing the Moratorium, the Township created an unlawful administrative contrivance by which to impede every effort by "that trouble-making yuppie from over the mountain" to develop the Property. Consequently, the acts of the Township and its representatives in enacting and enforcing the Moratorium in violation of Pennsylvania law for the clear purpose of interfering with the Corneals' land development is a violation of the Corneals substantive due process rights, and this Court should award summary judgment to the plaintiffs.

### D.    The Township's Actions in Deliberately Interfering with the Issuance of Building Permits and Septic Permits to which the Corneals Otherwise Were Entitled is a Clear Violation of the Corneals' Substantive and Procedural Due Process Rights

It is a well-settled principle of law that deliberate interference by municipal officials with the process for issuance of permits constitutes a violation of a landowners' substantive due process rights in violation 42 U.S.C. § 1983. See Blanche Road Corp. v. Bensalem Township, 57 F.3d 253, 67-68 & n.15 (3d Cir. 1995) (landowners have the right to be free from harassment in their land

development efforts). The undisputed facts of the present case demonstrate clearly that all of the defendants, individually and in concert, acted under color of state law to unreasonably interfere with the issuance of permits to which the Corneals otherwise were entitled.

The defendants' first step in interfering with issuance of the Corneals' building and land use permits was the unlawful enactment of the Moratorium at the January 4, 2000, meeting of the Township Board of Supervisors by unanimous vote. See Wirth Dep. at 83:17-18. The Moratorium was not passed by resolution or any other formal action, and in not way comports with the requirements of the MPC or the Second Class Township Code. To the contrary, it only appears in the minutes, which reflect that Defendants Wilson, Yoder and Weiler merely made a statement indicating that "no more sub-divisions will be approved until after the proposed Sub-Division ordinance for the Township has been approved." See Wirth Dep. at 83:19-21; Minutes of the Meeting of the Board of Supervisors of Jackson Township, Jan. 4, 2000.

Using the Moratorium as a powerful weapon by which to defeat the Corneals' land development efforts, the Township refused to sign the sewage modules for the Property that defendant Parks already had approved. The Township similarly refused to approve the issuance of any building permits to the Corneals, asserting that the buildings all required on-lot sewage facilities, but that

the Township would not approve any sewage modules because of the Moratorium on subdivisions.

The Township then instructed Corneal that, since subdivisions were not being reviewed by the Township, he should submit his application to the Huntingdon County Planning Commission for their review of his subdivision plan, inasmuch as County approval of subdivisions also was required. See Corneal Dep. at 86:19-87:2. The Township gave this advice to Corneal, however, despite that none of the supervisors or the Township Secretary were aware of any requirement that subdivision plans be submitted to or approved by the County. See Yoder Dep. at 14:14-20; Wirth Dep. at 165:1-10. In fact, prior to enactment of the subdivision ordinance in July, 2000, Defendant Yoder was not even aware of the process for submission of a subdivision application. See Yoder Dep. at 14:7-13.

Furthermore, Corneal did submit his subdivision application to the County. After some minor revisions to his initial plan, the County recommended approval of his subdivision plan – but the Township still refused to even consider, let alone approve, the plan. Defendant Yoder cannot recall the Township Board of Supervisors ever denying a subdivision application that the Huntingdon County Planning Commission has recommended for approval. See Yoder Dep. at 15:17-20.

In addition to deliberately misleading the Corneals as to the requirements for approval of a subdivision plan in Jackson Township, the Township denied Corneal access to the public records and documents that would have explained the proper procedures. At the March 2000 meeting of the Board of Supervisors, Corneal requested copies of the Township ordinances, but the Township, through Defendant Wirth, refused to provide copies even when Mr. Corneal offered to pay for the copies to be made. See Corneal Dep. at 88:13-89:2. Mr. Corneal also requested a copy of the proposed Jackson Township subdivision ordinance prior to approval by the Township Board of Supervisors. Despite Mr. Corneal's request for a copy of the proposed subdivision ordinance, Township secretary Wirth did not send him a copy of the proposed ordinance. See Wirth Dep. at 176:17-20.

