# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL AND            :
SANDRA Y. CORNEAL               :          CASE NO. 1:00-CV-1192
                                :
         vs.                    :
                                :
JACKSON TOWNSHIP, Huntingdon    :
County, Pennsylvania,           :
W. THOMAS WILSON, Individually and :       JURY TRIAL DEMANDED
in his Official Capacity as Supervisor of :
Jackson Township, MICHAEL YODER, :
Individually and in his Official Capacity as :
Supervisor of Jackson Township, :
RALPH WEILER, Individually and in his :
Official Capacity as Supervisor of Jackson :
Township, BARRY PARKS, Individually :
and in His Official Capacity as Sewage :
Enforcement Officer of Jackson Township, :
DAVID VAN DOMMELEN, Individually :
and in his Official Capacity as Building :
Permit Officer, ANN I. WIRTH, :
Individually and in her Official Capacity as :
Secretary of Jackson Township, and :

## DEFENDANTS, JACKSON TOWNSHIP, W. THOMAS WILSON, MICHAEL YODER, RALPH WEILER, BARRY PARKS, DAVID VAN DOMMELEN AND ANN I. WIRTH'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiffs combined Memorandum in support of their Cross-Motion for

Summary Judgment and in opposition to Defendants' Motion for Summary Judgment

underscores that the undisputed material facts of record require that summary judgment be granted for Defendants. Plaintiffs' Brief demonstrates that their complaints are based only on alleged violations of state law and not upon any violation of federally protected right, which would be actionable under 42 U.S.C. §1983. Plaintiffs' claims derive from their assertion that a moratorium was improperly enacted, purportedly in violation of state law, while the Jackson Township subdivision and land development ordinance was drafted, revised and adopted. These allegations are violations of state law and actionable in state court. The undisputed facts of record do not demonstrate a constitutional violation, of either procedural or substantive due process protections.  The facts demonstrate that Defendants' actions were taken for legitimate reasons. There was no evidence presented of improper motive, bias or bad faith. Plaintiffs have likewise failed to either create a disputed issue of material fact or to offer sufficient evidence such that a jury could return a favorable verdict on their state law claims.  Accordingly, Defendants' Motion for Summary Judgment must be granted and Plaintiffs' Motion

for Summary Judgment denied with prejudice and Defendants should be dismissed from this case.[1]

## II.    ARGUMENT

### A.    THE UNDISPUTED MATERIAL FACTS OF RECORD DEMONSTRATE THAT PLAINTIFFS HAVE NOT BEEN DEPRIVED OF ANY FEDERALLY PROTECTED RIGHTS

Plaintiffs have failed to demonstrate a protectible property interest where, as here, the record demonstrates that Plaintiffs initiated construction and built on their property without requisite permits, including septic and subdivision approvals.[2] See Woodland Estates v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000) (developer, has a protectible property interest only when a plan satisfied all of the requirements for approval under Township subdivision ordinance). Mr. Williams, Corneal's attorney for the building permit process and Township state action has unequivocally stated that Corneal was building on the property without necessary approval. He noted that his purpose in meeting with Solicitor, Larry Newton at the Huntingdon County Courthouse, "... was to find out what it was the Township was trying to do to get

---

[1] Despite their exaggeration assertions in their Introduction, the Corneals have failed to proffer one single fact upon which it can be inferred that any of the individual Defendants' actions were motivated by personal animus. Moreover, there has been nothing proffered, which constitutes a personal attack upon either Mr. and Mrs. Corneal . Finally, the last sentence of their Introduction belies the Corneals and their attorney's lack of understanding regarding a suit pursuant to §1983. They have not brought a suit seeking a resolution of their state law land use claims. Rather, they have brought a suit claiming they have been deprived federally protected rights.

[2] Again, this case does not involve a "taking" claim as noted by this Court in its Opinion in footnote 1, dated March 29, 2001 disposing of the various Motions to Dismiss.

