**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID B. CORNEAL and<br>SANDRA Y. CORNEAL, | : | NO. 1:CV-00-1192 |
| Plaintiffs | : | JURY TRIAL DEMANDED |
| v. | : | HARRISBURG, PA |
| | : | RAMBO, J. |
| JACKSON TOWNSHIP,<br>Huntingdon County, Pennsylvania,<br>*et al.*, | : | JUL 29 2002 |
| | : | MARY E. D'ANDREA, CLERK<br>Per _____ Deputy Clerk |
| Defendants | : | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

In this summary judgment exercise, it has become apparent that the defendants either misconstrue or wish to confuse the analysis of the Corneals' claims against them. Legally, Defendants have mixed up due process with equal protection analysis, zoning and land use with civil rights concepts, and seem to be baffled by basic concepts of municipal procedure. Factually, the defendants ignore the uncontroverted evidence in their own deposition testimony, which establishes that the Township Supervisors, Secretary, Building Permit Officer, and Sewage Enforcement Officer all took *ultra vires* acts specifically for the purpose of interfering with the Corneals' land development efforts.

1

The record evidence cited by Plaintiffs in their summary judgment filings establish that defendants attempted to block the Corneals' right to subdivide their property, and even to build at all. The defendants variously purported to implement a subdivison Moratorium without observing any formal procedural and legislative requirements and in spite of a total lack of any authority to do so, interfered with the issuance of permits to the Corneals, blocked their access to public documents, and filed harassing and frivolous complaints against the Corneals with state and federal agencies. Nevertheless, the defendants argue that the Corneals do not even have a federally protected right at issue, none of the actions of the defendants deprived them of any right, and the actions taken by the individual defendants were for a legitimate governmental purpose. Plaintiffs' Main Brief addressed all of these issues in detail, but herein will reply to defendants' distortions of fact and law in their summary judgment briefing.

## II. ARGUMENT

### A. Defendants Have Misconstrued the Nature of Plaintiffs' Claims

Plaintiffs have asserted claims under 42 U.S.C. § 1983 for violation of their substantive due process rights, specifically, their right to use and enjoy their Property. Plaintiffs have asserted and elicited record evidence that shows that the defendants acted under color of state law to enact the Moratorium with the intent and purpose of preventing the Corneals from developing their property, and further

2

have asserted and proven that the defendants all acted individually and in concert to unlawfully prevent the Corneals from obtaining the land use and building permits necessary to begin development of the Property. Plaintiffs have not asserted any claim arising under the Equal Protection Clause of the U.S. Constitution (see Defs. Mem. at 7-8, 12). Neither have plaintiffs alleged that the Jackson Township Subdivision and Land Development Ordinance was enacted solely to interfere with plaintiffs land development efforts (see Defs. Mem. at 7).

Defendants assert, as though it absolves them of any possible liability, that Jackson Township was in the process of drafting a subdivision and land development ordinance as early as 1998. That may be so, though the facts of record do not show it, but it is immaterial. The unwritten Moratorium that defendants hastily passed and relied upon to deny Plaintiffs' right to subdivide and to build was implemented after defendants learned of the Corneals' plans and about one month before the Corneals submitted their first completed subdivision application to the Township.

As the record cites set forth in Plaintiffs' moving summary judgment papers demonstrate, the undisputed facts show that: (1) there was no valid subdivision and land development ordinance in Jackson Township when the Corneals submitted their first subdivision application; (2) the Supervisors were aware that the Corneals intended to subdivide the Property long before January 4, 2000, the

3

date of their orally passed moratorium; (3) despite several opportunities to do so, defendant Wilson never advised Mr. Corneal that the Township was in the process of preparing a subdivision ordinance; (4) the Township implemented the Moratorium without following any of the procedures set forth in the Second Class Township Code (and as a legal issue, there is no legal right to pass an outright subdivision moratorium at all, let alone in the total absence of a subdivision plan); (5) with personal animosity towards David Corneal, and without legal authority to do so, the Supervisors directed the Building Permit Officer not to give building permits to the Corneals; (6) with personal animosity towards David Corneal, and without legal authority to do so, the Supervisors directed the Sewage Enforcement Officer not to give any permit or assistance to the Corneals; (7) the Township Secretary denied Mr. Corneal access to public documents, including the proposed subdivision ordinance; and (8) none of the defendants ever consulted with legal counsel to determine if any of their actions were legal. These facts, as well as the other undisputed facts set forth in Plaintiffs' Consolidated Statement of Undisputed Facts, demonstrate clearly that the defendants' actions, individually and collectively, were geared toward preventing "that trouble-making yuppie from over the mountain" from enjoying his Property, as is his constitutional right.

