(84)
12/23/02
mpq

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DAVID B. CORNEAL and SANDRA Y.** :
**CORNEAL,**
            **Plaintiffs,**

v.

**JACKSON TOWNSHIP, Huntingdon**
**County, Pennsylvania,** *et al.*

            **Defendants.**

**CIVIL NO. 1:CV-00-1192**



FILED

DEC 23 2002

PER_____
HARRISBURG, PA   DEPUTY CL

## MEMORANDUM

Before the court are cross-motions for summary judgment in the instant

action.  The parties have briefed the issues, and the matters are now ripe for

disposition.

I.        **Background**

    A.     **Facts**

    Plaintiffs, David and Sandra Corneal ("the Corneals"), filed this case

alleging the following: (1) violations of their rights pursuant to the Fifth and

Fourteenth Amendments to the United States Constitution (Count I); (2) that

Defendants engaged in a civil conspiracy in violation of Pennsylvania common law

(Count II); that Defendants intentionally interfered with the Corneals' contractual

relations (Count III); and (4) that Defendants' actions violated the Pennsylvania

Constitution (Count IV).  Defendants in this action include the following: (1)

Jackson Township, Pennsylvania; (2) W. Thomas Wilson; (3) Michael Yoder; (4)

Ralph Wiler; (5) Ann L. Wirth, Jackson Township Secretary; (6) David Van

Dommelen, a building permit officer for Jackson Township; and (7) Barry Parks,

Sewage Enforcement Officer for Jackson Township.  Defendants Wilson, Yoder,

and Wiler are members of the Jackson Township Board of Supervisors ("the Board").[1]  The court has subject matter jurisdiction over this action based on 28 U.S.C. §§ 1331 and 1367.  The following facts are undisputed unless otherwise noted.

In 1998, the Corneals, who reside in State College, Pennsylvania, acquired a ninety-five acre tract of land located in Jackson Township, Huntingdon County, Pennsylvania.  The property had previously been part of the estate of Defendant Wilson's grandfather.  The Corneals planned to subdivide and sell a portion of the tract.  The Corneals believed that Jackson Township ("the Township") had to approve their subdivision plan.  In order to assist them in obtaining approval from the Township, the Corneals had the tract surveyed and prepared a subdivision plan.  The Corneals also hired Defendant Parks, the Township's Sewage Enforcement Officer, to test the tract for its suitability for an on-site septic system.  Defendant Parks located suitable sites on the tract.  After identifying the suitable septic sites, the Corneals hired Defendant Wilson's private firm, Eagle Construction, to conduct percolation tests.  The tests were successful, and the Corneals paid Eagle Construction for its services.  At the time Defendant Wilson's firm performed the percolation tests, the Township was not considering enacting a moratorium on land use subdivision.

_____

[1]By an order dated March 29, 2001, the court dismissed Defendant Larry Newton, Jackson Township Solicitor, from this action.  By order dated October 18, 2001, the court granted Plaintiffs' motion for leave to amend the complaint.  However, the court made clear that "there should be no confusion as to Defendant Newton. . . . [T]he only matter pending before the court is whether Plaintiffs should be granted leave to amend their complaint so as to separately plead its state law cause of action against the remaining Defendants."  Thus, "Newton is no longer a party to this suit."  In fact, Newton was not served with the amended complaint.  Yet, Plaintiffs continue, in error, to list Newton as a Defendant in their amended complaint.

During August and September of 1999, the Corneals decided to subdivide the tract into three separate lots. They prepared a subdivision plan and marketed one of the lots, a twenty-five acre tract, on which sat a house and a barn. On October 7, 1999, the Corneals entered into a contract to sell the tract for $150,000 to John Hewett, Jr. and Joann Smith ("the Buyers"). In accordance with the contract's terms, the Buyers submitted a down payment of $4,000 and agreed to pay $500 per month against the purchase price until settlement; which was scheduled for June 30, 2000.

During this period, Jackson Township did not have a subdivision ordinance to govern the development of land within the township.[2] However, at a Board meeting in January 2000, the Board, by unanimous vote, decreed a temporary moratorium on new development, subdividing, and conveyance pending the enactment of a formal ordinance governing subdivision and land development. The moratorium was not enacted pursuant to a resolution or any other formal action. It merely appeared in the meeting's minutes. Besides its appearance in the meeting minutes, no other documents exist relating to the moratorium.[3]

---

[2] Huntingdon County has a Land Development Guide ("the Guide"). However, the Guide is not an ordinance pursuant to the provisions of the Municipalities Planning Code ("MPC"). *See* 53 Pa. Cons. Stat. § 10101, *et seq.*

[3] Although Defendants deny that the moratorium was enacted without formal action, they proffer no support for their denial. (*See* Defs. Resp. to Pls. Stat. Mat. Facts at ¶ 45.) Moreover, the only statement on the record regarding this issue was made by Defendant Wirth. (*See* Wirth Depo. at 83, ¶¶ 19-21 ("Q: Was there some sort of a resolution or something indicating that the moratorium was being placed? A: No, it's only in the minutes.").) Finally, Defendants admit that, with the exception of the meeting minutes, no other document exists relating to the moratorium. (Defs. Resp. Pls. State. Mat. Facts at ¶ 51.) The court, therefore, finds that although there is a dispute of fact about this issue, that dispute is not genuine. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986) (holding that a factual dispute is "genuine" only if there is a sufficient evidentiary basis which

(continued...)

The Corneals presented their original subdivision plan to the Board at the Township meeting in February of 2000. The plan indicated that the original ninety-five acre tract would be subdivided into three lots. On the largest of those lots, the Corneals planned to build their own home. The Corneals contend that they presented the plan to the Board because Defendant Wilson told Mr. Corneal that the subdivision plan required Board approval. (*See* Pls. Stat. Mat. Facts at ¶ 39.) Defendants deny this allegation. They contend that the Corneals' own agent, Mr. Simpson, told the Corneals that they were required to submit the subdivision plan to the Board. (*See* Defs. Resp. to Pls. Stat. Mat. Facts at ¶ 39.)

