# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DAVID B. CORNEAL and<br>SANDRA Y. CORNEAL, | : | NO. 1:CV-00-1192 |
|  | : |  |
| Plaintiffs | : | JURY TRIAL DEMANDED |
|  | : |  |
| v. | : | RAMBO, J. |
|  | : |  |
| JACKSON TOWNSHIP, *et al.*, | : |  |
| Defendants | : |  |

FILED
HARRISBURG, PA
JAN 3 0 2003
MARY E. D'ANDREA, CLERK
Per _____

## BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION

**I.    Introduction**

Before the Court is the Motion for Reconsideration of Plaintiffs David

B. Corneal and Sandra Y. Corneal seeking reconsideration of this Court's

December 23, 2002 Memorandum and Order granting summary judgment in favor

of the Defendants on Plaintiffs' claim for intentional interference with contractual

relations.  The Corneals seek reconsideration on the grounds that the undisputed

record evidence presented to the Court establishes that one or more of the

Defendants had the motive and the opportunity to interfere with the Corneals'

contractual relationship with a couple (collectively referred to as the Hewetts) for

the sale to them of a portion of the Corneals' land.  The evidence includes at least

the following:

- Defendant Wilson's nephew expressed a recurring interest in purchasing
  the farmhouse;

1

{L0260834.1}

- Defendant Wilson knew of the Hewetts' contract with the Corneals;

- Township Solicitor Newton, who was fully apprised of the Corneals' land development efforts and the Township's activities in relation thereto, had adjacent offices and shared a support staff and business relationship with Attorney Reeder (counsel for Hewett and Smiths), actually referred the Hewetts to Reeder for their "problems" with the purchase of the Corneals' land, and he had the opportunity to discuss the Corneals' land development efforts and the Township's response thereto with Attorney Reeder;

- The Hewetts, through their counsel, terminated their contract with the Corneals as a result of their belief that the Township would not grant the Corneals' land development approval prior to the date set for closing, on the very same day that Mr. Corneal contacted solicitor Newton regarding the status of his land development plans;

- And, finally, Mr. Corneal testified that Defendant Wilson's nephew again approached Mr. Corneal about purchasing the farmhouse very shortly after the Hewetts terminated their contract.

The uncontroverted evidence of record demonstrates that, at a minimum, the uncontroverted facts create a genuine issue of fact as to whether one or more of the Defendants acted together or in concert solicitor Newton (even though he has been dismissed from the action) to interfere with the Corneals' contract with the Hewetts. Thus, this Court should reconsider its Order granting summary judgment in favor of the Defendants on the Corneals' claim for intentional interference with contractual relations, and allow a jury to assess all of the direct and circumstantial evidence, determine the credibility of the witnesses, and resolve that claim.

2

{L0260834.1}

## II.        Background

The background of this proceeding has been briefed to this Court on numerous occasions during the last two and one-half years.  In the interest of brevity, therefore, Plaintiffs will refer the Court to their Statement of Facts set forth in their Brief in Support of Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment, submitted to this Court on or about June 24, 2002.

On December 23, 2002, this Court entered its Order denying Plaintiffs' Motion for Summary Judgment, and granting in part Defendants' Motion for Summary Judgment.  Specifically, the Court granted summary judgment in favor of all Defendants on Plaintiffs' claim for violation of procedural due process and Plaintiffs' claim for intentional interference with contractual relations, and in favor of the Township only on Plaintiffs' claim for civil conspiracy.

On January 8, 2003, Plaintiffs timely filed a motion for reconsideration of the Court's Order of December 23, 2002, and now submit this brief in support thereof, in accordance with the Court's later Order granting an extension of time within which to file this Brief.

## III.       Argument

A Motion for Reconsideration under Fed. R. Civ. P. 59(e) is the proper device to call to a Court's attention, *inter alia*, errors of law or fact that lead to the Court's decision and to provide the Court the opportunity to correct any such errors before seeking appellate review.  See, e.g., Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3rd Cir. 1985).  In the instant matter, the Court erroneously concluded that there was no genuine issue of material fact sufficient to preclude summary judgment on the intentional interference with contract claim.  The Court reasoned that Larry Newton, Solicitor of Jackson Township, previously was dismissed from this action, and thus the Corneals, to survive summary judgment, had to present a nexus, or stated differently, a connection, between Larry Newton's actions and Defendants with respect to the allegation that Defendants caused the Hewett and Smith to terminate their contract with the Corneals.  This reasoning represents a false syllogism.  In any event, the combination of admissions, and direct and circumstantial evidence, clearly reveal that a reasonable jury could find that there was a connection between Newton and the Defendants and that there was an intent on the part of one or more of the Defendants to interfere with the Corneals' sale of the land to Hewett and Smith.

