


IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID B. CORNEAL AND<br>SANDRA Y. CORNEAL | CASE NO. 1:00-CV-1192 |
| vs. | |
| JACKSON TOWNSHIP, Huntingdon County, Pennsylvania,<br>W. THOMAS WILSON, Individually and in his Official Capacity as Supervisor of Jackson Township, MICHAEL YODER, Individually and in his Official Capacity as Supervisor of Jackson Township, RALPH WEILER, Individually and in his Official Capacity as Supervisor of Jackson Township, BARRY PARKS, Individually and in His Official Capacity as Sewage Enforcement Officer of Jackson Township, DAVID VAN DOMMELEN, Individually and in his Official Capacity as Building Permit Officer, ANN I. WIRTH, Individually and in her Official Capacity as Secretary of Jackson Township, and | JURY TRIAL DEMANDED<br><br>FILED<br>HARRISBURG, PA<br>FEB 1 4 2003<br>MARY E. D'ANDREA, CLERK<br>Per _____ |

DEFENDANTS' JACKSON TOWNSHIP, W. THOMAS WILSON,
MICHAEL YODER, RALPH WEILER, BARRY PARKS,
DAVID VAN DOMMELEN AND ANN I. WIRTH'S
MOTION FOR RECONSIDERATION

**NOW COMES**, Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth, by and through their authorized counsel of record, Mayers, Mennies & Sherr, LLP, and files this Motion for Reconsideration of this Honorable Court's Order dated December 23, 2002 and in support thereof avers as follows:

1. On May 23, 2002, Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth filed a Motion for Summary Judgment in the above-captioned case.

2. On or about June 24, 2002, Plaintiffs filed a Cross-Motion for Summary Judgment.

3. On December 23, 2002, this Honorable Court entered its Order denying the Plaintiffs' Motion for Summary Judgment, and granting, in part, Defendants' Motion for Summary Judgment on Plaintiffs' claim for intentional interference with contractual relations.

4. In that Order, this Honorable Court also denied in part the Defendants' Motion for Summary Judgment, including its Motion on Plaintiffs' substantive due process claim and on Defendants' claim of qualified immunity.

5. On or about January 8, 2003, Plaintiffs filed a Motion for Reconsideration with regard to their claim for intentional interference with contractual relations.

6. On January 30, 2003, Plaintiffs filed their Brief in Support of their Motion for Reconsideration, which Defendants received on February 5, 2003.

7. Since this Court's Order of December 23, 2002, and the filing of

Plaintiffs' Motion for Reconsideration on January 8, 2003, the Third Circuit decided the case of United Artists Theatre Circuit, Inc. v. The Township of Warrington, Pa. 316 F.3d 392 (3d Cir. 2003), and articulated the appropriate standard for substantive due process and qualified immunity claims.

8.   This case represents an intervening change in controlling law and as such, is an appropriate ground upon which to base a Motion for Reconsideration. Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 215 F.3d 407, 413 (3d Cir. 2000).

**WHEREFORE**, Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth respectfully request that this Honorable Court grant their Motion for Reconsideration.

**MAYERS, MENNIES & SHERR, LLP**

BY: _____
ANTHONY R. SHERR, ESQUIRE
Attorney for Defendants

3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440
(610) 825-0300

## CERTIFICATE OF SERVICE

I, Cheryl Zeigler, hereby certify that on the 13th day of February, 2003, a true and correct copy of Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth's Motion for Reconsideration and Memorandum of Law was served by first class regular mail, postage prepaid upon the following:

Bridget E. Montgomery, Esquire<br>
Adam Sheinvold, Esquire<br>
Eckert, Seamans Cherin & Mellott<br>
213 Market Street, 8th Floor<br>
Harrisburg, PA 17101

BY: _____
Cheryl Zeigler
Legal Assistant to Anthony R. Sherr

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID B. CORNEAL AND SANDRA Y. CORNEAL | CASE NO. 1:00-CV-1192 |
| vs. | |
| JACKSON TOWNSHIP, Huntingdon County, Pennsylvania, W. THOMAS WILSON, Individually and in his Official Capacity as Supervisor of Jackson Township, MICHAEL YODER, Individually and in his Official Capacity as Supervisor of Jackson Township, RALPH WEILER, Individually and in his Official Capacity as Supervisor of Jackson Township, BARRY PARKS, Individually and in His Official Capacity as Sewage Enforcement Officer of Jackson Township, DAVID VAN DOMMELEN, Individually and in his Official Capacity as Building Permit Officer, ANN I. WIRTH, Individually and in her Official Capacity as Secretary of Jackson Township, and | JURY TRIAL DEMANDED <br><br> FILED <br> HARRISBURG, PA <br><br> FEB 1 4 2003 <br><br> MARY E. D'ANDREA, CLERK <br> Per _____ |

### CERTIFICATE OF CONCURRENCE/NON-CONCURRENCE

The undersigned hereby certifies that on February 13, 2003, Lori Miller,

Esquire contacted the offices of and Adam Sheinvold, Esquire, counsel for

Plaintiffs, in order to seek his concurrence in this Motion, but have not received a response.

                                       **MAYERS, MENNIES & SHERR, LLP**

                                       BY: _/s/ Anthony R. Sherr_____
                                            ANTHONY R. SHERR, ESQUIRE
                                            Attorney for Defendants

                                            3031 Walton Road, Building A
                                            Suite 330, P.O. Box 1547
                                            Blue Bell, PA 19422-0440
                                            (610) 825-0300
                                            Fax (610) 825-6555

316 F.3d 392
(Cite as: 316 F.3d 392)

Exh 1
Page 1

United States Court of Appeals,
Third Circuit.

**UNITED ARTISTS THEATRE** CIRCUIT, INC.
v.
The **TOWNSHIP OF WARRINGTON**, PA;
Gerald B. Anderson; Joseph E. Lavin; Douglas
E. Skinner; Wayne S. Bullock; Katherine M.
Watson
Gerald B. ANDERSON; Joseph E. Lavin; Douglas
E. Skinner; Wayne S. Bullock;
Katherine M. Watson, Appellants

No. 01-3533.

Argued May 10, 2002.
Filed Jan. 14, 2003.

