# ORIGINAL

**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA**

DAVID B. CORNEAL AND
SANDRA Y. CORNEAL

FILED
HARRISBURG, PA

: CASE NO. 1:00-CV-1192

vs.

APR 6 2005    *Rambo*

MARY E. D'ANDREA, CLERK

JACKSON TOWNSHIP, et al.   Per _____ Deputy Clerk   JURY TRIAL DEMANDED

**DEFENDANTS' JACKSON TOWNSHIP, W. THOMAS WILSON,
MICHAEL YODER, RALPH WEILER, BARRY PARKS,
DAVID VAN DOMMELEN AND ANN I. WIRTH'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56(c) ON
PLAINTIFFS' SUBSTANTIVE DUE PROCESS AND
STATE LAW CLAIMS**

**NOW COMES** Defendants, Jackson Township, W. Thomas Wilson, Michael

Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth by and

through their counsel of record, Mayer, Mennies & Sherr, LLP and pursuant to

F.R.C.P. 56(c) move that summary judgment be entered in their favor with regard

to Plaintiffs' substantive due process and state law claims, which have been asserted

against them by Plaintiffs and in support of their Motion, Defendants aver the

following:

1.     On June 30, 2000, Plaintiffs, David and Sandra Corneal filed a

Complaint in the United States District Court for the Middle District of Pennsylvania

against Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph

Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth.

2.      Jackson Township is a second class township of approximately 816 residents located in Huntingdon County, Pennsylvania,[1] the annual local tax base of Jackson Township is approximately $22,000.00.[2]

3.      The Board of Supervisors of Jackson Township meet monthly and the members include Defendants, W. Thomas Wilson, Michael Yoder and Ralph Weiler.

4.      The Township Secretary is Defendant, Ann I. Wirth, the Township Sewage Enforcement Office is Defendant, Barry Parks and the Building Permit Officer is Defendant, David Van Dommelen.

5.      The Township Solicitor is Larry Newton.  Attorney Newton only attends the monthly Township meetings when requested by the Board of Supervisors due to fiscal constraints.  (Exhibit "2").

6.      In approximately 1997 or 1998, the Board began discussions with regard to the development of subdivision and land development ordinance (hereinafter referred to as "SALDO"); the citizens of Jackson Township requested an ordinance and the Supervisors wanted to foster growth and development through effective and coherent planning in the Township.[3]  (Exhibit "2").

---

[1] A true and correct copy of the deposition testimony of W. Thomas Wilson is contained in the Appendix as Exhibit "1", see p. 114.
[2] A true and correct copy of the Affidavits of W. Thomas Wilson and Ann I. Wirth are contained in the Appendix as Exhibit "2".
[3] A true and correct copy of the deposition testimony of Ann I. Wirth is contained in the Appendix as Exhibit "3", see p. 59.

7.     Thereafter, a two year process ensued wherein a proposed ordinance was drafted and revised with the assistance of Richard Stahl of the Huntingdon County Planning Commission (hereinafter referred to as "HCPC"), the Pennsylvania Association of Township Supervisors (hereinafter referred to as "PSAT") and Solicitor, Larry Newton.[4]  (Exhibit "1", pp. 33 and 104; Exhibit "3", p. 23).

8.     The SALDO was passed at the July 10, 2000 meeting of the Jackson Township Board of Supervisors, along with privy and driveway ordinances.[5]

9.     The meeting was twice advertised prior to July and copies of the proposed ordinances were available at the Daily News, the County Law Library and the Office of the Township Secretary, Ann I. Wirth.[6]

10.     In 1998, the Corneals purchased a tract of land in Jackson Township.[7]

11.     The existing lot included a house and a barn, (Exhibit "7", p. 24), and there was a stream that ran across Plaintiffs' property.  (See Exhibit "7", pp. 47-48).

12.     In the fall of 1999, Plaintiffs hired Mr. David Simpson to perform a

---

[4] A true and correct copy of the deposition testimony of Larry Newton is contained in the Appendix as Exhibit "4", see pp. 22 and 37.
[5] A true and correct copy of the Minutes of the July 2000 meeting of the Board of Supervisors of Jackson Township is contained in the Appendix as Exhibit "5".
[6] A true and correct copy of the Daily News ads regarding the July 2000 meeting and adoption of the SALDO and other ordinances along with proof of publication for the July meeting is contained in the Appendix as Exhibit "6".
[7] A true and correct copy of the deposition testimony of Plaintiff, David Corneal is contained in the Appendix as Exhibit "7", see p. 21.

survey of the property and to prepare sewage modules. (Exhibit "7", pp. 31, 35 and 57-58).

