# ORIGINAL

FILED
HARRISBURG, PA

APR 8 1 2003

MARY E. [ ]
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL AND        :
SANDRA Y. CORNEAL           :     CASE NO. 1:00-CV-1192
                            :
        vs.                 :     (JUDGE RAMBO)
                            :
JACKSON TOWNSHIP, et al.    :     JURY TRIAL DEMANDED

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

### MAYERS, MENNIES & SHERR, LLP

BY: _____

ANTHONY R. SHERR, ESQUIRE
Attorney for Defendants

3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440
(610) 825-0300
Fax (610) 825-6555

# TABLE OF CONTENTS

Page Number

I.   STATEMENT OF THE CASE......................................................1

II.  ARGUMENT............................................................... 10

    A.   LEGAL STANDARD........................................................ 10

    B.   THE UNDISPUTED MATERIAL FACTS OF RECORD
        DEMONSTRATE THAT PLAINTIFFS HAVE NOT BEEN
        DEPRIVED OF THEIR SUBSTANTIVE DUE PROCESS
        RIGHTS..........................................................................11

    C.   INDIVIDUAL DEFENDANTS ARE ENTITLED TO
        ABSOLUTE AND QUALIFIED IMMUNITY.......................19

    D.   DEFENDANTS ARE ENTITLED TO SUMMARY
        JUDGMENT ON PLAINTIFFS' STATE LAW CLAIMS....... 22

III. CONCLUSION........................................................ 24

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Creighton, 483 U.S. 635 (1987) .........................................20

Bibby v. Phila. Coca Cola Bottling Co., 85 F. Supp. 2d 509
  (E.D. Pa. 2000).........................................................................24

Brown v. Grabowski, 922 F.2d 1097 (3d Cir. 1990) ...............................20

Celotex v. Catrett, 477 U.S. 317 (1986) ...............................................10

County of Sacramento v. Lewis, 523 U.S. 833 (1998) .............................11

Good v. Dauphin County Social Services, 891 F.2d 1087 (3d Cir. 1989)........23

Grant v. City of Pittsburgh, 98 F.3d 116 (3d Cir. 1996)...........................21

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ...........................................20

Malley v. Briggs, 475 U.S. 335 (1986) ................................................21

Mitchell v. Forsyth, 472 U.S. 511 (1995). ...........................................21

Naylor v. Township of Hellam, 717 A.2d 629 (Pa. Cmwlth. 1998). .............21

Pellagatti v. Cohen, 536 A.2d 1337 (Pa. Super. 1987). ...........................25

Schieber v. City of Phila., 320 F.3d 409 (3d Cir. 2003) ...........................12

Skipworth by Williams v. Lead Industries Assoc., 547 Pa. 224, 690 A.2d
  169 (1997) .............................................................................25

United Artists Theatre, Inc. v. Township of Warrington, Pa., 316 F.3d
  392 (3d Cir. 2003)....................................................................11

United Mine Workers v. Gibbs, 383 U.S. 715 1966)................................. 24

**Statutes**

28 U.S.C. §1367(c)(3). ……………………………………………………………24

35 P.S. §§750.2 and 750.7 …………………………………………………………13

42 U.S.C. §1983 …………………………………………………………………26

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL AND                      :
SANDRA Y. CORNEAL                          :        CASE NO. 1:00-CV-1192
                                                          :
        vs.                                      :
                                                          :
JACKSON TOWNSHIP, et al.               :        JURY TRIAL DEMANDED

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

The only remaining claims are Plaintiffs' substantive due process claim and their state law claims for civil conspiracy against the individual defendants and for alleged violations of the Pennsylvania Constitution. However, the undisputed material facts of record demonstrate that none of the Defendants' actions "shocks the conscience." Similarly, the record evidence demonstrates that the state law claims are not viable.[1] Accordingly, Defendants' Motion for Summary Judgment must be granted.

## I.  STATEMENT OF THE CASE

Pursuant to this Court's Order of March 19, 2003 Defendants have filed a Motion for Summary Judgment on the remaining claims. Defendants incorporate by reference that Motion, including the recitation of facts therein, as if more fully set forth herein.

