# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

APR 1 2003

DAVID B. CORNEAL AND
SANDRA Y. CORNEAL

CASE NO. 1:00-CV-1192

vs.

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

JACKSON TOWNSHIP, et al

JURY TRIAL DEMANDED

### DEFENDANTS, JACKSON TOWNSHIP, W. THOMAS WILSON, MICHAEL YODER, RALPH WEILER, BARRY PARKS, DAVID VAN DOMMELEN AND ANN I. WIRTH'S CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

1.    Jackson Township is a second class township of approximately 816 residents located in Huntingdon County, Pennsylvania.[1]

2.    The annual local tax base of Jackson Township is approximately $22,000.00 (Wirth Affidavit, Exhibit "2").

3.    Attorney Newton only attends the monthly Township meetings when requested by the Board of Supervisors. (Wirth Affidavit, Exhibit "2").

4.    The Board began discussions with regard to the development of a subdivision and land development ordinance in response to the citizens of Jackson Township's request for the same, and in order to foster growth and harmonious development through effective and coherent planning in the Township. (Wilson

---

[1] All references to the parts of the record that support the statements proposed in the Concise Statement of Material Facts above shall be references to the Exhibits contained in the Appendix to Defendants' Motion for Summary Judgment and Memorandum of Law in Support of the same, and are further delineated in the footnotes contained therein; see Exhibit "1", Wilson Deposition, p. 114.

Affidavit, Exhibit "2").

5.    A proposed subdivision and land development ordinance was drafted and revised over a two year period with the assistance of Richard Stahl of the Huntingdon County Planning Commission, the Pennsylvania Association of Township Supervisors and Solicitor, Larry Newton. (Exhibit "1", pp. 33 and 104; Exhibit "3", p. 23, Exhibit "4", pp. 22 and 37).

6.    In 1998, the Corneals purchased a tract of land in Jackson Township which included a house and a barn; additionally, there was a stream that ran across the property. (Exhibit "7", pp. 21, 24 and 47-48).

7.    David Simpson was hired by David Corneal to perform a survey of the property and to prepare sewage modules. (Exhibit "7", pp. 31, 35 and 57-58).

8.    Corneal relied on Mr. Simpson with regard to the requirements necessary to develop property in Jackson Township. (Exhibit "7", p. 57).

9.    Pursuant to Simpson's advice, the Corneals contacted Defendant, Barry Parks, the Sewage Enforcement Officer of Jackson Township in order to perform tests to identify the portions of their property, if any, which were suitable for an on-lot septic tank. (Exhibit "7", pp. 33, 57-58).

10.    Corneal engaged Eagle Excavation to dig the sewage test pits, which

2

is owned, in part, by Supervisor W. Thomas Wilson. (Exhibit "7", pp. 55-57).

11.   Mr. Wilson advised Mr. Corneal that if he was going to subdivide, he should do it before the year 2000 because the Township had been working on an ordinance. (Exhibit "1", p. 50).

12.   Mr. Parks signed the percolation tests. (Exhibit "8", p. 57).

13.   After receiving the proposed sewage modules from Mr. Simpson, Mr. Parks reviewed and signed them. (Exhibit "8", p. 57).

14.   In January 2000, six months prior to the adoption of the SALDO, the Board imposed a moratorium on subdivision development. (Exhibit "9").

15.   The earliest completed plan for the Corneal property is February 4, 2000. (Exhibit "10", p. 17).

16.   Corneal presented the initial set of subdivision plans or sketches to the Board of Supervisors at the February 7, 2000 meeting. (Exhibit "11").

17.   Corneal was advised that there was a moratorium on subdivision development in the Township. (Exhibit "1", p. 81; Exhibit "9").

18.   Corneal submitted the initial subdivision plans or sketches to the Huntingdon County Planning Commission for review. (Exhibit "7", p. 80; Exhibit "11").

3

19.    Individuals proposing subdivisions routinely sent their proposals to Richard Stahl at the Huntingdon County Planning Commission.  (Exhibit "3", pp. 118-119).

20.    By letter dated February 24, 2000, the Huntingdon County Planning Commission recommended denial of Plaintiffs' initial plans or sketches.  (Exhibit "12").

21.    On or about March 22, 2000, Plaintiffs apparently submitted a proposal for subdivision to the HCPC for a three-lot subdivision.  (Exhibit "15").

22.    On April 3, 2000, at the meeting of the Township Supervisors, Mr. Corneal requested that the Supervisors sign sewage modules.  (Exhibit "13").

23.    The Supervisors did not sign the sewage modules because they did not have a subdivision plan nor would they sign five sewer modules for one house. (Exhibit "1", pp. 121 and 127).

24.    Corneal requested a permit for a privy and a building permit on April 3, 2000.  (Exhibit "13").

25.    Corneal was advised by the Sewage Enforcement Officer that he could not use a privy on his property because the Corneals had piped water on the property and water under pressure, and under DEP regulations, this precluded use of a privy.

4

(Exhibit "8", pp. 64-66).

