# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL and SANDRA
Y. CORNEAL,

Plaintiffs

v.

JACKSON TOWNSHIP, et al.,
                    Defendant.

:
:
:
:
:
:
:
:
:
:

No. 1: CV- 00-1192

JURY TRIAL DEMANDED

RAMBO, J.

FILED
HARRISBURG, PA

APR 1 4 2003

MARY E. D'ANDREA, CLERK
Per _____

---

## PLAINTIFFS' APPENDIX OF EXHIBITS TO BRIEF IN OPPOSITION TO DEFENDANTS MOTION FOR LEAVE TO FILE ANSWER

---

A.   Excerpts of Mr. Corneal's deposition transcript dated February 22, 2001

B.   Excerpts from Defendant Wilson's deposition transcript dated May 18, 2001

C.   Fid. & Guar. Ins. Co. v. Keystone Contractors

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC


Bridget E. Montgomery, Esquire
Supreme Court I.D. # 56105
Adam M. Shienvold, Esquire
Supreme Court I.D. #
213 Market Street, Eighth Floor
P.O. Box 1248
Harrisburg, PA 17108-1248
717.237.6000

Date: 4/14/03

Attorney for Plaintiffs, David B. and Sandra Y. Corneal

L0263825

*A*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL AND SANDRA　　　：
Y. CORNEAL,　　　　　　　　　　　：
　　　　　　　　　　PLAINTIFFS　　：
　　　　　　　　　　　　　　　　　：
　　　　　　　VS　　　　　　　　　：　NO.　1:CV-00-1192
　　　　　　　　　　　　　　　　　：
JACKSON TOWNSHIP, HUNTINGDON　　 ：
COUNTY, PENNSYLVANIA, W. THOMAS 　：
WILSON, INDIVIDUALLY AND IN　　　 ：
HIS OFFICIAL CAPACITY AS　　　　　：
SUPERVISOR OF JACKSON TOWNSHIP, 　：
MICHAEL YODER, INDIVIDUALLY AND 　：
IN HIS OFFICIAL CAPACITY AS　　　 ：
SUPERVISOR OF JACKSON TOWNSHIP, 　：
RALPH WEILER, INDIVIDUALLY AND　 ：
IN HIS OFFICIAL CAPACITY AS　　　 ：
SUPERVISOR OF JACKSON TOWNSHIP, 　：
BARRY PARKS, INDIVIDUALLY AND　　 ：
IN HIS OFFICIAL CAPACITY AS　　　 ：
SEWAGE ENFORCEMENT OFFICER OF　　 ：
JACKSON TOWNSHIP, DAVID VAN　　　 ：
DOMMELEN, INDIVIDUALLY AND IN　　 ：
HIS OFFICIAL CAPACITY AS BUILDING：
PERMIT OFFICER, ANN L. WIRTH,　　 ：
INDIVIDUALLY AND IN HER OFFICIAL ：
CAPACITY AS SECRETARY OF JACKSON ：
TOWNSHIP, AND LARRY NEWTON,　　　 ：
INDIVIDUALLY AND IN HIS OFFICIAL ：
CAPACITY AS SOLICITOR TO JACKSON ：
TOWNSHIP,　　　　　　　　　　　　：
　　　　　　　　　　DEFENDANTS　　：


DEPOSITION OF:　DAVID B. CORNEAL

TAKEN BY:　　　　DEFENDANTS

BEFORE:　　　　　PATRICIA C. BARRETT,
　　　　　　　　　REPORTER - NOTARY PUBLIC

DATE:　　　　　　FEBRUARY 22, 2001, 10:45 A.M.

PLACE:　　　　　　ECKERT SEAMANS
　　　　　　　　　213 MARKET STREET, 8TH FLOOR
　　　　　　　　　HARRISBURG, PENNSYLVANIA

1      Q        Would that effect in any way your ability to

2  give testimony here today?

3      A        I am not aware of it.

4      Q        Is there any other reason that you are aware

5  of that you are somehow impeded from giving us the best

6  recollection that you can concerning the events

7  surrounding your complaint?

8      A        Not that I am aware of.

9      Q        Where do you currently reside?

10     A        5205 East Fairmount, F-A-I-R-M-O-U-N-T,

11  Avenue, State College, Pennsylvania.

12     Q        How long have you resided there?

13     A        Since 1983.

14     Q        Who do you reside there with?

15     A        My wife.

16     Q        Anybody else?

17     A        Our children, until they grew up and moved

18  out.

