# ORIGINAL
2 to Cd

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL and  :
SANDRA Y. CORNEAL,  :
  :  No. 1: CV-00-1192
       Plaintiffs  :
  :
     v.  :  JURY TRIAL DEMANDED
  :
JACKSON TOWNSHIP, et al.,  :
  :  RAMBO, J.
       Defendants  :

**FILED**
HARRISBURG, PA

APR 1 8 2003

MARY E. D'ANDREA, CLERK
Per _____
           Deputy Clerk

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON SUBSTANTIVE DUE PROCESS AND STATE LAW CLAIMS

Respectfully submitted,

Eckert Seamans Cherin & Mellott, LLC

Bridget E. Montgomery, Esq.
Adam M. Shienvold, Esq.

213 Market Street, 8th Floor
P.O. Box 1248
Harrisburg, PA  17108-1248

# **TABLE OF CONTENTS**

                                                                              **Page**

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ....................................................................... ii

I.     INTRODUCTION .......................................................................... 1

II.    PROCEDURAL HISTORY ............................................................. 2

III.   COUNTER-STATEMENT OF FACTS ............................................ 3

IV.    ARGUMENT ................................................................................ 14

       A.    The Undisputed Material Facts Demonstrate That the
             Defendants Deprived the Corneals of Their Substantive Due
             Process Rights By Deliberately and Maliciously Interfering
             With the Corneals' Right to Use and Enjoy Their Property. ............. 15

       B.    The Individual Defendants Are Not Entitled to Qualified
             Immunity Because No Reasonable Municipal Official Could
             Have Believed That Their Actions Were Lawful.............................. 22

       C.    Defendants Are Not Entitled To Summary Judgment on
             Plaintiffs' State Law Claims................................................. 24

             1.    Plaintiffs Have Established a Genuine Issue of
                   Material Fact As To Their Conspiracy Claim.......................... 24

             2.    This Court Already Has Determined That Plaintiffs
                   Can State a Claim For Violation of the Pennsylvania
                   Constitution. ............................................................. 25

V.     CONCLUSION............................................................................ 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

Betts v. Brady, 316 U.S. 455, 62 S. Ct. 1252, (1942).............................................. 16

Boron Oil Co. v. Kimple, 445 Pa. 327, 284 A.2d 744 (1971).................................. 20

Collins v. Harker Heights, 503 U.S. 115, 112 S. Ct. 1061, (1992) ......................... 15

County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708 (1998).......... passim

DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592 (3d Cir. 1995) ............. 2, 3, 14

Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003)................................ 18, 19

Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002) ................................................ 17, 18

Midnight Sessions, Ltd. v. Phila., 945 F.2d 667 (3d Cir. 1991)........................... 2, 3

Miller v. Philadelphia, 174 F.3d 368 (3d Cir. 1999)............................................... 19

Naylor v. Township of Hellam, 565 Pa. 397, 773 A.2d 770 (2001)....................... 20

Turiano v. Schnarrs, 904 F. Supp. 400 (M.D. Pa. 1995) ........................................ 22

United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir.
    2003) ...................................................................................................... passim

**Statutes**

42 U.S.C. § 1983 ............................................................................... 2, 14, 16, 25

## I.    INTRODUCTION

The purpose behind Summary Judgment is to dispose efficiently of cases where the material facts of record are not genuinely in dispute and, therefore, there is no need to expend the resources of the parties and of the Court on a trial. Defendants, however, have based their motion for summary judgment on an incomplete, inaccurate and misleading "wish list" of facts. Indeed, Defendants even titled their submission "Statement of Material Facts In Support of Their Motion for Summary Judgment" – an appropriate title inasmuch as it excludes the operative word: <u>undisputed</u>. As more fully set forth in Plaintiffs' Answer to Defendants' Statement, few of the "facts" submitted by Defendants are truly "undisputed," and their omissions are far more telling than their inclusions.

Defendants' second summary judgment motion argues that the Third Circuit's recent decision in <u>United Artists v. Township of Warrington</u> establishes as a matter of law that Plaintiffs are not entitled to relief on their substantive due process claims. As more fully set forth below, however, the undisputed facts of record demonstrate that the Defendants' conduct shocks the contemporary conscience and constitutes a deprivation of the Corneals substantive due process right to use and enjoy their Property. Indeed, it is difficult to imagine conduct that is more conscience-shocking, short of using physical violence to prevent the Corneals from developing their land.

1

## II.     PROCEDURAL HISTORY

Plaintiffs incorporate by reference the procedural history set forth in their Initial Summary Judgment Brief, filed with the Court on June 24, 2002.