Recognizing that the Township intended to use the Moratorium to defeat any effort to subdivide his property, on April 3, 2000, David Corneal informed the Township that he was not going to subdivide the Property. Despite his public representation that he would not subdivide, the Township still refused to sign the Corneals' sewer modules for the Property because of the Moratorium. See Wilson Dep. at 120-127:18. Prior to April 3, 2000, the Board of Supervisors of the Township never has refused to sign sewage modules that had been approved by the Sewage Enforcement Officer. See Wilson Dep. at 169:1-5; Parks Dep. at 42:18-23; 43:20-44:6.

In response to Corneal's request on April 3, 2000, for the sewage modules to construct the house and art studio, Defendant Wirth said that Corneal could not construct a second house on the same tract of ground, that constitutes a subdivision, and, therefore, is covered by the moratorium. See Corneal Dep. at 108:19-109:8. After the supervisors refused to sign the sewer modules for the house, Corneal requested permission to begin construction of the art studio. Id. at 115:4-6. The supervisors refused permission to begin the art studio, as well, because they said they required sewer facilities in the art studio, but were not signing any sewer modules. Id.. at 115:7-10. After the supervisors refused to allow him to begin construction of the art studio because he did not have a sewage permit, Corneal requested a privy permit so that he could install a privy for the art studio. Id.. at 115:11-13. The supervisors responded that he would have to contact the Sewage Enforcement Officer in order to inquire about obtaining a privy permit for the art studio. Id. at 116:9-11.

Corneal called the Sewage Enforcement Officer, Defendant Parks, after the April 3, 2000, Supervisors' Meeting to request a privy permit. See Corneal Dep. at 116:12-13. The Supervisors, however, beat him to the punch. After the meeting, Defendant Wirth, at the instruction of the Board of Supervisors, telephoned Jackson Township sewage enforcement officer Barry Parks and told him that Mr. Corneal "could not have a privy permit." See Wirth Dep. at 203:6-204:3. Parks

19

told Corneal that the Township supervisors already called him and told him that Corneal was not allowed to have a privy permit and that Parks was not allowed to help Corneal get a privy permit. See Corneal Dep. at 116:13-18.

Furthermore, after the Corneals requested approval of the sewer modules for construction of the house, art studio and garage, Defendant Wirth telephoned Defendant Parks, the Sewage Enforcement Officer, and told him to go back to the Property and re-evaluate the septic sites that Defendant Parks already had approved. See Parks Dep. at 76:6-20; Yoder Dep. at 60:24-61:19. Defendant Yoder cannot recall the Township Board of Supervisors ever asking a third party to go double-check sewer modules that had already been approved by Defendant Parks. See Yoder Dep. at 63:16-64:3. Defendant Yoder testified that it would be unusual for the Board to request a third party to double-check sewer modules that had been approved by Defendant Parks. See Yoder Dep. at 64:4-14.

After Defendant Parks reinspected the sites at the direction of Defendant Wirth, see Parks Dep. at 76:12-20; Defendant Yoder recalls that one of the five approved sites on the Property no longer was usable. See Yoder Dep. at 61:20-62:9. Defendant Yoder does not recall any of the Supervisors asking Defendant Parks about the other four sites or Defendant Parks providing any information regarding the other four sites. See Yoder Dep. at 62:24-63:11.

The Corneals met the same insidious resistance in their efforts to obtain building permits. In April 2000, Pursuant to the Township Building Ordinance, David Corneal went to Van Dommelen's home to request a building permit application for the issuance of a building permit for the garage. See Van Dommelen Dep. at 46:9-24. When David Corneal identified himself to Van Dommelen, Van Dommelen told David Corneal that he could not issue a building permit because the Township Board of Supervisors had instructed him not to give a building permit. See Van Dommelen Dep. at 47:2-7.