3

the building permit, sewage permit, driveway permit, ... to get those matters taken care of." (Exhibit "26", p. 14). In this regard, Mr. Williams was concerned that Mr. Corneal was in the process of building without the benefit of permits and Mr. Williams wanted to get that corrected. (Exhibit "26", p. 14). Mr. Williams testified at his deposition that after this meeting, he, "... had a laundry list of things that they [the Township] wanted accomplished, principally being that he obtain a septic permit, building permit and driveway access permit, that the principal holdup ... was the modification or correction of the plan that was attached to the sewer module and that was important because that plan, as attached to the module, showed a subdivision..." (Exhibit "26", p. 63).

Plaintiffs did not comply with requisite local ordinances or the MPC, nor did they appropriately challenge, appeal or seek to compel any action by Jackson Township through administrative or state law procedures. On this basis alone, the record facts of evidence demonstrate a lack of a protectible property interest. Accordingly, Plaintiffs' Motion for Summary Judgment must be denied and Defendants' Motion for Summary Judgment be granted.

Even assuming for purposes of this argument only that Plaintiffs have a protectible property interest, which Defendants specifically deny, the Defendants did

not violate any constitutional right in enacting and enforcing the temporary moratorium on subdivision and land development in January 2000. Plaintiffs' argument in support of an alleged substantive due process violation presupposes first that the moratorium was enacted for the sole reason of interfering with Plaintiffs' development of his property, and, second, that the enactment of the moratorium was in contravention to state law.

With regard to Plaintiffs' allegations that the moratorium was enacted for the sole and/or clear purpose of interfering with Mr. Corneal's land development, such contention is belied by the undisputed record evidence. Plaintiffs' Brief ignores the deposition testimony of Mr. David Simpson, the Plaintiffs' surveyor/engineer. Mr. Simpson testified that on or about January 25, 2000, he contacted the Township Secretary in order to determine the date of the Township's next monthly meeting. He recalled that Ms. Wirth informed him that the Township was working on adopting a Township subdivision ordinance and there was a moratorium on new subdivisions within the Township. (Exhibit "9", p. 16). Mr. Simpson then conveyed this information to Mr. Corneal. (Exhibit "9", p. 16). Mr. Simpson testified that he did not contact the Township at any time prior to January 25, 2000 with respect to the work that he was doing for Mr. Corneal and his subdivision.

(Exhibit "9", p. 17).  Mr. Simpson further testified that as of January 25, 2000, he had not completed the plans for the proposed subdivision.  Rather, the earliest date that there was a completed subdivision plan is February 4, 2000.  (Exhibit "9", p. 17).  Mr. Corneal testified that he thought that Mr. Simpson was aware of the requirements to develop property in the Township and he relied upon Simpson. (Exhibit "3", p. 57).

Plaintiffs' further ignore the evidence with regard to the development of a subdivision and land development ordinance in Jackson Township.  In approximately 1997 or 1998, the Board began discussions with regard to the development of a subdivision and land development ordinance. (Exhibit "4", p. 59).[3]  Thereafter, a two year process ensued wherein a proposed ordinance was drafted and revised. (Exhibit "2", p. 104; Exhibit "5", p. 22).  The Township obtained subdivision ordinances from different townships and tailored bits and pieces of each to meet the unique needs of Jackson Township. (Exhibit "4", p. 100).  The Board held informal workshops in order to gather "subdivision information".  (Exhibit "4", p. 102). The Board of Supervisors relied on Richard Stahl of the Huntingdon County Planning Commission (hereinafter referred to as HCPC), the Pennsylvania Association of Township Supervisors (hereinafter referred to as PSAT) and its

---

[3] This is prior to Plaintiffs purchase of the property.