4

### B. Plaintiffs have been deprived of federally protected property rights.

The defendants have presented the mysterious argument that the Corneals have not been deprived of their federal constitutional rights because, subsequent to the unlawful acts of the defendants, the Corneals proceeded with construction on their property despite the defendants' actions. Boiled down, their argument is this: The defendants took illegal acts under color of state law to prevent the Corneals from developing their property by denying approval to subdivide or develop; after months of delays caused by those unlawful acts, the Corneals began construction on the property without first waiting for the Township to cease its unlawful acts; thus, defendants argue, there is no deprivation of civil rights. That argument is as unreasonable as the defendants' actions towards the Corneals.

As set forth in detail in Plaintiffs' Main Brief, the Corneals clearly have a protected constitutional right to use and develop their property. "'[C]ases involving zoning decisions, building permits, or other governmental permission required for some intended use of land owned by the plaintiffs' implicated the kind of property interest protected by substantive due process." Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000) (quoting Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 n.12 (3d Cir. 1997)).

5

> [I]n the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached. Where a plaintiff so alleges, the plaintiff has, as a matter of law, impliedly established possession of a property interest worthy of substantive due process protection.

DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 601 (3d Cir. 1995) Thus, the law is clear that the arbitrary or irrational deprivation by a municipality of a landowner's right to use and develop his property constitutes a substantive due process violation. The question of what the Corneals did subsequent to the unlawful governmental action (which, in any event, was lawful in the circumstances) is immaterial to whether the landowner's civil rights were violated in the first instance.

Nor is it relevant that the Corneals, in addition to filing this civil rights lawsuit, sought assistance from a separate local attorney in connection with state court filings and processes. Even if a governmental entity eventually some of all of its illegal conduct in response to a lawsuit, the civil rights violation must be remedied. As the Third Circuit has put it:

> [P]laintiffs are asserting that defendants, acting in their capacity as officers of the Township, deliberately and improperly interfered with the process by which the Township issued permits, in order to block or to delay the issuance of plaintiffs' permits, and that defendants did so

6

> for reasons unrelated to the merits of the application for the permits. Such actions, if proven, are sufficient to establish a substantive due process violation, actionable under § 1983, even if the ultimate outcome of plaintiffs' permit applications was favorable.

<u>Blanche Road Corp. v. Bensalem Township</u>, 57 F.3d 253, 267-68 (3d Cir. 1995). The fact that the Corneals retained attorney Williams in response to the Township filing a baseless petition for preliminary injunction against the Corneals in an attempt to enjoin construction on the Property is immaterial to the question of whether the defendants violated the Corneals civil rights by interfering with their land development efforts, including by filing the litigation in Huntingdon County.

Moreover, defendants attempt to utilize the testimony of attorney Williams to make it appear that Mr. Corneal was aware that he was violating the law when he subsequently commenced construction on the Property. Aside from being irrelevant to the question of whether the *defendants violated the Corneals' civil rights* by arbitrarily and unreasonably interfering with their land development efforts, the testimony of Mr. Williams that is quoted in defendants' brief at pages 3-4 is incomplete and misleading. With regard to Mr. Williams testimony, it best is summed up by the following exchange:

> Mr. Williams: It was incomprehensible to me how they had not issued these permits.
>
> Mr. Sherr: Did you tell them that?
>
>               \* \* \*

7

> A: I'm sure I said to Larry Newton, I fail to understand how you can refuse to issue permits . . .now that this has gone on this long, now that you've managed to get us into this position, how do we get out of it. . . I'm sure I said – I've never seen anything like this, somehow we have to find an answer to this, there is no reason –. . . there was no legal reason that I could define as to why these permits hadn't been issued. . .

[Williams Dep. At 56:22-58:8]. Mr Williams further testified:

> Ms. Montgomery: Mr. Williams, you testified to a variety of activities and things that were undertaken with respect to Mr. Corneal's property since the filing of the preliminary injunction.
>
> My question to you is, is it your understanding that thos activities were required by law?
>
> Mr. Williams: All of my involvement is after the [Township's] filing for a temporary restraining order, although, when I got to the meeting, I didn't know that that's what they had requested, but that would be logical.
>
> What we did through my efforts is not something that is required by law. The township had every piece of information that it needed to issue appropriate permits, but it hadn't done so.
>
> As I pointed out earlier, they didn't have a driveway ordinance when it was built, but we agreed to submit for a driveway permit, they had acceptable soil modules that they hadn't transmitted that should have been submitted, and the building permit could have been issued legally based on that information. They chose not to do that and they chose to take the avenue of enforcement action.
>
> And as we sit here today, I still have only the septic permit, I do not have a sewer permit, I do not have

8

a building permit and my client is still at risk in terms of the state action that's filed under this restraining order.