Because of the newly imposed moratorium, Defendants Wilson, Yoder, and Wiler refused to review the Corneals' subdivision plan. Within several days of the Township's refusal to review the plan, the Corneals submitted the plan to the County Planning Commission ("CPC"). The CPC reviewed the plan and, by way of a letter dated February 24, 2000, provided comments and recommendations. The CPC recommended that the Township deny approval of the plan in light of the Township's pending ordinance and moratorium against land development.

The Corneals revised the plan in hopes of receiving approval. They developed a new plan that reflected not three lots, but only two. One of these lots would be sold to the Buyers under the terms of their already existing contract with the Corneals. The other lot would contain the residual amount of land, approximately sixty-nine acres, on which the Corneals would build a house, an art studio, and a garage. The Corneals submitted the revised plan to the CPC. On April

---

[3] (...continued)
would allow a reasonable fact-finder to return a verdict for the non-moving party).

4

20, 2000, the CPC recommended conditional approval by the Township, pending adoption of the proposed land development ordinance. The CPC found that the revised plan appeared to conform to the proposed ordinance. Defendants Wilson, Yoder, and Weiler, however, refused to review the revised plan, citing the existence of the moratorium enacted a few months earlier.

Defendants, at various times throughout the Corneals' planning process, also refused to issue or approve other permits and applications. At a meeting in March of 2000, Defendants Wilson, Yoder and Weiler denied approval to sewage modules that Defendant Parks had approved. The Board of Supervisors cited the existing moratorium in support of its decision. Additionally, the Board denied the Corneals' request for a building permit to begin construction on the art studio. The Board indicated that it could not grant such a request because the sewer modules had not been approved. The Corneals then requested a privy permit, but the Board members instructed them that only Defendant Parks could issue such permits. Defendant Wirth then called Defendant Parks and instructed him not to issue any permits to the Corneals. That same evening, the Corneals contacted Defendant Parks to obtain the permit, and Defendant Parks told them that Defendant Wilson had barred him from issuing the permit. The Corneals then called Larry Newton, an attorney and Township Solicitor, to discuss the situation, but the Corneals did not receive a substantive response.

Wanting to begin developing the land, the Corneals constructed a one and a half (1.5) mile driveway through the tract. While constructing the driveway, the United States Army Corps of Engineers and the Commonwealth of Pennsylvania Department of Environmental Protection approached the chosen contractor to

5

investigate a complaint that the Corneals were violating wetlands regulations. The complaint was found to be without merit. Plaintiffs contend that Defendants Wilson and/or Defendant Wirth filed the complaint. (Pls. Br. in Sup. Mot. for Sum. J. at 5.)

Next, the Corneals planned to build a garage. They contacted Defendant Van Dommelen, the Township's Building Permit Officer, to obtain an application for a building permit. Defendant Van Dommelen, however, refused to issue the permit because the Board had instructed him not to issue any permits to the Corneals. Defendant Van Dommelen even called Defendant Wilson, in Mr. Corneal's presence. During that conversation, Defendant Wilson told Defendant Van Dommelen: "don't you dare issue [David Corneal] a permit." (Wilson Depo. at 128, ¶¶ 4-15.) Defendant Van Dommelen, however, had granted every other building permit application submitted to him in 2000. (Van Dommelen Depo. at 103, ¶¶ 3-13.) Moreover, Defendant Wilson does not know of any other building permit that the Township has ever denied. (Wilson Depo. at 186, ¶¶ 8-14.) Although Defendant Van Dommelen never refused to provide any other person in the Township with a permit, he refused to even provide the Corneals with a permit *application*. (*See* Van Dommelen Depo. at 56, ¶¶ 2-25.) During his conversations, Defendant Van Dommelen referred to Mr. Corneal as a "trouble making yuppie from over the mountain." (*Id.* at 71, ¶¶ 18-24.) He used this term to describe Mr. Corneal because Mr. Corneal "just behaves like someone who wants to get their own way and his age group." (*Id.* at 73, ¶¶ 1-2.)

On May 1, 2000, the Corneals received a letter from the Buyers' attorney. The letter informed the Corneals that the Buyers had terminated the agreement to purchase the tract due to difficulties with the Township in obtaining

subdivision approval.  The Buyers also requested that their down payment of $4,000 be refunded along with the $3,000 in payments ($500 per month) paid to the Corneals in expectation of the settlement date of June 30, 2002.[4]

The Corneals allege that after the Buyers pulled out of their contract to purchase the subdivided portion of the Corneals' land, Defendant Wilson's nephew approached Mr. Corneal about the possibility of purchasing the tract. (Pls. State. Mat. Facts at ¶ 171.)  Defendant Wilson, however, contends that his nephew approached Mr. Corneal before he entered into a contract with the Buyers. (Defs. Resp. to Pls. Stat. Mat. Facts at ¶ 171.)  In any event, the Corneals began construction without a permit from the Township in July 2000.  In October 2000, the Township brought suit against the Corneals to enjoin the construction.  The parties, however, settled that matter.[5]

### B.    **Procedural History**

On June 30, 2000, the Corneals filed the instant suit.  In Count I, the Corneals claim that Defendants, acting under color of state law, deprived them of their clearly established right and privilege to own, use, dispose, and develop their property as protected by the United States Constitution.  In Counts II through IV, the Corneals made claims for civil conspiracy, intentional interference with contractual relations, and violations of the Pennsylvania Constitution.  On March 29, 2001, the court granted the Township's motion to dismiss Count III of the original complaint,

---

[4] The Corneals allege that Defendants intentionally informed the buyers about the situation.  Amend. Compl. at ¶¶ 129 - 31.  Newton and the Buyers' attorney work in the same office and share the same secretary.