{L0260834.1}

In its Memorandum dated December 23, 2002, in granting summary judgment in favor of all Defendants on Plaintiffs claim of intentional interference with contractual relations, the Court stated:

> "In this case, the Corneals contend that Newton, acting alone or in concert with the other defendants, informed the Buyers that the subdivision plan would not be approved and that no permits for the development of the tract would be granted. Even if the Corneals could show that this in fact occurred, Newton is no longer a party to this action. Thus, in order to recover, the Corneals would have to demonstrate some sort of nexus between Newton's actions and defendants. It is clear that the Corneals have failed to adduce any such evidence. The Corneals cite the fact that Newton and the Buyers' attorney shared an office and a common secretary. Even if Newton did tell the Buyers' attorney to extinguish their contract with the Corneals, there is no evidence indicating that he did so at the behest of defendants. In short, nothing in the record connects Newton's actions, whatever they may have been, to any of the individual defendants."

Mem. Op. at 25.

This passage does not entirely accurately reflect the Corneals' claim nor the theory and evidence developed in discovery . The Corneals never claimed that Newton was the primary or only defendant seeking to interfere with their contract with the Hewetts. In fact, if Count III is read in its entirety, including all of the background allegations incorporated into that count, it is readily apparent that the Corneals' claim is that some part of the Defendants' intentions with respect to wrongfully requiring subdivision approval and issuing a moratorium was the intent

5

to interfere with the impending sale of a portion of the house to the Hewetts. (Complaint, ¶¶ 75-82). In addition, the complaint states that Wilson was involved with the Corneals' land through his company, and that the Corneals later replaced his company, (Complaint, ¶¶ 19-24, 61), thereby suggesting a personal motivation for all the obstructive actions that ultimately interfered with the land sale. In discovery, a further theory of the motivation for the interference was developed: that Wilson was personally interested in the land because it had been part of the family's historical home. The Corneals certainly not required to know at the outset of the case every motivation that might have existed for one of more of the Defendants to interfere with the land sale contract, and they properly developed their motivation theory through discovery. The Corneals should be permitted to show a jury the evidence they have developed and allow the jury to decide whether one or more of the Defendants, by the totality of their actions, acted with the intent to interfere with the contract to the Corneals' detriment.

Moreover, contrary to the Court's conclusion, the *genuinely* undisputed facts presented to the Court on the cross-motions for summary judgment demonstrate that there was, at minimum, a sufficient nexus between Newton's actions and the remaining Defendants' sufficient to create a genuine issue of material fact that

{L0260834.1}

must be submitted to the jury.  The fact that one defendant, Newton, was dismissed from the case is of no moment.

The Corneals presented, and the Defendants admit, the following undisputed facts:  Defendant Wilson's nephew wanted to buy the farmhouse that was on the Corneals' property (Corneals' Statement of Undisputed Facts at ¶ 31 and Defendants' Answer thereto); Defendant Wilson also knew that Hewett wanted to buy the Corneal property, that Hewett had heard about the farmhouse from Defendant Wilson and, in October 1999, entered into a contract to purchase the farmhouse from the Corneals.  (Corneals' Statement at ¶¶ 33-35 and Defendants' Answers thereto).  The Defendants knew of the existence of the contract between the Corneals and Hewett.  (Amended Complaint at ¶ 123).[1]  Through uncontroverted evidence and certain admissions, it is undisputed that the "moratorium" was never discussed, never advertised, never properly promulgated as an ordinance, no public meeting was held regarding the moratorium, and there is no documentation other than the minutes of a meeting reflecting the moratorium.

---

[1] Ordinarily, a plaintiff may not rely on the averments in his pleadings to survive a motion for summary judgment. In this case, however, the Defendants never submitted an Answer to the Amended Complaint (or to the original Complaint).  All of the averments of fact set forth in the Amended Complaint, therefore, are deemed admitted, including, as they relate to Count III, paragraphs 22 (existence of contract between Corneals and Hewetts), 73 (David Corneal called solicitor Newton on May 1, 2000), 74 (Hewett's counsel notified Corneals terminating contract by letter dated May 1, 2000), 77-82 (Newton, acting alone or in concert with Defendants, advised Hewett's counsel that subdivision approval would not be forthcoming even though the Township had no legal basis for denying such approval) and 123-132 (Defendants and Newton acted in concert, intentionally and willfully, to cause Hewetts to terminate the contract with the Corneals, and the Corneals suffered damages as a result).  See Fed. R. Civ. P. 8(d).

(Corneals' Statement at ¶¶ 47-52 and 57 and Defendants' Answers thereto; dep. o Wirth, p. 83; dep. Of Newton, p. 23-28).

Further, either before or after the facts, Newton was privy to all the discussions regarding the moratorium, proposed subdivision plan, and the Corneals' land development efforts. (Newton dep. P. 23-28, 35-43). Moreover, solicitor Newton maintains an office in the same building and shares office space and support staff and certain business ventures with attorney Harvey Reeder, counsel for the Hewetts, and solicitor Newton was well aware of the Corneals' land development efforts with attorney Reeder, sent the Hewetts to Reeder for advice concerning the land sale, and knew and conveyed to Reeder that the proposed ordinance would not be completed by the drop dead date for the sale to the Hewetts . (Corneals' Statement at ¶ 168; Newton's dep., p. 70-75).