Owner and operator of movie theaters brought § 1983 action against township and township supervisors for alleged due process violations when township board of supervisors allegedly delayed approval of proposed theater development so that township could obtain impact fee offered by a competing developer. After order granting partial summary judgment for supervisors on basis of qualified immunity was vacated on appeal, the United States District Court for the Eastern District of Pennsylvania, on remand, Norma L. Shapiro, J., 2001 WL 936638, denied supervisors' motion for summary judgment, and supervisors appealed. The Court of Appeals, Alito, Circuit Judge, held that: (1) law-of-the-case doctrine did not foreclose this panel's review of applicable standard governing movie theater operator's substantive due process claim, and (2) proper standard for evaluating the substantive due process claim was whether the supervisors' actions shocked the conscience.

Vacated and remanded.

Cowen, Circuit Judge, filed dissenting opinion.

West Headnotes

[1] Federal Courts ⊜917
170Bk917

Under the "law-of-the-case doctrine," one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case.

[2] Federal Courts ⊜917
170Bk917

The "law-of-the-case doctrine" did not foreclose appellate panel's review of applicable standard governing substantive due process claim of developer of proposed movie theater owner against township supervisors where, although previous panel stated it believed district court properly analyzed supervisors' qualified immunity claim, which the district court denied as to the substantive due process claim, the previous panel also stated in a footnote that it expressed no opinion at that time as to matters it raised sua sponte at oral argument concerning applicability of the "shocks the conscience" standard announced in recent Supreme Court case to substantive due process claims such as that asserted in the instant case. U.S.C.A. Const.Amend. 14.

[3] Courts ⊜99(1)
106k99(1)

The "law-of-the-case doctrine" does not apply to dicta.

[4] Federal Courts ⊜917
170Bk917

The "law-of-the-case doctrine" does allow one panel of an appellate court to reconsider questions that another panel has decided on a prior appeal in the same case in extraordinary circumstances such as where: (1) new evidence is available, (2) a supervening new law has been announced, or (3) the earlier decision was clearly erroneous and would create manifest injustice.

[5] Courts ⊜99(1)
106k99(1)

Courts apply the "law of the case doctrine" when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication.

[6] Federal Courts ⊜917
170Bk917

Where there is substantial doubt as to whether a prior panel of an appellate court actually decided an

316 F.3d 392
(Cite as: 316 F.3d 392)

Page 2

issue, the "law-of-the-case doctrine" should not foreclose a later panel from considering the issue.

[7] Civil Rights ⚖=214(2)
78k214(2)

Qualified immunity generally protects government officials performing discretionary functions from civil damages, and applies so long as the officials' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

[8] Civil Rights ⚖=214(1)
78k214(1)

[8] Civil Rights ⚖=214(2)
78k214(2)

In determining whether qualified immunity applies, a court asks (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, (2) whether the right was clearly established at the time of the alleged violation.

[9] Civil Rights ⚖=214(2)
78k214(2)

A right is "clearly established" for purpose of qualified immunity analysis if its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right.

[10] Constitutional Law ⚖=278.2(1)
92k278.2(1)

[10] Zoning and Planning ⚖=439.5
414k439.5

Proper standard to apply in determining whether town board of supervisors' delayed approval of developer's proposed theater development, allegedly so that township could obtain impact fee offered by a competing developer, violated developer's substantive due process rights, was whether the supervisors' actions shocked the conscience, rather than the less demanding standard of whether the supervisors acted with improper motives or for any reason unrelated to the merits. U.S.C.A. Const.Amend. 14.

*394 Arthur W. Lefco (Argued), Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for Appellants.

John F. Schultz (Argued), James Eiseman, Jr., Drinker, Biddle & Reath, Philadelphia, PA, for Appellee.

Before: ALITO, COWEN, and LOURIE, [FN*] Circuit Judges.

> FN* The Honorable Alan D. Lourie, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

OPINION OF THE COURT

ALITO, Circuit Judge.

United Artists Theatre Circuit, Inc. ("United Artists"), an owner and operator of movie theaters, sought land development approval from Warrington Township Pennsylvania, ("Township"), to construct and operate a multiplex theater on land that United Artists owned. United Artists claims that Warrington Township and its Board of Supervisors (the "Board") complicated and delayed approval of United Artists' development plan, and thereby allowed a competitor to beat United Artists in a race to build a movie theater in the Township, which is too small to support two theaters. United Artists alleges that the Township and individual members of the Board engaged in this conduct because they wanted the Township to receive an improper "impact fee" from the competing developer. In this appeal, the defendant Supervisors contest the District Court's denial of their qualified-immunity-based motion for summary judgment. We vacate and remand.

As a threshold issue, we conclude that the law-of-the-case doctrine does not preclude us from considering whether, as a result of the Supreme Court's decision in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), United Artists was required to show that the Supervisors' conduct "shocked the conscience." On the merits, we hold that *Lewis* has superceded prior decisions of our Court holding that a plaintiff asserting that a municipal land-use decision violated substantive due process need only show that the municipal officials acted with an "improper motive." Thus, *Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988), and its progeny are no longer good law.

*395 I.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

316 F.3d 392  
(Cite as: 316 F.3d 392, *395)

Page 3

A.

The dispute underlying this case arises out of a development race between United Artists' proposed multiplex and a competing multiplex theater development proposed by Regal Cinema and developer Bruce Goodman. The record shows that the two companies were competing to obtain approval of their plans by the Township because the market could support only one of the theaters. Goodman agreed to pay the Township an annual "impact fee" [FN2] of $100,000, but United Artists refused the Township's repeated requests for such a payment. United Artists asserts that, because of Goodman's promise to pay this fee, the Township allowed his project to "sail through the land development process," while United Artists' proposal was repeatedly stalled.

> FN2. Under Pennsylvania law, there are circumstances in which a municipality may require the payment of an "impact fee" for "offsite public transportation capital improvements." 53 Pa. Cons.Stat. Ann. S 10503- A. The Supervisors do not contend that their actions were taken pursuant to this authority.