13.    Mr. Corneal testified that he thought that Mr. Simpson was aware of the requirements to develop property in the Township and that he relied upon Simpson in this regard. (Exhibit "7", p. 57).

14.    Pursuant to Simpson's advice, the Corneals contacted Defendant, Barry Parks, the Sewage Enforcement Officer of Jackson Township in order to perform tests to identify the portions of their property, if any, which were suitable for an on-lot septic tank. (Exhibit "7", pp. 33 and 57-58).

15.    Mr. Corneal hired Eagle Excavation to dig the sewage test pits, which is owned, in part, by Supervisor Thomas Wilson.

16.    During the time when the test pits were dug, Mr. Corneal testified that Mr. Wilson advised him that while there were no subdivision requirements in the Township, Mr. Corneal needed the SEO's approval on the sewage pit locations, which then had to be submitted to the Township. (Exhibit "7", pp. 56-57).

17.    Mr. Wilson testified that at some point, he advised Mr. Corneal that if he was going to subdivide, he should do it before the year 2000 because the Township had been working on an ordinance. (Exhibit "1", p. 50).

18.    Mr. Parks signed the initial percolation tests.[8]

19.    In January 2000, approximately six months prior to the adoption of the SALDO, the Board imposed a moratorium on subdivision development.[9]

20.    In preparing a subdivision proposal for the Corneals, Mr. Simpson testified that initially Mr. Corneal expressed a desire to lay out approximately nine lots.[10]

21.    Mr. Simpson contacted the Township Secretary on or about January 25, 2000 in order to determine the date of the Township's next monthly meeting; he recalled that Ms. Wirth may have informed him that the Township was working on adopting a Township subdivision ordinance and that there was a moratorium on new subdivisions within the Township. (Exhibit "10", p. 16). Mr. Simpson conveyed this information to Mr. Corneal. (Exhibit "10", p. 16).

22.    Mr. Simpson completed the initial subdivision plan on February 4, 2000. (Exhibit "10", p. 17).

23.    Mr. Corneal then presented the initial set of subdivision plans or sketches to the Board of Supervisors at the February 7, 2000 meeting.[11]

---

[8] A true and correct copy of the Notes of Testimony of Barry Parks, Township Sewage Enforcement Officer is contained in the Appendix as Exhibit "8", see p. 57.

[9] A true and correct copy of the January 4, 2000 Minutes are contained in the Appendix as Exhibit "9".

[10] A true and correct copy of the Notes of Testimony of David Simpson is contained in the Appendix as Exhibit "10", see p. 6.

[11] A true and correct copy of the Minutes of the Jackson Township Board of Supervisors meeting dated February 7, 2000 is contained in the Appendix as Exhibit "11".

24.     At that time, Mr. Corneal was advised that there was a moratorium on subdivision development in the Township.  (Exhibit "1", p. 81; Exhibit "9").

25.     Also, two other subdivision plans were held in abeyance.  (Exhibit "3", pp. 124-125; Exhibit "8", pp. 123-124).

26.     Mr. Corneal then submitted the initial subdivision plans or sketches to the Huntingdon County Planning Commission for review, which he alleges the Township advised him to do, but which the February Minutes indicate that he requested permission to do.  (Exhibit "7", p. 80; Exhibit "11").

27.     Township Solicitor, Larry Newton testified that the Board was acting in accordance with practice and procedure utilized in Huntingdon County.  (Exhibit "4", p. 93).

28.     Ms. Wirth testified that individuals proposing subdivisions routinely send their proposals to Richard Stahl at the HCPC.  (Exhibit "3", pp. 118-119).

29.     Mr. Wilson testified that the Township works very closely with the DEP since Jackson Township is an area rich in trout streams and protection of those streams is an important concern of the Township.  (Exhibit "1", pp. 90-91).

30.     Mr. Simpson testified, "... that in any subdivision, Townships Supervisors were required by the Pennsylvania DEP to review and approve

6

subdivision plans whether or not they had an ordinance, this was strictly in compliance with the Department of Environmental Protection policies." (Exhibit "10", p. 23).