---

[1] The Individual Defendants are entitled to qualified immunity.

In approximately 1997, the Board began discussions with regard to the development of subdivision and land development ordinance (hereinafter referred to as "SALDO"); the township citizens requested an ordinance and the Supervisors wanted more coherent planning in the Township.[2]  (Exhibit "16", _infra_, p. 53). Thereafter, a two year process ensued wherein a proposed ordinance was drafted and revised with the assistance of Richard Stahl of the Huntingdon County Planning Commission (hereinafter referred to as "HCPC"), the Pennsylvania Association of Township Supervisors and Solicitor, Larry Newton.[3]  (Exhibit "1", pp. 33 and 104; Exhibit "3", p. 23).  The SALDO was passed at the July 10, 2000 meeting of the Jackson Township Board of Supervisors, along with privy and driveway ordinances.[4]

In 1998, the Corneals purchased a tract of land in Jackson Township, which included an existing house and barn.[5]  In the fall of 1999, Plaintiffs hired David Simpson to perform a survey of the property and to prepare sewage modules. (Exhibit "7", pp. 31, 35 and 57-58).  Corneal testified that he relied upon Simpson with respect to legal requirements. (Exhibit "7", p. 57).  Pursuant to Simpson's advice, the Corneals contacted Defendant, Barry Parks, the Sewage Enforcement Officer of Jackson Township in order to perform tests to identify the portions of

---

[2] Exhibit "3", p. 59.
[3] Exhibit "4", pp. 22 and 37.
[4] Exhibit "5".
[5] Exhibit "7", pp. 8, 21, 47-48.

their property, if any, which were suitable for an on-lot septic system. (Exhibit "7", pp. 33 and 57-58). Mr. Parks signed the initial percolation tests.[6] Parks reviewed and signed sewage modules on February 19, 2000. (Exhibit "8", p. 57).

In January 2000, approximately six months prior to the adoption of the SALDO, the Board imposed a moratorium on new subdivision development.[7]

Mr. Simpson testified that initially Mr. Corneal expressed a desire to lay out approximately nine lots.[8] (Exhibit "10", p. 14). Mr. Simpson completed the initial subdivision plan on February 4, 2000, which provided for a three-lot subdivision. (Exhibit "10", p. 17). Mr. Corneal then presented the initial set of subdivision plans or sketches to the Board of Supervisors at the February 7, 2000 meeting.[9] (Exhibit "7", p. 59). At that time, Mr. Corneal was advised that there was a moratorium on subdivision development in the Township. (Exhibit "1", p. 81; Exhibit "9"). Two other subdivisions were held in abeyance. (Exhibits "3", pp. 124-125 and "8", pp.123-124).

Mr. Corneal submitted the initial subdivision sketches to the Huntingdon County Planning Commission for review. (Exhibit "7", p. 80; Exhibit "10"). Mr. Simpson testified, "... that in any subdivision, Townships Supervisors were required

---

[6] Exhibit "8", p. 57.
[7] Exhibit "9".
[8] Exhibit "10", p. 6.
[9] Exhibit "11".

3

by the Pennsylvania DEP to review and approve subdivision plans whether or not they had an ordinance, this was strictly in compliance with the Department of Environmental Protection policies." (Exhibit "10", p. 23). By letter dated February 24, 2000, the Huntingdon County Planning Commission recommended denial of Plaintiffs' initial plans or sketches.[10]

A second plan was submitted a proposal for a subdivision to the HCPC. (Exhibit "15"). This proposal also was for a three-lot subdivision. (Exhibit "15").

On April 3, 2000, at the meeting of the Township Supervisors, Mr. Corneal requested that the Supervisors sign sewage modules.[11] With respect to the sewage modules, "... the Supervisors would not sign them [the sewage modules] because we [the Board] didn't have the subdivision plan or anything." (Exhibit "1", p. 121). Mr. Wilson stated that the Supervisors, "... were not signing five sewer modules for one house." (Exhibit "1", p. 127).