26.     Mr. Simpson revised the Corneals plans at Corneal's request on or about April 7, 2000.  (Exhibit "14").

27.     The new draft of the proposed subdivision included two proposed lots: one small lot with the existing house and a barn, and a second lot, which was the remainder of the property, provided for the construction of an apartment, garage and/or art studio.  (Exhibit "14").

28.     Corneal again submitted his proposed subdivision, dated April 7, 2000, to the Huntingdon County Planning Commission for review.  (Exhibit "15").

29.     On April 20, 2000, the Huntingdon County Planning Commission "recommended" conditional approval of the revised plan, pending adoption of the subdivision and land development ordinance by Jackson Township.  (Exhibit "15").

30.     The subdivision plan was never presented to the Township.

31.     On or about April 27, 2000, Mr. Corneal requested a building permit from the Township Permit Officer, David Van Dommelen.  (Exhibit "16").

32.     When Mr. Corneal arrived at Mr. Van Dommelen's house in order to request a permit, Mr. Van Dommelen asked him, "... what are you building," and Mr. Corneal reportedly said, "... a garage and a house".  (Exhibit "16", pp. 46-47).

5

33.     When Mr. Corneal came to Mr. Van Dommelen's home, the only drawings he had with him were for a four-stall garage with a second story for a studio. (Exhibit "16", p. 66).

34.     Mr. Van Dommelen reported that he was advised not to issue a building permit as Mr. Corneal had not subdivided properly and had not gotten the septic tank approval.

35.     Mr. Corneal began construction on his property in the spring of 2000, including construction of his driveway.

36.     On June 30, 2000, Plaintiffs filed the instant civil rights action in the United States District Court for the Middle District of Pennsylvania.

37.     On July 10, 2000, the Township adopted the subdivision and land development ordinance as well as a driveway ordinance and a holding tank ordinance. (Exhibit "5").

38.     After the moratorium on subdivision development expired, Plaintiff did not seek either subdivision approval or appropriate permits for the construction and the continued construction on his property.

39.     On July 28, 2000, the Township forwarded a letter to the Corneals advising them that they were in violation of the Township's building permit

6

ordinance since they had begun construction on their property without first obtaining the requisite building permits, and requesting that they cease and desist construction. (Exhibit "17").

40.   In August, Corneal requested the appropriate applications from Mr. Newton along with permit fee information. (Exhibits "18" and "19").

41.   Mr. Newton forwarded the Jackson Township building permit applications to Mr. Corneal along with permit fee information. (Exhibit "20").

42.   Mr. Corneal was again advised to cease any and all construction until a building permit was obtained. (Exhibit "20").

43.   On August 31, 2000, Corneal forwarded a letter to the Township enclosing three building permit applications along with a check for each. (Exhibit "21").

44.   On September 1, 2000, Corneal forwarded the rough drawings of the art studio and the house, which were not enclosed with the previous building permit applications. (Exhibit "22").

45.   On October 10, 2000, Corneal's applications were denied because a building permit cannot be issued without a sewage permit and because he failed to comply with the Township's subdivision and land development ordinance, among

other things. (Exhibit "23").

46.    On October 19, 2000, the Township filed a Complaint in the Court of Common Pleas of Huntingdon County to enjoin the Corneals from any and all construction on their property based on their alleged failure to comply with the dictates of the Pennsylvania Sewage Facilities Act, 35 P.S. §750.7 and the Township's building permit ordinance. (Exhibit "24").

47.    On November 10, 2000, the Corneals appealed the building permit Officer's decision of October 10, 2000. (Exhibit "25").

48.    On November 14, 2000, the parties met at the Huntingdon County Courthouse. (Exhibit "23"; Exhibit "25", pp. 51-55).

49.    Corneal agreed to comply with all permit requirements and to provide the Township with a new plot plan by December 31, 2000. (Exhibit "27").

50.    The parties agreed that Mr. Corneal's driveway connection with the roadway needed to be repaired and that it would be done in the spring. (Exhibit "28").

51.    On February 5, 2000, Attorney Williams submitted a driveway application and a land development application to the Township on behalf of the Corneals. (Exhibit "29").

52.     On March 23, 2001, Plaintiffs submitted an original mylar site plan and building footprint made to Township scale.  (Exhibit "30").

53.     On April 2, 2001, Attorney Williams submitted two sewage planning modules one for each of the two approved sites at the new home location on behalf of the Corneals.  (Exhibit "31").

54.     On April 2, 2001, Attorney Williams also submitted building permit applications for the various different buildings.  (Exhibit "32").

55.     Mr. Corneal completed his construction through the spring of 2001. (Exhibit "4", pp. 122-124).

56.     By the late spring or summer of 2001, all of Plaintiffs' applications and various permits had been granted and all outstanding sewage issues had been resolved.  (Exhibit "2"; Exhibit "4", pp. 122-124).

57.    To date, there are no outstanding or pending applications for permits for the Corneal property and further, no proper applications were denied.  (Exhibit "2").

**MAYERS, MENNIES & SHERR, LLP**

BY: _____

    ANTHONY R. SHERR, ESQUIRE
    Attorney for Defendants

    3031 Walton Road, Building A
    Suite 330, P.O. Box 1547
    Blue Bell, PA 19422-0440
    (610) 825-0300
    Fax (610) 825-6555