19     Q        How many children do you have?

20     A        Three.

21     Q        They are all out of the house?

22     A        Yes, they are all adults.

23     Q        What is your social security number?

24     A        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.

25     Q        Your wife's full name?

B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL and SANDRA  :
Y. CORNEAL,                 :
     PLAINTIFFS        :
                        :
     VS                :   NO. 1:CV-00-1192
                        :
JACKSON TOWNSHIP, HUNTINGDON :
COUNTY, PENNSYLVANIA; W.    :
THOMAS WILSON, individually :
and in his official capacity :
as Supervisor of Jackson    :
Township; MICHAEL YODER,    :
individually and in his     :
official capacity as       :
Supervisor of Jackson      :
Township; RALPH WEILER,     :
individually and in his     :
official capacity as       :
Supervisor of Jackson      :
Township; BARRY PARKS,      :
individually and in his     :
official capacity as Sewage :
Enforcement Officer of     :
Jackson Township; DAVID     :
VAN DOMMELEN, individually  :
and in his official capacity :
as Building Permit Officer; :
ANN L. WIRTH, individually  :
and in her official capacity :
as Secretary of Jackson    :
Township; and LARRY NEWTON, :
individually and in his    :
official capacity as       :
Solicitor to Jackson      :
Township,             :
     DEFENDANTS        :

        DEPOSITION OF:  W. THOMAS WILSON

        TAKEN BY:      PLAINTIFFS

        BEFORE:       TERESA K. BEAR, REPORTER
                     NOTARY PUBLIC

        DATE:         MAY 18, 2001, 8:43 A.M.

        PLACE:        ECKERT SEAMANS
                     213 MARKET STREET
                     HARRISBURG, PENNSYLVANIA

1    A        Well, that was -- that was to get -- for the

2    sewage officer to set the perc rates, is all --

3    Q        So he was looking for on-lot septic system?

4    A        Yes.

5    Q        On a variety of lots, right?

6    A        Yeah.

7    Q        Did you understand that at the time?

8    A        Yes, yes.

9    Q        Did you actually perform the perc test

10   yourself?

11   A        No.

12   Q        Who did it?

13   A        My crew.

14   Q        Do you recall who from your crew went out and

15   did it?

16   A        No.

17            MS. MONTGOMERY:  Well, let me just consult for

18   one second.

19            (Break taken from 10:01 a.m. until 10:02 a.m.)

20   BY MS. MONTGOMERY:

21   Q        Did Mr. Corneal pay you for doing the work on

22   his property, pay Eagle Excavation for doing that work?

23   A        Yes.

24   Q        He paid all his bills?

25   A        Yes.

Case 1:00-cv-01192-SHR   Document 118-5   Filed 04/14/2003   Page 6 of 10

Source: Legal > / . . . / > **US District Court Cases - 3rd Circuit** ⓘ
Terms: name(fidelity) and date(geq (1/1/2002) and leq (12/31/2002))  (Edit Search)
Focus: **wright and date(geq (1/1/2002) and leq (12/31/2002))**  (Exit FOCUS™)

*2002 U.S. Dist. LEXIS 15403, \**

FIDELITY AND GUARANTY INSURANCE COMPANY, Plaintiff, v. KEYSTONE CONTRACTORS, INC.; KEYTEL DEVELOPMENT CORPORATION; TELFORD RENTALS, INC.; DONALD STAUFFER, Jr.; CYNTHIA STAUFFER; ROBERT J. STAUFFER; AND HEATHER STAUFFER, Defendants.

CIVIL ACTION, NO. 02-CV-1328

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2002 U.S. Dist. LEXIS 15403

**August** 14, 2002, Decided
**August** 14, 2002, Filed; August 15, 2002, Entered

**DISPOSITION:** Keystone's motion to vacate the default judgment was denied, and the motion to stay the proceedings was denied as moot.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff surety issued payment bonds for three construction projects that involved defendants, a construction company, its officers, a development corporation, and a rental company. The surety sued the defendants when they failed to meet their payment obligations. The court entered a default judgment against the defendants under Fed. R. Civ. P. 55(c) and 60(b)(1). The defendants moved to vacate the default judgment and to stay the proceedings.