After consideration of the parties' cross-motions for summary judgment, the Court issued its Opinion and Order dated December 23, 2002 (the "Summary Judgment Opinion"), in which it denied Plaintiffs' Motion for Summary Judgment, and granted, in part, Defendants' Motion for Summary Judgment ("First Motion for Summary Judgment") on the procedural due process component of Plaintiffs' 42 U.S.C. § 1983 claim, on Plaintiffs' claim for intentional interference with contract, and on Plaintiffs' conspiracy claim only as to Jackson Township (the "Township"). The Court, relying on DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592 (3d Cir. 1995), and Midnight Sessions, Ltd. v. Phila., 945 F.2d 667 (3d Cir. 1991), denied Defendants' First Motion for Summary Judgment with regard to Plaintiffs' substantive due process claims under the U.S. and Pennsylvania Constitutions, and their conspiracy claim against the individual Defendants. In the Summary Judgment Opinion, the Court made extensive findings of fact, and concluded that there remained a genuine issue of disputed fact as to the motivation and intent of the Defendants with regard to the Corneals' land development efforts.

The Corneals filed a Motion for Reconsideration, arguing that the Court erred by granting the Defendants' motion for summary judgment on the Corneals'

claim for intentional interference with contract. The Defendants filed a Cross-Motion for Reconsideration on the basis of the Third Circuit's decision in United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003), which issued approximately three weeks after the Summary Judgment Opinion.

By Order dated March 18, 2003, the Court recognized that United Artists overruled DeBlasio and Midnight Sessions, vacated those portions of the Summary Judgment Opinion that denied Defendants' First Motion for Summary Judgment, and directed the Defendants to file a renewed motion for summary judgment on Plaintiffs' substantive due process claim in light of United Artists.[1]

On or about April 1, 2003, the Defendants filed a "Motion for Summary Judgment on Plaintiffs' Substantive Due Process and State Law Claims" ("Second Motion for Summary Judgment") and supporting papers. Plaintiffs now file this Brief in Opposition to Summary Judgment.

## III.   COUNTER-STATEMENT OF FACTS

Defendants have attempted, through their incomplete recitation of the "facts," to paint the Corneals as difficult, "trouble making yuppies from over the mountain," who failed to follow the proper procedures for developing their land, and now are suing the Township because of the difficulties that they created for themselves. Defendants' recitation of "facts," however, is incomplete and one-

---

[1] The Court reserved ruling on Plaintiffs' Motion for Reconsideration, and deemed moot Defendants' Motion for Reconsideration.

3

sided, lacks any semblance of reality and is patently misleading. The full story paints a very different picture, one in which the Defendants took deliberate and calculated steps to prevent the Corneals from using and enjoying their property with a deliberate indifference to the Corneals' rights, and a clear intention to deprive the Corneals of those rights.

In October 1998, the Corneals purchased an approximately 95-acre tract of land located in Jackson Township, Huntingdon County, Pennsylvania, that previously had belonged to the grandfather of defendant Wilson. The Corneals purchased the property with the intention of subdividing and selling off a 26-acre portion of the Property that included a farmhouse and barn to recoup their investment costs, dividing off several smaller lots for their children, and keeping the residue of approximately 60 acres on which to build a house, art studio and garage. The Corneals never had lived in Jackson Township before, and never before had any contact with the local government in Jackson Township. At every step of the way, however, Jackson Township officials did virtually everything they could think of to interfere with the Corneals' attempt to subdivide and develop their property, including inducing the breach of the contract for the sale of the 26 Acre Parcel between the Corneals and John B. Hewett, Jr. and Joann F. Smith.[2]

---

[2] For ease of reference, John Hewett and JoAnn Smith will be referred to collectively herein as "the Hewetts".

4

During 1999, Mr. Corneal contacted Defendant Wilson to engage his private excavation company, Eagle Excavation, to do some work on the Property, including digging the test pits performing percolation tests to locate suitable sites for on-lot septic disposal systems as part of the plan to subdivide. At the time, Mr. Corneal did not know that Defendant Wilson was a Supervisor of Jackson Township. Defendant Wilson did the test pits and perc tests, but never completed any of the other work. Mr. Corneal later discovered that Defendant Wilson was a Supervisor, and discussed generally with him the plan to subdivide the property and sell the 26 Acre Parcel that included the farmhouse and barn.

In late August or September 1999, the Corneals began seeking a buyer for the 26 Acre Parcel. Defendant Wilson discussed the sale of the 26 Acre Parcel with Mr. Corneal because it previously had belonged to Defendant Wilson's grandfather. Defendant Wilson, however, could not afford to purchase the farmhouse. Defendant Wilson's nephew also approached Mr. Corneal to express an interest in purchasing the farmhouse. Subsequently, in October 1999, the Corneals entered into a contract of sale with the Hewetts for the purchase of the 26 Acre Parcel, including the farmhouse and barn.