A couple weeks before David Corneal sought a building permit from Van Dommelen, the Township Board of Supervisors had instructed Van Dommelen not to issue a building permit to the Corneals. See Van Dommelen Dep. at 47:8-10. Defendant Wirth told Van Dommelen that the Township Board of Supervisors was not interested in letting the Corneals have a building permit. Id. at 48:23-49:2. While David Corneal was at Van Dommelen's house seeking a building permit, Van Dommelen telephoned Defendant Wilson, who told Van Dommelen "don't you dare issue him a permit." Id. at 47:11-13; Wilson Dep. at 128:4-12. The Township Board of Supervisors does not have any sort of preapproval process with respect to building permits. See Van Dommelen Dep. at 132:22-25. Van Dommelen has the responsibility to make the determination of whether to issue a building permit. Id. at 13:1-2.

for building permits along with checks directly to defendant Wirth.  See Wirth
Dep. at 145:15-22.

On October 10, 2000, Van Dommelen, with the assistance of Township
Solicitor Larry Newton, wrote a letter to the Corneals purportedly denying the
Corneals' building permit applications for failure to comply with, *inter alia*, the
Pennsylvania Sewage Facilities Act and the Township's Subdivision and Land
Development Ordinance.  See Van Dommelen Dep. at 76:8-23; 77:12-20; October
10, 2000 Letter.  Van Dommelen wrote the October 10, 2000, letter to the Corneals
*at the instruction of the Township Board of Supervisors*.  See Van Dommelen Dep.
at 186:10-20.  Prior to October 10, 2000, Van Dommelen never had denied any
building permit without actually seeing the application.  Id. at 83:5-7.  Van
Dommelen was concerned about sending the October 10, 2000, letter because he
had never seen the building permit applications; he felt that the Township Board of
Supervisors was "usurp[ing]" his job as Building Permit Officer by directing him
to send the October 10, 2000, letter to the Corneals.  Id. at 176:16-22.  Van
Dommelen testified that the October 10, 2000, letter was the only time that the
Township Board of Supervisors every had "usurped" his job as Building Permit
Officer.  Id. at 177:2-5.  Van Dommelen did not object to the Township Board of
Supervisors' action in "usurp[ing]" his job as Building Permit Officer because he
did not want to "shake the boat" because he understood that the Supervisors and

23

Township Solicitor Larry Newton wanted Van Dommelen to send the letter. Id. at 177:6-19; Yoder Dep. at 51:11-13, 20-25.

All told, the undisputed facts show that each and every one of the Defendants worked together to unreasonably delay and interfere with the Corneals' efforts to obtain the necessary permits to develop their property. The defendants lied about the procedural requirements for subdividing the property; they refused to grant access to public documents; they worked together to surreptitiously deny every single permit application that the Corneals submitted; the Supervisors "usurped" the supposedly independent roles of the Building Permit Officer and the Sewage Enforcement Officer; and the permit officers complied willingly with the Supervisors' unlawful instructions. Prevention of such egregious abuse of governmental power is precisely the purpose of § 1983, and the Corneals therefore are entitled to summary judgment.

### E. Defendants Are Not Entitled to Absolute Immunity or Qualified Immunity

The Defendants assert that they are entitled to either or both absolute legislative immunity or qualified immunity. The defendant supervisors assert that they are entitled to legislative immunity because the imposition of the moratorium was a legislative act that they reasonably believed was lawful. All defendants assert that they are entitled to qualified immunity because their acts all were made in good faith and with the reasonable belief that their acts were lawful. The

24

undisputed facts make very clear, however, that none of the defendants are entitled to any immunity from suit because the Moratorium was enacted without any regard to any legislative formalities and with the deliberate purpose of frustrating the Corneals' land development efforts, and further because the defendants undertook a deliberate, concerted effort to deprive the Corneals of their constitutionally protected right to use and enjoy their property.

    1.    The Supervisor Defendants are Not Entitled to Legislative Immunity Because the Moratorium was Neither Substantively Nor Procedurally Legislative in Nature.