Solicitor, Larry Newton for assistance and advice in drafting the SALDO. (Exhibit "2", p. 32; Exhibit "4", p. 23; Exhibit "5", p. 37). Ultimately, the proposed draft was sent to Huntingdon County Planning Commission for review prior to its adoption. (Exhibit "2", p. 104, 107-108). The County suggested various changes (Exhibit "2", pp. 107-108), and the final version was sent to Solicitor, Larry Newton for review. (Exhibit "2", p. 106). Plaintiffs purportedly did not hire Mr. Simpson to perform a survey of the property and to prepare sewage modules until, the fall of 1999. (Exhibit "1", p. 16; Exhibit "16", pp. 31, 35, 57-58).

These undisputed facts demonstrate that the Township began to discuss, draft and revise the subdivision and land development ordinance well before Mr. Corneal began to develop his property. Moreover, Mr. Simpson's testimony demonstrates that the moratorium was already in effect before the initial set of plans was even finished.

Simply because the moratorium and newly enacted subdivision allegedly delayed Plaintiff's construction, which in fact was initiated despite the moratorium, does not demonstrate that this SALDO was enacted to interfere with Plaintiffs' development of their property. There was testimony that other interested developers simply withheld plans until the moratorium was lifted. (Exhibit "4", pp. 124-125;

7

Exhibit "8", pp. 123-124).  Also, a record which identified subdivisions reviewed by HCPC for the municipality of Jackson Township demonstrate that no other subdivisions were submitted during the period of the moratorium, but that numerous subdivisions have been submitted for review by HCPC dating back to the year 1982.[4]  Finally, the undisputed material evidence fails to demonstrate any bad faith, or ill will or ill motive on the part of the Township in enacting and/or enforcing the moratorium. There is no basis, in fact, nor in law to conclude that this moratorium was enacted for the purpose of interfering with Corneals' right to develop their property.  On this basis, Plaintiffs' Motion for Summary Judgment on this basis must be denied and Defendants' Motion must be granted.

Plaintiffs have also alleged as the basis for summary judgment that the moratorium was enacted in violation of state law.  (Plaintiffs' Memorandum, pp. 12, 15).  It is beyond dispute that the Township's subsequent actions are based on their belief that at the relevant time they had enacted a lawful moratorium.  However, assuming for purposes of this argument only that the moratorium was improperly enacted, which Defendants specifically deny, Plaintiffs' remedy lies in state court. This claim cannot form the basis of any alleged violation of a federally protected

---

[4] A true and correct copy of a document, which was the deposition Exhibit Wilson No. 3 and is entitled subdivisions reviewed by HCPC is attached hereto as Exhibit "27".

right, which is actionable under 42 U.S.C. §1983.  A Federal Court is not a forum

for remedying violations of state law. Midnight Sessions Ltd. v. City of Phila., 945

F.2d 667, 684 (3d Cir. 1991).  A violation of state law in itself does not constitute

a denial of substantive due process. Midnight Sessions Ltd., 945 F.2d at 684; Smith

v. Spina, 477 F.2d 1140, 1143 (3d Cir. 1973) (citations omitted).  Recovery under

§1983 is strictly limited to deprivations of federally protected rights.  Id.

At the time the instant moratorium was enacted, Naylor v. Township of

Hellum, referred to in Plaintiffs' Brief as Naylor 1, was good law, which Plaintiffs'

Memorandum of Law in support of their Motion for Summary Judgment repeatedly

ignores.  See Naylor v. Township of Hellum, 717 A.2d 629 (Pa. Cmwlth. 1998),

reversed, 565 Pa. 397, 773 A.2d 770 (June 20, 2001).  The Commonwealth Court's

decision in Naylor, supra, held that a township was authorized, under the

Municipalities Planning Code (hereinafter MPC) to enact a moratorium and that a

moratorium was a valid and reasonable exercise of municipal power.  The

Pennsylvania Supreme Court's decision reversing the Commonwealth Court does not

provide for retroactivity and was not decided until almost one year after Jackson

Township's moratorium was lifted.

Additionally, Section 66601 entitled "Ordinances" of the Second Class

9

Township Code provides, in relevant part, as follows:

> (f) Any person aggrieved by the adoption of any ordinance may make a complaint as to the legality of the ordinance to the Court of Common Pleas.