We are doing, within reason, or maybe even without a reason, but certainly we're doing everything that we can on his behalf to try to get those permits to be issued.

\*\*\*

Mr. Sherr: Now, in answering Ms. Montgomery's question, what do you base your answer on?

Mr. Williams: Well, her question was, were we legally required to do this? The answer to that is simple, no.

Q: What do you base that on?

A: Well, I guess I base it on 28 years of doing municipal work.

Q: Do you base it on anything else?

A: Well, I suppose we could sit here and have an esoteric discussion of what the municipal law requires, but the baseline is, the sewage ordinance was not passed until after the driveway was constructed.

The building officer advised me that he thought the building applications were all in order, and the sewer modules had adequate and acceptable soil sites to permit the residential development, and I'm using development now in the sense of construction, not development in the sense of a subdivision, were on the plan and had been approved, the soil testing had been done.

Legally, I saw no reason why those permits could not have been issued, but an enforcement action is undertaken, which poses a great threat of financial risk to my client and I have to try to help him out of that, and the way you do it, I think, from, once again, 28 years of

9

> experience of dealing with governmental bodies, with local government in particular, it isn't to sit at a meeting and say you're wrong, it's to say what do you want us to do, tell us what you want us to do, and if it's reasonable and if it's something we can do, we'll do it.

[Williams Dep. at 60:24-62:19, 64:13-65:18] In other words, at the time that the Township filed the enforcement action in state court, the supervisors, building permit officer and sewage enforcement officer *knew* that there was no legal basis for refusing to issue the permits, but continued to do so. Consequently, the Corneals, desperate to at least get a home built for themselves, hired local counsel to try to get the appropriate permits issued while this lawsuit proceeded as well.

In sum, among the protections offered by the U.S. Constitution is the freedom from arbitrary and irrational state land use decisions that unreasonably limit their right to use and enjoy their property. The Corneals' reactions, as landowners, to the Township's illegal conduct is a transparent attempt to shift the Court's focus away from the question presented, *to wit*, whether the actions of the defendants violated 42 U.S.C. § 1983.

### C. The Corneals have not Waived their Right to Challenge the Legitimacy of the Moratorium

The Defendants have presented the novel argument that the Corneals have effectively waived their right to challenge the Moratorium because they failed to pursue a claim in state court under the Second Class Township Code, 53 P.S. §§ 66601 et seq. The Corneals indeed had the option of filing a state court complaint

to challenge the legality of the Moratorium, but there is no "exclusive remedy" rule related thereto and, in any case, the Corneals have an absolute right to file a § 1983 claim and append a state law challenge. In any event, the Moratorium was lifted on July 10, 2000 – if this Court were to adopt plaintiffs' logic, the Corneals would be left without a remedy for the long-standing violations of their federal civil rights.

### D. Defendants Reliance on Naylor I is Misplaced

Defendants' reliance on the Commonwealth Court's decision in Naylor v. Township of Hellam, 717 A.2d 629 (Pa. Commw. 1998) (Naylor I) is misplaced. Although Naylor I had not been reversed by the Supreme Court when the Township implemented the Moratorium, Defendants cannot have relied on its as the current state of the law when they purportedly implemented the Moratorium because they never consulted with the Township Solicitor on the issue. Equally important, Naylor I does not stand at all for the notion that a municipality could impose a moratorium on new land development in the absence of an existing subdivision and land development ordinance.

In Naylor I, Hellam Township enacted an ordinance pursuant to the Second Class Township Code imposing a moratorium on new subdivisions for a period of one year while the township revised its subdivision and land development and zoning ordinances. The township zoning officer rejected subdivision plans

11

submitted by Naylor for failing to comply with the pending ordinances and because of the moratorium. Naylor I at 630-31. The question presented to the court was whether the MPC prohibited the implementation of moratoria. The Commonwealth Court noted that the MPC did not expressly authorize the imposition of moratoria, but neither did it prohibit moratoria. Consequently, the court (incorrectly) concluded that "implicit in or incidental to the broad powers expressly conferred upon municipalities is the authority to impose moratoria on development *while land use regulations are in the process of being revised.*" Id. at 633 (emphasis added). In the present case, unlike in Naylor I, the Moratorium was imposed in the absence of any land use regulations whatsoever – there were no land use regulations to revise.