[5] The Corneals concede that since the filing of this lawsuit on June 30, 2000, the Township has granted them all required permits necessary to begin development of the tract, including building permits, sewage permits, and a driveway permit.

7

regarding the claim of intentional interference with contractual relations.  However, the court refused to dismiss Count III as to the individual Defendants.  Additionally, the court granted Newton's motion to dismiss him as a defendant in the case.  The Corneals filed a motion for reconsideration on April 12, 2001, and an amended motion for reconsideration on July 27, 2001.  On September 12, 2001, the court denied the motion for reconsideration.  On October 18, 2001, however, the court granted Plaintiffs' leave to file an amended complaint.  Plaintiffs filed an amended complaint on November 6, 2001.  After the conclusion of discovery, the parties filed the cross-motions for summary judgment which are currently before the court.

## II.        **Legal Standard: Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 249.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not

simply sit back and rest on the allegations in the complaint; instead, they must "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Id.*

The standards governing the court's consideration of Federal Rule 56(c) cross-motions are the same as those governing motions for summary judgment, although the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the non-movant. *Raymond Proffitt Found. v. United States Envtl. Prot. Agency*, 930 F. Supp. 1088, 1096 (E.D. Pa. 1996).

III.     **Discussion**

A.     **The Corneals' claim under 42 U.S.C. § 1983**

In Count I of the amended complaint, the Corneals allege that they are entitled to recover from Defendants based on 42 U.S.C. § 1983. Section 1983 is a remedial provision that imposes liability on any person who "under color of any statute, ordinance, regulation, custom, or usage of any State" deprives another of "any rights, privileges or immunities secured by the Constitution or laws. . . ." 42 U.S.C. § 1983. Section 1983 does not grant any substantive rights, but instead

offers redress for the deprivation of already existing Constitutional or statutory rights. *Maine v. Thiboutot*, 448 U.S. 1, 5-6 (1980).

In this case, the Corneals allege that Defendants, by intentionally and arbitrarily preventing the Corneals from developing their land, violated the Corneals' procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution. Both parties move for summary judgment, arguing that the undisputed facts in the case entitle them to judgment as a matter of law. Because the court finds that there is a genuine dispute of material fact regarding Defendants' motivations, the court will deny both motions.

### 1.      **Procedural Due Process**

The Corneals contend that Defendants' actions violated their due process rights. There are two types of due process claims under the Fourteenth Amendment: procedural and substantive. The Supreme Court has developed a two-part test for examining procedural due process claims: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted); *see also Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991) ("To establish a cause of action for a violation of procedural due process, a plaintiff . . . must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process.").

Thus, procedural due process claims, to be valid, must allege state sponsored deprivation of a protected interest in life, liberty, or property. *See*

*Zinerman v. Burch*, 494 U.S. 113, 125 (1990). If such an interest has been, or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and reasonable opportunity to be heard. *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d at 680 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

In the context of land use decisions, the Third Circuit has stated that a state provides adequate procedural due process when it "affords a full judicial mechanism with which to challenge the administrative decision in question." *DeBlasio v. Zoning Bd. of Adjustment for the Township of West Amwell*, 53 F.3d 592, 597 (3d Cir. 1995) (quotations omitted) (affirming dismissal of procedural due process claim arising out of zoning decision). Therefore, even if a municipal board makes a wrong decision that affects a plaintiff's protected property interest, no procedural due process claim lies unless no adequate judicial mechanism exists for challenging the decision. *See Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988).

In this case, the Corneals' claim arises out of the Board's refusal to issue them building and sewage permits and the Board's adoption of a moratorium on subdivision pending the enactment of a zoning ordinance. However, the court finds that Pennsylvania provides a judicial mechanism to challenge these decisions. *See Bello*, 840 F.2d at 1128 ("Pennsylvania affords a full judicial mechanism with which to challenge the administrative decision to deny an application for a building permit."). Therefore, even if the decisions were not in accordance with Pennsylvania law, as the Corneals argue, they cannot constitute the basis of a procedural due process violation. As to the refusal to issue the requested permits, the Corneals could have appealed the Board's adverse decisions by filing an action

in the Court of Common Pleas for Huntington County, Pennsylvania. *See* 53 Pa. Cons. Stat. § 11002-A (granting jurisdiction to court of common pleas over all appeals from all land use decisions). Likewise, the Corneals could have appealed the Board's decision to enact the moratorium by filing an action in the same court.[6] *See* 53 Pa. Cons. Stat. § 66601(f) ("Any person aggrieved by the adoption of any ordinance may make complaint as to the legality of the ordinance to the court of common pleas."). Because Pennsylvania afforded the Corneals a full judicial mechanism to challenge the Board's allegedly illegal actions, the Corneals procedural due process claim fails as a matter of law.

### 2.    Substantive Due Process

To recover under a claim for violation of substantive due process, the plaintiff must allege that the government deliberately and arbitrarily abused its power. In addressing such a claim, "[A]llegations that the government's actions in a particular case were motivated by bias, bad faith, or improper motive, such as partisan political reasons or personal reasons unrelated to the merits of the plaintiffs' application, may support a finding of substantive due process violation." *Midnight Sessions,* 945 F.2d at 683.

Thus, to maintain their claim for violation of their substantive due process rights, the Corneals must first show that the Township acted to infringe a property interest worthy of protection under substantive due process. *DeBlasio,* 53

---

[6]The Corneals argue that the Township lacked the authority to enact the moratorium and that their actions in doing so "effectively deprived the Corneals of the use and enjoyment of their property." (Pls. Br. in Sup. Mot. for Sum. J. at 15.) The court construes this as an argument that the allegedly *ultra vires* action of enacting a moratorium constituted a violation of the Corneals' right to procedural due process. As stated above, however, that claim is legally insufficient because Pennsylvania provided the Corneals an judicial mechanism for appealing the moratorium. *See* 53 Pa. Cons. Stat. Ann. § 66601.