Moreover, it is uncontroverted that Attorney Reeder, counsel for the Hewetts, delivered correspondence terminating the sale as a result of "difficulties with the Township in obtaining subdivision approval" the very same day that Mr. Corneal telephoned Solicitor Newton to inquire about the status of his subdivision applications. (Corneals' Statement at ¶ 169 and Appendix 19; Amended Complaint at ¶ 73). Although they baldly deny it, Defendants offered no evidence to dispute Mr. Corneal's testimony that shortly after the Hewetts terminated their

8

contract with the Corneals to purchase the farmhouse, Defendant Wilson sent his

nephew to Mr. Corneal and attempted to purchase the farmhouse on his property.

(Corneals' Statement at ¶ 171 and Defendants' Answer thereto; Corneal dep. At

83).[2]

The fact that solicitor Newton no longer is a party to the instant litigation is

of no moment to the question of whether the Defendants worked together with

attorney Newton to unlawfully interfere with the Hewetts' performance of their

contract with the Corneals.  Because co-conspirators are jointly and severally liable

for all damages caused by conspiracy, a private plaintiff need not sue all

conspirators but may proceed against any one or more of them.  See, e.g., U. S.

Indus., Inc. v. Touche Ross and Co., 854 F.2d 1223, 1251 (10th Cir. 1988); accord

Williams v. Lower Merion Township, No. 94-CV-6863, 1995 U.S. Dist. LEXIS

11083 (E.D. Pa. 1995), attached as Exhibit A).[3]  Thus, the mere fact that attorney

Newton is not a defendant in the case does not in any way prohibit a jury from

finding that attorney Newton was a part of a conspiracy to interfere with the

Corneals' contract with the Hewetts.

---

[2] Defendant Wilson disputes this fact.

[3] Although solicitor Newton was dismissed from this action, such dismissal cannot have any preclusive effect on this point inasmuch as Defendant Newton's dismissal was based on purportedly inadequate pleading and not any determination on the merits of the underlying claims.  Moreover, it would be inherently inequitable for this Court to first dismiss solicitor Newton as a defendant in this case, then prevent Plaintiffs from amending their Complaint to include additional allegations against Defendant Newton, and now imply that, because  Mr. Newton is not a party to the case, Plaintiffs' claims against the other defendants must be dismissed as well.

{L0260834.1}

It is well settled that a plaintiff may prove his case by either direct or circumstantial evidence. The law makes no distinction between direct and circumstantial evidence; it is up to the jury to weigh the evidence presented, both circumstantial and direct, and determine from it whether the plaintiff has proved the essential elements of his claims. L. & J. Energy Co., 57 F.3d 1086, 1087 (C.A. D.C. 1995) (quoting Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330 (1960). It is impossible to conclude that the undisputed facts set forth above fail to prove a chain of events and circumstances that indicate that the Defendants, in concert with attorney Newton, took deliberate actions with the intention of inducing the Hewetts to terminate their contract with the Corneals. The court may not weigh the evidence or make credibility determinations; in determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998), White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Consequently, it is for the jury to consider the weight and sufficiency of that evidence, as well as the credibility of the witnesses at trial, and to make such reasonable inferences as are justified by the evidence.

{L0260834.1}

## IV.    Conclusion

For the foregoing reasons, Plaintiffs David B. Corneal and Sandra Y.

Corneal respectfully request this Court to reconsider its Order and Opinion of

December 23, 2002, granting Defendants' Motion for Summary Judgment as to

Count III of Plaintiffs' Complaint, Tortuous Interference with Contract.

Respectfully submitted,


ECKERT SEAMANS CHERIN & MELLOTT, LLC


Bridget E. Montgomery, Esq., 56105
Adam M. Shienvold, Esq., 81941
213 Market Street, 8th Floor
Harrisburg, PAS 17101
717-237-6000


Date: 1-30-03          Attorneys for Plaintiffs,
                       David B. Corneal & Sandra Y. Corneal


11

Exhibit A

Source: Legal > / . . . / > **US District Court Cases - 3rd Circuit** ⓘ
Terms: name(lower merion)  (Edit Search)
Focus: **conspir!** (Exit FOCUS™)

☞ Select for FOCUS™ or Delivery

☐

### *1995 U.S. Dist. LEXIS 11083, \**

OLINDA WILLIAMS; AJANI WILLIAMS, by and through her natural Parent and Guardian, OLINDA WILLIAMS; and SAMUEL ALLEN, Plaintiffs, v. LOWER MERION TOWNSHIP; LOWER MERION POLICE DEPARTMENT; POLICE OFFICER NILSEN, individually, and in his official capacity; and POLICE OFFICER JOHN DOE, individually and in his official capacity, Defendants.

CIVIL ACTION No. 94-CV-6863

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1995 U.S. Dist. LEXIS 11083

August 2, 1995, Decided
August 2, 1995, FILED, ENTERED

### CASE SUMMARY

**PROCEDURAL POSTURE:** Pursuant to 42 U.S.C.S. §§ 1983 and 1985, plaintiff claimants filed discrimination claims against defendants, the township, the police department, the named police officer, in his individual and official capacities, and the John Doe police officer, in his individual and official capacities. Defendants filed a motion to dismiss the claims.