The Board of Supervisors' review process consisted of two phases, preliminary approval and final approval. In January 1996, United Artists submitted a preliminary plan for its theater to the Township Planning Commission, an independent body of local officials that makes recommendations regarding land- use plans to the Board of Supervisors. Along with the preliminary plan, United Artists submitted a traffic impact study, which led the Township to require, as a precondition to the issuance of an occupancy permit, the installation of a separate left-turn lane into the theater. United Artists failed to acquire the property necessary to make this improvement and expressed its intention to request a waiver of the condition or to sue for relief. United Artists claims that its failure to construct the road improvement was a mere pretext for the Township's refusal to support its theater proposal and that this refusal was actually motivated by the Township's desire to obtain an impact fee from Goodman and Regency Cinema.

After granting preliminary approval of United Artists' proposal, the Township attempted to change the terms of that approval by requiring United Artists to obtain an easement for the road improvement and to complete the installation of signals before construction could begin, rather than before the time of occupancy, as was originally provided in the preliminary approval. United Artists then brought suit against the Township in the Court of Common Pleas of Bucks County, and that court found the change in conditions to be unlawful under the Pennsylvania Municipalities Planning Code. On appeal, the Commonwealth Court agreed. After succeeding in this state court litigation and eliminating the building permit condition, United Artists began this action against the Township and the Supervisors in federal court.

In the meantime, the Board granted preliminary approval of the Goodman proposal on February 4, 1997--one month after the initial application was submitted--and final approval was granted on May 21, 1997. By contrast, United Artists, did not receive preliminary approval until March 18, 1997, 14 months after submitting its initial application. The Board then tabled its vote on United Artists' application for final approval on three occasions, each time asking if United Artists would pay an impact fee. The Board granted final approval of the United Artists proposal on September 16, 1997. The Goodman/Regal Cinema multiplex was *396 completed in 1999; United Artists never built a theater in Warrington.

B.

United Artists' complaint in this case asserted procedural and substantive due process claims under 42 U.S.C. § 1983, as well as supplementary state law claims. As defendants, the complaint named the Township and the members of the Board of Supervisors--Gerald Anderson, Joseph Lavin, Douglas Skinner, Wayne Bullock, and Katherine Watson ("Supervisors")--in both their official and individual capacities. Asserting the defense of qualified immunity, the Supervisors moved for summary judgment, and in December 1999, the District Court denied the Supervisors' motion with respect to the substantive due process claim, while granting that motion with respect to the procedural due process claim.

On appeal, a prior panel of our Court, in an unpublished opinion, vacated the order of the District Court and remanded for further proceedings. The panel held that the District Court had erred in failing to analyze each Supervisor's

316 F.3d 392
(Cite as: 316 F.3d 392, *396)

Page 4

qualified immunity claim individually, and the panel instructed the District Court to make such an analysis on remand. *United Artists Theatre Circuit, Inc. v. Twp. Of Warrington,* No. 00-1064 (3d Cir., filed Nov. 29, 2000) ("*United Artists I*"), in App. at 112a-118a. In the text of its opinion, the panel stated that the District Court had "properly analyzed the supervisors' request for qualified immunity on summary judgment, having found that United Artists at this stage sufficiently alleged a violation of a clearly established constitutional right." *Id.* at 4, in App. at 117a. However, in an accompanying footnote the panel stated that it "express[ed] no opinion" at that time as to whether, in the wake of the Supreme Court's decision in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), it was necessary for United Artists to show that the Supervisors' conduct "shocked the conscience." *Id.* at 4 n. 2, in App. at 117a.

On remand, the District Court considered the Supervisors' claims individually and again denied their motion for summary judgment on qualified immunity grounds. Aug. 15, 2001, Order, in App. at 3a-26a. The District Court held that United Artists had provided evidence permitting a factfinder to conclude the Board intentionally delayed approval of plaintiff's project because it wished to receive the impact fee offered by Goodman. If proved, the court believes the monetary motivation of the Board was *improper* and would constitute a violation of substantive due process. *Id.* at 14, in App. at 16a (emphasis added). The District Court also held that there was sufficient evidence to conclude that each individual supervisor had subjected United Artists' proposal to heightened scrutiny and had purposefully delayed approval because of the impact fee offered by the competitor. *Id.* at 19, in App. at 21a. Addressing the panel's reference to the shocks-the-conscience test, the District Court opined that the "shocks the conscience" and "improper motive" tests are essentially the same and that, in any event, a post-*Lewis* opinion issued by our Court [*Woodwind Estates Ltd. v. Gretkowski,* 205 F.3d 118 (3d Cir.2000) ] suggested that Lewis had not altered prior circuit precedent. *Id.* at 9 n. 5, in App. at 11a. The Supervisors then took the present appeal. [FN3]

FN3. We exercise plenary review over a district court's denial of a motion for summary judgment on the basis of qualified immunity. *Eddy v. Virgin Islands Water and Power Authority,* 256 F.3d 204, 208 (3d Cir.2001). Moreover, as with any appeal from the denial of summary judgment, we consider all facts in the light most favorable to the non-moving party. *See, e.g.,* Hoard v. Sizemore, 198 F.3d 205, 218 (6th Cir.1999).

*397 II.

[1][2][3][4] As a preliminary matter, United Artists argues that this panel's authority in this case is severely limited by the law-of-the-case doctrine. Under this doctrine, "one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case." *In re City of Philadelphia Litigation,* 158 F.3d 711, 717 (3d Cir.1998). [FN4] United Artists argues that the panel that heard the prior appeal in this case implicitly rejected the proposition that United Artists' substantive due process claim requires proof of conduct that shocks the conscience. We disagree.

FN4. The doctrine does not apply to dicta and does allow for reconsideration of previously decided issues "in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *In re City of Philadelphia Litigation,* 158 F.3d at 718.

The prior panel made two statements that are relevant for present purposes. First, as noted, the prior panel stated: "[W]e believe the District Court properly analyzed the supervisors' request for qualified immunity on summary judgment, having found that United Artists at this stage sufficiently alleged a violation of a clearly established constitutional right." *United Artists I* at 4, in App. at 1172a. United Artists claims that this statement "constitutes a conclusive determination that may not be disturbed under the law of the case doctrine." Br. of Appellee at 18.