31.    By letter dated February 24, 2000, the Huntingdon County Planning Commission recommended denial of Plaintiffs' initial plans or sketches.[12]

32.    On April 3, 2000, at the meeting of the Township Supervisors, Mr. Corneal requested that the Supervisors sign sewage modules.[13]

33.    Mr. Corneal stated that he was no longer sub-dividing and would like 3to build a studio and at the same time requested a permit for a privy and a building permit on that date; the Supervisors advised Mr. Corneal that they were not issuing any building permits for a property that they believed was going to be subdivided until they passed the SALDO. (Exhibit "13").

34.    The SEO, Mr. Parks, told Mr. Corneal that he could not use a privy on his property at that time because the Corneals had piped water on the property and water under pressure, (Exhibit "8", pp. 64-66) and under DEP regulations, this precluded use of a privy. (Exhibit "8", pp. 64-65).

35.    Mr. Parks testified that he may have told Mr. Corneal that Parks would

---

[12] A true and correct copy of the letter dated February 24, 2000 from the Huntingdon County Planning Commission to Ms. Ann Wirth is contained in the Appendix as Exhibit "12".
[13] A true and correct copy of the Minutes of the Jackson Township Board of Supervisors meeting dated April 3, 2000 is contained in the Appendix as Exhibit "13".

try to think of a way in which Corneal could use a privy under the regulations. (Exhibit "8", pp. 66-67).

36.     Four days after the April Township meeting where Mr. Corneal stated that he was not longer subdividing, Mr. Corneal's plans were revised by Simpson at Corneal's request on April 7, 2000.

37.     The new draft included only two proposed lots: one small lot with the existing house and a barn, and a second lot, which was the remainder of the property, provided for the construction of an apartment, garage and/or art studio; this was Corneal's third proposal of which required subdividing.[14]

38.     Corneal then submitted his proposed subdivision dated April 7, 2000 to the Huntingdon County Planning Commission for review.

39.     By letter dated April 20, 2000, the Huntingdon County Planning Commission "recommended" conditional approval of the revised plan, pending adoption of the subdivision and land development ordinance by Jackson Township.[15]

40.     The subdivision plan was never presented to the Township.

41.     On or about April 27, 2000, Mr. Corneal requested a building permit

---

[14] A true and correct copy of the plan of proposed subdivision, dated April 7, 2000, is contained in the Appendix as Exhibit "14".
[15] A true and correct copy of the letter dated April 20, 2000 from the Huntingdon County Planning Commission to Ms. Ann Wirth of Jackson Township is contained in the Appendix as Exhibit "15".

from the Township Permit Officer, David Van Dommelen.[16]

42.    While Mr. Van Dommelen testified that previously the Supervisors had instructed him not to give Mr. Corneal a building permit because Mr. Corneal had not done the "proper steps for subdividing and he also had not obtained the correct permission for septic systems," Van Dommelen did call Supervisor Wilson when Mr. Corneal was at his home.  (Exhibit "16", pp. 47-49).

43.    Mr. Van Dommelen reported that he was advised not to issue a building permit as Mr. Corneal had not subdivided properly and he had not gotten the correct septic tank approval.

44.    Mr. Van Dommelen reiterated that even if Corneal wanted to build one structure on one piece of property, it is still a subdivision because of the existing farmhouse structure.  (Exhibit "16", p. 49; Exhibit "8", pp. 21-23 and 28-38).

45.    Mr. Van Dommelen testified that Mr. Corneal indicated that he intended to build a four-bay garage with an art studio on top of it, which Mr. Van Dommelen believed required septic use. (Exhibit "16", pp. 66-67).

46.    In fact, when Mr. Corneal came to Mr. Van Dommelen's home, the only drawings he had with him were for a four-stall garage, with a second story for

---

[16] A true and correct copy of the Notes of Testimony of David Van Dommelen is contained in the Appendix as Exhibit "16".

a studio.  (Exhibit "16", p. 66).

47.    In spite of the moratorium, Mr. Corneal began construction on his property in the spring of 2000, including construction of his driveway without the requisite permits.

48.    On July 10, 2000, the Township adopted the subdivision and land development ordinance as well as a driveway ordinance and a holding tank ordinance.

49.    After the adoption of these ordinances, the moratorium on subdivision development was extinguished.

50.    However, even after the moratorium on development was extinguished, Plaintiff did not seek either subdivision approval or appropriate permits for the continued construction on his property.

51.    Mr. Corneal never asserted his rights to state court proceedings, including an action in mandamus or an appeal of the actions of the Board of Supervisors.