Corneal stated that he was no longer sub-dividing and would like to build a studio and at the same time requested a permit for a privy and a building permit on that date; the Supervisors advised Mr. Corneal that they were not issuing any

---

[10] Exhibit "12".
[11] Exhibit "13".

4

building permits for a property that they believed was going to be subdivided until they had passed the SALDO. (Exhibit "13"). Mr. Parks told Mr. Corneal that due to conditions on his property DEP regulations precluded use of a privy. (Exhibit "8", pp. 64-65

Four days after the April Township meeting where Mr. Corneal stated that he was no longer subdividing, Simpson revised Mr. Corneal's plans. The new draft, dated April 7, 2000, included only two proposed lots: one small lot with the existing house and a barn, and a second lot, which was the remainder of the property, provided for the construction of an apartment, garage and/or art studio.[12] (Exhibit "4", pp. 85-86). This was Mr. Corneal's third proposal, all of which required the subdivision approval.

Corneal submitted a plan dated April 7, 2000, to the Huntingdon County Planning Commission. The proposal included plans for a house and a studio on Lot 2. (Exhibit "14"). By letter dated April 20, 2000, the Huntingdon County Planning Commission recommended conditional approval of the revised plan, pending adoption of the subdivision and land development ordinance by Jackson Township.[13] This subdivision plan was never presented to the Township.

---

[12] Exhibit "14".
[13] Exhibit "15".

On or about April 27, 2000, Mr. Corneal requested a building permit from the Township Permit Officer, David Van Dommelen.[14] Corneal arrived at Mr. Van Dommelen's house in order to request a permit, Mr. Van Dommelen asked him, "... what are you building," and Mr. Corneal reportedly said, "... a garage and a house." (Exhibit "16", pp. 46-47). At that time, Mr. Corneal's plans apparently included an apartment and/or art studio above a garage. (Exhibit "14"). Mr. Van Dommelen stated that he denied Mr. Corneal's request for a building permit because Mr. Corneal did not have proper documentation for a subdivision and sewage. (Exhibit "16", pp. 17, 44, 55 and 119).

Mr. Van Dommelen reiterated that even if Corneal wanted to build one structure on one piece of property, it would still be a subdivision because of the existing structure. (Exhibit "16", p. 49; Exhibit "8", pp. 21-23 and 28-38). Mr. Van Dommelen admitted that during Mr. Corneal's visit to Van Dommelen's home he referred to Mr. Corneal as a "trouble making yuppie from over the mountain," but testified that this was based on Mr. Van Dommelen's belief that Mr. Corneal, "... behaves like someone who wants to get their own way and in his age group." (Exhibit "16", pp. 72-73).

Thereafter, Mr. Van Dommelen received a letter from Mr. Corneal dated

---

[14] Exhibit "16".

May 5, 2000, which purportedly requested a permit for a garage, which presumably would not include septic use.

In spite of the moratorium and without any required permits, Mr. Corneal began construction on his property in the spring of 2000, including construction of his driveway. Soon thereafter, on or about June 30, 2000, Plaintiffs filed this purported civil rights action in the United States District Court for the Middle District of Pennsylvania. Mr. Corneal never asserted his right to state court proceedings, including an action in mandamus or an appeal of the actions of the Board of Supervisors.

On July 10, 2000, the Township adopted various ordinances, including the SALDO. The moratorium on subdivision development was extinguished. Plaintiff did not seek either subdivision approval or appropriate permits for the continued construction on his property.

On July 28, 2000, Township Solicitor Newton advised the Corneals that they were in violation of the Township's building permit ordinance since they had begun construction on their property without first obtaining the requisite building permits,[15] and requested that they cease and desist any and all further construction until a building permit is obtained.

---

[15] Exhibit "17".

7

On August 3 and 18, 2000, Mr. Corneal requested the appropriate applications from Mr. Newton.[16] On August 29, 2000, Mr. Newton forwarded the Jackson Township building permit application to Mr. Corneal, along with permit fee information,[17] and again requested that Mr. Corneal cease any and all construction until a building permit is obtained. (Exhibit "20"). The Solicitor advised the Corneals that, "… the Supervisors have instructed me to initiate legal proceedings against you," unless the Corneals provided written confirmation that construction had ceased. (Exhibit "20").