**OVERVIEW:** The three bonds were issued pursuant to the terms of a General Agreement of Indemnity (GAI) executed between the surety and the defendants, under which the defendants were required to provide the surety with collateral equal to the amount of any monetary reserve which the surety could establish in anticipation of future claims, losses, or other expenses resulting from the execution of the three payment bonds. On the defendants' motion for relief from default judgment, they contested the amount of damages awarded. The court found that under the express terms of the GAI, the defendants had to pay the surety the full amount of the reserve set under the payment bonds in accordance with the default judgment. The surety's payments of the alleged "unspecified and unauthorized" expenses were made in accordance with the express provisions of the GAI, and thus were not evidence of bad faith. The defendants were without a meritorious defense to the claims upon which the default judgment rested. Because the existence of a meritorious defense was a threshold consideration, the absence of such was fatal to the defendants' motion under Fed. R. Civ. P. 60(b) to vacate the default judgment.

**OUTCOME:** The defendants' motion to vacate the default judgment was denied in its entirety. The defendant's motion to stay the proceedings in aid of execution was denied as moot.

**CORE TERMS:** surety, default judgment, meritorious defense, collateral, contractor, collateral security, motion to vacate, disbursements, demanded, default, Federal Rules of Civil Procedure, construction work, indemnification, vacate, conclusionary, unauthorized, unspecified, threshold, incurring, Federal Rule of Civil Procedure, excusable neglect, obligated

Case 1:00-cv-01192-SHR   Document 118-5   Filed 04/14/2003   Page 7 of 10

to indemnify, reasonable expenses, damages awarded, express terms, inadvertence, deposition, memorandum, indemnity, credited

## LexisNexis(TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

Civil Procedure > Pleading & Practice > Pleadings > Time Limitations
**HN1⬇** Fed. R. Civ. P. 12(a)(1)(A) provides that a defendant shall serve an answer within 20 days after being served with the summons and complaint.

Civil Procedure > Early Pretrial Judgments > Default > Relief From Default
**HN2⬇** Although setting aside a default judgment pursuant to Fed. R. Civ. P. 55(c) and 60 (b)(1) is left primarily to the discretion of a district court, the Court of Appeals for the Third Circuit has circumscribed that power of decision with repeated admonitions to dispose of cases on the merits whenever practicable. In accordance with that directive, doubtful cases must be resolved in favor of the party moving to upset the default judgment. That presumption applies a fortiori to matters involving large sums of money. The resolution of a motion to vacate a default judgment under Fed. R. Civ. P. 60(b) is subject to a four factor test, the elements of which are: (1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions. Of the four factors, a meritorious defense is the sine qua non for overturning a default judgment, if the defendant cannot win at trial, there is quite simply no point in setting aside the default judgment. The manner in which the district court balances all of those factors must be based on explicit findings of fact derived from the pleadings.

Civil Procedure > Early Pretrial Judgments > Default > Relief From Default
**HN3⬇** See Fed. R. Civ. P. 55(c).

Civil Procedure > Early Pretrial Judgments > Default > Relief From Default
**HN4⬇** See Fed. R. Civ. P. 60(b).

Civil Procedure > Early Pretrial Judgments > Default > Relief From Default
**HN5⬇** For purposes of a motion to vacate a default judgment, a meritorious defense exists when the allegations of defendant's answer, if established on trial, would constitute a complete defense to the action. A meritorious defense cannot be fashioned from simple denials and conclusionary statements. Nevertheless, the standard against which a defendant's answer is measured only requires that the proffered defense not be facially unmeritorious.

Contracts Law > Contract Interpretation > Interpretation Generally
Contracts Law > Types of Contracts > Guaranty Contracts
Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem
**HN6⬇** Under general principles of contract interpretation in Pennsylvania, when the words of a contract are clear and unambiguous, the contract is construed as a matter of law from its contents alone. Under Pennsylvania law, where the principal expressly agrees to place the surety company in the funds which it might require before the surety company should be required to make payment on a claim, such a contract is legal, and may be the basis of a recovery. The surety is entitled to specific performance under a collateral security agreement. However, the surety may not reap a windfall by retaining collateral security payments which are not used to pay claims from an obligee.