Prior to July 2000, Jackson Township never had a subdivision and land development ordinance. Nevertheless, Defendant Wilson told Mr. Corneal that, before he could subdivide his property, he needed to present a complete

subdivision plan to the Township for approval. On the basis of that representation, during 1999, David Corneal hired an engineer to draft a subdivision plan, paid the Township Sewage Enforcement Officer ("SEO"), Defendant Parks, to prepare sewage modules for each of the proposed subdivision lots, and prepared a complete subdivision application to be submitted to the Township.

In late January 2000, Mr. Corneal contacted Township Solicitor Larry Newton to confirm that he would present his subdivision plan to the Township at the Febuary 2000 monthly meeting of the Board of Supervisors, and informed Solicitor Newton that subdivision approval was urgent because of the impending closing date for the sale of the 26 Acre Parcel to the Hewetts. On February 7, 2000, Mr. Corneal presented the Initial Subdivision Plan for the Property to the Township at the regular monthly meeting of the Township Board. Much to the surprise of Mr. Corneal, however, the Supervisors announced that they would not review or approve the subdivision plan because at the previous meeting in January the Supervisors had enacted a "moratorium" on new subdivisions, notwithstanding the fact that the Jackson Township did not have a subdivision ordinance upon which to base such a moratorium (or any other land use restriction, for that matter).

At the January 2000 meeting of the Township Board of Supervisors, the Supervisors decided that they would impose a moratorium on new subdivisions pending the adoption of the subdivision and land development ordinance that they

were in the process of drafting. The Supervisors adopted the moratorium without any formal action whatsoever – they adopted the Moratorium on the basis of a simple statement by the Supervisors at the January meeting and nothing more. The Township did not advertise that it was considering implementing a Moratorium; it did not advertise that the Moratorium would be considered at the January meeting; it did not publish or otherwise advertise the content of the Moratorium; and after the Supervisors voted to implement the moratorium, the Township did not publish or otherwise advertise that the Moratorium had been implemented, the duration of the Moratorium, or the effect of the Moratorium. In no way did the Moratorium comply with the law applicable to enactment of ordinances; in fact, the Supervisors did not even know the appropriate procedures for implementing new ordinances.

Despite the fact that the Township did not have a subdivision ordinance (or even a pending ordinance), the Township refused to approve or even review the Corneals' land development plan (the Supervisors also failed to advise Mr. Corneal that he was not required to submit a subdivision plan in the absence of a subdivision ordinance) on the basis of the "Moratorium." Instead, the Township and Supervisors used every artifice available to them to interfere with all of the Corneals' efforts to improve the Property.

First, the Township instructed Mr. Corneal that he was required to submit his proposed subdivision to the Huntingdon County Planning Commission

("HCPC") for approval before he could submit it to the Township. Never mind the fact that Huntingdon County did not have a valid subdivision ordinance and, therefore, had no authority to review, approve or reject any subdivision plans. Nevertheless, the Corneals submitted their plans to the HCPC for review on two occasions, finally receiving "recommended" approval on April 20, 2000.

Then, in April 2000, Mr. Corneal requested the Township to approve the sewer modules that the SEO, Defendant Parks, already had approved and signed, so that he could begin construction of his house, art studio and garage even without subdividing. The Township, however, refused to sign the sewage modules, because they "believed" that Mr. Corneal was going to subdivide in the future. Moreover, they claimed that if they were to sign the sewage modules, that would be the same as permitting him to build his house, and if he were to build his house, that would constitute a subdivision and was prohibited by the Moratorium. Consequently, the Supervisors refused to sign any of the sewage modules that already had been approved and signed by Defendant Parks, even though there was absolutely no legal basis for such refusal.

After the Supervisors refused to sign the sewer modules, Mr. Corneal requested the Township to issue a permit for a privy, so that he could begin construction of the garage or art studio. The Supervisors directed Mr. Corneal to Defendant Parks, the SEO, as the only person who could issue a privy permit.

8

Immediately after the April 2000 Supervisors meeting at which Mr. Corneal requested the privy permit, however, Defendant Wirth called Defendant Parks at his home and told him not to issue a privy permit to the Corneals. When Mr. Corneal telephoned Defendant Parks later that same evening, Defendant Parks admitted to Mr. Corneal that the Township already had called him and instructed him not to issue any permits.