The Third Circuit has established a two-part test to determine whether actions are to be regarded as legislative for immunity purposes. See Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994), citing Ryan v. Burlington County, 889 F.2d 1286, 1290-91 (3d Cir. 1989). To be "legislative," an act must be (1) substantively legislative, which requires that it involve a policy-making decision; and (2) the act must be procedurally legislative, which requires that it be undertaken through established legislative procedures. Even accepting for the sake of argument the supervisors' assertion that the enactment of the Moratorium was a "policy-making" decision, it is impossible to accept that the enactment of the Moratorium was procedurally legislative within the meaning of the Acierno test.

As the undisputed facts demonstrate, the enactment of the Moratorium failed to comply with either the MPC or the Second Class Township Code. Indeed, the

Supervisors did not comply with <u>any</u> of the requirements of the Second Class

Township Code when they enacted the Moratorium:  they did not publish the

proposed ordinance in the newspaper and make a full-text copy available for public

inspection; an attested copy of the Moratorium was not filed in the county law

library; the Moratorium was not recorded in the ordinance book of the Township.

<u>See</u> 53 P.S. § 66601; <u>Cranberry Park Assocs. ex rel. Viola v. Cranberry Twp.</u>

<u>Zoning Hearing Bd.</u>, 561 Pa. 456, 751 A.2d 165 (2000) (ordinance that was never

signed, dated, numbered or recorded is void *ab initio*).  It is simply impossible to

conclude that the enactment of the Moratorium was in any way a legitimate

legislative act when the supervisors utterly and completely failed to observe any

legislative formalities associated with enactment of such an ordinance.  Because

the enactment of the Moratorium was in no way procedurally legislative, the

Supervisors are not entitled to legislative immunity from suit.

Moreover, enactment of the Moratorium is not the only act of the

Defendants that operated to deprive the Corneals of their federally protected rights.

As set forth more fully in the statement of facts, each of the defendants undertook

or participated in numerous acts that, individually and collectively, deprived the

Corneals of their right to use and enjoy their property.  Defendant Van Dommelen

refused even to give Mr. Corneal an application for a building permit.  Defendant

Wirth refused to give Mr. Corneal access to the proposed Subdivision Ordinance.

Defendant Wilson told Defendant Van Dommelen "don't you dare issue him a permit" and separately filed a baseless complaint against the Corneals for allegedly violating wetlands restrictions. Defendants Weiler and Yoder echoed Defendant Wilson's statements that Corneal could not have sewage modules approved or building permits issued. Defendant Wirth instructed Defendant Parks not to issue a privy permit to the Corneals and refused to grant the Corneals access to public records, including the Township ordinances. Defendant Parks relinquished his independent judgment and acceded to the clearly improper influence of the supervisors, and refused to even return Mr. Corneal's telephone calls after defendant Wirth instructed him not to assist Mr. Corneal. Clearly, none of the foregoing acts of the defendants are legislative in nature, and none, therefore can be privileged. As a matter of law, therefore, defendants' motion for summary judgment on the ground of legislative immunity must fail.

> 2. None of the Defendants Are Entitled to any Qualified Immunity Because Each Participated in a Coordinated, Deliberate Effort to Deprive the Corneals of Their Constitutionally Protected Right to Use and Develop Their Property.

The Defendants all claim that they are each entitled to qualified immunity because "there is absolutely no evidence of record that the individual Defendants … acted in anyway other than reasonably" in that they relied upon the advice of counsel and the Commonwealth Court's ruling in <u>Naylor v. Twp. of Hellam</u>, 717

A.2d 629 (Pa. Commw. 1998) (Naylor I) to conclude that the Moratorium was

legal.  Nothing could be further from the truth.