53 P.S. 66601; See Midnight Sessions, 945 F.2d at 684, fn. 14, citing Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023 (3d Cir. 1987) (where the Court observed that, "… a developer attained relief on state grounds in a state court from a rezoning ordinance, but was unsuccessful in its quest for damages in federal court taking and due process litigation."); Hodge v. Zoning Hearing Board of West Bradford Township, 312 A.2d 813 (Pa. Cmwlth. 1973). Not only is the alleged error of which Plaintiffs complain an alleged violation of state law, with its exclusive remedy in state court, such claim is wholly insufficient to form a basis for an alleged violation of a federally protected right. Federal courts are not the appropriate forum for remedying violations of state law. On this basis, Plaintiffs' claims fail and Defendants are entitled to summary judgment.

In Section D of their Brief, Plaintiffs contend that the Township's actions "in deliberately interfering" with the issuance of permits to which the Corneals allegedly were otherwise entitled, demonstrates a violation of their substantive due process rights. Again, Plaintiffs' claim is based on the alleged, "… unlawful enactment of

10

the moratorium at the January 4, 2000 meeting." (See Plaintiffs' Memorandum, p. 16). However, as outlined above, Plaintiffs have not appropriately challenged the legality of the "ordinance" in state court, where exclusive jurisdiction for such a challenge exists. See 53 P.S. 6601; see also, 53 P.S. 10916.1. This alleged violation of state law cannot form the basis for recovery under §1983.

In any case, the material undisputed facts demonstrate that each of Defendants' actions was taken for a legitimate reason. There is no evidence whatsoever of malicious intent on the part of the Township officials sufficient to sustain a claim for substantive due process violation. As originally argued, in pages 13 through 20 of Defendants' Memorandum of Law in Support their Motion for Summary Judgment, each of the Township's actions were taken for a legitimate reason or had a rational basis. Defendants' actions were not motivated by bias, bad faith or improper motive. There were no subdivisions approved during the moratorium. The moratorium was put into place prior to completion by Corneal of any plan. While Mr. Corneal testified that he believed that the Township improperly advised him to submit his plans or sketches to the HCPC, the undisputed testimony is that the Board was acting in accordance with the practice and procedure utilized in Huntingdon County. (Exhibit "3", p. 80; Exhibit "5", p. 93; Exhibit

11

"27"). Moreover, the February 7, 2000 Minutes of the Board of Supervisors' meeting demonstrates that Mr. Corneal asked whether he could submit his subdivision to the County in order to be "ahead of the game."[5] The County Plaiing Commission initially recommended denial of Plaintiffs' plan. While the County ultimately recommended conditional approval of Mr. Corneal's subdivision plan, such approval was in fact conditioned upon the pending adoption of Jackson Township's subdivision and land development ordinance. (Exhibit "13"). Contrary to Plaintiffs' allegations that the Township deliberately misled the Corneals in this regard, the undisputed record evidence as outlined above, demonstrates that Mr. Corneal willingly took his proposed subdivision to the HCPC and that the Board was acting in accordance with a longstanding practice utilized in Huntingdon County. There is no record evidence that this purported practice of County review was arbitrarily required of Mr. Corneal. Furthermore, Mr. Simpson, Corneal's surveyor, testified that he advised Corneal that he had to have subdivision approval by the Township County Planning Commission.

With regard to Corneal's request for a privy permit, Mr. Parks testified that Mr. Corneal could not use a privy on his property at that time because the Corneals

---

[5] A true and correct copy of the February 7, 2000 Minutes of the Jackson Township Board of Supervisors Meeting is attached hereto as Exhibit "28".