The Moratorium enacted by Jackson Township was of indefinite duration and universal application. It was enacted specifically to prevent the Corneals from developing their property – it was the first of many roadblocks defendants erected to prevent the Corneals from developing their property. None of the factors identified by the trial court in Naylor I that would justify the imposition of moratoria are present in this case: Jackson Township was not experiencing rapid growth or "uncoordinated, unrestrained development and subdivision that may prohibit or impair the future growth of [the] community, change usage patters, outstrip available public resources, and create unforeseen problems." See Naylor I,

12

717 A.2d at 633 n.15. To the contrary, Jackson Township still has only 816 residents, and Defendant Van Dommelen testified very clearly that for the period of 1995-2000, there had been no acceleration in the rate of applications for building permits in the Township. See Van Dommelen Dep. at 168:13-18. The Township could not have concluded that it was permissible to impose a Moratorium of indefinite scope and duration, without a showing of need, without compliance with the Second Class Township Code, and without an existing subdivision and land development ordinance already in place.

> E. **Defendants' Claims of "Legitimate Purposes" for Their Actions is Completely Belied by the Deposition Testimony of the Defendants Themselves.**

Defendants dedicated a considerable portion of their Memorandum to the notion that "each of [their] actions was taken for a legitimate reason," and "[t]here is no evidence whatsoever of malicious intent." See Defs. Mem. at 11-15. Fortunately, all of the defendants gave depositions in this matter that fill in the holes left in their retelling of the tale in their Memorandum.

In those four pages of defendaants' memorandum, they failed to mention that they implemented the moratorium without any apparent need to restrain the rate of development in Jackson Township, and without following any of the procedures required under the Second Class Township Code. They failed to note that the Supervisors directed defendant Van Dommelen not to issue a building

13

permit to the Corneals under any circumstances, directed defendant Parks to "re-inspect" the septic sites on the Property and not to give the Corneals a privy permit or to assist them in any regard. They do not mention that Van Dommelen refused to give Mr. Corneal, "that trouble-making yuppie from over the mountain," even an application for a building permit because "he just didn't want him to have one."

The defendants neglected to mention that defendant Wirth deliberately failed to forward the Corneals' completed building permit applications to the building permit officer; or defendant Van Dommelen sent a letter to the Corneals denying their building permit applications at the instruction of the Supervisors and without ever having seen the actual applications. They left out the fact that Defendant Wirth refused to provide Mr. Corneal with a copy of the proposed subdivision ordinance, even when Mr. Corneal offered to pay for the copies.

The defendants overlooked the fact that defendant Wilson initiated a frivolous, private complaint with the Pennsylvania Department of Environmental Protection and the U.S. Army Corps of Engineers claiming that the Corneals were infringing upon protected wetlands on the Property, even though the Sewage Enforcement Officer had already been to the Property and approved it for on-lot septic. The defendants also understate the importance of the fact that the Property was part of the estate of defendant Wilson's late grandfather, and, coincidentally, immediately after the Hewetts terminated the contract to buy the farmhouse,

14

defendant Wilson's nephew approached Mr. Corneal to buy the farmhouse. Finally, the defendants declined to mention that the Township initiated litigation in Huntingdon County to enjoin construction on the Property despite that the building permit officer and the sewage enforcement officer both conceded to Attorney Williams that there was no legitimate basis for denying the permits.

The undisputed material facts thus demonstrate clearly that each of the defendants acted with actual bias toward the Corneals, and that they were plainly aware that their actions, individually and collectively, were unlawful and operated to deprive the Corneals of their constitutionally protected right to use ad enjoy their property.

## III. CONCLUSION

For the foregoing reasons, plaintiffs David B. Corneal and Sandra Y. Corneal request this Court to enter an Order granting their motion for summary judgment against all defendants and denying defendants' motion for summary judgment.

                                  Respectfully submitted,

                                  ECKERT SEAMANS CHERIN & MELLOTT, LLC

                                  Bridget E. Montgomery, Esquire
                                  Supreme Ct. I.D. #56105
                                  Adam M. Shienvold, Esquire

Supreme Ct. I.D. #81941
One South Market Square Building
213 Market Street
Harrisburg, PA 17101
(717) 237-6000

Date: July 29, 2002         Attorneys for Plaintiffs,
                            David B. and Sandra Y. Corneal

## CERTIFICATE OF SERVICE

I, Adam M. Shienvold, Esquire, hereby certify that I am this day serving a copy of the foregoing document via First Class U.S. Mail, which service satisfies the requirements of the Federal Rules of Civil Procedure and Middle District Local Rules of Court, addressed as follows:

> Anthony R. Sherr, Esquire
> Mayers, Mennies & Sherr, LLP
> 3031 Walton Road, Building A
> Suite 330, P.O. Box 1547
> Blue Bell, PA  19422-0440

_Adam M. Shienvold, Esquire_

Date: July 29, 2002

Attorney for Plaintiffs,
David B. and Sandra Y. Corneal