F.3d at 598 (citing *Ersek v. Township of Springfield*, 822 F. Supp. 218, 220 (E.D. Pa. 1993 1994)). The Third Circuit, in *DeBlasio*, concluded that mere ownership of property subject to a local land use regulation is a property interest entitled to substantive due process protection. 53 F.3d at 600. Thus, where, as here, a "governmental decision . . . impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended use of the land was arbitrarily or irrationally reached." *Id.* at 601.

In *DeBlasio*, the court addressed virtually the same issue as is currently before the court. In that case, a property owner owned an industrial hut situated in West Amwell Township, New Jersey on which he operated an auto body repair shop. *Id.* at 594. In the mid 1960s, West Amwell enacted a zoning ordinance which declared the hut's area as a minimum residential use district. Because the hut's use as an auto body shop predated the enactment of the zoning ordinance, the hut received an exemption from the new zoning ordinance. In 1979, DeBlasio purchased the land on which the hut was located. *Id.* He then leased the property to Interstate Battery Systems. That entity operated a small battery distribution business out of the hut. The business continued for about ten years without interference from West Amwell officials. In 1989, however, the Township's zoning official, acting on a citizen complaint, found that the operation of the battery business constituted an expansion of the pre-existing nonconforming use. *Id.* at 595. Eventually, DeBlasio appealed that decision  to West Amwell's Zoning Board of Adjustment ("ZBA"). Alternatively, he requested a variance if the ZBA determined

13

that the property was not in compliance. The ZBA upheld the zoning official's finding and subsequently denied DeBlasio's request for a variance. *Id.* at 596.

DeBlasio then filed a § 1983 action, alleging, amongst other claims, that the ZBA's actions constituted a violation of his right to substantive due process. On appeal, the Third Circuit reversed the District Court's granting of West Amwell's motion for summary judgment as to DeBlasio's substantive due process claim. The Circuit Court found that a material issue of fact existed as to whether the ZBA, although ostensibly acting within their authority, acted on the basis of an improper motive. In making this finding, the Third Circuit highlighted the existence of evidence indicating that the ZBA's secretary, Werner Hoff, may have acted to benefit himself or members of his immediate family. *Id.* at 601-02. Specifically, the court noted that there was evidence indicating that Hoff approached Interstate's manager a few months before the zoning officer began his investigation into the use of the hut. During that conversation, Hoff told Interstate's manager that he should purchase or rent property that Hoff owned because DeBlasio's property was not in conformance with West Amwell's zoning ordinance. During the first set of hearings before the ZBA, Hoff recused himself. However, during the proceedings in which the ZBA ultimately upheld the zoning officer's determination and denied DeBlasio's request for a variance, Hoff participated despite his earlier refusal to do so. Moreover, the zoning officer testified that Hoff implored him to issue more violations to DeBlasio. *Id.* at 595 n. 2. Based on this evidence, the Third Circuit determined that a material issue of fact existed as to whether Hoff, for personal reasons, improperly interfered with the process by which the ZBA issued zoning

decisions. Thus, the District Court's granting of summary judgment in favor of the defendants constituted reversible error.

Based on this holding, the court finds that the Corneals have stated a valid substantive due process claim. They are property owners who allege that Defendants impinged on their right to develop their property through regulations whose motivation was personal, not governmental. Therefore, resolution of the current motion turns on whether the Corneals have adduced sufficient evidence to create a material question of fact as to whether the Township and its employees deliberately and arbitrarily abused their power. That is, whether their "actions . . . were motivated by bias, bad faith, or improper motive, such as partisan political reasons or personal reasons." *See Midnight Sessions*, 945 F.2d at 683.

It is undisputed that Defendant Van Dommelen referred to Mr. Corneal as a "trouble making yuppie" and that Van Dommelen had never before denied an application for a  permit until he denied Mr. Corneals' application. (Van Dommelen Depo. at 71, ¶¶ 18-24.) Further, Defendant Wilson told Van Dommelen "don't you dare issue [David Corneal] a permit." (Wilson Depo. at 128, ¶¶ 4-15.) In addition, Plaintiffs argue that Defendant Wilson filed a frivolous complaint with the Department of Environmental Protection and the U.S. Army Corps of Engineers, claiming wetlands violations on the Corneals' property. Based on this evidence, it appears that there is a material issue of fact as to whether Defendants blocked the Corneals' land development plans as a matter of land use policy or because they simply did not like Mr. Corneal and wanted to keep such a "trouble making yuppie" from erecting a home in the Township or from subdividing his property. Put simply, even if Defendants were authorized to enact a land development moratorium, they

15

could not do so because they disliked Mr. Corneal or wished to spite him in some manner. *See Midnight Sessions, Ltd.*, 945 at 683.

At the very least, Defendants' motives are unclear, and cannot be determined as a matter of law. Determinations as to a party's motivations, like those necessary to resolve the instant matter, are within the province of the jury, not the court. *See id.* (citing *Bello*, 804 F.2d at 1130). The court, therefore, will deny both parties' motions for summary judgment.

### 3.    Qualified Immunity

Defendants argue that, regardless of whether there is a material issue of fact regarding the Corneals' due process claim, the court should still grant summary judgment in favor of Defendants because they are entitled to qualified immunity for their actions. "Qualified immunity is an 'entitlement not to stand trial or face the other burdens of litigation.' " *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The longstanding rule on qualified immunity is that "officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In order to determine whether a right is clearly established, the court must first determine whether the alleged right is constitutionally recognized at all. *Saucier*, 533 U.S. at 201; *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Brown v. Grabowski*, 922 F.2d 1097, 1110 (3d Cir. 1990). If the facts do not allege such a violation, no further inquiries are necessary. *Saucier* at 201. If, on the other hand, the court finds that the plaintiff has alleged violation of a recognized right, then the

16

court must determine whether it would be clear to a reasonable person that his conduct was unlawful in the situation he confronted. *Harlow*, 474 U.S. at 818*; see also Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."). Further, when determining whether a right was clearly established, a court must look at the law at the time of the event. *See Harlow,* 457 U.S. at 818.