**OVERVIEW:** The claimants initiated their civil rights action after the police officers detained them during an investigatory stop. The claimants contended that the conduct of the named police officer and the John Doe police officer was discriminatory in violation of 42 U.S.C.S. § 1983. The claimants also alleged the township and the police department were liable, under § 1983, for improper police training which resulted in the adoption of a custom of detaining and harassing African American citizens. Finally, the claimants alleged, pursuant to 42 U.S.C.S. § 1985, that the police officers, the township, and the police department **conspired** to interfere with their civil rights. The court granted the motion for summary judgment with respect to the claims against the township, the police department, the John Doe police officer, and the named police officer in his official capacity. The court denied the motion for summary judgment with respect to the civil rights claims and the punitive damages claim against the named police officer, individually. The court found that there were factual disputes regarding the existence of impermissible racial motives on the part of the named police officer.

**OUTCOME:** The court entered summary judgment in favor of the township, the police department, the John Doe police officer, and the named police officer in his official capacity. The court denied the motion for summary judgment with respect to the civil rights claims and the punitive damage claims against the named police officer in his individual capacity.

**CORE TERMS:** summary judgment, driver, police officers, deposition, civil rights, investigatory, municipality, municipal, punitive damages, custom, license, genuine issue, discrepancy, conspiracy, daughter, animus, real party in interest, matter of law, township,

conspirator, non-moving, deprived, detained, immunity, vehicle registration, discovery, documentation, individually, reckless, callous

## LexisNexis(TM) HEADNOTES - Core Concepts - ♦ Hide Concepts

📄 Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN1*⬇Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

📄 Civil Procedure > Summary Judgment > Burdens of Production & Proof
*HN2*⬇The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper.

📄 Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
*HN3*⬇In order to succeed on a claim under 42 U.S.C.S. § 1983, a plaintiffs must show that he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States and that the defendants were acting under color of state law.

📄 Constitutional Law > Civil Rights Enforcement > Immunity > Public Officials
*HN4*⬇Qualified immunity shields law enforcement officers from liability under 42 U.S.C.S. § 1983 as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or as long as they could have reasonably believed their acts did not-violate those rights in light of clearly established law and the information they possessed. Qualified immunity shall be denied if a jury could find that the unlawfulness of an officer's actions was so apparent that no reasonable officer could have believed his actions were lawful.

📄 Constitutional Law > Civil Rights Enforcement > Immunity > Public Officials
*HN5*⬇Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.

📄 Civil Procedure > Pleading & Practice > Pleadings > Interpretation
*HN6*⬇Federal district courts permit the use of Doe defendants for pleading purposes until plaintiffs can determine the unknown actors' identities.

📄 Civil Procedure > Pleading & Practice > Pleadings > Interpretation
*HN7*⬇A district court does not have to wait indefinitely for a plaintiff to take steps to identify and serve Doe defendants. If it appears that reasonable steps are not taken to learn the identity of the true party and add him as a defendant, claims against unknown defendants shall be dismissed.

📄 Governments > Local Governments > Claims By & Against
*HN8*⬇Pa. Stat. Ann. tit. 53, § 16257 states that no such department of the city of Philadelphia shall be taken to have had a separate corporate existence, and thereafter all suits growing out of their transactions shall be in the name of the city of Philadelphia. That statute only applies to the city of Philadelphia.

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage

Constitutional Law > Civil Rights Enforcement > Immunity > Public Officials

*HN9* In those situations where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy, local governing bodies can be sued directly under 42 U.S.C.S. § 1983. In addition, local governments may be sued for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the government's official decision-making channels.

Constitutional Law > Civil Rights Enforcement > Immunity > Local Governments

*HN10* A municipality can be liable under 42 U.S.C.S. § 1983 for failure to train its employees when the need for more or different training is so obvious that failure to do so shows a deliberate indifference to the rights of its inhabitants.

Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN11* Fed. R. Civ. P. 56 requires the non-moving party to go beyond the pleadings and provide supporting affidavits or, based on the discovery on file, designate specific facts showing that there is a genuine issue for trial.

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally

*HN12* To prevail on a 42 U.S.C.S. § 1985 claim, a plaintiff has to point to specific facts of record which establish each of the following elements: (1) the existence of a **conspiracy;** (2) for the purpose of depriving, either directly or indirectly, any person or class of persons, of the equal protection of the laws or of the equal privileges and immunities under the law; (3) some act in furtherance of the **conspiracy;** and (4) that the plaintiff was injured in person or property or deprived having or exercising any right or privilege of a citizen of the United States.

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally

*HN13* 42 U.S.C.S. § 1985(3) requires that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the **conspirators'** action.

Torts > Multiple Defendants > Conspiracy

*HN14* To establish a cause of action for civil **conspiracy,** the plaintiff must allege a combination of two or more persons to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose. The plaintiffs may elect to sue one **conspirator,** or all of them, on a federal civil rights **conspiracy** claim. Because a civil **conspiracy** is a tort with joint and several liability, a plaintiff may sue one **conspirator,** or all of them in a judicial forum.