If the prior panel had said nothing more than the statement quoted above, we might be inclined to agree with United Artists, but the prior panel made an additional important statement. In footnote 2 of its opinion, the Court observed that it had raised two issues sua sponte at oral argument and that one of these was "whether the 'shocks the conscience' standard announced by the Supreme Court in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), is applicable to

316 F.3d 392  
(Cite as: 316 F.3d 392, *397)

Page 5

substantive due process claims like the one at issue here." *United Artists I* at 4 n. 2, in App. at 1172a. The panel continued: "*At this time, we express no opinion whether these matters are appropriate in determining the merits of the substantive due process claim.*" *Id.* at 4 n. 2, in App. at 1172a (emphasis added).

We interpret this last statement to mean that the panel left open the question whether the "shocks the conscience" standard announced in *Lewis* is applicable to United Artists' substantive due process claim. In other words, while the panel, as stated in the main text of its opinion, had concluded that United Artists was entitled to survive summary judgment under our Court's "existing case law," *United Artists I* at 4, in App. at 117a, the panel did not decide whether that prior circuit case law had been superceded by *Lewis*. Presumably because the issue was raised by the panel on its own at argument and was not briefed by the parties, the panel left this issue for consideration in the first instance by the District Court and then, if necessary, by a subsequent panel.

[5][6] While we believe, as noted, that this is the best interpretation of the prior panel's decision, our conclusion that the law-of-the-case doctrine does not foreclose our consideration of this issue is not dependent on this interpretation. At the very least, footnote 2 of the prior panel opinion creates considerable ambiguity as to whether the prior panel held that conduct that "shocks the conscience" is needed in the present context. "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either *398 expressly resolved an issue or *necessarily resolved it by implication.*" *Aramony v. United Way of America,* 254 F.3d 403, 410 (2d Cir.2001) (emphasis added) (citing 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 789 (1981)). Here, the prior panel did not "expressly" or by necessary implication decide the "shocks the conscience" issue. The law-of-the-case doctrine relieves a court of the obligation of considering an issue *twice*, but we must be careful to prevent the doctrine from being used to prevent a properly raised argument from being considered even *once*. Where there is substantial doubt as to whether a prior panel actually decided an issue, the later panel should not be foreclosed from considering the issue. Accordingly, we conclude that the law- of-the-case doctrine does not apply and

that the prior panel opinion does not foreclose our review of the applicable standard governing United Artists' substantive due process claim.

Our dissenting colleague disagrees with this conclusion because he believes that the prior panel's first statement represents the panel's holding and that the second statement is "mere dicta." Dissent at 404. The dissent, however, does not explain why the second statement should be regarded as dictum, and we must respectfully disagree with his position.

To reiterate, the prior panel at oral argument sua sponte raised the issue "whether the 'shocks the conscience' standard announced by the Supreme Court in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), is applicable to substantive due process claims like the one at issue here." The panel then wrote:

> *At this time*, we express no opinion whether these matters [including the applicability of *Lewis's* "shocks the conscience" standard] are appropriate in determining *the merits of the substantive due process claim.*

United Artists I at 4 n. 2, in App. at 117a (emphasis added).

This language strongly suggests that the prior panel was not speaking in the abstract about the application of *Lewis* to a similar substantive due process claim in some future case. (Such a statement would be "mere dicta.") Rather, the prior panel was addressing "the substantive due process claim" in this case, and what the panel said about that claim was that the panel was not expressing an opinion about the application of *Lewis* "[a]t this time"--which implied that our Court might express an opinion about that claim at some future time. Thus, because we believe that the prior panel left this issue open (and certainly did not clearly resolve the issue,) we regard the issue as open and we therefore turn to the merits of the Supervisors' argument.

III.  
A.

[7][8][9] As noted, the Supervisors moved for summary judgment on qualified immunity grounds. Qualified immunity generally protects government officials performing discretionary functions from civil damages. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

316 F.3d 392                                                                                                       Page 6
(Cite as: 316 F.3d 392, *398)

Qualified immunity applies so long as the officials' "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* In determining whether qualified immunity applies, we ask: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, (2) whether the right was clearly established at the time of the alleged violation. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Eddy v. Virgin *399 Islands Water and Power Authority,* 256 F.3d 204, 208 (3d Cir.2001). A right is clearly established if "its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right." *Sterling v. Borough of Minersville,* 232 F.3d 190, 193 (3d Cir.2000). Therefore, our task is " 'to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all,' before reaching the question of whether the right was clearly established at the time." *Johnson v. Newburgh Enlarged School District,* 239 F.3d 246, 251 (2d Cir.2001) (quoting *Lewis,* 523 U.S. at 841 n. 5, 118 S.Ct. 1708); *see also Nicholas v. Pennsylvania State University,* 227 F.3d 133, 139-40 (3d Cir.2000) ("To prevail on a non-legislative substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.' ") (quoting *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 123 (3d Cir.2000)). To answer this question, we must determine the appropriate legal standard to apply to substantive due process claims.

B.

In *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the Supreme Court explained the standard that applies when a plaintiff alleges that an action taken by an executive branch official violated substantive due process. The Court observed that "the core of the concept" of due process is "protection against arbitrary action" and that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.' " *Id.* at 845-46, 118 S.Ct. 1708 (citation omitted). After noting its long history of speaking of "the cognizable level of executive abuse of power as that which shocks the conscience," *id.* at 846, 118 S.Ct. 1708 (citing *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)), the Court continued:

Most recently, in *Collins v. Harker Heights,* [503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ], we said again that the substantive component of the Due Process Clause is violated by executive action *only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."*

*Lewis,* 523 U.S. at 847, 118 S.Ct. 1708 (emphasis added). *See also Fagan v. City of Vineland,* 22 F.3d 1296, 1303 (3d Cir.1994) (en banc) ("[T]he substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience.' "). At the same time, however, the *Lewis* Court acknowledged that "the measure of what is conscience-shocking is no calibrated yard stick," *Lewis,* 523 U.S. at 847, 118 S.Ct. 1708, and that "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another." *Id.* at 850, 118 S.Ct. 1708. [FN5]

> FN5. The dissent seems to suggest that several recent court of appeals opinions, including one from our court, have taken the position that "*Lewis* did not lay down a blanket 'shocks the conscience' rule that controls absolutely any and all substantive due process constitutional tests." Dissent at 405-06 (citing *Fuentes v. Wagner,* 206 F.3d 335, 340 (3d Cir.), *cert. denied,* 531 U.S. 821, 121 S.Ct. 63, 148 L.Ed.2d 29 (2000)); *Khan v. Gallitano,* 180 F.3d 829, 836 (7th Cir.1999); *Moreland v. Las Vegas Metro. Police Dept.,* 159 F.3d 365, 372 (9th Cir.1998). However, these opinions are best understood as saying only that the nature of the conduct that is sufficiently egregious to shock the conscience varies depending on the context.