52.    On July 28, 2000, Township Solicitor Larry Newton forwarded a letter to the Corneals advising them that they were in violation of the Township's building permit ordinance since they had begun construction on their property without first

obtaining the requisite building permits.[17]

53.    On August 3 and 18, 2000, Mr. Corneal requested the appropriate applications from Mr. Newton.[18]

54.    On August 29, 2000, Mr. Newton forwarded the Jackson Township building permit application to Mr. Corneal, along with permit fee information.[19]

55.    On August 31, 2000, Mr. Corneal forwarded a letter to the Township Secretary, Ann Wirth enclosing three building permit applications along with a check for each.[20]

56.    On September 1, 2000, Mr. Corneal forwarded the rough drawings of the art studio and the house, which were not enclosed with the previous building permit applications.[21]

57.    On October 10, 2000, Mr. Corneal's applications were denied because a building permit cannot be issued without a sewage permit and because he failed to comply with the Township subdivision and land development ordinance as well as

---

[17] A true and correct copy of the letter dated July 28, 2000 is contained in the Appendix as Exhibit "17".
[18] A true and correct copy of the letter dated August 3, 2000 from David Corneal to Larry Newton is contained in the Appendix as Exhibit "18"; a true and correct copy of the letter from David Corneal to Larry Newton dated August 18, 2000 is contained in the Appendix as Exhibit "19".
[19] A true and correct copy of the letter dated August 29, 2000 from Larry Newton to David Corneal is contained in the Appendix as Exhibit "20".
[20] A true and correct copy of this correspondence from Corneal to Wirth dated August 31, 2000 is contained in the Appendix as Exhibit "21".
[21] A true and correct copy of the letter from Corneal to Wirth dated September 1, 2000 is contained in the Appendix as Exhibit "22".

11

for other inadequacies.[22]

58.    Subsequently, on or about October 19, 2000, the Township was forced to file a Complaint in the Court of Common Pleas of Huntingdon County to enjoin the Corneals from any and all construction on their property based on their failure to comply with the dictates of the Pennsylvania Sewage Facilities Act, 35 P.S. §750.7 and the Township's building permit ordinance.[23]

59.    On November 10, 2000, the Corneals appealed the Building Permit Officer's decision of October 10, 2000.[24]

60.    After the appeal was filed Corneal hired Attorney, Terry Williams to represent him; Solicitor Newton contacted Mr. Williams in order to attempt to resolve outstanding issues.  (Exhibit "4", p. 122).

61.    All of Mr. Williams' involvement was after the filing for a Temporary Restraining Order by the Township.[25]

62.    On or about November 14, 2000, the parties met at the Huntingdon County Courthouse.  (Exhibit "23"; Exhibit "25", pp. 51-55).

---

[22] A true and correct copy of the letter from David Van Dommelen to Mr. and Mrs. Corneal dated October 10, 2000 is contained in the Appendix as Exhibit "23".

[23] A true and correct copy of the Complaint in the Court of Common Pleas of Huntingdon County is attached to the Appendix as Exhibit "24".

[24] A true and correct copy of the letter dated November 10, 2000 from Terry J. Williams, Esquire to the Jackson Township Board of Supervisors is contained in the Appendix as Exhibit "25".

[25] A true and correct copy of the Notes of Testimony of Terry J. Williams, Esquire is contained in the Appendix as Exhibit "26", see p. 61.

63.     The Minutes of the December 4, 2000 meeting of the Jackson Township Board of Supervisors reflect as follows, "... the Supervisors had a meeting with Mr. Corneal's attorney and our attorney and Mr. Corneal is to comply with all permitting and provide the Township with a new plot plan by December 31, 2000."[26]

64.     The parties also agreed that the driveway connection with the roadway needed to be repaired and Mr. Williams indicated that it would be done in the spring.[27]

65.     On February 5, 2001, Attorney Williams submitted a driveway application and a land development application for the Township's review on behalf of the Corneals.[28]

66.     Pursuant to the subdivision and land development ordinance, Plaintiffs submitted an original mylar site plan and building footprint made to Township scale on March 23, 2001.[29]

67.     On April 2, 2001, Attorney Williams submitted two sewage planning modules; one for each of the two approved sites at the new home location, although the one site for which a sand mound septic system was designed used the wrong site

---

[26] A true and correct copy of the Minutes of the December 4, 2000 meeting is contained in the Appendix as Exhibit "27".

[27] A true and correct coy of the Minutes of the January 2, 2001 meeting are contained in the Appendix as Exhibit "28".