On August 31, 2000, Mr. Corneal forwarded a letter to the Township Secretary, Ann Wirth enclosing three building permit applications along with a check for each.[18] On September 1, 2000, Mr. Corneal forwarded the rough drawings of the art studio and the house, which were not enclosed with the previous building permit applications.[19]

On October 10, 2000, Mr. Corneal's applications were denied because a building permit cannot be issued without a sewage permit and because he failed to comply with the Township subdivision and land development ordinance as well as

---

[16] Exhibits "18" and "19".
[17] Exhibit "20".
[18] Exhibit "21".
[19] Exhibit "22".

for other inadequacies.[20]  Subsequently, on or about October 19, 2000, the Township was forced to file a Complaint in the Court of Common Pleas of Huntingdon County to enjoin the Corneals from any and all construction on their property based on their failure to comply with the dictates of the Pennsylvania Sewage Facilities Act, 35 P.S. §750.7 and the Township's building permit ordinance.[21]   On November 10, 2000, the Corneals appealed the Building Permit Officer's decision of October 10, 2000.[22]

After the appeal was filed Corneal hired Attorney, Terry Williams to represent him. Solicitor Newton contacted Mr. Williams in order to attempt to resolve outstanding issues.   (Exhibit "4", p. 122).   All of Mr. Williams' involvement was after the filing for a Temporary Restraining Order by the Township.[23]  Mr. Williams described his role as follows:

> My client is [was] in the process of constructing buildings
> without a permit and my goal was to find out what the
> Township wanted us to do to get those permits issued.

(Exhibit "25", p. 61).   On or about November 14, 2000, the parties met at the Huntingdon County Courthouse.  (Exhibit "23"; Exhibit "25", pp. 51-55). The Minutes of the December 4, 2000 meeting of the Jackson Township Board of

---

[20] Exhibit "23".
[21] Exhibit "24".
[22] Exhibit "25".
[23] Exhibit "26", p. 61.

9

Supervisors reflect as follows, "... the Supervisors had a meeting with Mr. Corneal's attorney and our attorney and Mr. Corneal is to comply with all permitting and provide the Township with a new plot plan by December 31, 2000."[24]

By the spring of 2001, Mr. Corneal completed his construction. (Exhibit "4", pp. 122-124). By the summer of 2001, all of Plaintiffs' applications and various permits had been granted and all outstanding sewage issues had been resolved. (Exhibit "2"). Mr. Corneal by that summer had completed all construction on his property and the structure has been occupied since that time.

## II.   ARGUMENT

### A.   LEGAL STANDARD

Summary Judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. 56(c). Rule 56(c) mandates the entry of Summary Judgment against a party who fails to produce evidence sufficient to establish an essential element of its case, on which he will bear the burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

---

[24] Exhibit "27".

10

**B.   THE UNDISPUTED MATERIAL FACTS OF RECORD DEMONSTRATE THAT PLAINTIFFS HAVE NOT BEEN DEPRIVED OF THEIR SUBSTANTIVE DUE PROCESS RIGHTS**

"The touchstone of due process is protection of the individual against arbitrary action of the government." See County of Sacramento v. Lewis, 523 U.S. 833, 845, 118 S. Ct. 1708 (1998) (citation omitted). However, as the Lewis Court determined, "... only the most egregious official conduct can be said to be arbitrary in the Constitutional sense." Id. In this regard, the Supreme Court has concluded that, "... the substantive component of the due process clause is violated by executive action only when it, '... can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" Lewis, 523 U.S. at 47, 118 S. Ct. 1708. The Third Circuit recently rejected the less demanding "improper motive" standard previously employed in land use cases and adopted the "shocks the conscience" standard. See United Artists Theatre, Inc. v. Township of Warrington, Pa., 316 F.3d 392 (3d Cir. 2003). In order to prove a violation of substantive due process, in cases involving executive action, the Plaintiff must show that the state acted in a manner that "shocks the conscience." See Schieber v. City of Phila., 320 F.3d 409, 417 (3d Cir. 2003). Negligence is not enough to shock the conscience under any circumstances. Schieber, 320 F.3d at 419.