Contracts Law > Contract Interpretation > Good Faith & Fair Dealing
Contracts Law > Types of Contracts > Guaranty Contracts

*HN7* The standard for "bad faith" of a surety implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. Even gross negligence on the part of a surety in paying a claim or incurring expenses does not satisfy that standard. That a surety has made payments without giving the principal notice is not evidence of bad faith.

Civil Procedure > Early Pretrial Judgments > Default > Relief From Default

*HN8* Because the existence of a meritorious defense is a threshold consideration, the absence of such is necessarily fatal to a motion to vacate a default judgment under Fed. R. Civ. P. 60(b).

**COUNSEL: [*1]** For Fidelity and Guarantee Insurance Company, PLAINTIFF, Andrew W Stutzman, Stadley Ronon Stevens & Young LLP, Philadelphia PA, USA.

**JUDGES:** LOWELL A. REED, Jr., S.J.

**OPINIONBY:** LOWELL A. REED, Jr.

**OPINION:** MEMORANDUM

Reed, S.J.

August 14, 2002

Presently under the consideration of this Court is the motion of defendants Keystone Contractors Inc., Keytel Development Corporation, Telford Rentals Inc., Donald Stauffer Jr., Cynthia Stauffer, Robert J. Stauffer and Heather Stauffer (collectively, "Keystone") for relief from a default judgment pursuant to Federal Rules of Civil Procedure 55(c) and 60(b)(1) and the response from plaintiff Fidelity & Guaranty Insurance Company ("F&GIC") thereto. Keystone has also moved for a stay of proceedings in aid of execution pending the resolution of the motion to vacate the default judgment. For the reasons that follow, Keystone's motion to vacate the default judgment will be denied, and the accompanying motion to stay the proceedings will be denied as moot.

FACTUAL AND PROCEDURAL BACKGROUND

F&GIC is a surety company that underwrote and issued "Payment Bonds" for three construction projects involving Keystone. n1 The three bonds were issued pursuant to the **[*2]** terms of a General Agreement of Indemnity ("GAI") executed between F&GIC and Keystone on May 6, 1999. All three Payment Bonds were issued on behalf of Keystone as the principal. F&GIC issued the first Payment Bond in the amount of $ 1,097,000 to the Upper Merion School District for construction work on the New Roberts school. The second Payment Bond was issued to the Berks Career and Technology Center in the amount of $ 359,000, and a third Payment Bond in the amount of $ 925,000 was issued to Bilt-Rite Contractors, Inc. for construction work on the Owen J. Roberts school. Under the express terms of the GAI, Keystone is obligated to indemnify the surety, F&GIC, against all liability and losses relating to the execution of the three Payment Bonds. The GAI further requires Keystone to provide the surety, F&GIC, with collateral equal to the amount of any monetary reserve which F&GIC may establish in anticipation of future claims, loses or other expenses resulting from the execution of the three Payment Bonds.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n1 The so-called "Payment Bonds" are actually suretyship bonds, with F&GIC acting as the surety, Keystone as the principal and the respective bond holders as the obligees.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[\*3]**

For reasons unknown to this Court, Keystone became financially unable to meet its payment and performance obligations to other contractors and suppliers with which it worked on these construction projects. Accordingly, on April 3, 2001, F&GIC sent a letter by certified mail apprising Keystone of claims in the amount of $ 101,140.21 that had been brought against the New Roberts school and Berks Career and Technology Payment Bonds. Pursuant to the GAI, F&GIC demanded indemnification for these claims and cash or other collateral equal to the reserve of $ 125,000 that it had established under these Payment Bonds. F&GIC sent another letter on January 28, 2002 notifying Keystone that the amount of the reserve had been increased to $ 404,875 in light of claims and reasonable expenses that it had incurred against all three of the Payment Bonds; the letter demanded a cash deposit or other collateral within ten days for the amount held in reserve. Keystone has withheld the required indemnification and reserve payments.