Later that month, on April 27, 2000, Mr. Corneal went to the home of Defendant Van Dommelen to request a building permit so that he could begin construction of the proposed garage on the Property, because the garage did not require either subdivision approval or on-lot septic disposal. After Mr. Corneal identified himself to Defendant Van Dommelen, however, Defendant Van Dommelen informed Mr. Corneal that the Supervisors already had instructed him not to issue any permits, and Mr. Corneal was "that trouble making yuppie from over the mountain." Moreover, Defendant Van Dommelen telephoned Defendant Wilson in Mr. Corneal's presence, and Defendant Wilson told Mr. Van Dommelen, "don't you dare issue him a permit." Defendant Van Dommelen then refused to give Mr. Corneal even an *application* for a building permit because "he just didn't want him to have one." Indeed, Defendant Van Dommelen told Mr. Corneal that he would have given the building permit to any other Jackson Township resident who asked for one.

9

After Defendant Van Dommelen refused to give Mr. Corneal even a building permit *application*, Mr. Corneal telephoned Solicitor Newton on May 1, 2000, to obtain building permit applications, and followed up with a letter on May 5, 2000, describing what occurred at Defendant Van Dommelen's home. The very same day that Mr. Corneal telephoned Solicitor Newton, Attorney Harvey Reeder, counsel for the Hewetts, delivered correspondence to the Corneals requesting that the Agreement of Sale for the 26 Acre Parcel be terminated because of "difficulties with the Township in obtaining subdivision approval." Solicitor Newton and Attorney Reeder share office space, support staff and certain business ventures. Solicitor Newton never responded to Mr. Corneal's telephone call or letter.

During the spring of 2000, the Corneals commenced resurfacing an existing roadway on the Property that they ultimately intended to use as a driveway. The Corneals originally requested Defendant Wilson's firm, Eagle Excavation, to do the work. Defendant Wilson later refused the job, so the Corneals hired a different contractor. Shortly after work began on the driveway, Defendant Wilson called Andy Patterson, director of the Huntingdon County Conservation District, to initiate a private complaint, alleging that the Corneals were violating wetlands regulations with the driveway construction. The Pennsylvania Department of Environmental Protection and the U.S. Army Corps of Engineers visited the Property and, predictably, concluded that the complaint lacked merit.

10

At an absolute loss for how to proceed with the development of their property, and faced with an unlawful moratorium, unlawful refusal to approve sewer modules, unlawful refusal to issue building permits, and frivolous complaints to regulatory agencies, the Corneals filed the instant civil rights litigation on June 30, 2000. Shortly thereafter, on July 7, 2000, the Corneals executed a deed conveying the 26 Acre Parcel from David and Sandra Corneal to Sandra Corneal. No permission or subdivision plan was required because neither the Township nor the County had a validly enacted subdivision and land development ordinance at that time. The Corneals waited 90 days after the completely unjustified refusal of the Township to approve their request for building permits, and then began construction on the Property.

On July 10, 2000, at the regular meeting of the Township Board of Supervisors, the Township enacted three new ordinances: a Driveway Ordinance, a Privy Ordinance, and a Subdivision Ordinance. The Supervisors signed and dated the Driveway and Privy Ordinances "July 10, 2000." They back-dated the Subdivision Ordinance, however, to "July 7, 2000" – not coincidentally, the same date that the Corneals transferred the 26 Acre Parcel to Mrs. Corneal individually.

Thereafter, on July 28, 2000, Solicitor Newton delivered a letter to the Corneals directing them to cease and desist from construction because they allegedly had not obtained the requisite permits or complied with the new

11

Subdivision Ordinance.  Promptly upon receipt of the letter, Mr. Corneal requested Solicitor Newton to provide the applications for building permits if the Defendants finally had decided to allow issuance of the permits.  Solicitor Newton, of course, did not respond.  Mr. Corneal requested again, several weeks later, that Solicitor Newton send the applications.  Finally, in late August, Solicitor Newton forwarded the application forms and fee schedule to Mr. Corneal, along with a second request to cease and desist from building without the permits.

Mr. Corneal immediately completed and returned the building permit applications directly to Defendant Wirth in her capacity as Township Secretary, along with supporting documentation and checks for the appropriate fees.  Despite acknowledging receipt of the applications, however, Defendant Wirth never bothered to forward the applications either to the building permit officer, Defendant Van Dommelen, or to Solicitor Newton.  Forty days later, on October 10, 2000, Defendant Van Dommelen issued a letter on Jackson Township letterhead purporting to deny the Corneals' building permit applications despite the fact that he had never seen or reviewed the applications.  Indeed, Solicitor Newton drafted the letter for Defendant Van Dommelen's signatures, but Solicitor Newton never had seen the applications either.  Defendant Van Dommelen admitted that the Supervisors instructed him to send the letter, and that he was uncomfortable sending it without ever having seen Mr. Corneal's applications.  He did not object

12

to the Supervisors "usurping" his authority, however, because he did not want to "shake the boat."