This Court previously has discussed the question of what constitutes

reasonable actions that entitle an actor to qualified immunity as follows:

> The Supreme Court ... has noted that qualified immunity
> "provides ample protection to all by the plainly incompetent or
> those who knowingly violate the law." Malley v. Briggs, 475
> U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).
> Officials are entitled to qualified immunity if "their conduct
> does not violate clearly established statutory rights or
> constitutional rights of which a reasonable person would have
> known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d
> 396, 102 S. Ct. 2727.  Using an objective legal reasonableness
> approach, qualified immunity should be denied only if "a
> reasonable jury could find that the unlawfulness of
> [defendants'] actions so 'apparent' that no reasonable [official]
> could have believed his [or her] actions were lawful." Lee v.
> Mihalich, 847 F.2d 66, 69 (3d Cir. 1988) (brackets added).
> Governing law may be "clearly established" without a previous
> court decision on point. Good v. Dauphin County Social Serv.
> For Children and Youth, 891 F.2d 1087, 1092 (3d Cir. 1989).
> "'Some but not precise factual correspondence' to precedent"
> must exist if the court will deem defendant knowledgeable
> about the lawfulness of his action. Id. (quoting People of Three
> Mile Island v. Nuclear Regulatory Comm'rs, 747 F.2d 139, 144
> (3d Cir. 1984)).  On the issue of established case law the Good
> court also explained:
>> The ultimate issue is whether, despite the absence of a case
>> applying established principles to the same facts,
>> reasonable officials in the defendants' position at the
>> relevant time could have believed, in light of what was in
>> the decided case law, that their conduct would be lawful.
> 891 F.2d at 1092.

Turiano v. Schnarrs, 904 F. Supp. 400, 414 (M.D. Pa. 1995) (Rambo, C.J.).

Applying the foregoing standards, no rational person could conclude that the defendants acted "reasonably" or that defendants violated plaintiffs' rights "unknowingly." To the contrary, the undisputed facts establish beyond question that each and every one of the defendants either knowingly violated the Corneals' constitutional rights or were "plainly incompetent."

In the first instance, the defendants' repeated argument that they relied upon the advice of counsel is belied by the individual defendants' own testimony: the Supervisors never consulted with Township Solicitor Larry Newton prior to enacting the Moratorium. See Yoder Dep. at 13:15-18, 68:18-24 (Yoder never discussed Moratorium with solicitor Newton); Wilson Dep. at 143:4-10 (Wilson never consulted Newton regarding legality of Moratorium). The only suggestion in the record that any defendant consulted with Solicitor Newton occurs in attorney Newton's deposition:

> Q:    ... Did you know prior to the time they passed the moratorium or attempted to pass it in January 2000 that they were going to do so?
> A:    No.
> Q:    Did they seek your advice about doing so at any time?
> A:    I received a phone call from Ann Wirth asking me if it was permissible for a municipality to have a moratorium on subdivisions. My response was I think so.
> Q:    Did they ask you whether it was permissible to have a moratorium when there actually wasn't a subdivision ordinance in place? ...

> A:    They did not.
> * * *
> Q:    ... After you said I think so, did you then go and
> do anything else to find out whether it was appropriate
> for them to put a moratorium in place in this –
> A:    I did not.

See Newton Dep. at 25:14-26:23.  In light of Solicitor Newton's testimony, it is

specious for the Defendants to argue that they relied upon the current state of the

law in Pennsylvania in deciding to implement the Moratorium.  None of the

supervisors consulted with Newton.  Solicitor Newton did not investigate at all

whether it was permissible to implement the Moratorium, and none of the

defendants or Newton ever considered whether it was permissible to implement a

Moratorium when the Township had no subdivision ordinance in place.

Consequently, any argument that they relied in good faith upon the current state of

the law is baseless.

Moreover, even if the Supervisors had consulted with Solicitor Newton, and

even if Solicitor Newton had investigated the issue, the defendants' reliance on the

Commonwealth Court's decision in Naylor I is misplaced for several reasons.  In

Naylor, the Township of Hellam enacted an ordinance pursuant to the Second

Class Township Code imposing a moratorium on new subdivisions and certain

land developments for a period of one year while the township revised its

subdivision and land development and zoning ordinances.  During the effective

period of the ordinance, the township zoning officer rejected subdivision plans

submitted by Naylor for failing to comply with the pending ordinances and

because of the moratorium. Naylor I at 630-31. The question presented to the

court was whether the MPC prohibited the implementation of moratoria. The

Commonwealth Court noted that the MPC did not, by its terms, expressly

authorize the imposition of moratoria, but neither did it prohibit moratoria.