12

had piped water on the property and also water under pressure, presumably due to the existing farmhouse. (Exhibit "8", pp. 64-66). Mr. Parks determined that under DEP regulations, this precluded use of a privy. (Exhibit "8", pp. 64-65). The Township's reported refusal to issue a privy permit was not motivated by any improper purpose or ill will, but rather the denial was based on a rational factual basis, i.e. DEP regulations. Similarly, the SEO's alleged "re-evaluation" of the septic sites properly raised the issue about the soil site having been driven over and having become unstable. Plaintiffs' attorney, Mr. Williams, acknowledged that, "... the SEO could raise the concern issue about the site having been driven over." (Exhibit "27", p. 44).

With regard to the building permit, Mr. Van Dommelen testified that when Mr. Corneal approached Van Dommelen in order to request a permit, Mr. Corneal stated that he was building "a garage and a house." (Exhibit "14", pp. 46-47). Mr. Corneal's plans apparently included an apartment and/or art studio, above a garage. Van Dommelen testified that the only drawings Mr. Corneal had with him were for a four-stall garage with a second story for a studio. (Exhibit "14", p. 66). Mr. Van Dommelen believed that the art studio required septic use. As Mr. Van Dommelen testified, even if Mr. Corneal wanted to build one structure on one piece of

13

property, such would constitute a subdivision because of the existing farmhouse structure. (Exhibit "14", p. 49). Although Mr. Corneal later submitted applications for building permits along with checks to Defendant, Wirth, this was well after his visit to Mr. Van Dommelen and Mr. Corneal's subsequent letter to him dated May 5, 2000. The undisputed testimony demonstrates that the Supervisors as well as the various Township Enforcement Officers believed that the second lot would required septic use and, as such, required both septic and subdivision approval.

Contrary to Plaintiffs' allegations that the Defendants "lied" about the procedural requirements for subdividing property, Mr. Corneal was consistently advised by his agents as well as Defendants regarding the procedure that was consistently in place for <u>all</u> people seeking subdivision approval in Jackson Township. The record evidence fails to demonstrate that the Defendants' actions were improperly motivated, such that Plaintiffs can demonstrate a claim for a substantive due process violation. Mr. Corneal sought approval for his initial subdivision plan, in February 2000, during a moratorium, which the Supervisors believed, was lawfully imposed. While Mr. Corneal's plans changed from time to time, which the Township officials found difficult to follow, all of his plans required some sort of on-site sewage and, as such, required Township approval of a

14

subdivision, which, again, at the time was precluded by the moratorium. Ultimately, Mr. Corneal did construct a garage with an apartment on top of it. The Supervisors and Municipal Ordinance Officers did not act arbitrarily, but rather their actions were always based on legitimate governmental concerns as previously stated in Defendants' original Memorandum of Law in Support of their Motion for Summary Judgment and reiterated here. Plaintiffs' Brief fails to demonstrate otherwise or to create a disputed issue of material fact. Accordingly, Plaintiffs' Motion for Summary Judgment must be denied and Defendants' Motion for Summary Judgment must be granted.

### B.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO IMMUNITY

Plaintiffs incorrectly assert that the individual Supervisors are not entitled to absolute immunity because the enactment of the moratorium was not "procedurally legislative". Plaintiffs, however, have not challenged the legality of this ordinance pursuant to 53 P.S. 66601. Therefore, Mr. Corneal cannot now rely on alleged procedural deficiencies in the adoption of the moratorium. The individual Defendants are also entitled to qualified immunity. Attorney Newton's testimony, as outlined in Defendants' original Memorandum of Law in Support of its Motion for Summary Judgment demonstrates that Secretary, Wirth did speak to him with

regard to the validity of a moratorium. Certainly, Ms. Wirth as the Township Secretary acted on behalf of the Supervisors. Corneal misconstrues Mr. Wilson's testimony on this point. Wilson testified that:

> As I had testified before, there has been other townships
> in the county that had to do - - and surrounding areas that
> had to do the same thing and they're legal [i.e. moratoria].
> I guess we'll find out. The law says it is.

(Exhibit "2", p. 143). Accordingly, the testimony as presented in its full context demonstrates that Ms. Wirth checked with Solicitor Newton on behalf of the Board and Solicitor Newton advised that he believed that the moratoriums were legal. Supervisor Wilson similarly believed that a moratorium was legal based on his knowledge as to what other local communities' actions.