The Third Circuit has determined that in order for a right to be clearly established, there need not be a similar case directly on point. Rather, the test is whether "some but not precise factual correspondence to precedent" was available to the government official such that she may be charged with knowledge of the illegality of her actions. *Good v. Dauphin County Social Services*, 891 F.2d. 1087, 1092 (3d Cir. 1989) (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989)); *see also People of Three Mile Island v. Nuclear Regulatory Comm'rs,* 747 F.2d 139, 144 (3d. Cir 1984).

In this case, the court finds that Defendants are not entitled to qualified immunity based on the law in effect at the time of the actions in question. The Third Circuit issued the *DeBlasio* decision in 1995; four years before any of the events in the instant matter took place. That case made it clear that land use decisions impinging upon a landowner's development of his property violate the landowner's substantive due process rights where such decisions are arbitrarily or irrationally reached. 53 F.3d at 601. That case also made clear that a cause of action lies in such a case, even where the land use decision was not prohibited by law. *Id.* Thus, the court finds that, although not a factual carbon copy of the Corneals' situation,

17

the *DeBlasio* decision is sufficiently analogous for the court to find that its holding evidenced that the Corneals had a clearly established right. Qualified immunity, therefore, is unavailable to Defendants in this case.

Defendants, however, hang their entire argument for qualified immunity on the fact that they believed that the Township was permitted to enact a temporary moratorium.[7] Thus, according to Defendants, their decisions to not issue permits to the Corneals flowed directly from a permissible action. *DeBlasio*, however, made it perfectly clear that even where a municipality is ostensibly acting within its rightful authority, a substantive due process violation is established if the plaintiff demonstrates that "the decision limiting the intended land use was arbitrarily or irrationally reached." *Id.* Accordingly, the mere fact that Defendants may have been authorized to issue temporary land moratoria at all times relevant to this litigation, does not entitle them to qualified immunity where there is a material issue of fact as to their motivation for taking such action.

### 4.    <u>Legislative Immunity</u>

Defendants Wilson, Yoder, and Wiler also claim that they are entitled to legislative immunity, as the Township's Board members, insofar as the Corneals' claim arises out of the enactment of land development moratorium. The proponent of a claim to absolute immunity to a § 1983 action bears the burden of establishing the justification for such immunity. *Antoine v. Byers & Anderson*, 508 U.S. 429,

---

[7]In support of this proposition, Defendants cite *Naylor v. Township of Hellam*, 717 A.2d 629 (Pa. Commw. Ct. 1998). In that case, the Commonwealth Court held that municipalities may enact temporary moratoriums on land development to halt development while the municipality amends its land use ordinance. *Id.* at 633. The Supreme Court of Pennsylvania, however, overruled that decision in *Naylor v. Township of Hellam*, 773 A.2d 770, 776-77 (Pa. 2001) ("However much a rapidly expanding municipality may wish to declare 'time out' and stop all development, such effect, by whatever means achieved, would be constitutionally impermissible.").

432 (1993).  The Third Circuit has held that members of local legislative bodies are entitled to legislative immunity for actions taken in a purely legislative capacity. *Ryan v. Burlington County, New Jersey*, 889 F.2d 1286, 1290 (3d Cir. 1989); *Aitchison v. Raffiaini*, 708 F.2d 96, 98-99 (3d Cir. 1983).  Courts apply a two-prong test to determine whether a government official's actions are to be regarded as legislative for immunity purposes.  First, the action must be "substantively legislative" in that it requires a policy-making or line-drawing decision.  Second, the decision must be "procedurally legislative" in that it must be undertaken through an established legislative process.  *Ryan*, 889 F.2d at 1290-91.

In this case, it cannot reasonably be disputed that the enactment of the land development moratorium was substantively legislative.  The enactment reflects an important policy decision that halting development until the enactment of a subdivision plan was necessary pending adoption of the proposed subdivision ordinance. The minutes of the meeting reflect that although Huntington County was offering to draft boiler plate subdivision ordinances, "Jackson Township had already put a lot time into the proposed [subdivision] ordinance and it was felt that it was in the best of interest of the Township to proceed with the ordinance that the Supervisor's have decided on."  (Defs. Mot. for Sum. J., Ex. 7.)

Although the court has no problem concluding that this action was substantively legislative, it is not persuaded that the moratorium was enacted according to an established legislative procedure.  The moratorium is simply reflected in the meeting minutes.  Pennsylvania law establishes a strict series of requirements for the enactment of an ordinance by the supervisory boards of second class townships, like Jackson Township. *See* 53 Pa. Cons. Stat. § 66601(a).

19

Amongst the requirements for a valid ordinance, the township must first publish any proposed ordinance in a local newspaper at least once and at least seven days before enacting the ordinance. *Id.* These publication requirements are mandatory, rendering void all ordinances adopted in violation of these requirements. *See Lower Gwynedd Township v. Gwynedd Props., Inc.*, 591 A.2d 285, 287 (Pa. 1991). Moreover, all ordinances must be recorded in the township's ordinance book. *See* 53 Pa. Cons. Stat. § 66601(a). Like the publication requirements, the recording of the ordinance is mandatory and failure to do so renders an otherwise valid ordinance void *ab initio*. *See Cranberry Park Assocs. ex rel Viola v. Cranberry Township*, 751 A.2d 165, 167 (Pa. 2000). It is undisputed that the Board did not publish the proposed moratorium before enacting it, nor did they record the ordinance in the ordinance book. Thus, the moratorium was not validly enacted.