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally

*HN15* Conclusory allegations of a **conspiracy** are insufficient to state a claim under 42 U.S.C.S. § 1985.

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally

*HN16* As a threshold matter, punitive damages are unavailable under 42 U.S.C.S. §§ 1983 and 1985 against a municipality or against local officials in their official capacity.

Constitutional Law > Civil Rights Enforcement > Civil Rights Generally

*HN17* To state a claim for punitive damages against individual officers, a plaintiff must establish facts of record that prove that those individuals knowingly and maliciously deprived the plaintiff of his civil rights. The Third Circuit states that in order for a civil rights plaintiff to qualify for an award of punitive damages the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages may also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet that higher standard.

**COUNSEL:** [*1]

For OLINDA WILLIAMS, AJANI WILLIAMS, BY THE THROUGH HER NATURAL PARENT AND GUARDIAN, OLINDA WILLIAMS, SAMUEL ALLEN, PLAINTIFFS: MICHAEL F. COATES, PHILA, PA.

For NILSON, POLICE OFFICER, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY, DEFENDANT: FRANK J. LAVERY, JR., LAVERY AND KAIN, HARRISBURG, PA.

**JUDGES:** Robert F. Kelly, J.

**OPINIONBY:** Robert F. Kelly

**OPINION: MEMORANDUM**

R.F. KELLY, J.

AUGUST 2nd 1995

Before the Court is Defendants' Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiffs, Olinda Williams, Ajani Williams, by and through her natural Parent and Guardian, Olinda Williams, and Samuel Allen, initiated this action under 42 U.S.C. §§ 1983 and 1985 after Defendant police officers detained them during an investigatory stop. Plaintiffs contend that the conduct of the police officers was discriminatory in violation of § 1983. Plaintiffs also allege that Defendants, Lower Merion Township and the Lower Merion Police Department, are liable under § 1983 for Constitutional violations arising from their failure to properly train their law enforcement officials, resulting in the adoption of a "custom" of detaining and/or general harassment of African American citizens. Finally, Plaintiffs claim that Defendants **conspired** to interfere with their civil rights pursuant to 42 U.S.C. § 1985. For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

## I. STANDARD

*HN1* Pursuant to Rule 56(c), summary [*2] judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *HN2* The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Id. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. Celotex, 106 S. Ct. at 2552 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

## II. **FACTS**

On November 13, 1992, Officer Nilsen stopped a motor vehicle driven by Plaintiff Olinda Williams and occupied by her minor daughter, Ajani Williams, and a schoolmate, Samuel Allen. Officer Nilsen stopped the vehicle because [*3] it bore a New Jersey license tag in the rear window of the vehicle, but failed to have a front tag. The driver presented a driver's license and vehicle registration upon request. Officer Nilsen then checked the documentation with police dispatch. The computer check revealed a listing of an individual with the driver's name and birthdate as an alias for a Rebecca Walker, who was wanted for a serious crime. She was described as 5'5" tall, 140 pounds, with a scar on the neck and a mole on her nose. (Nilsen affidavit, P 9).

Officer Doe later arrived at the scene. Officers Nilsen and Doe then returned to Plaintiffs' vehicle and ordered the driver to surrender the keys to her vehicle. Officer Nilsen then ordered the driver out of her vehicle. Officer Nilsen then ordered each of the minor passengers to exit the car and the driver remained in her vehicle. Sam Allen was then ordered to place his hands on the trunk of the vehicle, spread his legs and was searched. Officer Nilsen asked Ajani Williams if the driver (her mother) has any aliases. When the driver began to complain that her daughter was outside the vehicle without a coat, the police officers allowed the daughter to get back inside [*4] the vehicle. Plaintiff driver was then informed by her daughter that the police officers had accused the driver of murder. Officer Nilsen then requested that the driver reveal her neck to see whether she had a scar that matched the description of the wanted suspect. Williams refused. Nilsen was ultimately convinced that Plaintiff Olinda Williams was not the wanted suspect because of a weight discrepancy and Plaintiff Allen's verification of her story and identity. (Id., PP 11-14). According to Plaintiffs, the entire incident took approximately 1 and 1/2 hours. (O. Williams affidavit, P 7; O. Williams deposition at pps. 33-34).

## III. **ANALYSIS**

HN3 In order to succeed on a claim under § 1983, Plaintiffs must show that they were deprived of rights, privileges or immunities secured by the Constitution or laws of the United States and that Defendants were acting under color of state law. Parratt v. Taylor, 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981).

Defendants initially contend that they are entitled to Summary Judgment because there was a valid investigatory stop of Plaintiffs' vehicle for a reasonable period of time based upon a reasonable and articulable suspicion. [*5] Defendants also contend that there is no indicia of racial animus or impermissible racial motives on the part of the police officers in the facts of record.