Our Court has echoed these comments. Since *Lewis,* our cases have repeatedly acknowledged that executive action violates *400 substantive due process only when it shocks the conscience but that the meaning of this standard varies depending on the factual context. *See, e.g., Leamer v. Fauver,* 288 F.3d 532, 546 (3d Cir.2002); *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 400 (3d Cir.2000); *Nicini v. Morra,* 212 F.3d 798, 809 (3d Cir.2000) (en banc); *Miller v. City of Philadelphia,* 174 F.3d 368, 375 (3d Cir.1999).

[10] Despite *Lewis* and the post-*Lewis* Third Circuit cases cited above, United Artists maintains that this case is not governed by the "shocks the conscience" standard, but by the less demanding "improper

motive" test that originated with *Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988), and was subsequently applied by our court in a line of land-use cases. In these cases, we held that a municipal land use decision violates substantive due process if it was made for any reason "unrelated to the merits," *Herr v. Pequea Township,* 274 F.3d 109, 111 (3d Cir.2001) (citing cases), or with any "improper motive." *See, e.g., Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118 (3d Cir.2000); *Blanche Road Corp. v. Bensalem Township,* 57 F.3d 253 (3d Cir.1995); *DeBlasio v. Zoning Board of Adjustment,* 53 F.3d 592 (3d Cir.1995); *Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685 (3d Cir.1993); *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667 (3d Cir.1991).

These cases, however, cannot be reconciled with *Lewis's* explanation of substantive due process analysis. Instead of demanding conscience-shocking conduct, the *Bello* line of cases endorses a much less demanding "improper motive" test for governmental behavior. Although the District Court opined that there are "few differences between the [shocks the conscience] standard and improper motive standard," we must respectfully disagree. Aug. 15, 2001 order at 9 n. 5, in App. at 11a. The "shocks the conscience" standard encompasses "only the most egregious official conduct." *Lewis,* 523 U.S. at 846, 118 S.Ct. 1708. In ordinary parlance, the term "improper" sweeps much more broadly, and neither *Bello* nor the cases that it spawned ever suggested that conduct could be "improper" only if it shocked the conscience. We thus agree with the Supervisors that the *Bello* line of cases is in direct conflict with *Lewis.*

We also reject the District Court's suggestion that the application of the *Bello* "improper motive" test in *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118 (3d Cir.2000), which came after *Lewis,* means that our Court has sub silentio held that *Lewis* did not alter prior circuit law. The opinion in *Woodwind Estates* makes no mention of *Lewis,* and *Lewis* was not even cited in the *Woodwind Estates* briefs. Under these circumstances, *Woodwind Estates* clearly does not preclude us from considering whether *Bello* and its progeny remain good law. As the Supreme Court commented in *Texas v. Cobb,* 532 U.S. 162, 169, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001), when it was argued that one of its prior decisions had decided a question that the parties had not argued and the Court had not addressed: "Constitutional rights are not defined by inferences from opinions which did not address the question at issue." [FN6]

> FN6. The dissent contends that several other post- *Lewis* decisions of our Court also show that the *Bello* improper motive cases survived *Lewis.* However, these decisions, like *Woodwind Estates,* did not discuss *Lewis.* In addition, these decisions, unlike *Woodwind Estates,* did not even apply the *Bello* line of cases.
> The dissent first cites the following statement in *Nicholas v. Pennsylvania State University,* 227 F.3d 133, 139 (3d Cir.2000):
> [W]e have held that a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by improper motive," *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 123 (3d Cir.2000) (quoting *Bello v. Walker,* 840 F.2d 1124, 1129 (3d Cir.1988))....
> Not only is this statement dictum (it was not necessary to the decision on the substantive due process claim in that case, which we rejected on the ground that the plaintiff did not have the requisite property interest,) but the statement does not endorse the *Bello* "improper motive" test. Rather, it simply states the indisputable fact that "we ha[d] held" that an improper motive sufficed.
> The dissent next points to the following statement in *Khodara Environmental, Inc. v. Beckman,* 237 F.3d 186, 197 (3d Cir.2001):
> Eagle's briefs do not argue that the Airport Authority denied its application for a reason that is "tainted by improper motives." *Nicholas v. Pennsylvania State University,* 227 F.3d 133, 139 (3d Cir.2000)....
> This statement, like the statement in *Nicholas,* did not endorse the "improper motive" test but simply pointed out that a party's briefs did not advance an "improper motive" argument.
> Finally, the dissent cites *Herr v. Pequea Township,* 274 F.3d 109, 111 (3d Cir.2001), in which the Court noted the *Bello* line of cases but held that they did not apply under the particular circumstances. Thus, the statements in *Herr* were plainly dicta.

The dissent, however, asserts: "Unlike the Majority, I am fully comfortable assuming *401 that this Court in *Woodwind* ... (as in any other case it decides) was completely aware of the content of all published Supreme Court case law that may bear on the case at hand, especially in such a fundamental area as Due Process." Dissent at 405-06. This image of the omniscient circuit judge--who has

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

316 F.3d 392
(Cite as: 316 F.3d 392, *401 )

Page 8

every potentially pertinent precedent in mind at all times and never fails to grasp their possible implications--is flattering but perhaps not entirely accurate. And in any event, the dissent's assumption about what the *Woodwind Estates* panel was "aware of" is beside the point. The pertinent question is not whether the members of the *Woodwind Estates* panel had read and recalled *Lewis* or even whether its possible implications for the *Bello* line of cases crossed their minds. Rather, the pertinent question is whether the *Woodwind Estates* panel, without providing so much as a hint in their opinion that they were doing so, decided that *Lewis* did not undermine the *Bello* line of cases and thereby foreclosed this panel or any other panel from considering that question. The answer to that question is too obvious to need stating. It is not an accepted practice of any appellate court to decide important questions without revealing that it has done so.