[28] A true and correct copy of a letter dated February 5, 2001 from Attorney Williams to Ann Wirth of Jackson Township is contained in the Appendix as Exhibit "29".

[29] A true and correct copy of a letter dated March 23, 2001 from Attorney Williams to Ann Wirth of Jackson Township is contained in the Appendix as Exhibit "30".

numbers.[30]

68.   On April 2, 2001, Attorney Williams also enclosed building permit applications for the various different buildings.[31]

69.   Through the spring of 2001, Mr. Corneal completed his construction. (Exhibit "4", pp. 122-124).

70.   By the summer of 2001, all of Plaintiffs' applications and various permits had been granted and all outstanding sewage issues had been resolved. (Exhibit "2").

71.   The only remaining claims in this case are Plaintiffs' substantive due process claims and their state law claims for civil conspiracy against the individual Defendants and for alleged violations of the Pennsylvania Constitution.

72.   Defendants now move this Court for summary judgment on these claims.

73.   Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c).

74.   However, "... the mere existence of some alleged factual dispute

---

[30] A true and correct copy of a letter dated April 2, 2001 from Attorney Williams to Ann Wirth of Jackson Township is contained in the Appendix as Exhibit "31".
[31] A true and correct copy of the applications for building permits dated April 2, 2001 are contained in the Appendix as Exhibit "32".

between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

75.     Rule 56(c) mandates that the entry of summary judgment against a party who fails to produce evidence sufficient to establish an essential element of its case, on which he will bear the burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

76.     The undisputed material facts of record demonstrate that Plaintiffs had not been deprived of their substantive due process rights.

77.     "The touchstone of due process is protection of the individual against arbitrary action of the government." See County of Sacramento v. Lewis, 523 U.S. 833, 845, 118 S. Ct. 1708 (1998) (citation omitted).

78.     However, as the Lewis Court determined, "... only the most egregious official conduct can be said to be arbitrary in the Constitutional sense." Id.

79.     In this regard, the Supreme Court has concluded that, "... the substantive component of the due process clause is violated by executive action only when it, '... can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" Lewis, 523 U.S. at 47, 118 S. Ct. 1708.

80.   Based on the foregoing, the Third Circuit has recently rejected the less demanding "improper motive" standard previously employed in land use cases and adopted the "shocks the conscience" standard. See United Artists Theatre, Inc. v. Township of Warrington, Pa., 316 F.3d 392 (3d Cir. 2003).

81.   In order to prove a violation of substantive due process, in cases involving executive action, the Plaintiff must show that the state acted in a manner that "shocks the conscience." See Schieber v. City of Phila., 320 F.3d 409, 417 (3d Cir. 2003).

82.   Negligence is not enough to shock the conscience under any circumstances. Schieber, 320 F.3d at 419.

83.   Economic and social legislation is subject to rational basis review, wherein a law need only be rationally related to a legitimate state interest in order to be constitutional. Shumaker v. Nix, 965 F.2d 1262, 1266 (3d Cir. 1992).

84.   In this case, the law or regulation at issue is the moratorium on new development and, at the time the Jackson Township Board of Supervisors imposed the moratorium on new subdivisions, moratoriums were endorsed by the Courts. See Naylor v. Township of Hellum, 717 A.2d 629, 633 (Pa. Cmwlth. 1998), reversed 565 Pa. 397, 773 A.2d 770 (2001).

16

85.     At the relevant time period, this legislative scheme or regulation clearly comported with notions of substantive due process.

86.     There is no evidence, which demonstrates that Defendants' actions were so egregious as to shock the conscience of this Court.

87.     There is absolutely no record evidence that the moratorium was enacted for any improper purpose.

88.     The record evidence also demonstrates that there were no improper actions taken by Township officials, which in any way interfered with Plaintiffs' land development; rather, the record evidence demonstrates only that Jackson Township relied heavily on the advice of HCPC as well as that of the Department of Environmental Protection.

89.     Further, DEP, by way of the Sewage Facilities Act, requires review and approval of proposed subdivisions.  See 35 P.S. §750.2 and §750.7.

90.     In this regard, the Township's insistence on proper sewage tests, modules and permits was not capricious, but rather was mandated by DEP standard and regulations.

91.     Also, Mr. Wilson testified that the Supervisors were not sure as to what Mr. Corneal's plans were at any given time because he had "several stories",

17

(Exhibit "1", pp. 127-128), and represented that he was not subdividing his property when he submitted several proposals to the HCPC all of which were proposals for subdivision of his property.