11

In summary, the undisputed material facts demonstrate the following actions with respect to Mr. Corneal's property:

(1) Informing Mr. Corneal in February 2000 that the Board was not considering new subdivision proposals as a result of a moratorium;

(2) Refusal to sign sewer modules in April of 2000, again because it would constitute subdivision approval;

(3) Refusal to issue permits in April of 2000 because subdivision approval was necessary;

(4) Filing an action with the Huntingdon County Court of Common Pleas requesting an Order requiring Corneal to cease and desist construction activities until he had complied with DEP regulations and statutes as well as local ordinances.

The record evidence thus demonstrates that there were no improper actions taken by the Township officials, which in any way improperly interfered with Plaintiffs' land development. There were no subdivisions approved during the moratorium; indeed, others, besides Mr. Corneal were held in abeyance. (Exhibit "3", pp. 124-125, Exhibit "8", pp. 123-124).

DEP, by way of the Sewage Facilities Act, requires review and approval of

12

proposed subdivisions regardless of local regulation. (See 35 P.S. §§750.2 and 750.7). Simpson testified, "... that in any subdivision, the Township Supervisors were required by the Pennsylvania DEP to review and approve subdivision plans whether or not they had an ordinance. This was strictly in compliance with the Department of Environmental Protection policies." (Exhibit "10", p. 23). In this regard then, the Township's insistence on proper sewage tests, modules and permits was not capricious or "conscience shocking," but rather was mandated by DEP standard and regulations. (Exhibit "8", pp. 21-23, 28-30; 35 P.S. §750.7 et seq.).

When Mr. Corneal purchased the property, it included an already existing house and a barn. (Exhibit "7", p. 24). Mr. Corneal originally intended to subdivide his property into five or six lots. (Exhibit "7", p. 41). Mr. Simpson testified that initially Mr. Corneal expressed the desire to lie out approximately nine lots. The initial subdivision plan proposed three lots. The revised plan, dated April 7, 2000 included only two proposed lots, but Lot 2 provided for a house and a studio. (Exhibit "14").

While Mr. Parks approved the initial sewage modules, the Supervisors did not sign the proposed sewage modules, as Mr. Corneal requested, at their April 3, 2000 meeting. The Supervisors did not sign the sewage modules because they did not have

any subdivision plan. (Exhibit "1", p. 121). Also, Wilson testified that the Supervisors, "... were not signing five sewer modules for one house." (Exhibit "1", p. 127). Mr. Wilson testified the Supervisors were unsure as to what Mr. Corneal's plans were at any given time because he had "several stories." (Exhibit "1", pp. 127-128).

While Mr. Corneal apparently also requested a permit for a privy and a building permit on April 3, 2000, the Supervisors advised Mr. Corneal that they were not issuing any building permits for a property they believed was going to be subdivided. (Exhibit "13"). Although Mr. Corneal claimed that he was no longer interested in subdividing, he submitted subdivision proposals to the HCPC in March 2000 just before the April township meeting. Four days after the meeting, where he represented that he was no longer interested in subdividing, he had his subdivision plans revised. This version proposed a two lot subdivision. Again, he resubmitted the proposal to the HCPC. He never provided this proposal to the Township. In sum, the Supervisors' refusal to sign the proposed sewage modules at this juncture, while the moratorium was still in effect and where the proposed development created by default a subdivision due to the existing structure, was neither arbitrary nor capricious, such that it "shocks the conscience" of the Court.

With regard to the privy permit, Mr. Parks testified that Mr. Corneal could not use a privy on his property at that time because the Corneals had piped water on the property and also, water under pressure, presumably due to the existing farmhouse. (Exhibit "8", pp. 64-66). Mr. Parks determined that under DEP regulations, this precluded use of a privy. (Exhibit "8", pp. 64-65). Certainly, this denial has a rational factual and legal basis and in no way "shocks the conscience."