F&GIC filed this action against Keystone on March 15, 2002. All of the defendants were duly served with the complaint by March 28, 2002, and their counsel became aware of the **[\*4]** service upon them by April 1, 2002. F&GIC sought a default judgment on April 19, 2002 after Keystone failed to file a responsive pleading within the statutorily allotted time frame. See **HN1** Fed. R. Civ. P. 12(a)(1)(A) (providing that "a defendant shall serve an answer within 20 days after being served with the summons and complaint ...."). This Court entered a default judgment against Keystone in the amount of $ 404,875 on April 25, 2002; no other equitable or compensatory relief was granted in the judgment. F&GIC issued a Writ of Execution and an accompanying Subpoena for a Deposition in Aid of Execution against the defendants on May 3, 2002. On June 10, 2002 a U.S. Marshall personally served the defendants with the Writ and Subpoena scheduling the depositions for June 18, 2002. The defendants filed this motion for relief from the default judgment and for a stay of the accompanying proceedings in aid of enforcement of the judgement on June 19, 2002.

LEGAL STANDARD FOR VACATING A DEFAULT JUDGEMENT

**HN2** Although setting aside a default judgment pursuant to Federal Rules of Civil Procedure 55(c) and 60(b)(1) is left primarily to the discretion of the District Court, the Court of Appeals **[\*5]** for the Third Circuit has circumscribed that power of decision with repeated admonitions to dispose of cases on the merits whenever practicable. n2 See e.g., Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984); United States v. $ 55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984). In accordance with this directive, doubtful cases must be resolved in favor of the party moving to upset the default judgment. Id. This presumption applies a fortiori to matters involving large sums of money. Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245 (3d Cir. 1951). The resolution of a motion to vacate a default judgment under Rule 60(b) is subject to a four factor test, the elements of which are: (1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions. See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987). Of the four factors, a meritorious defense is the sine qua non for overturning **[\*6]** a default judgment; if the defendant cannot win at trial, there is quite simply no point in setting aside the default judgment. See $ 55,518.05 in U.S. Currency, 728 F.2d at 195. The manner in which the District Court balances all of these factors must be based on explicit findings of fact derived from the pleadings. See Emcasco, 834 F.2d at 74. Because the finding of facts tantamount to a meritorious defense is a threshold determination, I will begin the analysis by considering this factor.

Case 1:00-cv-01192-SHR   Document 116.5   Filed 04/14/2003   Page 10 of 10

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 *HN3* Federal Rule of Civil Procedure 55(c) provides as follows:

> **(c) Setting Aside Default.** For good cause shown the court may set aside an entry of default and, if a judgement by default has been entered, may likewise set it aside in accordance with rule 60(b).

*HN4* Federal Rule of Civil Procedure 60(b) provides in pertinent part:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgement, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect ....

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[*7]**

ANALYSIS n3

- - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3 Parties appear to agree that Pennsylvania law applies in this diversity action. Therefore, this Court will not engage in a conflicts of law analysis.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

*HN5* For purposes of a motion to vacate a default judgment, a meritorious defense exists when the "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." Tozer, 189 F.2d at 244; $ 55,518 in U.S. Currency, 728 F.2d at 195. A meritorious defense cannot be fashioned from "simple denials and conclusionary statements." Ferrostaal Metals Corp. v. Carle Shipping Corp., 1994 U.S. Dist. LEXIS 10, No. 93-3041, 1994 WL 2517, at * 3 (E.D. Pa. 1994) (quoting $ 55,518 in U.S. Currency, 728 U.S. at 195). Nevertheless, the standard against which a defendant's answer is measured only requires that the proffered defense not be "facially unmeritorious." Emcasco, 834 F.2d at 73-74 (quoting Gross v. Stereo Components Systems Inc., 700 F.2d 120,123 (3d Cir. 1983)). **[*8]**

Keystone's proposed answer is replete with simple denials and conclusionary statements. At various points within their proposed answer, defendants attempt to rely upon Federal Rule of Civil Procedure 8(b) in pleading insufficient knowledge or information to form a belief as to the truth of various averments by plaintiff. However, their attempts to deny sufficient knowledge or information on matters clearly within the scope of their knowledge are so blatantly evasive as to be ineffective as denials. See 5 CHARLES A. **WRIGHT** & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1262 (1990). For example, Keystone denies sufficient knowledge or information that they executed the GAI, despite their notarized signatures on the document. (Proposed Answer, P 13; GAI at 4-6.) Similarly, Keystone denies sufficient knowledge or information as to its own financial ability to meet its payment and performance obligations on the relevant contracts, claiming such information was solely within the possession of plaintiff. (Proposed Answer, P 18.) The failure of defendants to comply in good faith with the basic federal pleading rules belies the existence of a