Similarly, in fall 2000, the Township required the SEO, Defendant Parks, to go back to the Corneal Property and re-evaluate the septic test pits that he already had inspected and approved – a requirement that the Township never had imposed on any other landowner in the collective memory of the SEO or the Supervisors. Defendant Wilson and Defendant Wirth made sure to instruct Defendant Parks to "do his job" and make "no exceptions" for the Corneals – instructions they never felt necessary to give in any other instance and which resulted, in this case, in Defendant Parks concluding that no sewage permits should be issued because *one* of the five approved sites had been driven over.

Finally, as a capstone to the Defendants' efforts to interfere with the Corneals' right to develop their Property, the Township filed a civil action in the Court of Common Pleas of Huntingdon County, Pennsylvania, seeking to enjoin any further construction on the Property because of the lack of proper building permits and because the Corneals had not complied with the recently enacted Subdivision Ordinance. Attempting to mitigate their damages, the Corneals agreed to make application for various permits, despite the fact that they were under no legal obligation to do so, to appease the Township and avoid additional damages and costs resulting from the litigation.

Since the Corneals filed this lawsuit on June 30, 3000, the Township has granted to the Corneals all the necessary permits to proceed with the development of the property, including building permits, sewage permits and a driveway permit.

## IV.    ARGUMENT

In analyzing a claim arising under § 1983, "the first step is to identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5, 118 S. Ct. 1708, 1714 n.5 (1998). This Court already has concluded, and the Defendants have not contested in their Second Summary Judgment Motion, that the Corneals have a constitutional right to use and enjoy their property, free from unreasonable interference by government actors. (Summ. J. Op. at 13). Thus, the initial step of the analysis already has been decided, and is the law of the case.[3]

The second step of the analysis, therefore, is to determine whether the Defendants' conduct was arbitrary in the constitutional sense, that is, whether the Defendants' actions shock the contemporary conscience. As set forth below, the Defendants' deliberate, malicious and unlawful conduct undeniably is "shocking to

---

[3] The Court, in its Summary Judgment Opinion, reached the conclusion that the Corneals had established a property interest entitled to substantive due process protection based upon the holding of the Third Circuit in DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592 (3d Cir. 1995). Although the Third Circuit's subsequent holding in United Artists overruled DeBlasio, the holding in United Artists did not in any way diminish the continuing validity of that court's conclusion that where "a governmental decision … impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended use of the land was arbitrarily or irrationally reached." DeBlasio at 601.  Rather, as more fully discussed herein, United Artists overruled DeBlasio only with regard to the standard of executive conduct that is considered "arbitrary" in the constitutional sense. See United Artists at 400.

14

the conscience," and the Defendants are not entitled to summary judgment on

Plaintiffs' substantive due process or state law claims.

> **A.    The Undisputed Facts Show That the Defendants Denied the Corneals Their Substantive Due Process Rights By Deliberately Depriving the Corneals' of the Right to Enjoy Their Property.**

The United States Supreme Court, in County of Sacramento v. Lewis,

established that a state actor violates the Fourteenth Amendment's guarantee of

substantive due process where he or she acts with a purpose to cause harm

unrelated to the legitimate goal of the governmental action. Lewis, 118 S. Ct. at

1711. The Court recognized that "the Due Process Clause was intended to prevent

government officials from abusing [their] power, or employing it as an instrument

of oppression." Lewis at 1716 (quoting Collins v. Harker Heights, 503 U.S. 115,

126, 112 S. Ct. 1061, 1069 (1992)). The measure of what governmental conduct

rises to the level of a violation of substantive due process is that conduct which

"can properly be characterized as arbitrary, or conscience shocking, in a

constitutional sense." Id. at 1717 (quoting Harker Heights at 1070). Thus, in

analyzing a substantive due process claim, "the threshold question is whether the

behavior of the governmental officer is so egregious, so outrageous, that it may

fairly be said  to shock the contemporary conscience." Lewis at 1717 n. 8.

The question of defining what is "conscience shocking" is determined on a

case-by-case basis.  "Asserted denial [of due process] is to be tested by an

15

appraisal of the totality of facts in a given case." Lewis at 1719 (quoting Betts v. Brady, 316 U.S. 455, 462, 62 S. Ct. 1252, 1256 (1942)). Thus, the Court noted, "deliberate indifference" may be conscience shocking where the state actor has the luxury of time to consider his actions, such as in the context of a custodial prison situation, but may not be conscience shocking in exigent or emergent circumstances where the state actor is making decisions in haste and under pressure, such as in the context of a prison riot. Id. at 1719-20.