Consequently, the court (incorrectly) concluded that "implicit in or incidental to

the broad powers expressly conferred upon municipalities is the authority to

impose moratoria on development *while land use regulations are in the process of

being revised.*" Id. at 633 (emphasis added). In the present case, unlike in Naylor,

the Moratorium was imposed in the absence of any land use regulations

whatsoever – there were no land use regulations to revise.[3]

---

[3] The Commonwealth Court's decision in Naylor I was based, in part, upon the application of Pennsylvania's "pending ordinance" doctrine, which essentially states that if a municipality has proposed a revision to existing zoning ordinances, and the developer is on notice of the pending ordinance, then any land development submissions must comport with the pending ordinance. Section 503 of the MPC, however, eliminated the "pending ordinance" doctrine as it relates to applications for land development. Consequently, no competent municipal attorney could have presumed that the Commonwealth Court's determination in Naylor I would have allowed a township to enact a moratorium on all new land development without first enacting a subdivision and land development ordinance under the MPC. Furthermore, because Jackson Township was not revising its subdivision and land development ordinance, it is inconceivable that any reading of Naylor I would suggest that a township had the authority to enact moratoria on all development in the absence of any subdivision and land development ordinance.

> A municipal corporation does not possess and cannot exercise any other than the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt as to the existence of power is resolved by the courts against its existence in the [municipal] corporation, and therefore denied. The reason behind this strict rule is that a borough or other municipal corporation is not a sovereign with inherent powers, but rather a creature of the state. As such, it is completely subject to the state legislature's authority and may do only those things which the legislature has placed in its power.

Warner Cable Comm., Inc. v. Borough of Schuylkill Haven, 784 F. Supp. 203 (E.D. Pa. 1992) (citations omitted) (emphasis added). Finally, the "pending ordinance" doctrine only applies where the prospective developer is on notice of the pending ordinance. In this case, Defendant Wirth admitted that she refused to send Corneal a copy of the draft subdivision ordinance – consequently, the Corneals cannot be said to be on notice of the terms of the pending ordinance and bound thereby.

The Naylor I court further found the moratorium ordinance to be a valid and reasonable exercise of power, specifically, whether the moratorium was properly limited in scope and duration and whether it was enacted in good faith and without discrimination. Id. at 634. Again, neither of these factors is present in the instant case. The Moratorium enacted by Jackson Township was of indefinite duration and universal application – it was neither limited in scope nor limited in duration. Additionally, it was enacted specifically to prevent the Corneals from developing their property – the Moratorium was the first of many roadblocks that the defendants erected to prevent the Corneals from developing their property. Finally, none of the factors identified by the trial court in Naylor that justify the imposition of moratoria are present in this case: Jackson Township was not experiencing rapid growth or "uncoordinated, unrestrained development and subdivision that may prohibit or impair the future growth of [the] community, change usage patters, outstrip available public resources, and create unforeseen problems." See Naylor I, 717 A.2d at 633 n.15. To the contrary, Jackson Township still has only 816 residents, and Defendant Van Dommelen testified very clearly that for the period of 1995-2000, there had been no acceleration in the rate of applications for building permits in the Township. See Van Dommelen Dep. at 168:13-18.