Most importantly, qualified immunity does not demand that the municipal official prove that they relied on specific case law in order to be afforded the immunity. Rather, the relevant inquiry is what was the established law at the time and whether a reasonable official in the Defendants' position at the relevant time could have believed that his or her conduct was lawful. See Good v. Dauphin County Social Services for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989). There clearly is undisputed testimony, which demonstrates that Township officials believed that a moratorium was legal; and in the Commonwealth of Pennsylvania at

the relevant time, moratoria were permissible under the Municipalities Planning Code. See Naylor v. Township of Hellum, 717 A.2d 629 (Pa. Cmwlth. 1998). Again, the Supreme Court did not reverse the Commonwealth's decision in Naylor, supra, until June 2001, which was almost one year after the Jackson Township moratorium was lifted with the adoption of the SALDO. See Naylor v. Township of Hellum, 565 Pa. 397, 773 A.2d 770 (2001).

All of the Supervisors' actions, including those actions of the permit officers, were required of them by law or stem from their reasonable belief that the moratorium in effect was lawful. As the April 3, 2000 Minutes of the Jackson Township Board of Supervisors indicate, the Supervisors advised Mr. Corneal that they were not issuing any building permits for a property that they believed was going to be subdivided. (Exhibit "11"). Similarly, as outlined above, the various septic permit requests were intertwined with the subdivision of the property.

The individual Defendants are also entitled to qualified immunity because Plaintiffs have failed to adduce evidence, which would demonstrate that any of the individuals were engaged in conduct alleged to have violated a clearly established right. Again, the specific conduct of each Defendant claiming qualified immunity must be examined. See Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990),

17

<u>cert</u> <u>denied</u> 501 U.S. 1218 (1991). The undisputed record facts demonstrate only that the individuals' actions acted reasonably and that the information possessed by these individuals would lead a reasonable person to believe that the conduct was lawful. On this basis, they are entitled to qualified immunity.

Based on the foregoing, each of the individual Defendants believed that the building moratorium was lawful and indeed at the time it was lawful. There is no record evidence from which a jury could conclude that the reasonable officials in the individual Defendants' position at the relevant time could have believed that their conduct was unlawful. Accordingly, based on the reasonable behavior under the circumstances, Defendants are entitled to qualified immunity and must be dismissed from this action with prejudice.

## C.    <u>DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' STATE LAW CLAIMS</u>

Plaintiffs have failed to create a disputed issue of fact with regard to Defendants' Motion for Summary Judgment on Plaintiffs' state law claims. Specifically, Plaintiffs have failed to identify any evidence in support of their state law civil conspiracy claim. On this basis, then, Defendants are entitled to summary judgment. Additionally, "... absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." <u>McKeeman v.</u>

CoreStates Bank, 751 A.2d 655, 659 (Pa. Super. 2000). As demonstrated above, the undisputed material facts of record fail to demonstrate a violation of any federally protected right and, as such, any conspiracy based on the same similarly fails. Moreover, there is no record evidence sufficient to demonstrate malice or an intent to injure, which is an essential element to the proof of a conspiracy. Skipworth by Williams v. Lead Industries Assoc., 547 Pa. 224, 690 A.2d 169, 174 (1997).

With regard to Plaintiffs' alleged state law claim for intentional interference with performance of a contract Defendant, Jackson Township was previously dismissed from this Count by this Honorable Court. Again, Plaintiffs have failed to create a disputed issue of material fact with regard to this Count. Their own Motion for Summary Judgment on this Count requires this Court to presume and unreasonably infer from the facts that the Township Solicitor, "... told Attorney Reeder that the Township had *no intention of approving the Corneals' subdivision applications.*" (See Plaintiffs' Brief pp. 35-36). This supposition is belied by Newton's own testimony, which provides, in relevant part as follows:

> Q. Now, did you have any discussions with Mr. Reeder about Mr. Corneal's efforts to obtain Township cooperation in subdividing and selling this property?
>
> A. Generally, no. At some point in time, Mr. Reeder

> asked me if I thought that the Township would have its subdivision ordinance adopted by June 30 and I responded I didn't think so and that was the extent of my conversation with Mr. Reeder.
>
> ***
>
> Q. So you told him at that time - - now that you recall that that was what the June 30 was relevant to, you told him at that time you didn't think the subdivision ordinance would be approved, right?
>
> A. By June 30, yes.
>
> Q. Right? By June 30.  What was the extent of your conversation - -
>
> A. That was it.
>
> Q.  - - with Mr. Reeder?  ... So it was just one question?
>
> A. Generally, yes, that's all I can recall.
>
> Q. Did you have any other conversations with Mr. Reeder about Mr. Corneal's property?
>
> A. Not that I can recall.

(Exhibit "5", pp. 74-75).

There is absolutely no basis to infer that the Township Solicitor acted in any way at all to circumvent Plaintiffs' and the Hewitts' contractual relationship.  More importantly, there is absolutely no evidence that he acted on behalf of the individual Defendants while performing these acts.  There is absolutely no evidence that his

intent was to harm the Plaintiffs nor is there any evidence that any of the Township Supervisors and/or Officers in any way participated in this regard. Plaintiffs' argument and claim is completely based on supposition and is without factual basis. Accordingly, Defendants are entitled to summary judgment on Count III for intentional interference with contract. Plaintiffs' Motion for Summary Judgment on the same claim must be denied.

Finally, with regard to Plaintiffs' state constitutional law claims, they again have failed to create a disputed issue of fact or to offer sufficient evidence such that a reasonable jury could return a verdict in favor of them on this claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. On this basis, Defendants' Motion for Summary Judgment must be granted and Plaintiffs' Motion with regard to the same must be denied.

## III.    CONCLUSION

For all the foregoing reasons, Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth respectfully request that this Honorable Court grant their Motion for

Summary Judgment, dismiss this action with prejudice, and deny Plaintiffs' Motion

for Summary Judgment.

                       Respectfully submitted,

                       **MAYERS, MENNIES & SHERR, LLP**

BY: _____
                       ANTHONY R. SHERR, ESQUIRE
                       Attorney for Defendants

                       3031 Walton Road, Building A
                       Suite 330, P.O. Box 1547
                       Blue Bell, PA 19422-0440
                       (610) 825-0300
                       Fax (610) 825-6555

## **CERTIFICATE OF SERVICE**

I, Cheryl Zeigler, hereby certify that on the 12th day of July, 2002, a true and correct copy of Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth's Memorandum of Law in Opposition to Plaintiffs' Brief in Support of their Motion for Summary Judgment and in Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment was served by first class regular mail, postage prepaid upon the following:

Bridget E. Montgomery, Esquire
Adam Sheinvold, Esquire
Eckert, Seamans Cherin & Mellott
213 Market Street, 8th Floor
Harrisburg, PA 17101