Based on these facts, the court finds that legislative immunity is unavailable to the Board members in this case. Legislative immunity is designed to provide legislators with immunity "from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence, but for the public good." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). Thus, the court finds it would be incongruent to deem a procedurally defective legislative act as one undertaken through established legislative procedures. Accordingly, the court finds that the Board member Defendants are not entitled to legislative immunity for the enactment of the subdivision moratorium at issue in this case.

It is true that in *Acierno v. Cloutier*, 40 F.3d 597, 614 (3d Cir. 1994), the Third Circuit held that whether an act is procedurally legislative for purposes of legislative immunity does not turn solely on whether the legislators complied with

the technical requirements for enacting legislation.  Rather, courts are to focus their inquiry on whether there has been a "general adherence to legislative procedure." *Id.*  In that case, the Third Circuit held that failure to properly title a notice of a proposed rezoning ordinance did not render the rezoning ordinance procedurally defective for purposes of legislative immunity.  *Id.* at 615.

*Acierno*, however, is distinguishable from the instant matter.  Crucial to its decision, the court stated, was the fact that there was "no indication in the record that members of the County Council bypassed state-mandated procedures in bad faith when enacting [the rezoning ordinance.]"  *Id.*  In the instant matter, on the other hand, there is a material issue of fact as to the motives behind the Board's actions.  *See supra* at Part III.A.2.  Additionally, there is substantial evidence indicating that the Board members, especially Defendant Wilson, interfered with the Corneals ability to obtain sewage and building permits and that they attempted to impede the Corneals' development plans by filing a complaint with the Army Corps of Engineers and the Commonwealth's Department of Environmental Protection. *Id.*  Moreover, the Third Circuit, in *Acierno* cited, as evidence of a lack of bad faith, the fact that the County Council "followed the ordinance procedure, published notice of its intended action, and held appropriate public hearings before enacting the rezoning ordinance." 40 F.3d at 615.  In the instant matter, however, Defendants complied with none of these requirements, even though failure to do so would render their actions null and void pursuant to Pennsylvania law.[8]

_____

[8]Although the Board published the fact that it was going to have a meeting in January of 2000, none of its members could remember if that publication listed, as required, that the Board would be considering enacting a moratorium on all land development in Jackson Township.

Therefore, the court finds that the moratorium was not enacted pursuant to an established legislative procedure. Because the Board's actions were not procedurally legislative, its members are not entitled to legislative immunity in this case.

### B. State Law Claims

### 1. State Law Civil Conspiracy

In Count II, the Corneals claim that Defendants' actions constituted a civil conspiracy. Under Pennsylvania law, in order to recover for civil conspiracy, three elements must be proven: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000).

The Corneals move for summary judgment arguing that the undisputed facts indicate that they are entitled to judgment as a matter of law. As with its finding regarding their substantive due process claim, the court finds that there is a material issue of fact as to Defendants' motives. *See supra* at Part III.A.2. Resolution of this issue is imperative. If Defendants' motivation was not improper, then the Corneals cannot establish the first element of a civil conspiracy. Accordingly, the court will deny the Corneals' motion for summary judgment as to Count II.

Defendants, on the other hand, argue that they are entitled to summary judgment because there is no evidence indicating that they committed an unlawful act. However, there is a material issue of fact regarding whether Defendants

violated the Corneals' substantive due process claims. *See id.* The court, therefore, cannot say that Defendants did not act unlawfully.

However, as far as the Corneals assert a cause of action against the Township for civil conspiracy, it is clear that such a claim is barred by the Pennsylvania Subdivision Torts Claim Act ("the PSTCA"). *See* 42 Pa. Cons. Stat. § 8541, *et seq.* The PSTCA provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." *Id.* "Th[e] immunity [also] extends to an employee of the [Township] who is liable for civil damages caused by acts which are within the scope of his office or duties." *Renk v. City of Pittsburgh*, 641 A.2d 289, 292 (Pa. 1994). However, the PSTCA limits the immunity of employees by providing that, in a situation where an "employee['s] . . . act . . . caused the injury and . . . such act constituted a crime, actual fraud, actual malice, or willful misconduct," immunity shall not apply. 42 Pa. Cons. Stat. § 8550; *see also Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 600 (3d Cir. 1998); *Renk*, 641 A.2d at 292; *Robbins v. Cumberland County Children & Youth Servs.*, 802 A.2d 1239, 1252 (Pa. Commw. Ct. 2002). This willful misconduct exception eliminates a municipal employee's immunity, but not the municipality's immunity. *City of Philadelphia v. Glim*, 613 A.2d 613, 617 (Pa. Commw. Ct. 1992).

Because civil conspiracy is, by definition, an intentional tort, the Corneals' claim against the municipality is barred, while the claim against the individual Defendants is not. *See Renk*, 641 A.2d at 293 ("In other words, the term 'willful misconduct' is synonymous with the term 'intentional tort.' ").

23

Accordingly, the court will deny the Corneals' motion for summary judgment as to Count II of the amended complaint. The court, however, will grant, in part, Defendants' motion for summary judgment as to Count II. Specifically, the court will grant the motion as to Defendant Jackson Township. The court, however, will deny the motion as to the other Defendants.[9]

### 2.     Intentional Interference with Contractual Relations

In Count III, the Corneals claim that Defendants intentionally interfered with the Corneals' contractual relationship with the Buyers. In order to recover for this claim, the Corneals must prove the following: (1) the existence of a contractual relationship; (2) an intent on the part of Defendants to harm the Corneals by interfering with their contractual relationship; (3) the absence of a privilege or justification for such interference; and (4) damages resulting from Defendants' conduct. *See Triffin v. Janssen*, 626 A.2d 571, 574 (Pa. Super. Ct. 1993).