Defendants argue that the investigatory stop was proper because there was no visible front registration tag and there was a discrepancy in the names and addresses on the driver's license and vehicle registration provided by Olinda Williams. However, Plaintiff driver asserts that, when requested by Officer Nilsen to provide vehicle documentation, she presented a valid New Jersey driver's license and registration, both in the name of Margaret McMullen and both having the same New Jersey address. (O. Williams affidavit, P 4; O. Williams deposition, at pps. 29-30). This contradicts Police Officer Nilson's statement that he observed a driver's license with a Pennsylvania address in the name of Margaret Williams and a vehicle registration with a New Jersey address in the name of Margaret McMullen, which prompted him to make a subsequent check of the documentation with police dispatch to verify the name discrepancy. (Nilsen affidavit, PP 5-6, 9). Plaintiffs also assert that, prior to the police officers' questioning of the minor passengers, [*6] Plaintiffs were not informed as to why they were being detained. (See O. Williams deposition at pps. 43-44; A. Williams deposition at pps. 11-12). This contradicts Officer Nilsen's statement that he informed Plaintiffs of the

reason they were being detained. Furthermore, Plaintiffs allege the entire incident took approximately 1 and 1/2 hours, while Defendants allege the duration was 25 to 30 minutes. (O. Williams affidavit, P 7; O. Williams deposition at pps. 33-34; Nilsen affidavit, P 15). Based on the above factual disputes, there are genuine issues for trial and Defendants' Motion for Summary Judgment cannot be granted on this basis.

## IV. **QUALIFIED IMMUNITY**

Defendants also contend that Summary Judgment should be granted in their favor because the officers are entitled to qualified immunity. *HN4* Qualified immunity shields law enforcement officers from liability under § 1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" or as long as they could have reasonably believed their acts did not violate those rights in light of clearly established law and the information they possessed. **[*7]** Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982); Anderson v. Creighton, 483 U.S. 635, 641, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987). Qualified immunity should be denied if a jury could find that the unlawfulness of an officer's actions was so apparent that no reasonable officer could have believed his actions were lawful. Lee v. Mihalich, 847 F.2d 66, 69 (3d Cir. 1988).

In this case, Officer Nilsen's Affidavit establishes a reasonable and articulable suspicion for the initial stop of plaintiffs' vehicle, namely a possible motor vehicle code violation. However, the factual dispute as to whether there was a discrepancy in the names and addresses on the identification cards provided by Plaintiff Olinda Williams, as discussed above, prevents this Court from granting Summary Judgment in favor of Defendants.

## V. **MERGING CLAIMS**

Defendants also contend that the claims against Officers Nilsen and Doe in their official capacity merge as a matter of law with the § 1983 claims against the municipal Defendants and should be dismissed with prejudice. In the instant case, Plaintiffs are suing Defendant Officers Nilsen and Doe in their individual **[*8]** and official capacities. Defendants argue a suit under § 1983 against a municipal officer in his official capacity is in actuality a suit directed against the municipality that the officer represents. Kentucky v. Graham, 473 U.S. 159, 166, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985).

Defendants point to a number of decisions dismissing suits against individuals in their official capacity where the municipality was also named as a defendant. See, Orange v. County of Suffolk, 830 F. Supp. 701, 707 (E.D.N.Y. 1993) (claims against county executives and legislators in their official capacity dismissed because the county was named as a defendant); Busby v. City of Orlando, 931 F.2d 764 (11th Cir. 1991) (affirming directed verdict in favor of city official where the city remained a defendant); and Kohn v. Mucia, 776 F. Supp. 348 (N.D.Ill. 1991) (dismissing suits against individual defendants in their official capacity because the municipality is also a named defendant). Thus, the official capacity suits against Officers Nilson and Doe are redundant and unnecessary, because they are essentially suits against the township, which is already a named Defendant. Kohn v. Mucia, **[*9]** 776 F. Supp. 348, 356 (N.D.Ill. 1991). Accordingly, Defendants' motion for summary judgment is granted in this regard. See also Monell v. New York City dept. of Social Services, 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n. 55, 56 L. Ed. 2d 611. (1978), (*HN5* official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent").

## VI. **"JOHN DOE" DEFENDANT**

Defendants also contend that the § 1983 claims against Officer John Doe should be dismissed

for failure to substitute and serve the Complaint on the real party in interest. *HN6* ↟Federal district courts permit the use of Doe defendants for pleading purposes until plaintiffs can determine the unknown actors' identities. See, Munz v. Parr, 758 F.2d 1254 (8th Cir. 1985); Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980); Maclin v. Paulson, 627 F.2d 83 (7th Cir. 1980); Scheetz v. Morning Call, Inc., 130 F.R.D. 34 (E.D.Pa. 1990).

*HN7* ↟A district court does not have to wait indefinitely, however, for a plaintiff to take steps to identify and serve Doe defendants. Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980). If it appears that reasonable **[*10]** steps are not taken to learn the identity of the true party and add him as a defendant, claims against unknown defendants should be dismissed. Rodriguez v. City of Passaic, 730 F. Supp. 1314, 1319 n.7 (D.N.J. 1990). See also Britt v. Arvanitis, 590 F.2d 57 (3d Cir. 1978) (affirmance of summary judgment for defendant where plaintiff failed to substitute actual defendant for "John Doe" defendant within statutory limitations period).