In sum, we see no reason why the present case should be exempted from the *Lewis* shocks-the-conscience test simply because the case concerns a land use dispute. Such a holding would be inconsistent with the plain statements in *Lewis* and our own post-*Lewis* cases that we have already noted. Since *Lewis*, our court has applied the "shocks the conscience" standard in a variety of contexts. *See, e.g., Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396 (3d Cir.2000) (applying the "shocks the conscience" test to a claim of civil conspiracy); *Fuentes v. Wagner,* 206 F.3d 335 (3d Cir.2000) (finding the "shocks the conscience" standard appropriate in an excessive force claim in the context of a prison disturbance); *Miller v. City of Philadelphia,* 174 F.3d 368 (3d Cir.1999) (applying the "shocks the conscience" standard in the child custody context). There is no reason why land use cases should be treated differently. We thus hold that, in light of *Lewis*, *Bello* and its progeny are no longer good law. [FN7]

> FN7. The dissent complains that the "shocks the conscience" test is "nebulous and highly subjective." Dissent at 406. But whatever else may be said of this test, it is surely no less "nebulous" or "subjective" than the "improper motives" test.

*402 We note that our holding today brings our Court into line with several other Courts of Appeals that have ruled on substantive due process claims in land-use disputes. *See, e.g., Chesterfield Development Corp. v. City of Chesterfield,* 963 F.2d 1102, 1104-05 (8th Cir.1992) (holding that allegations that the city arbitrarily applied a zoning ordinance were insufficient to state a substantive due process claim, and stating in dicta that the "decision would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith.... A bad-faith violation of state law remains only a violation of state law."); *PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 32 (1st Cir.1991) ("Even assuming that ARPE engaged in delaying tactics and refused to issue permits for the Vacia Talega project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution under a substantive due process label.").

Application of the "shocks the conscience" standard in this context also prevents us from being cast in the role of a "zoning board of appeals." *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.1982) (quoting *Village of Belle Terre v. Boraas,* 416 U.S. 1, 13, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting)); *see also Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 45-46 (1st Cir.1992) (disagreeing with *Bello* and stating that "we have consistently held that the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes"). The First Circuit in *Estabrook* observed that every appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but "[i]t is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983." *Estabrook,* 680 F.2d at 833. Land-use decisions are matters of local concern and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with "improper" motives.

IV.

Having found that the District Court applied the wrong standard for evaluating United Artists' substantive due process claim, we do not reach the second qualified immunity inquiry as to whether the constitutional right was clearly established at the time of the violation. We vacate the District Court's

316 F.3d 392                                                                                    Page 9
(Cite as: 316 F.3d 392, *402)

denial of the Supervisors' summary judgment motion and remand the case for further proceedings to determine whether United Artists can survive the Supervisors' summary judgment motion in light of *Lewis*.

COWEN, Circuit Judge, dissenting.

I.

The issue presented to the previous panel was whether the plaintiff had alleged a violation of a clearly established constitutional right that was sufficiently clear to a reasonable government official, specifically a township supervisor. In deciding that issue, this Court expressly affirmed the District Court's use of the "improper motive" standard when it held that "we believe the [D]istrict [C]ourt properly analyzed the supervisors' request for qualified immunity on summary judgment" and found the *only* error in that analysis to be the District Court's failure to examine each supervisor's request on an individual basis. At the very least, it was inherent in this Court's holding that it was proper for the District Court to apply the "improper motive" standard to its substantive due process analysis in a municipal land use case. Because the previous panel already *403 decided this issue, we are bound by this Court's prior affirmance of the District Court's application of the "improper motive" standard under law of the case doctrine, not to mention Internal Operating Procedure of the United States Court of Appeals for the Third Circuit 9.1. Therefore, I respectfully dissent with the majority's holding that law of the case doctrine does not control this appeal.

Under the law of the case doctrine, a panel of an appellate court generally will not reconsider a question that another panel has decided on a prior appeal in the same case. The doctrine is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity. *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *Arizona v. California,* 460 U.S. 605, 618-19, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The law of the case doctrine acts to preclude review of only those legal issues that the court in a prior appeal decided, either expressly or by implication; it does not apply to dicta. *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,* 988 F.2d 414, 429 (3d Cir.1993).

The law of the case doctrine does not restrict a court's power, but rather governs its exercise of discretion. *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116 (3d Cir.1997). Accordingly, we have recognized that the doctrine does not preclude our reconsideration of previously decided issues in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice. *Id.* at 116-17.

The previous panel expressly approved the District Court's use of the "improper motive" standard in its *holding*:

> *Under existing case law*, we believe the District Court *properly analyzed* the supervisors' request for qualified immunity on summary judgment, having found that United Artists at this stage sufficiently alleged a violation of a clearly established constitutional right. Nonetheless, we believe the District Court should have considered each supervisor's request for qualified immunity individually rather than as a group. On remand, we direct the District Court to address each supervisor's request for immunity on an individual basis or explain why the supervisors should be considered collectively.
> 
> November 29, 2000 Order, at 4-5 (emphasis added) (citations omitted).

The law of the case doctrine unquestionably governs this appeal. The previous panel's statement that "United Artists at this stage sufficiently alleged a violation of a clearly established constitutional right" constitutes a *holding*. In the prior appeal, this Court *expressly* affirmed the District Court's qualified immunity analysis of the supervisors as a whole, and found the *only* error to be the District Court's failure to apply that *same* analysis to the supervisors individually. The panel did not direct the District Court to alter or reconsider its qualified immunity analysis, but *only* to address each of the supervisors individually under that *same* analysis. [FN1]

> FN1. The District Court likewise interpreted the previous panel's opinion as "[*holding*] that 'the [D]istrict [C]ourt properly analyzed each supervisors' request for qualified immunity on summary judgment.' " Record at 7A (August 15, 2001 District Court Order) (emphasis added).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

316 F.3d 392     Page 10
(Cite as: 316 F.3d 392, *403)

Moreover, there are no exceptional circumstances here that make it appropriate to reconsider the prior panel's decision. *See Public Interest Research Group of New Jersey, Inc.,* 123 F.3d at 116. Under **\*404** both the law of the case doctrine and our own internal operating procedures, the majority is wrong to revisit an issue that has already been decided. *See* 3d Cir. I.O.P. 9.1. [FN2]

> FN2. 9.1 Policy of Avoiding Intra-circuit Conflict of Precedent.
> It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so.
> 3d Cir. I.O.P. 9.1 (July 2002).