92.  Mr. Corneal apparently also requested a permit for a privy and a building permit on April 3, 2000.

93.  The Supervisors advised Mr. Corneal that they were not issuing any building permits for a property they believed was going to be subdivided.  (Exhibit "11".

94.  Again, the Supervisors, at the time, believed they had properly and lawfully enacted a subdivision moratorium based on their Solicitor's advice.

95.  Even if Mr. Corneal wanted to build one structure on one piece of property, such would constitute a subdivision because of the existing farmhouse structure.  (Exhibit "16", p. 49).

96.  The undisputed testimony demonstrates that the Supervisors, as well as the various Township Enforcement Officers, believed that the second lot would require septic use and, as such, required both that approval as well as appropriate subdivision approval.

97.  Mr. Corneal ultimately did construct an apartment on top of the garage,

18

without the requisite permits and/or approval. (Exhibits "21", "22" and "26", pp. 10, 14 and 26).

98. Even after the expiration of the moratorium, Mr. Corneal did not present subdivision plans to the Township nor did he seek appropriate permits until the Township advised him to cease and desist the construction on his property.

99. Although Mr. Corneal ultimately filed applications for certain permits with the Township, he did not cease construction until such time as the Township was forced to file for a temporary restraining order to cease construction on his property.

100. Once Mr. Corneal properly submitted the appropriate applications with supported documentation where required, his applications were granted, indeed, no proper application was ever denied.

101. The first compliant applications were received in February 2001, and by the late spring or early summer of 2001, all of Defendants' applications and various permit requests had been granted, and all outstanding sewage issues had been resolved.

102. In sum, the record evidence fails to demonstrate that the Defendants' actions in any way rise to level of executive abuse of power as that which "shocks

the conscience" of this Court sufficient to sustain a substantive due process violation.

103.   On this basis, their Motion for Summary Judgment must be granted.

104.   Additionally, the individual Defendants are entitled to qualified immunity since "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

105.   The question is whether a reasonable official could have believed his conduct was lawful in light of clearly established law and the information the official possessed. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

106.   In Brown v. Grabowski, the Third Circuit Court of Appeals interpreted the Anderson, supra, standard to require the Court to examine the specific conduct of each Defendant claiming qualified immunity. Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990).

107.   There is absolutely no evidence of record that the individual Defendants, including the members of the Board of Supervisors, the Township Building Permit Officer, Sewage Enforcement Officer and the Township Secretary

acted in any way other than reasonably in this matter particularly in light of the facts of record and that each of the individual Defendants believed that the building moratorium was lawful.

108.   Accordingly, based on their reasonable behavior under the circumstances, Defendants are entitled to qualified immunity and must be dismissed from this action with prejudice.

109.   Finally, Defendants are entitled to summary judgment on Plaintiffs' state law claims.

110.   Because the federal claims against Defendants must be dismissed, the decision to entertain or dismiss the supplemental state law claims is within this Honorable Court's discretion.  28 U.S.C. §1367(c)(3).

111.   Courts should ordinarily decline to exercise supplemental jurisdiction over state claims when the federal claims are dismissed.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Bibby v. Phila. Coca-Cola Bottling Co., 85 F. Supp. 2d 509, 519 (E.D. Pa. 2000).

112.   This Court should exercise its discretion to dismiss Plaintiffs' state law claims.

113.   Alternatively, should this Court consider Plaintiffs' state law claims,

they are not viable.

114.  The undisputed material facts of record fail to demonstrate a civil conspiracy against the individual Defendants.  <u>Skipworth by Williams v. Lead Industries Assoc.</u>, 547 Pa. 224, 690 A.2d 169, 174 (1997); <u>McKeeman v. CoreStates Bank</u>, 751 A.2d 655, 659 (Pa. Super. 2000).

115.  Finally, Count IV of Plaintiffs' Amended Complaint, which purportedly alleges state constitutional claims likewise, fails since Commonwealth constitution does not grant a cause of action for alleged violations of its provisions.

**WHEREFORE**, Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth respectfully request that this Honorable Court grant their Motion for Summary Judgment and dismiss this action with prejudice.

**MAYERS, MENNIES & SHERR, LLP**

BY: _____
ANTHONY R. SHERR, ESQUIRE
Attorney for Defendants

3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440
(610) 825-0300
Fax (610) 825-6555