In late April, after the HCPC recommended conditional approval of Corneal's revised proposal pending the adoption of the SALDO, Corneal requested a building permit. Mr. Van Dommelen testified that he inquired of Mr. Corneal what he was building and Mr. Corneal reportedly said "a garage and a house." (Exhibit "16", pp. 46-47). While Mr. Van Dommelen testified that previously the Supervisors instructed him not to give Mr. Corneal a building permit because Mr. Corneal had not done the "proper steps for subdividing and he also had not gotten the correct permission for septic systems," Mr. Van Dommelen did call Supervisor Wilson while Mr. Corneal was at his home. (Exhibit "16", pp. 47-49). Mr. Van Dommelen reportedly was advised not to issue a building permit since Mr. Corneal had not subdivided properly and he had not obtained the correct septic tank approval. Notably, the Building Permit Ordinance provides that no permit shall issue

15

unless all other requirements of this and all other codes and ordinances have been met, including all necessary State and Federal permits. (Exhibit "24"). As Mr. Van Dommelen testified, even if Mr. Corneal wanted to build one structure on one piece of property, such would constitute a subdivision because of the existing farmhouse structure. (Exhibit "16", p. 49). While Mr. Corneal forwarded a letter to Mr. Van Dommelen, dated May 5, 2000, which purportedly requested a permit only for a garage which presumably would not include septic use, Mr. Van Dommelen testified that essentially, "... it was difficult to keep track of when he [Mr. Corneal] was saying what." The undisputed testimony that the Supervisors, as well as the various Township Enforcement Officers, believed that the second lot would require septic use and, as such, required both that approval as well as appropriate subdivision approval.

Mr. Corneal ultimately did construct an apartment on top of the garage, without the requisite permits and/or approval. (Exhibits "21" and "22"). On this basis, the Supervisors' and/or the Officers' decisions with regard to Mr. Corneal's requests were not without a rational factual basis. Indeed, with the expiration of the moratorium, Mr. Corneal did not seek to comply with the requisite ordinances until the Solicitor sent him a cease and desist on July 28, 2000. (Exhibit "17"). While

16

Mr. Corneal's initial building applications, dated 9/01/00, were denied, he failed to comply with the requirements of various ordinances. For example, he did not have the requisite sewage permits, and failed to comply with the driveway ordinance and various portions of the SALDO as detailed in the denial letter. (Exhibit "23").

In any case, Corneal continued construction and the Township filed suit to enjoin the same and to force compliance with the Sewage Facilities Act and the Building Permit Ordinance. (Exhibit "24"). Ultimately, Mr. Corneal, through his attorney, agreed to comply with the permit requirements, to reconstruct the driveway, and to submit a new plot plan, sewage modules, and building applications. (Exhibits "27" and "28"). Specifically, in December 2000, Mr. Corneal agreed to submit a new plot plan and to repair the driveway in the spring. Id. As Corneal properly submitted each application, they were granted. In February, 2001, Attorney Williams submitted applications for a driveway and land development. (Exhibit "29"). On March 2001, he submitted a site plan and building footprint drawn to scale. (Exhibit "30"). In April 2001, Mr. Williams submitted two sewage modules, although one required correction, and building permit applications for various buildings. (Exhibits "31" and "32"). By the June meeting of 2001, Mr. Bowes, a Sewage Enforcement Officer retained by Mr. Corneal through Mr. Williams

17

determined that the sewage modules were satisfactory. As such, the Township intended to forward them on to the Department of Environmental Protection. (Exhibit "4", pp. 122-124). By the summer of 2001, all of Plaintiffs' applications and various permits, which had only properly been submitted on or after February 2001, had been granted and all outstanding sewage issues had been resolved. (Exhibit "2"). Mr. Corneal, by that summer, had completed all construction on his property and the structure has been occupied since that time.

In sum, the record evidence fails to demonstrate that Defendants' actions were "conscience shocking," such that Plaintiffs can demonstrate a claim for a substantive due process violation. Ultimately, in fact, Mr. Corneal did construct a garage with an apartment on top of it and did so without the requisite permits. He only complied with the permit process after legal action was instituted by the Township.