In United Artists Theatre Circuit, Inc. v. Twp. of Warrington, the Third Circuit confirmed that the "shocks the conscience" standard employed in Lewis applied equally to a municipal land use decision that was challenged under 42 U.S.C. § 1983. In United Artists, the plaintiff, a developer of movie theaters, alleged that the defendant unreasonably and improperly delayed its land use approvals in an attempt to coerce an "impact fee" from the plaintiff. The plaintiff in United Artists asserted that it was denied various permits for over 18 months as a result of its refusal to pay the improper fee, and that the delay resulted in a competitor beating it into the market, which could support only one movie theater.

The defendants in United Artists moved for summary judgment on qualified immunity grounds. The trial court denied the motion for summary judgment on the basis that the plaintiff had presented evidence that would permit a factfinder to conclude that the defendant intentionally delayed approval of plaintiff's project

16

because it wished to obtain an "impact fee" from the competitor. <u>United Artists</u> at

396. The trial court held that, if proved, the monetary motive of the defendant was

improper, and therefore a violation of substantive due process.

On appeal, the Third Circuit concluded that the trial court erred by applying

the "improper motive" test to evaluate the substantive due process claim. The

Third Circuit held that <u>Lewis</u> established that the proper standard for all

substantive due process claims is whether the alleged conduct "shocks the

conscience." <u>Id.</u> at 399. The court acknowledged that "'the measure of what is

conscience shocking is no calibrated yardstick' and that '[d]eliberate indifference

that shocks in one environment may not be so patently egregious in another.'" <u>Id.</u>

(quoting <u>Lewis</u> at 847, 850). Thus, whether conduct is conscience-shocking is

determined on a case-by-case basis in light of all the circumstances there

presented. <u>Id.</u> at 399-400. Thus, the Court vacated the decision of the trial court,

and remanded for further proceedings.[4]

The "sliding scale" of conscience-shocking behavior is demonstrated by the

cases within the Third Circuit. For example, in <u>Leamer v. Fauver</u>, 288 F.3d 532

(3d Cir. 2002), the plaintiff, a prisoner, alleged that he was imprisoned under a

program that required regular therapy, but was consistently denied access to

---

[4] It is important to note that the Third Circuit did <u>not</u> conclude that the defendant's conduct in <u>United Artists</u> failed to satisfy this higher standard. The Third Circuit merely remanded the case back to the trial court for consideration of whether, under the circumstances there presented, the defendants conduct was "conscience shocking in a constitutional sense." <u>United Artists</u> at 399 (quoting <u>Lewis</u> at 1708).

therapy, and the consequence of such denial was ineligibility for release from the

therapeutic program or, ultimately, parole.  Id. at 535-37.  The court suggested that

the plaintiff had stated a valid substantive due process claim because of the

defendants' "deliberate indifference" to their obligations to provide plaintiff with

the treatment regimen that was statutorily mandated and necessary in order for his

condition to improve, and thus for him to advance toward release.  The court

quoted Lewis,

> here the persons responsible for Leamer's treatment had
> 'time to make unhurried judgments, upon the chance for
> repeated reflection, largely uncomplicated by the pulls of
> competing obligations.  When such extended
> opportunities to do better are teamed with protracted
> failure even to care, indifference is truly shocking.'

Leamer at 547 (quoting Lewis at 1708).

Similarly, in Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003), the

court concluded that there existed a question of fact as to whether the defendants'

actions shocked the conscience where the state police called in the Special

Emergency Response Team ("SERT"), wearing riot gear and camouflage and

heavily armed, to search for the decedent ("Smith"), a former police officer and

Vietnam veteran whom the defendants knew suffered from post traumatic stress

disorder.  The plaintiffs' expert opined that Smith died from a massive heart attack,

probably caused by the stress of the incident.  Id. at 504-05.  The Court concluded

that despite the defendants' description of the incident as a "barricaded gunman"

situation, it did not present a "hyperpressurized environment" such that the plaintiffs "would have to demonstrate that the defendants had an actual purpose to cause harm." Id. at 509. Thus, the Court found that there existed a genuine issue of material fact for presentation to the jury on plaintiffs' claim.