32

Contrary to the defendants' argument that they are entitled to qualified immunity, none of the individual defendants' acts with regard to the imposition of the Moratorium or the approval of the Corneals' land development plans were reasonable. The Board of Supervisors enacted a moratorium on land development despite the fact that Jackson Township had no Subdivision and Land Development Ordinance – without a valid subdivision ordinance, the Board had <u>no authority whatsoever</u> to regulate land development, let alone to prevent it entirely. <u>See</u> <u>Naylor II</u>, 565 Pa. 397, 773 A.2d 770 (2001). The Board enacted the Moratorium without observing <u>any</u> of the procedural guidelines of the Second Class Township Code.[4] Defendant Supervisor Yoder did not even know the proper procedure for enacting an ordinance. <u>See</u> Yoder Dep. at 6:21-25. The Board directed the Building Permit Officer and the Sewage Enforcement Officer not to assist the Corneals to develop their property. The Secretary of the Township deliberately denied Mr. Corneal access to public records. Defendant Wilson filed a baseless complaint with the Pennsylvania Department of Environmental Protection and U.S. Army Corps of Engineers alleging that the Corneals were encroaching on wetlands on the property. Defendants Van Dommelen and Parks abdicated their supposedly independent roles and refused to issue appropriate documents or permits to the Corneals at the direction of the Board. Defendant Van Dommelen admitted that he

---

[4] By contrast, in <u>Naylor I</u> the township enacted the moratorium as an ordinance properly promulgated under the

33

refused to give even an application for a building permit to that "trouble-making yuppie from over the mountain" simply because he "didn't want him to have one." In sum, the actions of the defendant were not only unreasonable, they were astonishing in their brazenness, and are not entitled to any qualified immunity.

**F.    Summary Judgment Is Appropriate on Plaintiffs' State Law Claims.**

Defendants assert that they are entitled to summary judgment on plaintiffs' state law claims because the plaintiffs have failed to present evidence sufficient to support to prove the causes of actions alleged.  Despite defendants' protestations, however, the undisputed facts demonstrate clearly that defendants acted in concert to deprive the Corneals of their federal and state constitutional rights, and further that they deliberately interfered with the Corneals' contractual relations with the Hewetts.

Plaintiffs alleged that, in the course of their unlawful interference with the Corneals' efforts to develop their property, one or more of the defendants intentionally interfered with the contract for sale of a portion of the property to the Hewetts.  The undisputed facts show that Township Solicitor Newton shared office space and support staff with Harvey B. Reeder, Esq., attorney for the Hewetts.  See Newton Dep. at 6:7 – 12:6.  The undisputed facts further show that Defendant Wirth kept solicitor Newton fully informed about the Corneals' land development

---

Second Class Township Code.  See Naylor I 717 A.2d at 630-31.

efforts throughout the early part of 2000, including the fact that the Supervisors

refused to approve, and in fact had no intention of approving, the Corneals

subdivision plans or sewage modules.  See Wirth Dep. at 140:18 – 141:9, 143:2-7.

Very shortly after the supervisors refused to sign the Corneals' sewer

modules and deliberately interfered with their ability to obtain a privy permit in

April 2000, the Corneals received from the Hewetts' attorney a letter terminating

the contract for sale of the farmhouse and land because "it is my understanding that

there are some difficulties with the Township in obtaining subdivision approval.  It

is quite obvious to me that final settlement will not be able to take place on or

before June 30, 2000."  See Letter from Harvey B. Reeder, Esq. to David Corneal,

May 1, 2000.  Prior to and after attorney Reeder sent the May 1, 2000, letter,

Township Solicitor Newton discussed the Corneals' land development efforts with

attorney Reeder, including forecasting that the Corneals would not be able to

subdivide the Property before June 30, 2000.  See Newton Dep. at 74:11 – 76:20.

Perhaps most suspicious, very shortly after the Hewetts terminated the contract

with the Corneals, defendant Wilson's nephew approached Corneal to express his

interest in buying the farmhouse that formerly belonged to defendant Wilson's

grandfather.  See Corneal Dep. at 83:17-22.