BY: _____
Cheryl Zeigler
Legal Assistant to Anthony R. Sherr

# EXHIBIT "27"

SUBDIVISIONS REVIEWED BY HCPC

MUNICIPALITY _Jackson Township_

| DATE | NAME OF SUBDIVISION | TYPE | # LOTS | # ACRES |
|------|--------------------|------|--------|---------|
| 1-01-90 | Kenneth Miller (Kenwood Development) | Sew. Module | | |
| 5-3-82 | Robert Peters | | | |
| 6-26-90 | Norman & Mary Keller | | | |
| 6-15-83 | C.J. Campbell | Sewage module | 10 | 20.5 |
| 6-18-86 | Jackson Miller Elementary School | | | |
| 12-17-86 | Jackson Miller Elementary School | | | |
| 10-22-91 | Leroy J. & Helen F. Koch | Sew. Module | 2 | 6.69 |
| 6-25-90 | Norman + Mary Keller | Sew. Module | | |
| 4-7-93 | Kenneth Miller | Minor | 2 | 50.44 |
| 2-14-94 | Kenwood | Major Subd | 8 | 334 ac |
| 11-20-96 | Dennis A. and Janie F. McClure | Sewage Module | 1 | .89 |
| 7-14-97 | Resubdivision of Lot 4A Laurel Run Acres | Minor | 2 | 15.79 |
| 8-19-97 | Seth H. Richards (Tract 2) | minor | 2 | 112.5 |
| 9-3-97 | W. Thomas Wilson | minor | 3 | 12.067 |
| 9-16-97 | Keller's Acres (Norman J. Keller) | Minor | 2 + residue | 21.82 |
| 1-14-98 | Jackson-Miller Elem. School | land dev. | 1 | 7.12 |
| 5-5-98 | Monty A. Claar & Anta M. Harbour-Claar | minor | 2 inc. residue | 69.04 |
| 9-30-98 | James W. Boring | minor | 2 inc. residue | 245 |
| 11-4-98 | Greenwood Furnace State Park Sewage Module | New Sewage System | | |
| | | minor | 2 | 5.22 |

Wilson's

## SUBDIVISIONS REVIEWED BY HCPC

MUNICIPALITY _Jackson Township_

| DATE | NAME OF SUBDIVISION | TYPE | #LOTS | #ACRES |
|---|---|---|---|---|
| 12-19-98 | Kenneth + Joyce Koch _Replat of Lot 26R_ | minor | 2 | 5.86 |
| 3-24-99 | Kenwood Subdivision | major | 16 | 194.38 |
| 10-15-99 | Joe E./Pauline S. Baker | minor | 2 | 5.95 |
| 10-21-99 | Jordan Conrad | minor | 2 | 27± |
| 12-13-99 | Leslie J. Ford | minor | 2 | 5.26 |
| 2-10-00 | David B./Sandra Y. Conrad _Resubdivision_ | minor | 3 | 94.67 |
| 4-11-00 | David B./Sandra Y. Conrad | minor | 2 | 94.67 |
| 7-18-00 | Glenn O., Jr. and Barbara A. Hawbaker + Caroline A. McGann | minor | 2 | 10.08 |
| 7-27-00 | Harold J. Davis & Norman Davis | minor | 3 | 286.1 |
| 9-27-00 | Jacob & Eric/Kimberly A. Miller | minor | 2 | 17.51 |
| 10-5-00 | David A. Zimmers | minor | 2 | 101.202 |
| 10-5-00 | Overhill, LLC | Land Dev. Minor | 1 (2nd dwelling) | 1.52 |
| 4-4-01 | Darlene/George Sunderland | minor | 2 | 85± |

**EXHIBIT "28"**

February 7, 2000
Meeting called to order by Chairman Weiler
Minutes approved as read

Treasurer's report approved as read

The Board appointed two new auditors - Lucille Yutzy and Sondra Amrstrong

The Fireman presented a list - Fireman trained in Hazardous Materials Operations
and Incident Commanders -  Fireman driving under  Red Lights and Sirens and Blue Lights.
And a List of Fireman and their Drivers License's.

Denny Grandthal presented a copy of the  concerns and opinions of the Taxpayers Associations
On the proposed Subdivision Ordinances.

Fire Chief Chris Wilson ask if the proposed sub-division ordinance had addressed  the width of the
roads  with the Fireman trucks in mind and he was assured that all the proposed streets will
be wide enough to get the fire trucks in and out and turn them around.

Roadmaster had a few complaints about snow removal but he felt that we have worked out the problems
and things are going well.

David Corneal ask if the Supervisors would approve a sub-division on Sawmill road, all three supervisors
told him that we are not approving any sub-division at this time and that it had been announced at the
January meeting.  He ask if he could submit his sub-division to the County and when we are ready would
be a head of the game and he was told that he could do so but that the Township had the final approval of
all sub-divisions.

Meeting adj 7:50PM