The Corneals argue that the loss of the Buyers' promise to buy resulted in damages in the amount of the contract. Defendants, on the other hand, argue that this claim is barred by the PSTCA. *See* 42 Pa. Cons. Stat. §8541, *et. seq*. Pursuant to its order of March 29, 2001, the court has already determined that the claims against the Township are barred by the PSTCA. For the reasons previously stated, the claim against the individual Defendants, however, is not barred. *See, supra,* Part III.B.1 (holding that the individual Defendants are not immune to suits based on their willful misconduct).

---

[9]Although Defendant Jackson Township has not raised the PSTCA as a defense to Count II, as a matter of judicial economy, the court will not entertain claims at trial that are deficient as a matter of law.

Like civil conspiracy, intentional interference with contractual relations is, by definition, an intentional tort. As such, the Corneals' claim against the municipality is barred, while the claim against the individual Defendants is not. *See Renk*, 641 A.2d at 293. Thus, only the Township may assert tort immunity in a claim of intentional interference of contractual relations, and the employees – as individual defendants without immunity for willful misconduct – will be found liable if the four-part test in *Triffin* is met.

Defendants alternatively argue that the Corneals' interference claim against the individual Defendants must fail because the Corneals have not adduced sufficient evidence to prove that the individual Defendants intended to harm the Corneals by interfering with their contractual relationship with the Buyers. In this case, the Corneals contend that Newton, acting alone or in concert with the other Defendants, informed the Buyers that the subdivision plan would not be approved and that no permits for the development of the tract would be granted. Even if the Corneals could show that this in fact occurred, Newton is no longer a party to this action. Thus, in order to recover, the Corneals would have to demonstrate some sort of nexus between Newton's actions and Defendants. It is clear that the Corneals have failed to adduce any such evidence. The Corneals cite the fact that Newton and the Buyer's attorney shared an office and a common secretary. Even if Newton did tell the Buyer's attorney to extinguish their contract with the Corneals, there is no evidence indicating that he did so at the behest of Defendants. In short, nothing in the record connects Newton's actions, whatever they may have been, to any of the individual Defendants.

In summation, the Township is entitled to immunity on Count II pursuant to the PSTCA. Additionally, there is insufficient evidence connecting any of the individual Defendants to Newton's allegedly tortious interference. Accordingly, the court will grant Defendants' motion for summary judgment on Count II. Consequently, the court will deny the Corneals' motion for summary judgment as to this count.

### 3.   State Constitutional Claims

**a.    A private right of action exists for monetary damages based on violation of the Pennsylvania Constitution.**

In Count IV, the Corneals allege various violations of the Pennsylvanian Constitution. *See* Pa. Const. Art. I, §§ 1, 17, and 26.[10] Defendants argue that the court must grant summary judgment in their favor as these claims because, they contend, there is no private right of action for monetary damages for violation of the Pennsylvania Constitution. The Corneals concede that the Pennsylvania Supreme Court never has addressed the specific question of whether there exists a private cause of action for damages to remedy violations of the Declaration of Rights set forth in Article I of the Pennsylvania Constitution. (*See* Pls. Br. in Sup. Mot. for Sum. J. at 36.) The Corneals are correct. As discussed in *Robbins v. Cumberland County Children & Youth Services*, no cases exist to clarify "the difficult issue of whether there exists a direct right of action for money

---

[10]   Article I, Section 1 of the Pennsylvania Constitution provides, in relevant part: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are . . . acquiring, possessing and protecting property. . . ." Section 17 states: "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." Finally, Section 26 states: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."

damages against government officials for violations of the Pennsylvania Constitution." 802 A.2d at 1251.

However, because many Pennsylvania courts have addressed claims based on violation of the Pennsylvania Constitution, without deciding whether a private right of action exists, the court finds that such a right does in fact exist. *See, e.g., Redevelopment Auth. v. Woodring*, 445 A.2d 724 (Pa. 1982). Moreover, Defendants, despite their insistence that this right is nonexistent, have not proffered a single case in which a court has refused to hear a claim based on violation of the Pennsylvania Constitution.

### b. The PSTCA does not apply to the Corneals' claims for violation of the Pennsylvania Constitution.

Defendants alternatively argue that even if a direct cause of action exists under the Pennsylvania Constitution, the PSTCA serves as a bar for any state constitutional tort claims against the Township. The Corneals, however, cite a plethora of cases for the proposition that claims arising from violations of the Pennsylvania Constitution may be raised against local governments. *Coffman v. Wilson Police Dep't,* 739 F. Supp. 257, 266 (E.D. Pa. 1990) (holding that claims against local governments based on violation of the Pennsylvania Constitution fall outside the purview of PSTCA which is, as its title suggests, limited to tort claims); *Redevelopment Auth. v. Woodring*, 445 A.2d 724 (Pa. 1982); *Thelin v. Borough of Warren*, 544 A.2d 1135 (Pa. Commw. Ct. 1988); *Williams v. City of Pittsburgh*, 531 A.2d 42 (Pa. Commw. Ct. 1988); *Holland Enters., Inc. v. Joka*, 439 A.2d 876 (Pa. Commw. Ct. 1982); *see also DiBartolo v. City of Philadelphia,* 159 F. Supp.2d 795, 801 (E.D. Pa. 2002) (holding that claim against municipal employee based on violation of Pennsylvania Constitution not barred by PSTCA where violation arises

from employee's intentional conduct). However, there are also cases in which courts have held that the PSTCA applies to claims brought against local governments for violations of the Pennsylvania Constitution. *See Agresta v. Goode*, 797 F. Supp. 399, 409 (E.D. Pa. 1992) (holding City of Philadelphia immune to suit for violation of Pennsylvanian Constitution, but individual city officials not immune); *Robbins*, 802 A.2d at 1252 (holding County Children and Youth Services immune to suit that they failed to protect a child from physical abuse inflicted by mother).