In their Self-Executing Disclosure Statement, Defendants identified Officer Hyduke as one of the police officers to testify as to the circumstances surrounding the investigatory stop of the Plaintiffs' vehicle on November 13, 1992. This Disclosure Statement was served on Plaintiffs on January 30, 1995. Discovery in this case was scheduled to close on May 31, 1995 and this matter was slated to be placed in the trial pool on June 19, 1995. Despite knowledge of the identity of the officer involved, Plaintiffs have failed to take reasonable steps to substitute Officer Hyduke as a Defendant and to serve the Complaint upon him. Accordingly, the claims against Officer John Doe will be dismissed.

## VII. **MUNICIPAL DEFENDANTS**

As a threshold matter **[*11]** Defendants contend, under Agresta v. City of Philadelphia, 694 F. Supp. 117, 119 (E.D.Pa. 1988), that the claims against the Lower Merion Police Department must be dismissed with prejudice because the police department does not have a separate corporate existence from Lower Merion Township, and, therefore, is not capable of being sued. *HN8* ↟The statute relied on by Defendants states, "no such department [of the city of Philadelphia] shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transactions . . . shall be in the name of the city of Philadelphia." See Pa. Stat. Ann. tit. 53, § 16257 (Purdon 1957). However, this statute only applies to the City of Philadelphia and is not pertinent to Lower Merion Township.

Defendants also argue that Lower Merion Township and the Lower Merion Police Department are entitled to summary judgment as a matter of law since there are no facts of record to establish any unconstitutional policy, practice or custom on the part of the municipal Defendants.

Under Monell v. Department of Social Services, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), the United State Supreme Court **[*12]** defined the methods by which municipalities could be liable under § 1983. The Court held that:

> *HN9* ↟
> in those situations where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy, [local governing bodies can be sued directly under Section 1983]. In addition, local governments . . . may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such custom has not received formal approval through the government's official decision-making channels.

Id. at 690.

Plaintiffs' Complaint is based on a single incident involving an investigatory stop of their vehicle. Plaintiffs have not established any facts in support of their allegations that (1) there existed a "custom" or pattern of improper investigatory stops by officers employed by the Lower Merion Police Department, or (2) there was a failure on the part of the township to train its employees. Canton v. Harris, 489 U.S. 378, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989) (HN10 a municipality can be liable [*13] under § 1983 for failure to train its employees when the need for more or different training is so obvious that failure to do so shows a "deliberate indifference to the rights of its inhabitants.").

As stated earlier, HN11 Rule 56 of the Federal Rules of Civil Procedure requires the non-moving party to go beyond the pleadings and provide supporting affidavits or, based on the discovery on file, designate specific facts showing that there is a genuine issue for trial. In their response, Plaintiffs merely allege that they were at one township meeting where they heard others complain of civil rights violations perpetrated against African American citizens. However, Plaintiffs have not submitted any affidavits or depositions of individuals who related the events in question. Because Plaintiffs have failed to make a sufficient showing of proof, the municipal Defendants are entitled to a Summary Judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

## VIII. **SECTION 1985 CLAIMS**

Defendants also seek Summary Judgment on Plaintiffs' § 1985 claims for a **conspiracy** to interfere with civil rights, alleging the record is totally devoid of any [*14] indicia of racial animus or intentional discriminatory conduct on the part of the police officers.

HN12 To prevail on a Section 1985 claim, Plaintiffs have to point to specific facts of record which establish each of the following elements:

> (1) the existence of a **conspiracy;**
> (2) for the purpose of depriving, either directly or indirectly, any person or class of persons, of the equal protection of the laws or of the equal privileges and immunities under the law;
> (3) some act in furtherance of the **conspiracy;** and
> (4) that the plaintiff was injured in person or property or deprived of having or exercising any right or privilege of a citizen of the United States.

Griffin v. Breckenridge, 403 U.S. 88, 102-103, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971).

In addition, HN13 Section 1985(3) has been interpreted to require that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the **conspirators'** action." Id. at 102.

HN14 To establish a cause of action for civil **conspiracy,** Plaintiff must allege a "combination of two or more persons to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose." Ammlung [*15] v. City of Chester, 494 F.2d 811 (3d Cir. 1974); citing, Landau v. Western Pennsylvania National Bank, 445 Pa. 217, 282 A.2d 335 (1971). Plaintiffs may elect to sue one **conspirator,** or all of them, on a federal civil rights **conspiracy** claim. Norton v. Cobb, 744 F. Supp. 798 (N. D. Ohio 1990). Thus, a Section 1985 **conspiracy** claim can still exist against Officer Nilsen, despite the removal of all claims against Officer John Doe for failure to substitute and serve the complaint on the real party in

interest. See U.S. Industries, Inc. v. Touche Ross & Co., 854 F.2d 1223 (10th Cir. 1988) (because civil **conspiracy** is a tort with joint and several liability, Plaintiff may sue one **conspirator,** or all of them in a judicial forum).