The majority takes issue with the previous panel's statement made in a footnote:
> At oral argument this Court, sua sponte, raised two issues:  ... (2) whether the "shocks the conscience" standard announced by the Supreme Court in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), is applicable to substantive due process claims like the one at issue here. At this time, we express no opinion whether these matters are appropriate in determining the merits of the substantive due process claim.
> November 29, 2000 Order, at 4 n. 2. The majority argues that this footnote raises "substantial doubt as to whether a prior panel actually decided ... the applicable standard governing United Artists' substantive due process claim." Majority at 8. Given the holding of the prior panel contained in the body of the opinion, this footnote is mere dicta. The holding of the case and instructions to the District Court were to apply the same "improper motive" standard to the supervisors individually. Even if one were not to accept the express holding of the prior panel in light of this footnote, it is quite clear that the "improper motive" issue was decided by "necessary implication" and therefore also subject to the law of the case doctrine.

In *AL Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, we held that the law of the case doctrine applies to decisions rendered even by a judgment order because the doctrine also applies to issues that are decided by necessary implication. 104 F.3d 601, 605 (3d Cir.1997). In that case, Allegheny International argued that 11 U.S.C. § 502(e)(1)(B) [FN3] of the Bankruptcy Code barred AL Tech's claim. The Bankruptcy Court agreed. On appeal to the District Court, the District Court held that § 502(e)(1)(B) barred only contingent claims under these conditions. It allowed AL Tech's claim to the extent that it was a direct claim against Allegheny International under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq. Al Tech Specialty Steel Corp.,* 104 F.3d at 605. This Court affirmed the District Court by judgment order. When appealed a second time to this Court, Allegheny International urged the second panel to examine the question whether AL Tech's claim was barred under § 502(e)(1)(B). In an opinion written by Judge Alito, we held that "In this case, the panel that heard the prior appeal necessarily decided that AL Tech's claim was not barred by § 502(e)(1)(B). The law of the case doctrine applies to this decision even though it was rendered by judgment order because that doctrine 'applies both to issues expressly decided by a court in prior rulings and to issues decided by *necessary implication.*' " **\*405** *Id.* (citing *Bolden v. SEPTA,* 21 F.3d 29, 31 (3d Cir.1994) (emphasis added)).

> FN3. The section provides:
> (e)(1) ... [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured, the claim of a creditor, to the extent that--
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.
> 11 U.S.C. SS 502(e)(1), (e)(1)(B).

This appeal presently before us presents an even stronger reason for the application of the doctrine of law of the case and I.O.P. 9.1, given the prior panel issued a written opinion holding that the "improper motive" was the correct rule of law to apply. The prior panel was required to determine whether the actions of the supervisors, as alleged by plaintiff, violated a clearly established constitutional right that was sufficiently clear to a reasonable government official. Inherent in this inquiry is the determination of whether the supervisors' actions rose to a level of a substantive due process violation; if the alleged actions were insufficient to amount to a violation, the supervisors' actions could not violate a clearly established constitutional right. Resolution of the question of the correct standard to apply in the

context of a municipal land use case based upon the summary judgment record was integral to the Court's analysis in affirming the District Court's denial of summary judgment on the question of qualified immunity. Despite footnote 2 of the prior panel's opinion, we are bound under law of the case doctrine and I.O.P. 9.1 by this Court's prior approval of the District Court's application of the "improper motive" standard.

## II.

In addition to my belief that law of the case doctrine controls in this matter, I further disagree with the proposition that *only* "shocks the conscience" language may be used to analyze municipal land-use context substantive Due Process cases.

First, the Majority's reliance on *Lewis* is misguided. *Lewis* was a high speed police chase case where the resulting injury was death. That scenario is extremely far afield from the factual setting we have here. The *Lewis* Court was not presented with a choice between "improper motive" or "shocks the conscience" in the unique arena of Fourteenth Amendment-protected property rights as they relate to local land use decisions. Rather, the Supreme Court reviewed the case for a carefully delineated reason and described the issue for review narrowly. More specifically, the Court "granted certiorari ... to resolve a conflict among the Circuits over the standard of culpability on the part of a law enforcement officer for violating substantive due process in a pursuit case." *Lewis*, 523 U.S. at 839, 118 S.Ct. 1708; *see also id.* at 836, 118 S.Ct. 1708 ("The issue in this case is whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender."). Although finding that the "shocks the conscience" standard is "not inappropriate to an excessive force claim in the context of a prison disturbance," we acknowledged in *Fuentes v. Wagner,* 206 F.3d 335 (3d Cir.2000), *cert. denied,* 531 U.S. 821, 121 S.Ct. 63, 148 L.Ed.2d 29 (2000), that "our recent decisions suggest that the ['shocks the conscience'] standard may only apply to police pursuit cases," *id.* at 348 (citations omitted).

Second, the Majority opinion gives far too little weight to the fact that this Circuit has a well-established jurisprudence employing the improper motive test in the substantive Due Process land-use context. The cases are legion. *See Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988) (seminal case); *DeBlasio v. Zoning Board of Adjustment,* 53 F.3d 592 (3d Cir.1995); *Blanche Road Corp. v. Bensalem Township,* 57 F.3d 253 (3d Cir.1995); *Sameric Corp. of Del., Inc. v. City of Philadelphia,* 142 F.3d 582 (3d Cir.1998); *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118 (3d Cir.2000); *Herr v. Pequea Township,* 274 F.3d 109 (3d *406 Cir.2001); *see also Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685 (3d Cir.1993). Moreover, and perhaps most importantly, this Court has continued to apply and cite to the "improper motive" test even after the decision in Lewis was handed down. *See Doby v. DeCrescenzo,* 171 F.3d 858 (3d Cir.1999); *Woodwind,* 205 F.3d 118; *Nicholas v. Pennsylvania State University,* 227 F.3d 133 (3d Cir.2000); *Khodara Envtl., Inc. v. Beckman,* 237 F.3d 186 (3d Cir.2001); *Omnipoint Communications Enters., L.P. v. Zoning Hearing Bd.,* 248 F.3d 101 (3d Cir.2001); *Herr,* 274 F.3d 109.