The Supervisors, Township Secretary, and the Municipal Ordinance Officers did not act arbitrarily, but rather their actions were always rationally based on legitimate governmental concerns. Therefore, the undisputed material facts of record demonstrate that Defendants' actions were not so egregious as to shock the conscience of the Court, and, as such, Defendants' Motion for Summary Judgment must be granted.

## C.  **INDIVIDUAL DEFENDANTS ARE ENTITLED TO ABSOLUTE AND QUALIFIED IMMUNITY**

The Supreme Court held, in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982), that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." In <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987), the Court explained that to defeat immunity it is not sufficient that the right at issue be clearly established as a general matter. The question is whether a reasonable official could have believed his conduct was lawful in light of clearly established law and the information the official possessed. 483 U.S. at 641. The Court of Appeals for the Third Circuit interpreted the <u>Anderson</u> standard in <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111 (3d Cir. 1990), <u>cert. denied</u> 501 U.S. 1218 (1991), to require the Court to examine the specific conduct of each Defendant claiming qualified immunity. Essentially, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). Qualified immunity is a question of law, which should be determined at the earliest stages of litigation. <u>Grant v. City of Pittsburgh</u>, 98 F.3d 116, 122 (3d Cir. 1996). "The entitlement is an immunity from suit rather than a mere defense to liability; and ...

19

it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1995).

There is absolutely no evidence of record that the individual Defendants, including the members of the Board of Supervisors, the Township Building Permit Officer, Sewage Enforcement Officer and the Township Secretary acted in anyway other than reasonably in this matter. The information possessed by these individuals would lead a reasonable person to believe that their conduct was lawful. At the time, the Township Board of Supervisors had enacted a moratorium on new development. Moratoria were permissible under the Municipality Planning Code. See Naylor v. Township of Hellam, 717 A.2d 629 (Pa. Cmwlth. 1998). Indeed, the Supreme Court did not reverse the Commonwealth's decision in Naylor, supra, until June 2001, which was almost one year after the Jackson Township moratorium was lifted with the adoption of the SALDO. See Naylor v. Hellam, 565 Pa. 397, 773 A.2d 770 (2001). Defendants did not violate a known right of Plaintiffs' knowingly or improperly. There is absolutely no record evidence that other developers and/or individual property owners were given subdivision approval or allowed to begin development of subdivided property without subdivision approval. All of the Supervisors' actions stem from their reasonable belief that the moratorium in effect

20

was lawful.   As the April 3, 2000 Minutes of the Jackson Township Board of Supervisors indicate, the Supervisors advised Mr. Corneal that they were not issuing any building permits for a property that they believed was going to be subdivided. (Exhibit "13").

With regard to the Sewage Enforcement Officer, Defendant, Barry Parks, the record evidence demonstrates that he acted reasonably.  Mr. Parks testified that he signed the initial percolation test.  Eventually, Mr. Parks received the proposed sewage modules from Mr. Simpson and after reviewing them, signed the same. (Exhibit "8", p. 57).  Parks testified that he denied the privy permit because DEP regulations precluded use of a privy.  (Exhibit "8", pp. 64-66).  Mr. Parks acted reasonably and lawfully.

Mr. Van Dommelen's testimony indicates, Mr. Corneal was without proper documentation for a building permit.  (Exhibit "16", pp. 17, 45, 55).  Also, Mr. Van Dommelen believed that Mr. Corneal's most recent plans included a garage with an apartment and/or studio, which he believed required septic use.  As such, under the Sewage Facilities Act, subdivision approval would be required.  35 P.S. 750.1 et seq. Mr. Van Dommelen stated, "... we would assist him [Mr. Corneal] if he did the proper things."  (Exhibit "16", p. 114).  At the time, based on the

21

moratorium, and the facts known to Mr. Van Dommelen, the evidence demonstrates that he acted reasonably and is entitled to qualified immunity.