In the Corneals' case, the undisputed record evidence plainly evidences "conscience shocking" behavior by all of the Defendants. Certainly, no "hyperpressurized environment" existed that would require the Corneals to prove actual intent to injure in order to prevail on their claims. Estate of Smith at 509. Indeed, the Defendants had "the luxury of proceeding in a deliberate fashion," Id. (quoting Miller v. Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999)). The Defendants knew that the Corneals intended to subdivide the Property since at least summer 1999. Defendant Wilson and his nephew each expressed an interest in purchasing the farmhouse and barn that once had belonged to Defendant Wilson's grandfather. Rather than allow the Corneals to sell off his grandfather's farm, however, Defendant Wilson and the other Defendants orchestrated a series of acts that were undertaken for no purpose other than to prevent that "trouble making yuppie from over the mountain" from subdividing and selling off the Property.

The Defendants first passed the Moratorium without any formal action and without compliance with either the Municipalities Planning Code or the Second Class Township Code. Moreover, Pennsylvania law never has permitted a

19

municipality to enact a blanket Moratorium on all development in the absence of

an existing subdivision and land development ordinance and an urgent public

health and safety need.  See Naylor v. Township of Hellam, 565 Pa. 397, 404, 773

A.2d 770, 776 (2001) (quoting Boron Oil Co. v. Kimple, 445 Pa. 327, 284 A.2d

744, 747-48 (1971)).  Neither of those conditions were present in this case.

The Defendants further interfered with every aspect of obtaining building

permits.  The Defendants refused to sign any of the Corneals' sewer modules,

despite the fact that the Sewage Enforcement Officer, Defendant Parks, already

had approved and signed them.  The Supervisors thereafter directed Defendant

Parks not to give Mr. Corneal a privy permit.  The Supervisors directed the

Building Permit Officer, Defendant Van Dommelen, not to give Mr. Corneal a

building permit.  Defendant Van Dommelen admitted that he would have given a

building permit to any other resident of the Township, but would not give one to

Mr. Corneal because the Supervisors told him not to, he was "that trouble making

yuppie from over the mountain," and he "just didn't want him to have one."

Defendant Wilson then initiated a completely meritless private wetlands

complaint against the Corneals.  Defendant Wirth refused to give Mr. Corneal

copies of Township Ordinances or a copy of the draft Subdivision Ordinance.  The

Township filed a civil action against the Corneals in county court on the specious

allegation that they had begun construction without obtaining the necessary

permits and approvals – despite the fact that the Subdivision Ordinance was not in effect at the time and that the Defendants improperly withheld all permits and approvals, and refused to give Mr. Corneal even an *application* for a building permit. Indeed, when Mr. Corneal sought the assistance of Solicitor Newton, even Solicitor Newton ignored his request for a building permit application. Solicitor Newton, however, drafted the letter denying the Corneals' building permit applications in October 2000; Newton drafted the letter for Defendant Van Dommelen's signature even though neither Newton nor Van Dommelen ever had seen or reviewed the contents of the Corneals' applications, and consequently had no legitimate basis for denying those applications.

At every step of the land development process, the Defendants took deliberate actions designed only to prevent the Corneals from developing their property. Certainly, in this case, the Defendants were not making decisions in haste and under pressure, such as in a prison riot or high speed car chase. The Defendants had the luxury of time in which to consider their actions. Indeed, the Defendants had at their disposal the Township Solicitor, Larry Newton, but not one of the Defendants availed themselves of his advice.[5]

The undisputed evidence of record is replete with examples of the Defendants' deliberate and malicious interference with the Corneals' property

---

[5] Defendants Weiler, Yoder, Wilson, Parks and Van Dommelen all testified that they never inquired of Solicitor Newton whether the actions that they were taking with regard to the Corneals' Property were legal. Defendant Wirth testified that she kept Solicitor Newton informed of the Corneals' land development efforts.

21

rights. A sequence of events that is more shocking hardly can be imagined, short

of physical violence as a means of preventing land development. Defendants acted

with a singular purpose of depriving the Corneals of their due process rights. At an

absolute minimum, a jury question exists as to whether the Defendants acted with

deliberate indifference to the Corneals' right to use and develop their property.

Accordingly, Defendants are not entitled to summary judgment on Plaintiffs'

substantive due process claims.

**B.      No Reasonable Municipal Official Could Have Believed That The Individual Defendants' Actions Were Lawful.**

This Court previously has explained qualified immunity as follows:

> Officials are entitled to qualified immunity if their
> conduct does not violate clearly established statutory
> rights or constitutional rights of which a reasonable
> person would have known. ... Using an objective legal
> reasonableness approach, qualified immunity should be
> denied only if a reasonable jury could find that the
> unlawfulness of [defendants'] actions so 'apparent' that
> no reasonable [official] could have believed his [or her]
> actions were lawful.