This court is entitled to infer from these facts that Solicitor Newton, an agent

for the Township, told attorney Reeder that the Township had no intention of

approving the Corneals' subdivision applications.  The court also is entitled to infer

that Solicitor Newton, as well as the defendants, knew that communication of this

information to the Hewetts would cause the Hewetts to terminate their contract

with the Corneals.  In sum, the undisputed facts establish the motive and

opportunity for the defendants to interfere with the Corneals' contract with the

Hewetts, and that as a result of the actions of the defendants' agent the Hewetts

terminated the contract.  Consequently, as a matter of law, plaintiffs are entitled to

summary judgment on the claim for intentional interference with contract.

Defendants' final argument is that there exists no private right of action to

vindicate violations of state constitutional rights.  The Pennsylvania Supreme

Court never has addressed the specific question of whether there exists a private

cause of action for damages to remedy violations of the Declaration of Rights set

forth in Article I of the Pennsylvania Constitution.  As a general proposition,

however, the law is clear that federal constitutional rulings provide a floor and not

a ceiling from which to measure rights under the Pennsylvania Constitution, and

the Pennsylvania Constitution may provide greater protection than federal law.

See, e.g., In Re: King Properties, 535 Pa. 321, 635 A.2d 128, 131 n.6 (1993).

It makes little sense to presume that despite the greater protections afforded

by the Pennsylvania Constitution no mechanism exists by which to remedy

violations of those rights.  To the contrary, claims arising from violations of the

36

Pennsylvania Constitution may be raised against local governments.  See Coffman v. Wilson Police Dept., 739 F. Supp. 257, 266 (E.D. Pa. 1990) (Pennsylvania Political Subdivision Tort Claims Act does not bar suits against local governments for violation of Pennsylvania Constitution); Redevelopment Auth. v. Woodring, 498 Pa. 180, 183, 445 A.2d 724, 726 (1982) (takings; Pa. Const. art. I, § 10); Thelin v. Borough of Warren, 118 Pa. Commw. 336, 338, 544 A.2d 1135, 1136 (1988) (impairment of contract; Pa. Const. art. I, § 17); Williams v. Pittsburgh, 109 Pa. Commw. 168, 179, 531 A.2d 42, 47 (1987) (equal protection; Pa. Const. art. I, § 1), appeal denied, 518 Pa. 622, 541 A.2d 748 (1988); Holland Enters. v. Joka, 64 Pa. Commw. 129, 136, 439 A.2d 876, 881 (1982) (due process; Pa. Const. art. I, § 1).  This court therefore should evaluate plaintiffs' motion for summary judgment on their state constitutional claims on its merits:  the undisputed facts show beyond doubt that the defendants, individually and collectively, deprived the Corneals of their right to use and enjoy their property as guaranteed by Article I, Section 1 of the Pennsylvania Constitution.  As a matter of law, therefore, the Corneals are entitled to summary judgment on their state constitutional law claim.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs David B. Corneal and Sandra Y.

Corneal respectfully request this Court to deny the defendants' motion for

summary judgment, and to enter judgment in favor of the Corneals.

Respectfully Submitted,


ECKERT SEAMANS CHERIN & MELLOTT, LLC


Bridget E. Montgomery, Esquire
Supreme Ct. I.D. #56105
Adam M. Shienvold, Esquire
Supreme Ct. I.D. #81941
One South Market Square Building
213 Market Street
Harrisburg, PA 17101
(717) 237-6000

Date:  June 24, 2002        Attorneys for Plaintiffs,
                            David B. and Sandra Y. Corneal

# CERTIFICATE OF SERVICE

I, Adam M. Shienvold, Esquire, hereby certify that I am this day serving a copy of the foregoing document via First Class U.S. Mail, which service satisfies the requirements of the Federal Rules of Civil Procedure and Middle District Local Rules of Court, addressed as follows:

> Anthony R. Sherr, Esquire
> Mayers, Mennies & Sherr, LLP
> 3031 Walton Road, Building A
> Suite 330, P.A. Box 1547
> Blue Bell, PA  19422-0440

_____
Adam M. Shienvold, Esquire

Date:  June 24, 2002    Attorney for Plaintiffs,
David B. and Sandra Y. Corneal