Thus, the court is faced with a dilemma of conflicting authority regarding whether the PSTCA applies to claims for violations of the Pennsylvania Constitution. The court finds that the better reasoned approach is to hold that it does not apply. In doing so, the court looks to the analogous provision for violations of the federal constitution. Under 42 U.S.C. § 1983, a municipality may be held liable where the action allegedly violating a federal right "implements or executes a policy statement, ordinance, or officially adopted policy." *Monnell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978). The *Monnell* case rejected *respondeat superior* liability for the acts of a municipality's employees. Rather, the "official policy" requirement makes clear "that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986).

Thus, pursuant to § 1983, a municipality is liable for violations of federal rights only where such a right is violated as a result of municipal policy.[11] If

---

[11]The Township does not contend that the individual Defendants' actions in this case do

(continued...)

the court were to hold, instead, that the PSTCA applied, a municipality would be immune from all claims based on violation of the Pennsylvania Constitution where the claims arose out of municipal employee's intentional conduct. Application of such a rule is especially absurd where, as in the present case, the state constitutional and federal constitutional standards are identical. *See infra* at Part III.B.3.c (holding that the requirements of Article I, Section 1 of the Pennsylvania Constitution are identical to the procedural and substantive due process standards under the Fourteenth Amendment to the United States Constitution). Thus, if the court were to apply the PSTCA to the instant action, both the Township and the individual Defendants could be held liable for violation of the Corneals' substantive due process rights under their § 1983 claim. However, only the individual Defendants could be held liable for violation of the Pennsylvania Constitution's due process guarantee, even though both constitutions apply the same standard to determine whether a violation has occurred.

Although the PSTCA speaks only of municipal liability generally, it makes little sense to extend the PSTCA to cover alleged violations of constitutional rights where the legislature has not evidenced a clear intent to abrogate such fundamental rights. *See Coffman*, 739 F. Supp. at 266 (holding that "it would be peculiar if the legislature could abrogate rights protected by the [Pennsylvania] Constitution"). The court, therefore, holds that the PSTCA does not apply to cases where a plaintiff asserts a claim for monetary damages against a municipality based on violations of the Pennsylvania Constitution. Accordingly, the PSTCA does not

---

[11](...continued)
not constitute municipal policy for purposes of imposing liability on the Township under § 1983.

bar the Township's liability for the Corneals' claim based on violation of the Pennsylvania Constitution.[12]

        c.     **There is a material issue of fact as to whether Defendants violated the Corneals' substantive due process rights under the Pennsylvania Constitution.**

It is well established that the rights found in the Federal Constitution are the minimal that a state must provide to individuals. However, "each state has the power to provide broader standards and go beyond the minimum floor established by the federal Constitution." *Commonwealth v. Edmunds*, 586 A.2d 887, 894 (Pa. 1991) (quotations omitted). However, "the Pennsylvania Supreme Court has held that the requirements of Article I, Section 1 of the Pennsylvania Constitution are not distinguishable from those of the [Due Process Clause of the] 14th Amendment . . . [thus] we may apply the same analysis to both claims." *Robbins*, 802 A.2d at 1253 (quoting *Pennsylvania Game Comm'n v. Marich*, 666 A.2d 253, 255 n.6 (1995) (internal quotations omitted)); *see also Plowman v. Department of Transp.*, 635 A.2d 124, 126 (Pa. 1993) (holding that the standards for substantive due process are identical under both the United States and Pennsylvania constitutions).

The court has previously held that there is a material issue of disputed fact as to whether Defendants violated the Corneals' right to substantive due process of law as guaranteed by the United States Constitution. *See supra* at Part III.A.2. However, the court has also determined that Defendants are entitled to judgment as

---

[12]It is worth noting that even if the court were to hold that the PSTCA applied to the Corneals' claim, such a holding would not affect the outcome as to the individual Defendants. Even if the PSTCA applied, those Defendants would still be liable because the Corneals' claim arises out of the individual Defendants' intentional conduct. *See* 42 Pa. Cons. Stat. § 8550; *Sameric Corp.*, 142 F.3d at 600.

a matter of law as to the Corneals' claim that Defendants violated the Corneals' procedural due process rights under the Federal Constitution. *See supra* at Part III.A.1. Because the Pennsylvania Constitution incorporates the federal standards as to these rights, the court finds that these holdings are equally applicable as to the Corneals' claims for violation of the Pennsylvania Constitution. That is to say, a genuine issue of material fact exists with respect to the claim of substantive due process. Defendants, however, are entitled to judgment as a matter of law as the Corneals' procedural due process claims.

IV.        **Conclusion**

In accordance with the preceding discussion, the court will deny Plaintiff's motion for summary judgment. The court, however, will grant, in part, Defendants' motion for summary judgment. Because the full panoply of procedures existed for the Corneals to challenge the Township's moratorium, the claim of procedural due process violations, under both the United States and Pennsylvania Constitutions, must fail. However, because the intent and motives behind the moratorium cannot be determined as a matter of law, the claim of substantive due process presents a genuine issue of material fact. As for the state law claim for civil conspiracy, Defendants' motion for summary judgment is granted on behalf of the Township because government immunity exists for the Township under the PSTCA. The court, however, will deny the individual Defendants' motion for summary judgment regarding the state civil conspiracy claim. Because Plaintiffs have failed to adduce sufficient evidence to maintain a claim for intentional interference with contractual relations, the court will grant Defendants' motion for summary judgment

as to Count III.  Finally, with respect to the state constitutional claims, Defendants'
motion for summary judgment will be denied.  An appropriate order will issue.


SYLVIA H. RAMBO
United States District Judge

Dated: December   23, 2002