Here, summary judgment will be granted for all Defendants, with the exception of Officer Nilsen. While the record indicates a valid reason for initially stopping Plaintiffs' vehicle, the further detainment of Plaintiffs can still be found by a reasonable jury as racially motivated.

In addition, Plaintiffs allege the following actions by the police officers that show racial animus and discriminatory conduct. First, that Officer Nilsen instructed Plaintiff **[*16]** driver to remove a captains badge that she wore and confiscated her car keys before any criminal investigation began. (O. Williams deposition at pps. 35-36, 39; A. Williams deposition at pps. 10-11). Second, that the police officers interrogated the minor plaintiffs outside the presence of Plaintiff driver and without her consent, including making Ajani Williams stand in the cold with no coat. (O. Williams affidavit, P 6; O. Williams deposition at pps. 43-48; A. Williams deposition at pps. 11-15). Third, plaintiffs allege that despite the police officers' safety concerns, Plaintiff Samuel Allen, an African American male, was the only occupant of the car frisked by the police officers after the criminal investigation began. (Nilsen affidavit, P 12). Based on the above, a jury could reasonably conclude that the officers **conspired** to interfere with Plaintiffs' civil rights on account of their race by continuing the investigation with no reasonable basis.

With regard to the municipal Defendants, however, Plaintiffs have failed to go beyond the pleadings and provide sufficient proof supporting their allegations that the Lower Merion Police Department and Lower Merion Township participated **[*17]** in the **conspiracy.** Plaintiffs have not provided supporting affidavits or, based on the discovery on file, designated specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). *HN15* Conclusory allegations of a **conspiracy** are insufficient to state a claim under this section. Myers v. Becker County, 833 F. Supp. 1424 (D.Minn. 1993).

Thus, Defendants' Motion for Summary Judgment on Plaintiffs' § 1985 claims is granted with respect to the municipal Defendants and denied with respect to Officer Nilsen. The claims against Officer Doe will be dismissed based on Plaintiffs' failure to substitute and serve the Complaint on the real party in interest.

## IX. **PUNITIVE DAMAGES**

Defendants also contend that Summary Judgment should be granted as to Plaintiffs' claims for punitive damages. Defendants argue that there are no facts of record which establish that the police officers acted with evil motive or reckless and callous indifference to Plaintiffs' federally protected rights.

*HN16* As a threshold matter, punitive damages are unavailable under §§ 1983 and 1985 against a municipality or against local officials in their official capacity. See, City of Newport v. **[*18]** Fact Concerts, Inc., 453 U.S. 247, 271, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981); Agresta v. Goode, 797 F. Supp. 399 (E.D.Pa. 1992).

*HN17* To state a claim for punitive damages against the individual officers, Plaintiffs must establish facts of record that prove that those individuals knowingly and maliciously deprived Plaintiffs of their civil rights. Carey v. Piphus, 435 U.S. 247, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978). The Third Circuit has stated that in order for a civil rights plaintiff to qualify for an award of punitive damages "the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989).

As set forth supra, there are facts in the record from which a jury could infer a reckless or callous indifference to Plaintiffs' federally protected rights. Accordingly, Defendants' Summary Judgment motion is denied on this basis.

ORDER

AND NOW, this 2nd day of August, 1995, upon consideration of Defendants' Motion for Summary Judgment, **[\*19]** and all responses thereto, it is hereby ORDERED that:

1. Defendants' Motion is GRANTED in part and DENIED in part;

2. Defendants' Motion is GRANTED as to the claims against Defendants Lower Merion Township, Lower Merion Police Department, Police Officer John Doe, individually and in his official capacity, and Police Officer Nilsen in his official capacity;

3. Defendants' Motion for Summary Judgment is DENIED as to the claims against Defendant Police Officer Nilsen, individually; and

4. Defendants' Motion for Summary Judgment on Plaintiffs' Claims for Punitive Damages is DENIED with respect to Police Officer Nilsen, individually.

BY THE COURT:

Robert F. Kelly, J.

Source: Legal > / . . . / > **US District Court Cases - 3rd Circuit** ⓘ
Terms: name(lower merion)  (Edit Search)
Focus: **conspir!**  (Exit FOCUS™)
View: Full
Date/Time: Thursday, January 30, 2003 - 3:45 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

## CERTIFICATE OF SERVICE

I, Bridget E. Montgomery, Esq., hereby certify that I am this day serving a copy of the foregoing document via first-class United States mail, which service satisfies the requirements of the Federal Rules of Civil Procedure and Middle District Local Rules of Court, addressed as follows:

> Anthony R. Sherr, Esq.
> Mayers Mennies & Sherr, LLP
> P. O. Box 1547
> Blue Bell, PA 19422-1547

Bridget E. Montgomery, Esq.

Date: 1-30-03

Attorney for Plaintiffs,
David B. & Sandra Y. Corneal

{L0260834.1}