Unlike the Majority, I am fully comfortable assuming that this Court in *Woodwind* and *Nicholas* (as in any other case it decides) was completely aware of the content of all published Supreme Court case law that may bear on the case at hand, especially in such a fundamental area as Due Process. Had the *Woodwind* or *Nicholas* Courts felt that *Lewis* precluded the use of the improper motive standard of constitutionally tortious conduct, they surely would have expressed that point. They did not do so. The Majority relies on the fact that the *Woodwind* Court never mentioned *Lewis*. True enough. But the Majority overlooks the fact that other Third Circuit cases do mention *Lewis*. In fact, when Judge Alito's opinion in *Nicholas* is read, it answers the question addressed by him today, with the opposite result. The *Nicholas* Court, citing approvingly to *Bello* and *Woodwind,* affirmatively states that "improper motive" is an appropriate substantive Due Process test. It references *Lewis* in saying that "shocks the conscience" is also an appropriate test. As United Artists points out, the standard is clearly stated in the disjunctive:

> [W]e have held that a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by *improper*

316 F.3d 392                                                                                   Page 12
(Cite as: 316 F.3d 392, *406)

*motive*," *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 123 (3d Cir.2000) (quoting *Bello v. Walker,* 840 F.2d 1124, 1129 (3d Cir.1988)), or by means of government conduct so egregious that it "shocks the conscience," *Boyanowski [v. Capital Area Intermediate Unit,* 215 F.3d 396 (3d Cir.2000) ] (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).
*Nicholas,* 227 F.3d at 139 (emphasis added).

Judge Alito's explanation of post-*Lewis* Third Circuit jurisprudence in *Nicholas* was not an isolated summary of the extant law. One year later, in *Khodara,* he cited authoritatively to his opinion in *Nicholas* for the proposition that a substantive Due Process claim is made out with "improper motive." The *Khodara* Court was certainly aware of the existence of *Lewis* because, like the *Nicholas* Court, it actually cites *Lewis* in the *same* paragraph where it recognizes "improper motive" as a valid Due Process standard. *See Khodara,* 237 F.3d at 197.

Whether or not our post-*Lewis* statements are dicta need not detain us. These are affirmations by our Court stating or alluding to the law being that it is a violation of substantive due process for public officials to act intentionally with an improper motive.

Third, tossing every substantive Due Process egg into the nebulous and highly subjective "shocks the conscious" basket is unwise. [FN4] It leaves the door ajar for intentional *407 and flagrant abuses of authority by those who hold the sacred trust of local public office to go unchecked. "Shocks the conscience" is a useful standard in high speed police misconduct cases which tend to stir our emotions and yield immediate reaction. But it is less appropriate, and does not translate well, to the more mundane world of local land use decisions, where lifeless property interests (as opposed to bodily invasions) are involved. [FN5] In this regard, it appears rather difficult to analogize the intentional and illegal denial of a building permit to the forced pumping of the human stomach, the infamous fact pattern that begat "shocks the conscience" as a term of constitutional significance. *See Rochin v. California,* 342 U.S. 165, 172-73, 72 S.Ct. 205, 96 L.Ed. 183 (1952). It is the jurisprudential equivalent of a square peg in a round hole. Yet, under the Majority opinion, it is with this awkward analogy that our district courts will now struggle. The confusion and potential for disparate results across the districts will haunt us for years to come. It is our manifest responsibility as an appellate tribunal to prevent that quagmire by providing a clear standard for the bench and bar. Our "improper motive" line of land use cases serves that purpose and, even after *Lewis,* this Court has not impugned its vitality. I see no legitimate reason to abandon it now.

> FN4. Not long ago, this Court, sitting en banc, described the shocks the conscience test as "amorphous" and "imprecise." *Fagan v. City of Vineland,* 22 F.3d 1296, 1308 (3d Cir.1994) (*en banc*). The improper motive test, however, has been applied numerous times in this Circuit, appears to work well, and the Supreme Court has never indicated that such a standard is inappropriate in the land use context.
>
> FN5. I have never seen a movie or television show devoted to the workaday world of zoning and planning. Visual entertainment based on high speed police pursuit, and the riveting events of criminal law and procedure, however, is commonplace.

I agree with the Majority that land use decisions are generally issues of "local concern." But those very same decisions *necessarily* assume constitutional dimension when the calculated, intentional and deliberate abuse of government power is at hand. *See Lewis,* 523 U.S. at 846, 118 S.Ct. 1708 ("the Due Process Clause was intended to prevent government officials from abusing [their] power ....") (citations omitted); *Id.* at 848-49, 118 S.Ct. 1708 (intentional conduct by government official falls at the polar end of Tort law's "culpability spectrum" in substantive Due Process cases); *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ( "Historically, [the] guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty or property") (emphasis in original) (citations omitted); *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government") (citations omitted). The concern that the federal Judiciary will become a local zoning board takes a permanent back seat to the federal Judiciary's obligation to protect the core constitutional freedoms of the American public from

316 F.3d 392
(Cite as: 316 F.3d 392, *407)

Page 13

*deliberate* and *intentional* governmental deprivation.

In sum, I would hold fast to the scheme that is already firmly entrenched in this Circuit: In land use constitutional tort cases, the government's conduct may be judged under an "improper motive" framework. The evisceration of this standard by the Majority today is a most unfortunate step backwards in the evolution of S 1983 as the legislative guardian of bedrock constitutional rights. I am deeply concerned that there will be consequences.

### III.

Even if "shocks the conscience" is the language we must employ to the exclusion ***408** of any other (which it is not), the alleged behavior in this case resolutely shocks the conscience. Public officials, sworn to uphold the law, deliberately extracted money, knowing that it was improper for them to do so. In contemporary America, under compelling norms of basic human decency, it would be shocking that such officials improperly and illegally obtained money in matters that come before them. There is little if any distinction between the taking of money for the purposes alleged in this case, and money taken to line the officials' individual pockets. For all of the foregoing reasons, I must dissent.

316 F.3d 392

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works