Based on the foregoing and particularly in light of the fact that each of the individual Defendants believed that the building moratorium was lawful, there is no record evidence from which a jury could conclude that the reasonable officials in the Supervisors', Secretary's, Mr. Park's and Mr. Van Dommelen's position at the relevant time could have believed that their conduct was unlawful. See Good v. Dauphin County Social Services, 891 F.2d 1087, 1092 (3d Cir. 1989). Accordingly, based on the reasonable behavior under the circumstances, Defendants are entitled to qualified immunity, and must be dismissed from this action with prejudice.

### D.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' STATE LAW CLAIMS

Because the federal claims against the Defendants must be dismissed, the decision to entertain or dismiss the supplemental state law claims is within this Honorable Court's discretion. 28 U.S.C. §1367(c)(3). Courts should ordinarily decline to exercise supplemental jurisdiction over state claims when the federal claims are dismissed. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Bibby v. Phila. Coca Cola Bottling Co., 85 F. Supp. 2d 509, 519 (E.D. Pa.

2000). This Honorable Court should exercise its discretion to dismiss Plaintiffs'
state law claims.

Alternatively, should this Court consider Plaintiffs' state law claims, they are
not viable. With regard to Plaintiffs' state law civil conspiracy claim, the Complaint
must allege the following:

> (1) Combination of two or more persons acting with a
>     common purpose to do an unlawful act or to do a
>     lawful act by unlawful means or for an unlawful
>     purpose;
> (2) Overt act done in pursuance of common purpose;
> (3) Actual legal damage.

McKeeman v. CoreStates Bank, 751 A.2d 655, 659 (Pa. Super. 2000).

Additionally, "... absent a civil cause of action for a particular act, there can be no
cause of action for civil conspiracy to commit that act." McKeeman, 751 A.2d at
659, citing Pellagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. 1987). Proof of
malice or intent to injure is essential to the proof of a conspiracy. Skipworth by
Williams v. Lead Industries Assoc., 547 Pa. 224, 690 A.2d 169, 174 (1997).

Defendants' actions do not constitute any unlawful acts. They acted in
accordance with a belief that a Township moratorium on new development was
lawfully imposed. Absent a cause of action, there can be no conspiracy based on
the acts. Plaintiffs substantive due process rights were not violated in this case, and

any conspiracy based on the same fails. Finally, the record evidence fails to demonstrate that any of the Defendants acted maliciously in this matter. Accordingly, Defendants' Motion for Summary Judgment on Count II of Plaintiffs' Complaint must be granted.

In Count IV of Plaintiffs' Amended Complaint, they purportedly allege state constitutional claims. However, the Commonwealth Constitution does not grant a cause of action for alleged violations of its provisions and there is no state court analog to 42 U.S.C. §1983 under which Plaintiffs may proceed; therefore, Defendants' Motion for Summary Judgment on the state constitutional claims must be granted. In any case, where Plaintiffs' federal substantive due process claim fails, so would any state law claim based on the same right or protection.

## III.   CONCLUSION

For all the foregoing reasons, Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth respectfully request that this Honorable Court grant their Motion for

Summary Judgment and dismiss this action with prejudice.

Respectfully submitted,

**MAYERS, MENNIES & SHERR, LLP**

BY: _____

ANTHONY R. SHERR, ESQUIRE
Attorney for Defendants

3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440
(610) 835-0300
Fax (610) 825-6555

# CERTIFICATE OF COMPLIANCE

I, Anthony R. Sherr, Esquire, counsel for Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth pursuant to the Local Rules of the Middle District of Pennsylvania, Rule 7.8(b)(2), hereby certify that my office utilizes the word processing software Microsoft Word 1998.  That program has the ability to provide a word count of a document.  According to that word count, I certify that the Brief of Defendants/Appellants has 5,000 words and, therefore, complies with the word count requirement.

Respectfully submitted,

**MAYERS, MENNIES & SHERR LLP**

BY: _____
ANTHONY R. SHERR, ESQUIRE
3031 Walton Road
Building A, Suite 330
P. O. Box 1547
Blue Bell, PA 19422-0440
(610) 825-0300
FAX (610) 825-6555