Turiano v. Schnarrs, 904 F. Supp. 400, 414 (M.D. Pa. 1995) (quotations and

citations omitted) (Rambo, C.J.). Applying that standard, no rational person could

conclude that the Defendants acted "reasonably" or that Defendants violated

Plaintiffs' rights "unknowingly." To the contrary, the undisputed facts establish

beyond question that each and every one of the Defendants either deliberately and

knowingly violated the Corneals' constitutional rights or were "plainly incompetent."

Contrary to the Defendants' argument, none of the individual Defendants' acts with regard to the imposition of the Moratorium or the Corneals' land development plans were reasonable. The Supervisors enacted a moratorium on land development despite the fact that Jackson Township had no Subdivision Ordinance – without a valid subdivision ordinance, the Board had no authority whatsoever to regulate land development, let alone to prevent it entirely.[6] The Board enacted the Moratorium without observing any of the procedural guidelines of the Second Class Township Code. Defendant Supervisor Yoder did not even know the proper procedure for enacting an ordinance. See Yoder Dep. at 6:21-25. The Board directed the Building Permit Officer and the SEO not to assist the Corneals to develop their property. The Township Secretary deliberately denied Mr. Corneal access to public records. Defendant Wilson filed a baseless complaint with the Department of Environmental Protection and Corps of Engineers. Defendants Van Dommelen and Parks abdicated their supposedly independent roles and refused to issue appropriate documents or permits to the Corneals at the direction of the Board. Defendant Van Dommelen admitted that he refused to give

---

[6] Plaintiffs briefed the issue of the legality of the Moratorium at great length in their Brief in Support of Summary Judgment and in Opposition to Defendants' First Motion for Summary Judgment, dated June 24, 2002, at pp. 30-32.

even an application for a building permit to that "trouble-making yuppie from over the mountain" simply because he "didn't want him to have one."

Moreover, the Corneals have presented expert opinions from two distinguished professionals in the field of land use and municipal planning. These two experts, with more than 80 years of municipal planning experience between them, have opined in the clearest of terms that the individual defendants acted in "gross violation of their public duty"; that their actions are "unique, unwarranted, malicious and discriminatory"; and that "no reasonable municipal official" could have thought the actions taken by the Defendants were lawful. The Defendants have offered absolutely no evidence – opinion or otherwise – to refute these conclusions. In sum, the actions of the Defendants were not only unreasonable, they were astonishing in their brazenness, and are not entitled to any qualified immunity.

## C. Defendants Are Not Entitled To Summary Judgment on Plaintiffs' State Law Claims.

### 1. Plaintiffs Have Established a Genuine Issue of Material Fact As To Their Conspiracy Claim.

The Court already has determined that a material issue of fact exists as to the Defendants' motives and, therefore, a material issue of fact exists as to the first element of the tort of civil conspiracy. (Summ. J. Op. at 22). Moreover, as more fully set forth above, there is at a minimum a genuine issue of material fact as to

whether Defendants conduct that deprived the Corneals of their substantive due process right to use and enjoy their Property "shocks the conscience." Consequently, there exists a genuine issue of material fact as to whether the Defendants acts were unlawful, as required by the second element of civil conspiracy.  (Summ. J. Op. at 22-23).  Accordingly, Defendants are not entitled to summary judgment on Count II of the Amended Complaint.

> 2.   This Court Already Has Determined That Plaintiffs Can State a Claim For Violation of the Pennsylvania Constitution.

Defendants half-heartedly argue that they are entitled to summary judgment on Plaintiffs' state constitutional claims because there is no state analog to 42 U.S.C. § 1983.  The Court already has rejected this argument (Summ. J. Op. at 26-27), and Defendants have offered no new caselaw on this point.  Thus, because Plaintiffs successfully have stated a cause of action for deprivation of federal substantive due process rights, they similarly have stated a cause of action for deprivation of state substantive due process rights.  (Summ. J. Op. at 30-31).

## V.   CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiffs' Initial Summary Judgment Brief dated June 24, 2002, David and Sandra Corneal respectfully request this Court to deny Defendants' Motion for Summary Judgment.

# CERTIFICATE OF SERVICE

I certify that I delivered a copy of the foregoing document upon the persons

and in the manner indicated below, which service satisfies the requirements of the

Federal Rules of Civil Procedure.

<u>By First Class U. S. Mail</u>

Anthony R. Sherr, Esquire
Mayers, Mennies & Sherr, LLP
P. O. Box 1547
Blue Bell, PA  19422-0440

Adam M. Shienvold, Esquire

Date: 4/18/03

Counsel for Plaintiffs, David B. and
Sandra Y. Corneal