# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DAVID B. CORNEAL and | : | NO. 1:CV-00-1192 |
| SANDRA Y. CORNEAL, | : |  |
| Plaintiffs | : | JURY TRIAL DEMANDED |
| v. | : |  |
|  | : | RAMBO, J. |
| JACKSON TOWNSHIP, | : |  |
| Huntingdon County, Pennsylvania, | : |  |
| *et al.*, | : |  |
| Defendants | : |  |

**FILED**
HARRISBURG, PA

APR 1 8 2003

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

## APPENDIX OF EXHIBITS
## IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Date: April 18, 2003

ECKERT SEAMANS CHERIN & MELLOTT, LLC
Bridget E. Montgomery, Esquire
Adam M. Shienvold, Esquire
213 Market Street
8th Floor
Harrisburg, PA  17101
717-237-6000

{L0252507.1}

# TABLE OF CONTENTS

<u>Volume No. 1</u>

1. Deposition of W. Thomas Wilson, May 18, 2001

2. Deposition of Michael Yoder, May 18, 2001

3. Deposition of Ralph Weiler, June 29, 2001

4. Deposition of Ann Wirth, May 17, 2001

5. Deposition of David Van Dommelen, June 6, 2001

<u>Volume No. 2</u>

6. Deposition of Barry Parks, May 16, 2001

7. Deposition of David B. Corneal, February 22, 2001

8. Deposition of David Simpson, July 10, 2001

9. Contract dated October 7, 1999

10. Minutes of the Meeting of the Board of Supervisors of Jackson Township, February 7, 2000

11. Minutes of the Meeting of the Board of Supervisors of Jackson Township, January 4, 2000

12. Deposition of Larry Newton, May 17, 2001

13. Letter from Huntingdon County Planning Commission dated February 24, 2000

14. Letter from Huntingdon County Planning Commission dated April 20, 2000

15. Jackson Township Building Permit Ordinance, dated July 3, 1989

16. Letter from Defendant Van Dommelen to David Corneal dated October 10, 2000

{L0252507.1}

17.   Letter from David Corneal to Defendant Van Dommelen dated May 5, 2000

18.   Ledger of Building Permit Applications and Grants

19.   Letter from Harvey B. Reeder, Esquire to David B. Corneal, dated May 1, 2000

20.   Deposition of Terry Williams, Esquire, July 10, 2001

Volume No. 3

21.   Revised Subdivision Plan, Dated April 7, 2000

22.   Minutes of the Meeting of the Board of Supervisors of Jackson Township, April 3, 2000

23.   Jackson Township Ordinance 2000-1 ("Subdivision and Land Development Ordinance"), dated July 7, 2000

24.   Minutes of the Meeting of the Board of Supervisors of Jackson Township, July 10, 2000.

25.   Jackson Township Ordinance 2000-2 ("Driveway Ordinance"), dated July 10, 2000

26.   Jackson Township Ordinance 2000-3 ("Holding Tank Ordinance"), dated July 10, 2000

27.   Letter from David B. Corneal to Jackson Township Solicitor Larry Newton, dated May 5, 2000

28.   Letter from David B. Corneal to Jackson Township Solicitor Larry Newton, dated August 3, 2000

29.   Letter from David B. Corneal to Jackson Township Solicitor Larry Newton, dated August 18, 2000

30.   Letter from Jackson Township Solicitor Larry Newton to David B. Corneal, dated August 29, 2000

{L0252507.1}

31.    Letter from David B. Corneal to Jackson Township Solicitor Larry Newton, dated January 31, 2000

32.    Letter from David B. Corneal to Defendant Wirth, dated August 31, 2000 (and attachments)

33.    Order dated October 19, 2000, Huntingdon County Court of Common Pleas Judge Stewart L. Kurtz,  Docket number 2000-1290

34.    Letter from A. Sherr to B. Montgomery, dated March 18, 2003 and Draft Statement of Undisputed Facts As Agreed to by Counsel, dated June 24, 2002 (collectively "Stipulations")

36.    Expert Report of George W. Fasic, dated July 2001

37.    General Resume, Resume Addendum and List of Recent Publications for George W. Fasic

38.    Expert Report of Allen G. Heist, dated July  2001

39.    Resume and Publications List for Allen G. Heist

## CERTIFICATE OF SERVICE

I, Adam Shienvold, Esquire, hereby certify that I am this day serving a copy

of the foregoing document via First Class U.S. Mail, which service satisfies the

requirements of the Federal Rules of Civil Procedure and Middle District Local

Rules of Court, addressed as follows:

By Facsimile and First Class U. S. Mail

Anthony R. Sherr, Esquire
Mayers, Mennies & Sherr, LLP
3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA  19422-0440


_____

Adam M. Shienvold, Esquire

Attorney for Plaintiffs,
David B. and Sandra Y. Corneal


Date:

| | | | | | |
|---|---|---|---|---|---|
| E | MARY J. JOLL | 384 - 94 | 20.1 | 0.8 | Seasonal |
| F | DAVID E. KOCH | 489 - 571 | 15.2 | 2 | Residential |
| G | RUSSELL E. KOCH | 489 - 576 | 15.3 | 2 | Residential |
| H | STEPHEN J. WHITE | 169 - 656 | 04.1 | 36.98 | Timberland |
| I | ROBERT GAVAZZI | 225 - 477 | 01.9 | 129.72 | Residential & Timberland |
| J | TIMOTHY R. PEACHEY | 315 - 963 | 34 | 230 | Agricultural & Timberland |
| K | JACK S. PRICE | 174 - 732 | 20.2 | 10 | Timberland |

2/

## SITE TABULATION DATA

**REFERENCES:**

DB. 525 PG. 31

T.M. 22 - 19 - 20

| LOT # | AREA | COMMENTS |
|---|---|---|
| 1 | 1.707 Acres | Deeded to Wilbur Foster in 1974 |
| 2 | 68.87 Acres | Currently proposed building lot (property residue) |
| 3 | 25.80 Acres | Currently proposed lot with existing buildings |

CURRENTLY PROPOSED : 2 LOTS TOTALLING 94.67 ACRES

### TITLE CERTIFICATION

We, the undersigned, hereby certify that the property, hereon proposed for subdivision, is that of David B. and Sandra Y. Corneal, as referenced hereon, and that this subdivision is of our free will and consent.

_____ date _____

owner/s

or agent/s _____ date _____

COMMONWEALTH OF PENNSYLVANIA
COUNTY     OF     HUNTINGDON

On this \_\_\_\_\_ day of _____ A. D., _____ , before me came,

who in due form of law, acknowledged this subdivision to be his / her / their act and deed, and desire the same to be recorded as such.

_____
name

_____
my commission expires                    seal:



## PLAN OF PROPOSED SUBDIVISION

# DAVID B. and SANDRA Y. CORNEAL PROPERTY

JACKSON TOWNSHIP     HUNTINGDON COUNTY     PENNSYLVANIA

SCALE: as noted               PAGE 1 of 2               APRIL 7, 2000

DAVID A. SIMPSON     R. D. 1 BOX 284 A     HUNTINGDON, PA

April 3, 2000

Meeting called to order by Chairman Weiler

Minutes approved as read

Treasurer's report approved as read

New Business
No new business

Roadmaster – The township will continue to patch pot holes and we will be making an appointment with Mike Ford of District 9 to come down and review are roads. And we will be in touch with New Enterprise on Miller Road

Art Walters ask the supervisors if the snow bile signs could be left up, the only concern Was that the signs may be stolen, but Art said they get stolen anyway.

David Corneal was at the meeting complaining because the Supervisors will not sign his sewage modules. He also stated that he was no longer sub-dividing and would like to build a studio and would like a permit for a privy and a building permit the Supervisors told him that they were not issuing any building permits for a property that they know is going to be subdivided, at which time Mr. Corneal said that he would sue the supervisors if we issued any building permits in the Township. He was told by the Supervisors that any Subdivisions that were approved prior to the Moratorium would be issued building & Septic permits because they do not fall under the new sub division ordinance.

Meeting ADJ.8:00pm

23

# *SUBDIVISION*

## *and*

# *LAND DEVELOPMENT*

# *ORDINANCE*

# *JACKSON TOWNSHIP*

## *2000 - '*

# TABLE OF CONTENTS

*Page(s)*

**Article I.**  SHORT TITLE AND PURPOSE
Section 101  Short Title                                              2
Section 102  Purpose                                                 2

**Article II.**  DEFINITIONS
Section 201  Tense, Gender and Number                                3
Section 202  General Terms                                           3
Section 203  Terms or Words not Defined                              3
Section 204  Specific Terms                                          3-9

**Article III.**  SUBMISSION AND REVIEW PROCEDURES
Section 301  Procedure (General and Phasing Development)             10
Section 302  Submission of Sketch Plan                               11
Section 303  Review of Sketch Plan                                   11-12
Section 304  Submission of Preliminary Plan                          12-13
Section 305  Review of Preliminary Plan                              13-16
Section 306  Submission of Final Plan                                16-18
Section 307  Review of Final Plan                                    18-19
Section 308  Recording of Final Plan                                 20
Section 309  Performance Guarantee                                   20-22
Section 310  Release of Performance Guarantee                        22-24
Section 311  Resubdivision Procedure                                 24-25
Section 312  Dedication and Maintenance Guarantee                    25

**Article IV.**  PLAN REQUIREMENTS
Section 401  Sketch Plan                                             25-26
Section 402  Preliminary Plan                                        26-30.
Section 403  Final Plan                                              30-32
Section 404  Minor Subdivisions and Land Developments                33-34

**Article V.**  DESIGN STANDARDS
Section 501  General Standards                                       34
Section 502  Streets                                                 35-40
Section 503  Blocks                                                  41-42
Section 504  Lots and Parcels                                        42-43
Section 505  Sanitary Sewage Disposal                                43-44
Section 506  Soil Percolation Test Requirements                      44
Section 507  Water Supply                                            45
Section 508  Storm Water Drainage                                    45-47
Section 509  Public Use and Service Area                             47-48

# *TABLE OF CONTENTS*

*Page(s)*

**Article I.** SHORT TITLE AND PURPOSE
Section 101  Short Title                                               2
Section 102  Purpose                                                   2

**Article II.** DEFINITIONS
Section 201  Tense, Gender and Number                                  3
Section 202  General Terms                                             3
Section 203  Terms or Words not Defined                                3
Section 204  Specific Terms                                            3-9

**Article III.** SUBMISSION AND REVIEW PROCEDURES
Section 301  Procedure (General and Phasing Development)               10
Section 302  Submission of Sketch Plan                                 11
Section 303  Review of Sketch Plan                                     11-12
Section 304  Submission of Preliminary Plan                            12-13
Section 305  Review of Preliminary Plan                                13-16
Section 306  Submission of Final Plan                                  16-18
Section 307  Review of Final Plan                                      18-19
Section 308  Recording of Final Plan                                   20
Section 309  Performance Guarantee                                     20-22
Section 310  Release of Performance Guarantee                          22-24
Section 311  Resubdivision Procedure                                   24-25
Section 312  Dedication and Maintenance Guarantee                      25

**Article IV.** PLAN REQUIREMENTS
Section 401  Sketch Plan                                               25-26
Section 402  Preliminary Plan                                          26-30.
Section 403  Final Plan                                                30-32
Section 404  Minor Subdivisions and Land Developments                  33-34

**Article V.** DESIGN STANDARDS
Section 501  General Standards                                         34
Section 502  Streets                                                   35-40
Section 503  Blocks                                                    41-42
Section 504  Lots and Parcels                                          42-43
Section 505  Sanitary Sewage Disposal                                  43-44
Section 506  Soil Percolation Test Requirements                        44
Section 507  Water Supply                                              45
Section 508  Storm Water Drainage                                      45-47
Section 509  Public Use and Service Area                               47-48

*Table of Contents (continued)*

**Article VI.** IMPROVEMENT REQUIREMENTS
Section 601  General Requirements                                      48-49
Section 602  Required Improvements                                     49-51
Section 603  Recommended Improvements                                  51

**Article VII.**  SUPPLEMENTARY LAND DEVELOPMENT REQUIREMENTS
Section 701  General Requirements and Intent                           52
Section 702  Submission Review Procedures and Plan Requirements        52
Section 703  Parking Requirements                                      52-54
Section 704  Supplementary Requirements: Commercial and Industrial     54-55

**Article VIII.**  MOBILE HOME PARK STANDARDS
Section 801  Mobile Home Park Regulations                              55-56
Section 802  Permits and Licenses                                      56
Section 803  Submission of Plans and Specification to the Township     56-57
Section 804  Fees                                                      57
Section 805  Inspection of Mobile Home Parks                           57
Section 806  Required Separation Between Mobile Homes                  57
Section 807  Required Recreational Areas                               57
Section 808  Required Setbacks, Buffer Strips and Screening            57-58
Section 809  Park Street Systems                                       58-59
Section 810  Required Off-Street Parking Areas                         59
Section 811  Mobile Home Stands                                        59-60
Section 812  Water Supply                                              60
Section 813  Sewage Collection and Disposal                            60
Section 814  Electrical Distribution System                           60-61
Section 815  Refuse Handling                                           61
Section 816  Insect and Rodent Control                                 61
Section 817  Fire Protection                                           61

**Article IX.**  RECREATIONAL AND SEASONAL LAND DEVELOPMENT STANDARDS
Section 901  General Requirements                                      61-62
Section 902  Submission and Review of "Sketch Plan" (Optional)         63
Section 903  Official Submission and Review of the "Preliminary Plan"  63
Section 904  Official Submission and Review of the "Final Plan"        63
Section 905  Recording of the "Final Plan"                             63
Section 906  Performance Guarantees                                    63
Section 907  Plan Requirements                                         63
Section 908  Design Standards                                          63-65

*Table of Contents (continued)*

Section 909  Improvements                                      65-66
Section 910  Minimum Facilities                                66

**Article X.**  ADMINISTRATION, AMENDMENT, SEVERABILITY
Section 1001  Revision and Amendment                           66-67
Section 1002  Modifications                                    67-68
Section 1003  Reconsideration, Mediation, and Appeals          68
Section 1004  Fees                                             68-69
Section 1005  Remedies, Enforcement, and Jurisdiction          69-70
Section 1006  Keeping of Records                               70
Section 1007  Responsibility                                   70
Section 1008  Conflicts                                        70
Section 1009  Severability                                     71
Section 1010  Effective Date                                   71

**Appendix**
Design of Local Roads and Streets                              A-1
Streets and Intersection Design Specification                  A-2
Storm Water Runoff Calculations                                A-3
Intersection Sight Distance                                    A-4
Sketch Plan Example                                            A-5
Preliminary Plan Example                                       A-6
Final Plan Example                                             A-7
Typical Roadway Section                                        A-8
Subdivision or Land Development Approval Application            A-9
Consideration of a Subdivision and/or Land Development Plan Application   A-10
Review of a Minor Subdivision Plan Application                 A-11
Review of a Preliminary Subdivision Plan Application           A-12
Review of a Final Subdivision Plan Application                 A-13
Consideration of a Waiver Application                          A-14
Memorandum of Understanding of Financial Security              A-15
Memorandum of Understand of Public Improvement                 A-16

# ARTICLE 1
## SHORT TITLE AND PURPOSE

### SECTION 101 SHORT TITLE

This Ordinance shall be known, and may be cited as, the Jackson Township Subdivision and Land Development Regulations of 2000.

### SECTION 102 PURPOSE

These regulations are adopted to protect, promote and create conditions favorable to the health, safety, morals, and general welfare of the citizens by:

A. Encouraging and promoting flexibility, economy, and ingenuity in the layout and design of subdivisions and land development including the provisions authorizing the Municipality to alter site requirements and for encouraging other practices which are in accordance with modern and evolving principles of site planning and development.

B. Assuring sites suitable for building purposes and human habitation.

C. Providing for the harmonious development of the Municipality as outlined in the Municipality's Comprehensive Plan (if applicable).

D. Assuring coordination of existing streets and highways with proposed streets, parks, or other features of the official plan or map of the Municipality.

E. Providing for adequate open spaces for traffic, recreation, light, and air and for proper distribution of population.

F. Assuring equitable and just processing of subdivision plans by providing uniform procedures and standards for the observance of both the subdivider and Municipal officials.

G. Planning and managing storm water runoff in each watershed by regulating subdivisions, land development, and mobile home parks in a manner consistent with the Pennsylvania Storm Water Management Act, No. 167.

H. Utilizing and preserving the desirable existing natural drainage system.

I. Encouraging recharge of groundwaters.

J. Maintaining the existing flows and quality of streams and watercourses in the Municipality and the Commonwealth.

K. Preserving and restoring the flood carrying capacity of streams.

L. Providing for proper maintenance of all permanent storm water management structures which are constructed in the Municipality.

## ARTICLE II
## DEFINITIONS

### SECTION 201 TENSE, GENDER, AND NUMBER

Words in the singular include the plural and those in the plural include the singular; words in the present tense include the future tense; words used in the masculine gender include the feminine and neuter.

### SECTION 202 GENERAL TERMS

The words "person", "subdivider", and "owner" include a corporation, unincorporated association and a partnership, or other legal entity, as well as an individual. The word "building" includes structures and shall be construed as if followed by the phrase "or part thereof". The word "watercourse" includes channel, creek, ditch, drain, dry run, spring, and stream. The words "should" and "may" are permissive; the words "shall" and "will" are mandatory and directive.

### SECTION 203 TERMS OR WORDS NOT DEFINED

Where terms or words are not defined, they shall have their ordinarily accepted meanings or such as the context may apply.

### SECTION 204 SPECIFIC TERMS

Terms or words used herein, unless otherwise expressly stated, shall have the following meanings:

Accelerated Erosion:  The removal of the surface of the land through the combined action of man's activities and natural processes at a rate greater than would occur because of the natural processes alone.

Block:  A tract of land, a lot, or group of lots, bounded by streets, public parks, railroad right-of-way, water courses, boundary lines of the Municipality, unsubdivided land, or by any combination of the above.

Building:  A structure having a roof supported by columns or walls, for the shelter of persons, animals, chattels, or property.   When separated by walls which are common with the walls of adjoining dwellings, each portion of such structure shall be considered a separate building.  It shall include any overhang, projection, or roof extending beyond a wall or support.  Sun parlors and covered porches whether enclosed or unenclosed, but does not include walks, steps, or terraces.

Building line or Setback:  The line within a property defining the required minimum distance between any enclosed structure and the adjacent right-of-way or lot line.  Such line shall be measured at right angles from the front street right-of-way line which abuts the property upon which said building is located and shall be parallel to said right-of-way line.

**Cartway (Roadway):**   The portion of a street right-of-way, paved or unpaved, intended for vehicular use.

**Cistern:**  An underground reservoir or tank for storing rainwater.

**Clear Sight Triangle:**  An area of unobstructed vision at the street intersection defined by lines of sight between points at a given distance from the intersection of street center lines.

**County:**  Huntingdon County, Commonwealth of Pennsylvania.

**County Planning Commission:**  The Huntingdon County Planning Commission.

**Crosswalk (Interior Walk):**   A publicly or privately owned right-of-way for pedestrian use extending from a street into a block or across a block to another street.

**Culvert:**  A structure with appurtenant work which carries surface water under or through an embankment or hill.

**Dedication:**   The deliberate appropriation of land by its owner for any general and pubic use, reserving to himself no other rights than those that are compatible with the full exercise and enjoyment of the public uses to which the property has been devoted.

**Design Storm:**  The magnitude of precipitation from a storm event measured in probability of occurrence (e.g. 25 year storm) and duration (e.g. 24 hour), and used in computing storm water management control systems.

**Detention Basin:**  A basin designed to retard storm water runoff by temporarily storing the runoff and releasing it at a predetermined rate.  A detention basin can be designed to drain completely after a storm event, or it can be designed to contain a permanent pool of water.

**Dwelling Unit:**  Any structure, or part thereof, designed to be occupied as living quarters for a single housekeeping unit.

**Easement:**  A right-of-way granted, but not dedicated, for limited use of private land for a public or quasi-public purpose, and within which the grantor shall not erect any permanent structure, but shall have the right to make any other use of the land which is not inconsistent with the rights of the grantee.

**Engineer:**  A licensed professional engineer registered in the Commonwealth of Pennsylvania.

**Erosion:**  The removal of soil particles by the action of water, wind, ice or other geological agents.

**Infiltration Structures:**  A structure designed to direct runoff into the ground, e.g. french drains, seepage pits, seepage trench.

4

Land Development:

    a.  The improvement of one lot or two or more contiguous lots, tracts, or parcels of land for any purpose involving:

        1.  A group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure;

        2.  The division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of, streets, common areas, leaseholds, condominiums, building groups, or other features.

    b.  A subdivision of land;

    c.  Excepting:

        1.  The conversion of an existing single family detached or single family semi-detached dwelling into not more than three residential units, unless such units are intended to be a condominium;

        2.  The addition of an accessory building, including farm buildings, on a lot or lots subordinate to an existing principal building;

        3.  The addition or conversion of buildings or rides within the confines of an enterprise which would be considered an amusement park. For purposes of this subclause, an amusement park is defined as a tract or area used principally as a location for permanent amusement structures or rides.

        This exclusion shall not apply to newly acquired acreage by an amusement park until initial plans for the expanded area have been approved by proper authorities.

Lot: A tract or parcel of land, regardless of size, and accessible by means of a public street which is intended for transfer of ownership, use, lease, or improvements or for development, regardless of how it is conveyed. Lot shall also mean parcel, plot, site, or any similar term.

Lot Area: The area contained within the property lines of a lot excluding space within all streets and within all permanent drainage easements, but including the areas of all other easements.

Municipality: Township of Jackson, Huntingdon County, Pennsylvania acting through its Township Supervisors.

Municipal Officers: Jackson Township Supervisors.

Minor Subdivision:   Any subdivision containing not more than four (4) lots fronting on an existing street, and <u>not</u> involving the extension of sanitary water and/or sewer lines, or the creation of any public improvements, and does not adversely affect the natural resources of the Municipality, and does not adversely affect the remainder of the parcel or adjoining property, and does not adversely affect the present or future development of the Municipality.

Mobile Home:   A transportable, single family dwelling intended for permanent occupancy, office, or place of assembly contained in one unit or in two units designed to be joined into one integral unit capable of again being separated for repeated towing, which arrives at a site complete and ready for occupancy except for minor and incidental unpacking and assembly operations, and constructed so that it may be used without a permanent foundation.

Mobile Home Lot:   A parcel of land in a mobile home park, improved with the necessary utility connections and other appurtenances necessary for the erection thereon of a single mobile home, which is leased by the park owner to the occupants of the mobile home erected on the lot.

Mobile Home Park:   A parcel or contiguous parcels of land under single ownership which has been planned and improved for the placement of mobile homes for non-transient use, consisting of two or more mobile home lots.

Official Plans:   The Comprehensive Development Plan and/or Official Map and/or Topographical Survey and/or such other Plans, or portions thereof, as may have been adopted by the Municipality pursuant to statute, for the area of the Municipality in which the subdivision is located.

Paved or Pavement:   An all-weather permanent surface composed of bituminous or concrete material applied over a base of stone or slag and used to convey motor vehicles.

Peak Discharge:   The maximum rate of flow of water at a given point and time resulting from a storm event.

Planning Commission or Planning Committee:   The Planning Commission or Committee representing Jackson Township.

Plat:   The map or plan of a subdivision or land development, whether preliminary or final.   The word Plat includes the word Plan.

Public Grounds:   Includes:

1.   parks, playgrounds, trails, paths, and other recreational areas and other public rests;

2.   sites for schools, sewage treatment, refuse disposal and other publicly owned or operated facilities; and

3.   publicly owned or operated scenic and historical sites.

Public Hearing:  A formal meeting held pursuant to public notice by the governing body or planning agency intended to inform and obtain public comment, prior to taking action in accordance with this Ordinance.

Public Meeting:  A forum held pursuant to notice under the act of July 3, 1986 (P.L 388, No. 84), known as the "Sunshine Act".

Public Notice:  Notice published once each week for two successive weeks in a newspaper of general circulation in the Municipality;  Such notice shall state the time and place of the hearing and the particular nature of the matter to be considered at the hearing.  The first publication shall not be more than thirty (30) days and the second publication shall not be less than seven days from the date of the hearing.

Resubdivision:  Any replatting or resubdivision of land, limited to changes in lot lines on the approved Final Plan or Recorded Plan as specified in Article III, Section 311, of these regulations.  Other plattings shall be considered as constituting a new subdivision of land.  See "Subdivision".

Record Plan:  The copy of the Final Plan which contains the original endorsements of the Planning Commission, and/or Municipality, and which is intended to be recorded with the County Recorder of Deeds.

Reverse Frontage Lot:  A lot extending between and having frontage on two (2) generally parallel streets, (excluding service streets) with vehicular access solely from one street.

Review:  Whenever the County Planning Commission possesses such review jurisdiction, the action of the review shall not limit the appropriate authorities of the Municipality in their ultimate and final decisions.

Right-of-Way (ROW):  The total width of any land reserved or dedicated as a street, alley, crosswalk, or for the other public or semi-public purposes.

Roadway:  See "Cartway".

Runoff:  That part of precipitation which flows over the land.

Sanitary Sewage Disposal, On-Site:  Any structure designed to biochemically treat sanitary sewage within the boundaries of an individual lot.

Sanitary Sewage Disposal, Community:  A sanitary sewage collection system in which sewage is carried from individual lots by a system of pipes to a temporary central treatment and disposal plant, generally serving a neighborhood area.

Sanitary Sewage Disposal, Public:  A sanitary sewage collection system in which sewage is carried from individual lots by a system of pipes to a central treatment and disposal plant.

Sediment:  Solid material, both mineral and organic, that is in suspension, is being transported, or has been moved from its site of origin by water.

Septic Tank:  A covered watertight settling tank in which raw sewage is biochemically changed into solid, liquid, and gaseous states to facilitate further treatment and final disposal.

Sight Distance:  The required length of roadway visible to the driver of a passenger vehicle at any given point on the roadway when the view is unobstructed by traffic.  Sight distance measurements shall be made from a point four and one half (4½) feet above the centerline of the road surface to a point one half (½) foot above the centerline of road surface.

Soil Percolation Test:  A field test conducted to determine the suitability of the soil for on-site sanitary sewage disposal facilities by measuring the absorptive capacity of the soil at a given location and depth.

Solicitor:  The solicitor appointed by the local Municipality.

Storm Water Management Plan:  The plan for managing storm water runoff within Huntingdon County as required by the Act of October 4, 1978, P.L. 864, (Act 167), and known as the "Storm Water Management Act".

Streets:  A strip of land, including the entire right-of-way (not limited to the cartway), intended for use by the general public as a means of vehicular and pedestrian circulation to provide access to more than one lot.  The word "street" includes street, avenue, boulevard, road, highway, freeway, thoroughfare, parkway, lane, alley, viaduct, and other terms that are used to describe the movement of vehicular or pedestrian traffic, whether public or private in nature.  Streets are further defined as follows:

1.  Minor Street:  A street used primarily to provide access to abutting properties.

2.  Cul-de-sac Street:  A minor street intersecting another street at one end and terminating at the other end by a permanent vehicular turn-around.

3.  Half (Partial) Street:  A street, generally parallel and adjacent to a property line, having a lesser right-of-way width than normally required for improvement and use of the street.

4.  Marginal Access Street:  A minor street, parallel and adjacent to a major street (but separated from it by a reserve strip) which provides access to abutting properties and controls intersections with the major street.

5.  Collector Street:  A street which, in addition to providing access to abutting properties, intercepts minor streets to provide a route and gives access to community facilities and/or other collector and major streets. (Streets in industrial and commercial subdivisions shall generally be considered collector streets).

6.  Major Street (Minor Arterial):  A street serving a large volume comparatively high speed and long distance traffic, including all facilities classified as main and secondary highways by the Pennsylvania Department of Transportation.

7. Service Street:  A minor right-of-way providing secondary vehicular access to the side or rear of two (2) or more properties.

All streets, of any nature, shall be constructed according to the design standards, as included in Article V, Section 502, and approved in writing by the Municipality and the Municipal Engineer.

Structure:  Any materials or combination of materials, which are constructed or erected, the sue of which requires location on or in the land or water, or attached to something located on or in land or water, whether or not affixed to the land.

Subdivider:  Any individual, firm, partnership, association, corporation, estate, trust, or any other group or combination acting as a unit (or agent authorized thereby) which undertakes the subdivision of land, as defined by these regulations as the owner, equitable owner (or agent authorized thereby) of the land being subdivided.

Subdivision:  The division of redivision of a lot, tract, or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development:  Provided, however, that the subdivision by lease of land for agricultural purposes into parcels of more than ten acres, not involving any new street or easement of access or any residential dwelling, shall be exempted.

Substantially Completed:  Where, in the judgment of the municipal engineer, at least ninety (90%) percent (based on the cost of the required improvements for which financial security was posted) of those improvements required as a condition for final approval have been completed in accordance with the approved plan, so that the project will be able to be used, occupied, or operated for its intended use.

Surveyor:  A licensed surveyor registered by the Commonwealth of Pennsylvania.

Swale:  A low-lying stretch of land which gathers or carries surface water runoff.

Water Distribution System, On-Sight:  A system for supplying and distributing water to a single dwelling or other building from a source located on the same lot.

Water Distribution System, Community:  A system for supplying and distributing water from a common source to dwellings and other buildings, but generally not confined to one neighborhood.

Zoning Officer:  The agent or official designated by the Municipality to administrate and enforce the Municipal Zoning Ordinance.

# ARTICLE III
## SUBMISSION AND REVIEW PROCEDURES

### SECTION 301 PROCEDURE

A. General

Hereinafter all plans for the subdivision or development of land within the limits of the Municipality shall be reviewed by the Huntingdon Planning Commission and other Municipal, state, or County officials as deemed necessary and shall be approved or disapproved by the Municipality in accordance with procedures specified in these regulations. The provisions and requirements of these regulations shall apply to and control all land subdivisions which have not been recorded in the Office of the Recorder of Deeds in and for Huntingdon County, Commonwealth of Pennsylvania, prior to the effective date of these regulations provided, however, that any change in a recorded plan, except as noted in Article III, Section 311, shall constitute a resubdivision and shall make said plan subject to any and all of these regulations. Any approval not processed as required hereafter, shall be null and void unless it was made prior to the adoption of this Ordinance.

B. Phasing Development

If a developer proposes a large scale development (10 acres or more) he may desire to construct said development in steps or phases. As the Pennsylvania Municipal Planning Code (Act 247) allows for such phased developments, the Municipality shall grant tentative approvals for the entire project, or for that portion of the project that can be completed within five (5) years of initial plan submission. The developer shall then submit an application for final plan approval in phases, as delineated on the preliminary plan. As so submitted, site improvements would also be constructed in phases and not all at once. As each phase is completed, the developer shall submit an application for final approval of the next phase of development. This process shall continue until all phases of the project (development) are complete. If, however, no development takes place within five (5) years from date of plan approval, the developer shall comply with any change in local ordinances that have been enacted since his preliminary plan was approved. Applicants are urged to consult the Huntingdon County Conservation District for assistance in determining the most effective storm water management measures to be utilized on the development site both during and after construction. The applicant is also urged to submit a sketch plan with a narrative description of these measures.

## *SECTION 302 SUBMISSION OF SKETCH PLAN*

A. Plan to be Filled with Municipality

Copies of the Sketch Plan for all proposed subdivisions and all required supporting data may be submitted to the Municipal Secretary by the subdivider or his representative authorized in writing to submit the plan.

B. Number of Copies

Four (4) legible black-line or blue-line paper prints of the Sketch Plan shall be required. Plans shall fully comply with requirements of Article IV, Section 401 of these regulations.

C. Distribution of Sketch Plan

The Municipal Secretary (or his/her representatives) shall immediately (within 3 working days) refer the Sketch Plans to the following:

1. One (1) copy to the County Planning Commission.

2. One (1) copy to the Municipal Planning Commission, if applicable

3. One (1) copy to the Municipal Officials.

4. One (1) copy to the Municipal Engineer

## *SECTION 303 REVIEW OF SKETCH PLAN*

A. A Sketch Plan may be considered as a submission for informal discussion between the subdivider and the Municipality. Submission of a Sketch Plan shall not constitute official submission of a plan to the Municipality

B. Review by the Municipal Planning Commission, if applicable:

1. Whenever a Sketch Plan has been submitted to the Municipal Secretary, the Secretary shall notify and distribute all Sketch Plan materials to the Municipal Planning Commission as required by Section 302 above. The Chairman of the Municipal Planning Commission shall then schedule a meeting to review the Sketch Plan within thirty (30) days of its receipt by the Municipal Planning Commission.

2.  No official action shall be taken by the Municipal Planning Commission with respect to a Sketch Plan until the Planning Commissions has received the written report of the County Planning Commission, provided, however, that if the County Planning Commission shall fail to report thereon within thirty (30) days from the date the Sketch Plan was forwarded, then the Municipal Planning Commission may officially act without having received and considered such report.

3.  Within ten (10) calendar days after the meeting at which the Sketch Plan is approved or disapproved by the Municipal Planning Commission, the Commission shall send written notice of the Municipal Planning Commission's action, including changes or modifications, if any, required or recommended that it deems necessary or advisable, to the following:

    a.  All Municipal Officials.

    b.  The County Planning Commission.

    c.  The subdivider or his agent.

In addition, the Municipal Planning Commission shall forward to the Municipal Officials all copies of reports received from the County Planning Commission.

4.  If no Municipal Planning Commission or Committee exists at the time of Sketch Plan submission, then the Municipal Officials shall act in lieu of this Commission, following each of the above cited subsections.

## SECTION 304 SUBMISSION OF PRELIMINARY PLAN

A.  Plan to File with the Municipality

    Copies of the Preliminary Plan and all required supporting data such as that required by Department of Environmental Protection, PennDOT, and Huntingdon County Conservation District shall be officially submitted to the Municipal Secretary by the subdivider or his representative authorized in writing to submit the plan.

B.  Submission of Preliminary Plan

    1.  Three (3) completed copies of the Application for Review of Preliminary Subdivision Plan. (See Appendix)

    2.  Eight (8) legible black-line or blue-line paper prints out the Preliminary Plan which shall fully comply with the requirements of Articles IV, Section 402 of these requirements of these regulations.  Ten (10) copies required if a State road abuts or traverses subdivision.

3. Four (4) completed copies of the DEP <u>Sewage Facilities Planning Module for Land Development</u>.

4. Three (3) copies of all other required information (DEP, Huntingdon County Conservation District, PennDOT).

C. <u>Filing Fee</u>:

The Municipal Secretary (or his/her representative) shall collect a filing fee as established by the Municipality, by Resolution, for all subdivisions. Fees shall be charged in order to cover the costs of examining plans and other expenses incidental to the approval of subdivisions. The subdivider shall pay the fee at the time of application for approval of a preliminary plan.

D. <u>Distribution of Preliminary Plan</u>:

The Municipal Secretary (or his/her representative) shall immediately (within 3 working days) refer the Preliminary Plan, after all required fees have been collected, to the following:

1. One (1) copy of the plan to the Municipal Planning Commission, if applicable, including one (1) copy of the application form and other required reports.

2. One (1) copy of the plan to the County Planning Commission and one (1) copy of all required supporting documents.

3. Four (4) copies of the plan to the Municipal Officials (plus Municipal File Copy) including one (1) copy of the application form and other required reports.

4. One (1) copy of the plan, and sewage facilities planning module to the Municipal Engineer.

5. One (1) copy of the plan to the Municipal Zoning Officer, if any.

## *SECTION 305 REVIEW OF PRELIMINARY PLAN*

A. <u>Review by the Municipal Engineers</u>:

The Municipal Engineer shall review the Preliminary Plan to determine its conformance to the Municipal Subdivision Regulations. The Municipal Engineer may recommend changes, alterations or modifications, as he may deem necessary. The report of the Municipal Engineer shall be in writing and shall be submitted to the Municipal Planning Commission prior to the regularly scheduled or special meeting at which the Preliminary Plan is to be considered by the Municipal Planning Commission, if applicable. The report shall include an estimate of the

cost of construction of all improvements as required by this Ordinance. In the event that no Municipal Planning Commission exists, then all information requested above shall be sent to the Municipal Officials.

B. Review by the Municipal Zoning Officer (if applicable):

The Municipal Zoning Officer shall review the Preliminary Plan to determine its conformance to the Municipal Zoning Ordinance. The Zoning Officer shall check all zoning data as required to be shown under Article IV, Section 402, to determine if information shown is in accordance with latest amendments to the Zoning Ordinance. The report from the Municipal Zoning Officer as to the accuracy of the information shown shall be submitted to the Municipal Planning Commission prior to the regularly scheduled or special meeting at which the Preliminary Plan is to be considered by the Planning Commission. In the event no Municipal Planning Commission exists, then all requested information stated above shall be sent to the Municipal Officials.

C. Review by the Pennsylvania Department of Transportation:

If a proposed subdivision abuts or is traversed by a State road, the Municipal Secretary shall require two (2) additional copies of the Preliminary Plan and shall transmit these to the district office of the Pennsylvania Department of Transportation for its review and comments.

D. Review by the Municipal Planning Commission, if applicable:

1. Whenever a Preliminary Plan has been submitted to the Municipal Secretary, the Secretary shall notify and distribute all Preliminary Plan materials to the Municipal Planning Commission as required by Section 302 above. The Chairman of the Municipal Planning Commission shall then schedule a meeting to review the Preliminary Plan within thirty (30) days of its receipt by the Planning Commission.

2. No official action shall be taken by the Municipal Planning Commission with respect to a Preliminary Plan until the Commission has received the written report of the County Planning Commission and the Pennsylvania Department Transportation, provided, however, that if these reports are not received within thirty (30) days after transmittal to these agencies then the Municipal Planning Commission may officially act without having received and considered such report. In any event, the Municipal Planning Commission shall take official action no later than five (5) days after the expiration of the aforesaid thirty (30) day period.

3. During review of the Preliminary Plan, the Municipal Planning Commission shall consider the written reports of the Municipal Engineer and the Municipal Zoning Officer, if any, before making its final decision.

4. If review by the Municipal Planning Commission is favorable, or unfavorable because the requirements of this Ordinance have not been met, or the Municipal Planning Commission deems changes or modifications of the plan submitted are advisable or necessary, such decision and the reasons therefore shall be given in written form by the Municipal Planning Commission within eight (8) days after the meeting at which the Preliminary Plan is reviewed to the following:

    a.   All Municipal Authorities.

    b.   The County Planning Commission.

    c.   The subdivider or his agent.

In addition, the Municipal Planning Commission shall forward to the Municipal Official copies of all reports received from the County Planning Commission, Department of Transportation, Municipal Zoning Officer, and Municipal Engineer.

E. <u>Review by the Municipal Officials</u>:

1. When a Preliminary Plan has been officially referred to the Municipal Official by the Municipal Planning Commission together with its recommendation, such Plan shall be reviewed at the next regularly scheduled meeting of the Municipal Officials, or at the discretion of the Chairman/President at a special meeting, which may be held prior thereto.

2. In any event, the Municipal Officials shall render their decision and communicate it to the applicant no later than ninety (90) days after such application is filed. Failure of the Municipal Officials to render a decision and communicate it to the applicant within the time and in the manner required shall be deemed an approval unless the applicant has agreed, in writing, to an extension of time.

3. The Municipal Officials shall review the Preliminary Plan and the written reports and recommendations thereon of the Municipal Planning Commission, if applicable, the County Planning Commission, (if same has been received), the Municipal Engineer, and by any other interested parties of the Municipality to determine the Preliminary Plan conformance to the standards contained in these regulations. Prior to these reports and recommendations, the Municipal Officials may hold a public hearing thereon after public notice to receive comments from the general public. After all desired input is received, the Municipal Officials may require or recommend such changes and modifications, as they such deem necessary or advisable in the public interest.

4. The action of the Municipal Officials, either approving or disapproving the Preliminary Plan, shall be noted with the date of such action and the signature of the Chairman/President on two (2) sets of plans. The findings and reasons upon which the action is based and citing provisions of the statute or ordinance relied upon shall be stated in the minutes and in writing. Subject to the requirements of subparagraph (2), within fifteen (15) days after the meeting at which the Preliminary Plan is reviewed, the Secretary of the Municipality shall send written notice of the findings, actions taken, and reasons thereof to the following:

    a. the County Planning Commission.

    b. the subdivider or his agent.

    c. the Municipal Planning Commission, if applicable.

One (1) copy of the Plan shall be maintained for permanent records of the Municipality, and one (1) copy shall be sent to the subdivider or his agent.

5. Approval of the Preliminary Plan shall not constitute acceptance of a subdivision for recording. Approval is only an expression of approval of a general plan to be used in preparing the Final Subdivision Plan for final approval and recording upon fulfillment of all requirements of these regulations.

6. When a Preliminary Plan has been approved or approved subject to conditions acceptable to the applicant, no subsequent change or amendment in the zoning, subdivision, or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within five (5) years from such approval.

F. Municipality Sewage Enforcement Officer

The Sewage Enforcement Officer having jurisdiction in the area of the proposed subdivision shall review the Preliminary Plan to determine its conformance with applicable law and forward comments to the Municipal Planning Commission.

## SECTION 306 SUBMISSION OF FINAL PLAN

Within twelve (12) months of the Municipality approval of the Preliminary Plan, a Final Plan shall be submitted to the Municipality. However, an extension of time may be granted by the Municipality upon written request. Final Plans submitted after this expiration of time for which no time extension has been granted may be considered as a new Preliminary Plan.

The Final Plan shall conform in all respects to the Preliminary Plan as previously reviewed by the Municipal Planning Commission and the Municipal Officials and shall incorporate all modifications required by the Municipality in its review of the Preliminary Plan.

The Municipality may permit submission of the Final Plan in sections, or phases, each covering a reasonable portion of the entire proposed subdivision as shown on the reviewed Preliminary Plan.

A. Plans to be Filed with the Municipality:

Copies of the Final Plan and all required supporting data shall be officially submitted to the Municipal Secretary by the subdivider or his representative authorized in writing to submit the plan.

B. Official Submission of Final Plan Shall Comprise:

1. Three (3) completed copies of the Application for Review of Final Subdivision Plan.

2. Eight (8) legible black-line or blue-lined paper prints and one (1) print on linen cloth or mylar of the Final Plan which shall fully comply with Article IV, Section 403 of these regulations.

3. Two (2) copies of all other required information including the following, if applicable:

a. All offers of dedication and covenants governing the reservation and maintenance of undedicated open space which shall bear the certificate of approval of the Solicitor of the Municipality as to their legal sufficiency.

b. Such private deed restrictions, including Building line or Setbacks, as may be imposed upon the property as a condition of sale together with a statement of restrictions previously imposed which may affect the title of the land being subdivided.

c. Whenever a subdivider proposes to establish a street which is not offered for dedication to public use, Municipal Officials may require the subdivider to submit, and also to record with the Municipality on behalf of his heirs, successors and assigns and approved by the Solicitor of the Municipality and which shall establish the conditions under which the street may later be offered for dedication and shall stipulate, among other things, the following:

17

(1) The street shall conform to Municipal specifications or that the owners of the abutting lots shall include with the offer of dedication sufficient money, as estimated by the Municipal Engineer, to restore the street to conformance with the Municipal specifications.

(2) An offer to dedicate the street shall be made only for the street as a whole.

(3) The method of assessing repair cost be stipulated.

(4) Agreement by the owners of fifty-one (51%) percent of the front footage thereon shall be binding on the owners of the remaining lots.

d.  Wherever approval by the Pennsylvania Department of Environmental Protection or the Huntingdon County Soil Conservation District is required for the water supply or sanitary sewage disposal system(s) or erosion and sedimentation control for a proposed subdivision, the Municipal Planning Commission or Municipal Officials shall require that two (2) copies of such certification of approval shall be submitted with the Final Plan.

C.  Filing Fees:

The subdivider shall pay any additional fees, if required. There shall be no refund or credit of any portion of the fee should the subdivider fail to apply for final approval within the required period of time or if the Final Plan covers only a section of the subdivision for which Preliminary Approval has been obtained.

D.  Distribution of Final Plan:

The Final Plan shall be distributed in accordance with the requirements of Article III, Section 304 for Preliminary Plan. In addition, the Municipal Secretary shall retain the linen or mylar print of the Final Plan for safe-keeping in the Municipal files.

## SECTION 307 REVIEW OF FINAL PLAN

A.  Review by the Municipal Engineer:

The Final Plan shall be reviewed and a written report submitted as required under Article III, Section 305 for Preliminary Plans.

B.  Review by the Municipal Zoning Officer (if applicable):

> The Final Plan shall be reviewed and a written report submitted by the Municipal Zoning Officer as required under Article III, Section 305 for Preliminary Plans.

C.  Review by the Municipal Planning Commission (if applicable):

> The Final Plan shall be reviewed, in accordance with the procedure required under Article III, Section 305 for Preliminary Plans. In addition:

> 1.  If all the requirements of this Ordinance are met and the review is favorable, the Planning Commission shall authorize its Chairman, with the Secretary so attesting, to endorse the Final Plan "Reviewed and Approved by the Municipal Planning Commission", together with the date of such action.

> 2.  The Final Plan with the Municipal Planning Commission's endorsement shall be forwarded to the Municipal Officials.

D.  Review by the Municipal Officials:

> The Final Plan shall be reviewed in accordance with the procedures as required under Article III, Section 305 of these regulations for Preliminary Plan. In addition:

> 1.  Before acting on a Final Plan, the Municipal Officials shall arrange for a public hearing. The public hearing may be held by the Municipal Officials after the Final Plan has been submitted to the Municipality and before the review required by Section 307A, B, and C. If a public hearing has been held upon a Preliminary Plan, no public hearing is required unless the Final Plan departs substantially from the Preliminary Plan.

> 2.  If the Municipal Officials approve the Final Plan, the Final Plan shall be signed by the Chairman/President and the Secretary, together with the date of action.

> 3.  A performance guarantee or a certificate of satisfactory installation, as required under Article III, Section 309, shall be required before the Final Plan is released for recording.

> 4.  The Final Plan with the Municipal Officials' approval and the Municipal seal shall be forwarded to the subdivider for recording.

## SECTION 308 RECORDING OF FINAL PLAN

A.  After approval by the Municipal Officials and the Municipal Planning Commission, if applicable, and with all endorsements indicated on the Final Plan, the subdivider shall record his plan.  No subdivision plan shall be legally recorded unless its bears the Municipal approval and seal.  This action shall constitute the changing of the Final Plan to the Record Plan.

B.  After the Final Plan has been approved by the appropriate Municipal authorities, the Municipal Officials shall require that the developer shall supply one (1) reproducible copy of the Final Plan, as approved, for their permanent files.

C.  The Record Plan shall be clear and legible black-line or blue-line print on linen or mylar.

D.  The subdivider shall file the Record Plan with the County Recorder of Deeds within ninety (90) days of the date of final approval by the Municipality.  If the subdivider fails to record the record Plan within such period, the action of the Municipal Officials and Municipal Planning Commission, if applicable, shall be null and void unless an extension of time is granted in writing by the Municipality after written request to do so by the subdivider.

## SECTION 309 PERFORMANCE GUARANTEE

Prior to final approval of the Final Plan, the subdivider shall guarantee the installation of all required improvements by one of the following methods:

A.  By installing the improvements required by Article VI of these Subdivision Regulations to the satisfaction of the Municipal Engineer and the Municipal Officials and Obtaining a certificate from the Municipal Engineer that all improvements have been installed in accordance with the standards and requirements contained in these regulations or required by the Municipality.

B.  In lieu of the completion of any improvements required as a condition for the final approval of a plan, the applicant or subdivider shall provide for deposit with the Municipality financial security in an amount sufficient to cover the costs of any improvements or common amenities, including, but not limited to, roads, storm water detention and/or retention basins and other related drainage facilities, recreational facilities, open space improvements, or buffer or screen plantings which may be required.  When requested by the developer, in order to facilitate financing, the Municipality shall furnish the developer with a signed copy of a resolution indicating approval of the final plan contingent upon the developer obtaining a satisfactory financial security.  The final plan or record plan shall not be signed nor recorded until the financial improvements agreement is executed.  The resolution or letter of contingent approval shall expire and be deemed to be revoked if the financial security agreement is not executed within ninety (90) days unless a written extension is granted by the Municipality; such extension shall not be unreasonably withheld and shall be placed in writing at the request of the developer.  Without limitation as to

other types of financial security which the Municipality may approve, which approval shall not be reasonably withheld, the following shall be deemed acceptable financial security for the purpose of this section:

1. Federal or Commonwealth chartered lending institution irrevocable letters or credit and restrictive or escrow accounts in such lending institutions. Such financial security shall be posted with a bonding company or Federal or Commonwealth chartered lending institution chosen by the party posting the financial security, provided said bonding company or lending institution is authorized to conduct such business within the Commonwealth.

2. Such bond, or other security shall provide for, and secure to the public, the completion of any improvements which may be required within one year of the date fixed in the subdivision plan for the completion of such improvements.

3. The amount of financial security to be posted for the completion of the required improvements shall be equal to 110% of the cost of completion estimated as of ninety (90) days following the date scheduled for completion by the developer. Annually, the Municipality may adjust the amount of the financial security by comparing the actual cost of the improvements which have been completed and the estimated cost for the completion of the remaining improvements as of the expiration of the 90th day after either the original date scheduled for completion or a rescheduled date of completion. Subsequent to said adjustment, the Municipality may require the developer to post additional security in order to assure that the financial security equals said 110%. Any additional security shall be posted by the developer in accordance with this subsection. The amount of financial security required shall be based upon an estimate of the cost of completion of the required improvements, submitted by an applicant or developer and prepared by a professional engineer licensed as such in this Commonwealth and certified by such engineer to be a fair and reasonable estimate of such cost. The Municipality, upon the recommendation of the Municipal Engineer, may refuse to accept such estimate for good cause shown. If the applicant or developer and the Municipality are unable to agree upon an estimate, then the estimate shall be recalculated and recertified by another professional engineer licensed as such in this Commonwealth and chosen mutually by the Municipality and the applicant or developer. The estimate certified by the third engineer shall be presumed fair and reasonable and shall be the final estimate. In the event that a third engineer is chosen, fees for the services of said engineer shall be paid equally be the Municipality and applicant or developer.

4. If the party posting the financial security requires more than one (1) year from the date of posting of the financial security to complete the required improvements, the amount of financial security may be increased by an additional 10% for each one (1) year period beyond the first anniversary date from posting of financial security or to an amount not exceeding 110% of the cost of completing the required improvements as re-established on or about the expiration of the preceding one (1) year period by using the above bidding procedure.

5. In the case where development is projected over a period of years, the Municipality may authorize submission of final plans by section or stages of development subject to such requirements or guarantees as to improvements in future sections or stage of development as it finds essential for the protection of any finally approved section of the development.

6. As the work of installing the required improvements proceeds, the party posting the financial security may request the Municipality to release or authorize the release, from time to time, such portions of the financial security necessary for payment to the contractor or contractors performing the work.  Such requests shall be in writing, addressed to the Municipality, and the Municipality shall have forty-five (45) days from receipt of such request within which to allow the Municipal Engineer to certify, in writing, to the Municipality that such portion of the work upon the improvements has been completed in accordance with the approved plan.  Upon such certification, the Municipality shall authorize release by the bonding company or lending institution of an amount as estimated by the Municipal Engineer fairly representing the value of the improvements completed, or if the Municipality fails to act within said forty-five (45) day period, the Municipality shall be deemed to have approved the release of funds, as requested. The Municipality may, prior to final release at the time of completion and certification by its Engineer, require retention of 10% of the estimated cost of the aforesaid improvements.

7. Where the Municipality accepts dedication of all or some of the required improvements following completion, the Municipality may require the posting of financial security to secure structural integrity of said improvements, as well as the functioning of said improvements in accordance with the design and specifications as depicted on the final plan for a term not to exceed eighteen (18) months from the date of acceptance of dedication. Said financial security shall be of the same type as otherwise required in this section with regard to installation of such improvements, and the amount of the financial security shall not exceed 15% of the actual cost of installation of said improvements.

8. If water mains or sanitary sewer lines, or both, along with apparatus or facilities related thereto, are to be installed under the jurisdiction and pursuant to the rules and regulations of a public utility or municipal authority separate and distant from the Municipality, financial security to assure proper completion and maintenance thereof shall be posted in accordance with the regulations of the controlling public utility or municipal authority and shall not be included within the financial security as otherwise required by this section.

## SECTION 310 RELEASE OF PERFORMANCE GUARANTEE

A. When the developer has completed all of the necessary and appropriate improvements, the developer shall notify the Municipality, in writing, by certified or registered mail, of the completion of the aforesaid improvements and the Municipality shall send a copy thereof to the municipal Engineer.  The Municipal Officials shall, within ten (10) days after receipt of such notice, direct and authorize

the Municipal Engineer to inspect all of the aforesaid improvements. The Municipal Engineer shall, thereupon, file a report, in writing, with the Municipality, and shall promptly mail a copy of the same to the developer by certified mail. The report shall be made and mailed within thirty (30) days after receipt by the Municipal Engineer of the aforesaid authorization from the Municipal Officials; said reports shall be detailed and shall indicate approval or rejection of said improvements, either in whole or in part, and if said improvements, or any portion thereof, shall not be approved or shall be rejected by the Municipal Engineer, said report shall contain a statement of reasons for such non-approval or rejection.

B. The Municipality shall notify the developer within fifteen (15) days of receipt of the engineer's report, in writing, by certified or registered mail of their actions.

C. If the Municipality or the Municipal Engineer fail to comply with the time limitation provision contained herein, all improvements will be deemed to have been approved and the developer shall be released from all liability pursuant to his performance guarantee.

D. If any portion of the said improvements shall not be approved or shall be rejected by the Municipal Officials, the developer shall proceed to complete the same and, upon completion, the same procedure of notification, as outlined herein, shall be followed.

E. Nothing herein, however, shall be construed in limitation of the developer's right to contest or question by legal proceedings or otherwise, any determination of the Municipality or the Municipal Engineer.

F. Where herein reference is made to the Municipal Engineer, he shall be a duly registered professional engineer employed by the Municipality or engaged as a consultant thereto.

G. The Municipality may prescribe that the applicant shall reimburse the Municipality for the reasonable and necessary expense incurred for the inspection of improvements. Such reimbursement shall be based upon a schedule established by Ordinance or resolution. Such expense shall be reasonable and in accordance with the ordinary and customary fees charged by the Municipal Engineer and/or consultant for work performed for similar services in the community, but in no event shall the fees exceed the rate or cost charged by the engineer or consultant to the Municipality when fees are not reimbursed or otherwise imposed on applicants.

1. In the event that the applicant disputes the amount of any such expense in connection with the inspection of improvements, the applicant shall, within ten working days of the date of billing, notify the Municipality that such expenses are disputed as unreasonable or unnecessary, in which case the Municipality shall not delay or disapprove a subdivision or land development application or any approval or permit related to development due to the applicant's request over disputed engineer expenses.

2. If, within twenty (20) days from the date of billing, the Municipality and the applicant cannot agree on the amount of expenses which are reasonable and necessary, then the applicant and Municipality shall jointly, by mutual agreement, appoint another professional engineer licensed as such in the Commonwealth of Pennsylvania to review the same expenses and make a determination as to the amount thereof which is reasonable and necessary.

3. The professional engineer so appointed shall hear such evidence and review such documentation as the professional engineer in his or her sole opinion deems necessary and render a decision within fifty (50) days of the billing date. The applicant shall be required to pay the entire amount determined in the decision immediately.

4. In the event that the Municipality and applicant cannot agree upon the professional engineer to be appointed within twenty (20) days of the billing date, then, upon application of either party, the President Judge of the Court of Common Pleas of Huntingdon County shall appoint such engineer, who, in that case, shall be neither the municipal engineer nor any professional engineer who been retained by, or performed services for, the Municipality or the applicant within the preceding five (5) years.

5. The fee of the appointed professional engineer for determining the reasonable and necessary expenses shall be paid by the applicant if the amount of payment required in the decision is equal to or greater than the original bill. If the amount of payment required in the decision is less than the original bill by $1,000.00 or more, the Municipality shall pay the fee of the professional engineer, but otherwise the Municipality and the applicant shall each pay one-half (½) of the fee of the appointed professional engineer.

## SECTION 311 RESUBDIVISION PROCEDURE

Any revision or resubdivision of land which includes changes to a recorded plan shall be considered a subdivision and shall comply with all regulations of this Ordinance, except that:

A. Lot lines may be changed form those shown on a recorded plan, provided that:

1. Lot sizes comply with the requirements of both this ordinance and the municipal zoning ordinance (if applicable).

2. Easements or rights-of-way reserved for drainage or utilities shall not be eliminated unless it is demonstrated that they are no longer needed and the owners of any easements or rights-of-way give written permission for their abandonment.

3. No lot shall be created which does not abut an existing or proposed street.

24

4. Street locations and block sizes shall not be changed without the written approval of abutting property owners.

B.  In every case wherein lot lines are changed as permitted by the above, the subdivision shall prepare a new Record Plan and shall submit the Record Plan to the Municipality for the endorsements of the Municipal Planning Commission and Municipal Zoning Officer, if applicable (the new Record Plan shall specifically identify the previous Record Plan superseded and shall also contain the record reference if the previous Record Plan has been recorded).  The subdivider shall then record the new plan in accordance with Article III, Section 308, of this Ordinance.

## SECTION 312 DEDICATION AND MAINTENANCE GUARANTEE

All streets, parks, or other improvements shown on the subdivision plan, recorded or otherwise, shall be deemed to be private until such time as the same has been offered for dedication to the Municipality and accepted by resolution of the Municipal Officials. Where the Municipality accepts dedication of all or some of the required improvements following completion, the Municipality may require that posting of financial security to secure structural integrity of said improvements as well as the functioning of said improvements in accordance with the design and specifications as depicted on the final plan for a term not to exceed eighteen (18) months from the date of acceptance of dedication.  Said financial security shall be of the same type as otherwise required in this Ordinance with regard to installation of such improvements, and the amount of the financial security shall not exceed fifteen (15%) percent of the actual cost of installation of said improvement.

### ARTICLE IV
### PLAN REQUIREMENTS

## SECTION 401 SKETCH PLAN

A.  The Sketch Plan of a proposed subdivision shall be clearly and legibly drawn to a scale of one (1) inch equals fifty (50) feet, except that:

1.  If the average size of the proposed lots in the subdivision is five (5) acres or larger, the plan may be drawn to a scale of one (1) inch equals one hundred (100) feet.

2.  If the subdivision proposes lots with an average frontage of less than fifty (50) feet, the plan may be drawn to a scale of one (1) inch equals twenty (20) feet.

3.  If the subdivision contains more than two hundred (200) acres, the plan may be drawn to a scale of one (1) inch equals two hundred (200) feet.

B.  Sketch Plan and all submitted prints thereof shall be made on sheets either:

1.  Eighteen (18) inches by twenty-four (24) inches, or

2. Twenty-four (24) inches by thirty-six (36) inches, or

3. Thirty (30) inches by forty-two (42) inches.

C. If the Sketch Plan requires more than one sheet, a key diagram showing relative location of the several sections shall be drawn on each sheet.

D. The Sketch Plan shall contain at least the following information but not necessarily showing precise dimensions:

1. Tract boundaries accurately labeled.

2. Name of the Municipality in which the subdivision is located and general location map.

3. North point, scale (written and graphic), and date.

4. Name of proposed subdivision or other identifying titles.

5. Significant topographical and physical features.

6. General street and lot layout (existing and/or proposed).

## *SECTION 402 PRELIMINARY PLAN*

A. The Preliminary Plan shall include all information as required for Sketch Plan under Article IV, Section 401, in these regulations and shall be drawn to the same scales and presented on the same sheet sizes as required for the Sketch Plan. In addition, the following information shall be shown:

1. Date, including the month, day, and year that the Preliminary Plan was completed and the month, day, and year that the Preliminary Plan was revised, for each revision.

2. Name of Proposed Development.

3. Name of recorded owner and subdivider.

4. Name, address, license number, and seal of registered engineer or surveyor responsible for the subdivision plan.

5. Names of all owners of all abutting unplatted land and the names of all abutting subdivisions, if any, with the book and page number where recorded.

6.  A key map for the purpose of locating the property being subdivided drawn at a scale not less than one (1) inch equals two thousand (2,000) feet and showing the relation of the property, differentiated by tone or pattern, to adjoining property and to all streets, roads, municipal boundaries, zoning districts, water courses, and any areas subject to flooding, and recorded subdivision plans existing within one thousand (1,000) feet of any part of the property.

7.  Total tract boundaries of the property being subdivided showing bearings and distances and a statement of total acreage of the property.

8.  Include all of the following zoning data, if applicable:

    a.  Existing Municipal zoning regulations, including district designations, requirements for lot sizes and front yards, and any zoning district boundary lines traversing the proposed subdivision.

    b.  Any changes in the existing zoning to be requested by the subdivider.

    c.  Any Municipal regulations other than zoning governing lot size and/or front yard requirements.

9.  Contours at vertical intervals of five (5) feet or, in the case of relatively level tracts, at such lesser interval as may be necessary for satisfactory study and planning of the tract.  In areas of steep slope (over 15%) a twenty (20) foot interval may be used.

10. Locations and elevations of the data to which contour elevations refer; where reasonable and practicable, datum used shall be a known and established bench mark.  It is suggested that USGS datum be used where possible.

11. All existing sewer lines, water lines, fire hydrants, electric and telephone utility lines, culverts, bridges, railroads, quarries, strip mines, water courses, flood plain areas, and other significant manmade or natural features within the proposed subdivision and fifty (50) feet beyond the boundaries of the proposed subdivision.

12. All existing buildings or other structures and the approximate location of all existing tree masses, rock outcrops, water courses within the proposed subdivision or other significant features.

13. All existing streets on the Official Plan or Plans of the Municipality (including unpaved streets), including streets of record (recorded but not constructed), easements and rights-of-way, including names, right-of-way widths, cartway (pavement) widths and approximate grades within the subdivision or within four hundred (400) feet of any part of the tract.

14. The full plan of proposed development, including:

    a. Location and width of all streets, easements, and right-of-way, with a statement of any conditions governing their use.

    b. Suggested street names and utility easement locations.

    c. Building reserve (setback) lines along each street.

    d. Lot lines with dimensions in feet and hundredths of a foot.

    e. Lot numbers and statement of number of lots and parcels

    f. A statement of the intended use of all non-residential lots and parcels.

    g. Sanitary and/or storm sewers (and other drainage facilities) with the size and material of each indicated, and any proposed connections with existing facilities.

    h. Parks, playgrounds, and other areas proposed to be dedicated or reserved for public use with any conditions governing such use.

    i. The following data shall be shown for the cartway right-of-way and, if required, the ultimate right-of-way, for existing, recorded (except those to be vacated), and proposed streets within or abutting the property to be subdivided: The length and width (in feet to the nearest hundredth of a foot) of all straight lines and radii of curved lines.; The length of all arcs (in feet, to the nearest hundredth of a foot) and the central angle (in degrees, minutes, and seconds)

15. Any trees to remain in the street ROW shall be indicated.

16. Location of all required soil percolation test holes, if required.

17. The following storm water management information shall be included:

    a. Runoff calculations for the proposed project except where the watershed storm water management plan (if any) has determined no hydrologic effect will occur downstream.

    b. A description of proposed storm water control measures and devices.

    c. Maps showing:

        (1) The location of the proposed subdivision, land development, or mobile home park within the designated watershed (consult the Huntingdon County Storm Water Management Plan for the watershed boundaries when the plan is completed).

28

(2) The one hundred (100) year flood plain for pre and post development conditions.

(3) Streams, swales, and drainage patterns (existing and proposed).

(4) Storm water management control measures and devices (temporary and permanent).

(5) Areas subject to special deed restrictions affecting storm water management.

(6) Contours at vertical intervals of five (5) feet or, in the case of relatively level tracts, at such lesser interval as may be necessary for satisfactory study and planning of the tract. In areas of steep slope (over 15%) a twenty (20) foot interval may be used.

(7) Show floodway boundaries if the subdivision is located in a detailed FEMA Study Area or included on FEMA Insurance Rate Map.

B. The Preliminary Plan shall be accompanied by the following supplementary data as applicable:

1. Typical street cross-section drawing(s) for all proposed streets. Cross-section drawings may be shown on either the Preliminary Plan or on separate profile sheets:

Tentative profiles along the street centerline or along the top of curb for both sides of each proposed street shall be shown. Such profiles shall show existing and proposed grades at one of the following sets of scales:

a. One (1) inch equals ten (10) feet horizontal, one (1) inch equals two (2) feet vertical.

b. One (1) inch equals twenty (20) feet horizontal and one (1) inch equals four (4) feet vertical.

c. One (1) inch equals forty (40) feet horizontal and one (1) inch equals eight (8) feet vertical.

d. One (1) inch equals fifty (50) feet horizontal, and one (1) inch equals ten (10) feet vertical.

2. In lieu of the separate profile sheets required, the tentative finished cartway edge or top of curb grades for both sides of each street may be labeled on the Preliminary Plan.

3. Where deemed necessary by the Municipal Planning Commission, if applicable, or the Municipal Officials, a plan for the surface drainage of the tract to be subdivided shall be shown. Such plan shall include storm water runoff calculations for the entire property being subdivided and shall show the proposed method, subject to Municipal approval, of accommodating the anticipated runoff.

4. Preliminary designs of any bridges or culverts which may be required. Such designs shall meet all applicable requirements of the Department of Environmental Protection and/or the Pennsylvania Department of Transportation. Calculations for waterway opening shall be included. All designs shall be subject to approval by the Municipality.

5. Where a Preliminary Plan shows the proposed subdivision of only a part of the subdivider's total property, a sketch shall be required showing the prospective street system in the remainder of the property so that the street system in the submitted portion shall be considered in relation to future connections with the unsubmitted portion. To prevent undue hardship in the case of extremely large properties, the Municipal Planning Commission, if applicable, or Municipal Officials may, based on existing natural or manmade features, delimit the area for which a prospective street system shall be sketched.

## SECTION 403 FINAL PLAN

A. The Final Plan shall be prepared by and sealed by a surveyor registered in the State of Pennsylvania. The Final Plan shall be drawn to scale, and show all information required for Preliminary Plans under Article IV, Section 402 of these regulations. In addition, the Final Plan shall show the following:

1. Name of recorded owner (and subdivider) of the tract, and the source(s) of title to the land being subdivided, as shown by the County Recorder of Deeds.

2. The total tract boundary lines of the area being subdivided with accurate distances to hundredths of a foot and bearings to one-quarter (¼) of a minute. These boundaries shall be determined by accurate survey in the field, which shall be balanced and close with an error of closure not to exceed one (1) foot in ten thousand (10,000) feet; provided, however, that the boundary(s) adjoining additional unplotted land of the subdivider (for example, between separately submitted Final Plan sections) are not required to be based upon field survey, and may be calculated. The location and elevation of all boundary line (perimeter) monuments shall be indicated, along with a statement of the total area of the property being subdivided. In addition, the engineer or surveyor shall certify, to the accuracy of the survey, the drawn plan, and the placement of the monuments.

3. The name (or number) and cartway width and lines of all existing public streets and the name and location of all other roads within the property.

30

4. The following data shall be shown for the cartway right-of-way and, if required, the ultimate right-of-way, for existing, recorded (except those to be vacated), and proposed streets within or abutting the property to be subdivided: the length and width (in feet to the nearest hundredth of a foot) of all straight lines and radii of curved lines. The length of all arcs (in feet, to the nearest hundredth of a foot) and the central angle (in degrees, minutes and seconds.

5. All straight lot lines shall be dimensional (in feet, to the nearest hundredth of a foot) and all internal angles within lot lines shall be designated (in degrees, minutes, and seconds). Curved lot lines shall show length of arc (in feet, to the nearest hundredth of a foot) and the central angle (in degrees, minutes, and seconds).

6. A statement of the intended use of all nonresidential lots, with reference to restrictions of any type which exist or will exist as covenants in the deed for the lots contained in the subdivision and, if covenants are recorded, including the book and page number.

7. The proposed building reserve (setback) line for each lot, or the proposed placement of each building.

8. The location (and elevation, if established) of all existing and proposed required street monuments.

9. All easements of rights-of-way where provided for or owned by public services and any limitations on such easements or rights-of-way. Rights-of-way shall be shown and accurately identified on the plan, and easements shall either be shown or specifically described on the plan. Easements should be located in cooperation with the appropriate public utilities.

10. Locations, size and invert elevations of all sanitary and/or storm sewers and location of all manholes, inlets, and culverts (this data may be submitted as a separate plan).

11. If the subdivision proposes a new street intersection with a State Legislative Route, the intersection Occupancy Permit number(s) shall be indicated for all such intersections.

12. A Certification of Ownership, Acknowledgement of Plan, and Offer of Dedication shall be lettered on the plan, and shall be duly acknowledged and signed by the owner(s) of the property, and notarized.

13. Certification by the County Planning Commission that the subdivision has been reviewed as required by this ordinance.

14. The Plan shall contain the seal of the registered surveyor who prepared it.

15. A blank space measuring three and one half (3½) square shall be left, preferably adjacent to the Municipal Certification, in which the endorsement stamp of the county Planning Commission may be applied, if required.

16. A blank space measuring three (3) inches squared shall be left along the lower edge of the sheet, in order that the Recorder of Deeds may acknowledge receipt of the Plan when it is presented.

17. The following storm water management information shall be included:

   a. All information pertaining to storm water management from the preliminary plan along with any changes.

   b. All required permits (or letters of intent to issue such permits pending final Municipal approval) from the Department of Environmental Protection, Pennsylvania Department of Transportation, Public Utility Commission, or any other agency if appropriate.

   c. All deed restrictions, easements, and rights-of-way.

   d. The ownership and maintenance responsibilities for storm water management control devices.   The identity of the responsible individual corporation, association, or other specific entity and the specific maintenance responsibility must be detailed.

   e. Where the applicant is proposing the dedication of permanent storm water management control facilities to the Municipality, such requests must include:

      1. Easements to all facilities; and

      2. A financial guarantee (acceptable to the Municipality) to insure that the control facilities are properly installed and functioning satisfactorily.

B. The Final Plan shall be accompanied by such applicable supplementary data as is required in Article IV, Section 402 in addition to profile sheets for all proposed streets within the tract.  Such profiles shall show at least the following information, properly labeled:

   1. Existing (natural) profiles along both cartway edges or along the centerline of each street.

   2. Proposed finished grade of the centerline, and proposed finished grade at the top of both curbs, or proposed finished grade at both cartway pavement edges.

   3. The length of all vertical curves.

   4. Existing and proposed sanitary sewer mains and manholes, storm sewer mains, inlets, manholes, and culverts and existing or proposed water mains.

## SECTION 404 MINOR SUBDIVISIONS AND LAND DEVELOPMENTS

A. Definition of Minor Subdivision – in the case of any proposed subdivision, land site, or other division of land, the Plan Requirements of this Ordinance may be waived and the proposal deemed to be a Minor Subdivision, provided that the following criteria are met:

   1. The proposal does not involve the extension of any public facilities including:

      a.  New Streets

      b.  Paving or other improvements

      c.  New or improved water lines, sewer lines, or storm drainage lines

      d.  New or improved public facilities or services.

   2. The proposal does not adversely affect the natural resources of the Municipality, or have the potential to adversely affect the health or safety of the Municipality.

   3. The proposal does not adversely affect the development of the remainder of the parcel.

   4. The proposal does not adversely affect adjoining property.

   5. The proposal does not adversely affect the present or future development of the Municipality.

      If the subdivision or land development contains not more than five (5) lots, sites, or other divisions of land, and such subdivision or land development meets with all of the five (5) criteria as stated above, then the Municipal Officials shall have the authority, at their discretion, to classify such subdivision or land development as "Minor" provided that the Municipality has received documents, guarantee, or proof of improvements installation as they may require.

   6. The proposal does not constitute a subdivision, resubdivision or development of any lot, tract, parcel, site or other division of land or portion thereof which had received previous approval as a subdivision or land development within two (2) years prior to the submission of the application.  If such prior approval has taken place, all applications shall be considered a single application for purposes of classification.

B. *Plan Requirements for Minor Subdivision or Land Developments*

   1. A Minor Subdivision or land development shall be exempt from the requirements of the Ordinance calling for the submission of a separate Preliminary Plan (Sections 304 and 402).

33

2. A location map drawn on a USGS 7 ½ Minute Quadrangle Map or equivalent.

3. Sufficient data shall be included to document full compliance with all other applicable requirements and specifications of this Ordinance.

4. A registered surveyor, as required by Section 403, shall prepare the Plan.

C. *Submission and Review Procedures for Minor Subdivision or Land Developments*

1. Minor Subdivisions and land developments shall be reviewed by the agencies and officials required by Section 305 and 403.

2. Land developments shall meet all specific submission and review requirements of Article VII.

*ARTICLE V*
*DESIGN STANDARDS*

## SECTION 501 GENERAL STANDARDS

A. The standards and requirements contained in Articles V and VI are intended as the minimum for the promotion of the public health, safety, and general welfare, and shall be applied as such by the Municipal Planning Commission, if applicable, and Municipal Officials in reviewing all subdivision plans.

B. Whenever other Municipal Ordinances and/or regulations impose more restrictive standards and requirements than those contained herein, such other Ordinances and/or regulations shall be observed; otherwise, the standards and requirements of these regulations shall apply.

C. The subdivision shall be so designed that streets in and bordering the subdivision or land development shall be coordinated, and be of such widths and grades and in such locations as deemed necessary to accommodate prospective traffic, and facilitate fire protection.

D. Land subject to hazards to life, health, or property, such as may arise from underground fires, floods, diseases, subsidence, or other causes, shall not be subdivided for building purposes unless such hazards have been eliminated or unless the subdivision plan shall show adequate safeguards against them, which shall be approved by the appropriate regulatory agencies.

E. Subdivision plans shall conform to the "official Comprehensive Plans" of the Municipality and of the County or to such parts thereof as may have been adopted pursuant to statute.

## *SECTION 502 STREETS*

A. General Standards

   1. The locations and width of all streets shall conform to the "Official Plan" or to such parts thereof as may have been adopted by the Municipality.

   2. The proposed street system shall extend existing or other streets on the "Official Plans" at the same width or larger but in no case at less than the required minimum width.

   3. Where, in the opinion of the Municipal Planning Commission, if applicable, or Municipal Officials, it is desirable to provide for street access to adjoining property, street stubs shall be extended by dedication to the boundary of such property.

   4. New minor streets shall be so designed as to discourage through traffic, but the subdivider shall give adequate continuation of major and collector streets into and from adjoining properties.

   5. Where a subdivision abuts or contains an existing street of improper width or alignment, the Municipal Planning Commission, if applicable, or Municipal Officials may require the dedication of land sufficient to widen the street or correct the alignment.

   6. Private streets (streets not to be offered for dedication) are prohibited unless they meet the design standards of these regulations.

B. Partial and Half Streets:

   New half or partial streets shall be prohibited except where essential for reasonable subdivision of a tract in standards of these regulations and where, in addition, satisfactory assurance for dedication of the remaining part of the street can be obtained.

C. Street Widths:

   Minimum street right-of-way and pavement widths shall be as shown on the "Official Plans" or if not shown on such plans, shall be as follows. Refer to PennDOT publication on the construction of local streets if adequate information is not indicated on the following chart. See Appendix 2.

D. Restriction of Access:

   1. Whenever a subdivision abuts or contains an existing or proposed street with an ultimate right-of-way of eighty (80) feet or more, the Municipal Planning Commission, if applicable, or Municipal Officials may require restriction of access to said street by:

35

    A. Provision of reverse frontage lots.

    B. Provision of service streets along the rear of the abutting lots, together with prohibition of private driveways intersecting the major streets.

    C. Provisions of marginal access streets, provided that the reserve strips establishing such marginal access streets shall be definitely placed within the jurisdiction of the Municipality under an agreement meeting the approval of the Municipality's Solicitor.

  2. Except as specified under Paragraph C above, reserve strips shall be prohibited.

E. <u>Street Grades</u>.

    1. There shall be a minimum centerline grade of three quarters (¾) percent.
    2. Centerline grades shall not exceed the following:

| | |
|---|---|
| a. Minor Street | ten (10) percent |
| b. Collector Street | six (6) percent |
| c. Major Street | six (6) percent |
| d. Street Intersection | five (5) percent |

    3. Grades up to twelve (12) percent may be permitted on a through minor street where access to the street is possible over streets with grades of ten (10) percent or less.

F. <u>Horizontal Curves</u>:

  1. Whenever street lines are deflected in excess of five (5) degrees, connection shall be made by horizontal curves.

  2. To ensure adequate sight distance, minimum centerline radii for horizontal curves shall be as follows:

    a. Minor Streets – One hundred fifty (150) feet

    b. Collector Streets – Three hundred (300) feet

    c. Major Streets – Five hundred (500) feet

  3. A tangent of at least one hundred (100) feet shall be introduced between all horizontal curves on collector and major streets.

  4. To the greatest extent possible, combinations of the minimum radius and maximum grade shall be avoided.

G. Vertical Curves (Dip):

At all changes of street grades where the algebraic difference exceeds one (1) percent, vertical curves shall be provided to allow an easy or smooth transition.

H. Intersections:

1. Streets shall intersect as nearly as possible at right angles, and no street shall intersect another at an angle of less than sixty (60) degrees or more than one hundred twenty (120) degrees.

2. No more than two streets shall intersect at the same point.

3. Streets intersecting another street shall either intersect directly opposite to each other or shall be separated by at least one hundred fifty (150) feet between centerlines measured along the centerline of the street being intersected.

4. Intersections shall be approached on all sides by a straight leveling area, the grade of which shall not exceed five (5) percent within fifty (50) feet of the intersection of the nearest right-of-way lines.

5. Intersections with major streets shall be located not less than one thousand (1,000) feet apart measured from centerline to centerline along the center line of the major street.

6. Street curb intersections shall be rounded by a tangential arc with a minimum radius of :

   a. thirty-five (35) feet for intersections involving only minor streets.

   b. fifty (50) feet for all intersections involving a collector street.

   c. fifty (50) feet for all intersections involving a major street.

7. Street right-of-way lines shall be parallel to (concentric with) curb arcs at intersections.

I. Sight Distance at Intersections:

1. Clear sight triangles shall be provided at all street intersections. Within such triangles, no vision-obstructing object other than utility poles shall be permitted which obscures vision above the height of thirty (30) inches and below ten (10) feet measured from the centerline grade of intersecting streets. Such triangles shall be established from a distance of:

   a. Seventy-five (75) feet from the point of intersection of the centerline, except that:

      b. Clear sight triangles of one hundred fifty (150) feet shall be provided for all intersections with Major Streets (see appendix).

    2. Wherever a portion of the line of such triangles occurs behind (i.e., from the street) the building reserve (setback) line, such portion shall be shown on the Final Plan of the subdivision and shall be considered a building setback (reserve) line.

J. Cul-de-Sac Streets:

    1. Dead-end streets are prohibited unless designed as cul-de-sac streets or designed for future access to adjoining properties.

    2. Any dead-end street for access to an adjoining property or because of authorized stage development shall be provided with a temporary all-weather turn-around within the subdivision, and the use of such turn-around shall be guaranteed to the public until such time as the street is extended.

    3. Cul-de-sac streets, permanently designed as such, shall not exceed eighteen hundred (1800) feet in length and shall not furnish access to more than twenty (20) dwelling units.

    4. Unless future extension is clearly impractical or undesirable, the turn-around right-of-way shall be placed adjacent to the tract boundary with sufficient additional width provided along the boundary line to permit extension of the street in full width.

    5. All cul-de-sac streets, whether permanently or temporarily designed as such, shall be provided at the closed end with a fully paved turn-around. The minimum radius to the pavement edge or curb line shall be fifty (50) feet and the minimum radius of the right-of-way shall be fifty (50) feet.

    6. Drainage of cul-de-sac streets shall preferably be towards the open end. If drainage is toward the closed end it shall be conducted away in an underground storm sewer.

    7. The centerline grade on a cul-de-sac shall not exceed ten (10) percent, and the grade of the diameter of the turn-around shall not exceed five (5) percent.

    8. All cul-de-sac street widths shall follow the same minimum street widths as prescribed for minor streets.

K. Street Names:

    1. Proposed streets which are obviously in alignment with others already existing and named, shall bear the names of the existing streets.

2. In no case shall the name of the proposed street be the same as or similar to an existing street name in the Municipality and the postal district, irrespective of the use of the suffix street, road, avenue, boulevard, driveway, place, court, lane, etc.

3. All street names shall conform with the "Huntingdon County Street Naming and Addressing Ordinance and Policy" and be approved by the county addressing office.

L. Services Streets (Alleys):

1. Service streets may be permitted, provided that the subdivider produces evidence satisfactory to the Municipal Planning Commission, if applicable, or the Municipal Officials of the need for such service streets.

2. No part of any structure shall be located within twenty (20) feet of the centerline of a service street.

3. Dead-end service streets shall be avoided, but where this proves impossible, dead-end service streets shall terminate with a paved circular turn-around or equal with a minimum radius of the outer pavement edge of fifty (50) feet.

4. Service street intersections and sharp changes in alignment shall be avoided, but where necessary, corners shall be rounded to cut back sufficiently to permit safe vehicular circulation.

M. Driveways:

1. Private driveways on corner lots shall be located at least forty (40) feet from the point of intersection on the nearest street right-of-way lines.

2. In order to provide a safe and convenient means of access, grades on private driveways shall not exceed seven (7) percent. Entrances should be rounded at a minimum radius of five (5) feet, or should have a flare construction that is equivalent to the radius at the point of intersection with the cartway edge.

3. No private road or street shall be permitted off any cul-de-sac, or equal type of turn-around.

4. A private driveway may serve no more than two (2) lots before a public or private street right-of-way is required.

5. An access easement a minimum of twenty (20) feet wide shall be proved where a private driveway is shared and/or passes over the land of another. In such cases, a private right-of-way agreement shall be properly executed between the landowners granting access and all affected parties abutting and adjoining said easement. The agreement shall specify maintenance procedures and responsibilities for the easement and shall create a private right-of-way easement which shall be a covenant running with the land.

39

6. The maximum allowable grade for a private driveway access shall be twelve (12) percent. Driveway slope within any public right-of-way shall not exceed four (4) percent. A straight leveling area twenty-five (25) feet in length with a centerline grade not exceeding eight (8) percent shall be provided at the entrance to a public street to provide a suitable stopping area, to provide an off street parking area in severe weather and to lessen erosion and subsequent sedimentation on the public cartway. Driveways in excess of three (3) percent grade shall be paved and stormwater and erosion and sedimentation facilities installed to prevent flow into the street.

7. All driveways onto Township streets shall have a minimum sight distance of two hundred and fifty (250) feet in each direction along the street. Sight distance shall be measured in the same method used for street intersections and shall comply with the Pennsylvania Department of Transportation standards and shall be approved by the Department.

8. A driveway or off-street parking area shall be set back a minimun of five (5) feet from a side property line, except where an access easement is approved per Section 512.B.

N. Private Streets

Private streets are permitted only if the Township Engineer certifies that the proposed street has sufficient right-of-way width, grade and designed in accordance with municipal standards.

1. The private street shall provide access to no more than five (5) lots and shall be constructed in accordance with township standards.

2. Any offer to dedicate the street shall be made only for the street as a whole.

3. Agreement by the owners of fifty-one (51) percent of the front footage thereon shall be finding on the owners of the remaining lots.

4. Dedication of any street is permitted only if it is totally accessible via a public street and meets the design standards of this ordinance with regard to structure, width, right-of-way width, etc.

5. The building setback line for lots along private streets shall be measured from the private street right-of-way for a distance equal to that required along a public street.

## *SECTION 503 BLOCKS*

    A. Layout:

The length, width, and shape of blocks shall be determined with due regard to:

    1. Provisions of adequate sites for buildings of the type proposed.

    2. Zoning requirements, if applicable.

    3. Topography.

    4. Requirements for safe and convenient vehicular and pedestrian circulation, including the reduction of intersections with major streets.

    B. Length:

    1. Blocks shall have a maximum length of one thousand six hundred (1,600) feet and a minimum length of five hundred (500) feet, provided however that the Municipal Planning Commission, if applicable or Municipal Officials may decrease the maximum and/or minimum lengths of blocks if in the opinion of either body, topography of the land in question and/or surface water drainage condition warrant such a decrease.

    2. In the design of blocks longer than one thousand (1,000) feet, special consideration shall be given to the requirements of satisfactory fire protection.

    3. Where practicable, blocks along major and collector streets shall not be less than one thousand (1,000) feet long.

    C. Crosswalks:

    1. Crosswalks shall be required in blocks of over one thousand (1,000) feet or wherever necessary to facilitate pedestrian circulation and to give access to community facilities.

    2. Such crosswalks shall have a right-of-way width of not less than ten (10) feet and a paved walk of not less than five (5) feet.

    D. Depth:

Residential blocks shall be of sufficient depth to accommodate two (2) tiers of lots, except where prevented by the size, topographical conditions, or other inherent conditions of property, in which case the Municipal Planning Commission, if applicable, or Municipal Officials may approve a single tier of lots.

E. Commercial and Industrial Blocks:

Blocks in commercial and industrial areas may vary from the element of design detailed above as required by the nature of the use.

## SECTION 504 LOTS AND PARCELS

A. General Standards:

1. Insofar as practical, side lot lines should be at right angles to straight street lines or radial to curved street lines.

2. Where feasible, lot lines should follow municipal boundaries rather than cross them in order to avoid jurisdictional problems.

3. Generally, the depth of a residential lot should be not less than one (1) nor more than two and a half (2 ½) times their width.

4. Depth and width of parcels intended for non-residential uses shall be adequate for the use proposed and sufficient to provide satisfactory space for on-site parking, loading and unloading, setbacks, landscaping, etc.

5. If, after subdividing, there exists remnants of land, they shall be either:

   a. Incorporated in existing or proposed lots, or

   b. Legally dedicated to public use, if acceptable to the Municipality.

B. Lot Frontage:

1. All lots shall have direct access to a public street, existing or proposed, or to a private street if it meets the requirements of these regulations.

2. Double or reverse frontage lots shall be avoided except where required to provide separation of residential development from major streets or to overcome specific disadvantages of topography or orientation.

3. All residential reverse frontage lots shall have, within such rear yard and immediately adjacent to the right-of-way, a planting screen easement of at least ten (10) feet in width, across which there shall be no right of access.

C. Lot Size:

Lot dimensions and areas shall not be less than specified by the Municipal Zoning Ordinance, if applicable, or if no municipal zoning exists then the following dimensions and areas shall prevail:

1. The minimum lot area for all lots with access to public water or on-lot water and public sewage collection and treatment shall be twenty-three thousand (23,000) square feet and a width at the building line of not less than one hundred fifty (150) feet.

2. The minimum lot area for all lots <u>without</u> access to public water and public sewage collection and treatment shall be two (2) acres, and a width at the building line of not less than two hundred (200) feet.

3. The minimum lot area for all lots with public water and <u>without</u> public sewage collection and treatment shall be two (2) acres, and a width at the building line of not less than two hundred (200) feet.

4. The minimum building setback from any right-of-way (ROW) shall be forty (40) feet except those along any collectors/arterial the set back shall be sixty (60) feet.

5. The minimum building setback from any property line shall be fifteen (15) feet.

## *SECTION 505 SANITARY SEWAGE DISPOSAL*

A. Where the public sewer is not yet accessible but is planned for extension to the subdivision (within 5 years), the subdivider shall install sewer lines, including lateral connections as may be necessary to provide adequate service to each lot when connection with the sewer system is made. The sewer lines shall be suitably capped at the limits of the subdivision, and the laterals shall be capped at the street right-of-way line. When capped sewers are provided, on-site disposal facilities shall also be provided. Design of capped sewer system shall be subject to approval by the Department of Environmental Protection.

B. Sanitary sewers shall be designed and constructed in strict accordance with Department of Environmental Protection Standards of the Commonwealth of Pennsylvania and Municipal construction standards.

C. Sanitary sewers shall not be used to carry storm water.

D. All lots which cannot be connected to a public or community sanitary sewage disposal system in operation at the time of construction of a principal building shall be provided with an on-site sanitary sewage disposal system consisting of a septic tank(s) connected with a tile disposal field or another appropriate system, which meets the design standards of the Pennsylvania Department of Environmental Protection, the Municipal Zoning Ordinance and any amendments or supplements thereto, if applicable, or any regulations adopted pursuant thereto.

E. If on-site sanitary sewage disposal facilities are to be utilized, the Municipality may require that the subdivider submit an Economic Feasibility Report. Such Report shall compare the cost of providing on-site facilities and the cost of connecting to a public sanitary sewer system with a temporary sewage treatment plant. The temporary treatment plant will have to be abandoned when public trunk sewers are installed in the area.

F. Where on-site sanitary sewage facilities are to be utilized, each lot so served shall be of a size and shape to accommodate the necessary length of tile fields at a safe distance from, and at a lower elevation than the proposed building(s) in accordance with the Department of Environmental Protection.

## SECTION 506 SOIL PERCOLATION TEST REQUIREMENTS

A. Soil percolation tests shall be performed for all subdivisions wherein building(s) at the time of construction will not be connected to a public or community sanitary sewage disposal system.

B. Soil percolation tests shall be made in accordance with the procedure required by the Pennsylvania Department of Environmental Protection, by a registered professional engineer or a qualified sewage enforcement officer, at the rate of one (1) test site for each acre or part thereof for the property being subdivided, or at such rates required by the Department of Environmental Protection.

C. The engineer and/or sewage enforcement officer shall enter the result of the test and all other information on four (4) copies of the required Department of Environmental Protection form and shall submit these with the Preliminary Plans.

D. Soil percolation tests shall be performed near the site of the proposed on-site sanitary sewage disposal facilities and spaced evenly throughout the property.

E. The results of the soil percolation tests shall be analyzed by the Municipal Planning Commission and Municipal Officials in conjunction with the Pennsylvania Department of Environmental Protection in relation to the physical characteristics of the tract being subdivided and of the general area surrounding the tract being subdivided, and the Final Plan lot layout shall be based on this analysis.

F. If the analysis of the soil percolation test results reveals that the soil is unsuitable for the intended use at the lot size proposed, the Municipal Planning Commission or the Municipal Officials may require that the lot size(s) be increased in accordance with the test results or that additional tests be made on each proposed lot at the location of the contemplated disposal facilities, and the data submitted for review.

## SECTION 507 WATER SUPPLY

A. Water supply shall be installed in accordance with the requirements of the water authority serving that area, if applicable. If water is to be provided by means other than private wells owned and maintained by the individual owners of lots within the subdivision or development, applicants shall present evidence to the Municipality that the subdivision or development is to be supplied by a certified public utility, a bona fide cooperative association of lot owners, or by a municipal corporation, authority or other utility. A copy of a certificate of public convenience from the Pennsylvania Public Utility Commission or application for such certificate, a cooperative agreement or a commitment or agreement to serve the area in question, whichever is appropriate, shall be acceptable evidence.

B. Where individual on-site water supply system(s) are to be utilized, each lot so served shall be of a size and shape to allow safe location of such a system and wells shall be placed uphill from sewage disposal systems and shall not be within one hundred (100) feet of any part of the absorption (tile) field of any on-site sanitary sewage disposal system, nor within fifty (50) feet from lakes, streams, ponds, quarries, etc.

C. Where individual on-site water supply system(s) are to be utilized, it is recommended that the subdivider provide at least one (1) test well for each ten (10) proposed dwelling units. Such wells should be drilled, cased, and grout sealed into bedrock at least fifty (50) feet deep, having a production capacity of at least five (5) gallons per minute or safe potable drinking water as certified by State or Municipal health officer.

## SECTION 508 STORM WATER DRAINAGE

Any landowner and any person engaged in the alteration or development of land which may affect storm water runoff characteristics shall implement such measures consistent with the provisions of the applicable watershed storm water management plan as are reasonable necessary to prevent injury to health, and of person's safety and/or damage to adjacent property. Such measures shall include such actions as are required:

1. to assure that the maximum rate of storm water runoff is no greater after development than prior to development activities; or

2. to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury.

A. General Criteria

1. The storm water management plan must consider all the storm water runoff flowing over the project site.

2. All storm water runoff easements and detention controls shall be located and designed by a person qualified and/or experienced in the location and design of such structures.

3. The method used in calculating storm water runoff shall be the method designated in the Municipal Stormwater Management Ordinance, or as computed in Section 508, Paragraph B, of this Ordinance.

4. Storm water roof drains and pipes shall discharge water into cisterns, French drains (where soils are suitable), sheet drains or other storm water runoff dispersion and absorption control device and not into storm sewers unless recommended in the watershed storm water plan.

5. No discharge of toxic materials into any storm water management system is permitted.

6. Flow velocities from any storm drain may not result in a deflection of the receiving channel.

7. Developers are encouraged to consult the following storm water management and erosion sedimentation control publications in preparing their plans.

   a. Chapter 102. Erosion Control, Title 25, Rules and Regulations of the Department of Environmental Protection.

   b. Chapter 105. Water Obstructions and Encroachments, Title 25, Rules and Regulations of the Department of Environmental Protection.

   c. Engineering Field Manual for Conservation Practices, 1975, U.S. Department of Agriculture, Soil Conservation Service.

   d. Guidelines for Storm Water Management, Department of Environmental Protection, Bureau of Dams and Waterway Management.

   e. Soil Erosion and Sedimentation Control Manual, Department of Environmental Protection, Bureau of Soil and Water Conservation and Bureau of Water Quality Management.

   f. Urban Hydrology for Small Watersheds, Technical Release No. 55, Soil Conservation Service, U.S. Department of Agriculture, January, 1975.

   g. PennDOT Design Manual II (Publication 13), Section 10.

B. Specific Criteria

1. Storm water rates shall be computed as follows:

   a. Sites up to 5 acres shall use the rational method of calculating run-off as detailed in PA DOT Publication 13, Section 10. Pipes, ditches, and swales shall be designed accordingly. Storm water detention shall be designed as recommended in Appendix A of this Document.

   b. Sites over 5 acres shall use the rational method to design pipes, swales, and
      ditches.   Storm water detention shall be designed using the SCS method
      detailed in Urban Hydrology for small watersheds, Technical Release 55.
      Detention shall be designed using 2, 10, and 25 year storm events.

2. Water quality for the specific watershed must comply with the appropriate
   Municipal Storm water Management Plan.

3. Erosion and Sedimentation – All activities shall be conducted in such a way as to
   minimize accelerated erosion and resulting sedimentation.   Measures to control
   erosion and sedimentation shall at a minimum meet the standards of the
   Huntingdon County Conservation District and Chapter 102 (Erosion Control) of
   Title 25, Rules and Regulations of the Pennsylvania Department of
   Environmental Protection.

## SECTION 509 PUBLIC USE AND SERVICE AREA

A. Public Open Spaces:

   1. In reviewing subdivision plans, the Municipal Planning Commission, if
      applicable, and Municipal Officials shall consider whether community
      facilities, especially schools, in the area are adequate to serve the needs of the
      additional dwellings proposed by the subdivision, and shall make such report
      thereon as they deem necessary in the public interest.

   2. Subdividers and the Municipality shall give earnest consideration to
      providing facilities or reserving areas for facilities normally required in
      residential neighborhoods, including churches, libraries, schools and other
      public buildings; parks, playgrounds and playfields, shopping and local
      business centers.   Areas provided or reserved for such community facilities
      shall be adequate to provide for building sites, landscaping and off-street
      parking as appropriate to the use proposed.   Prior to the preparation of plans,
      subdividers of large tracts should review with the Municipal Planning
      Commission, if applicable, or Municipal Officials the minimum standards for
      various community facilities applicable to the tract being subdivided.

   3. In subdivisions which are intended to provide housing, the Municipal
      Planning Commission, if applicable, or Municipal Officials shall consider the
      need for suitable open areas for recreation and shall make a recommendation
      thereon.   However, if the Municipality has a formally-adopted recreation
      plan, then the land area to be dedicated, or the fees to be paid in lieu thereof,
      shall conform to said recreation plan and shall be a condition precedent to
      Final Plan approval.

B. Community Assets:

   Consideration shall be shown for all natural features such as large trees, water
   courses, historic areas and structures, and similar community assets which, if
   preserved, will add attractiveness and value to the remainder of the subdivision.

b. Sites over 5 acres shall use the rational method to design pipes, swales, and ditches. Storm water detention shall be designed using the SCS method detailed in Urban Hydrology for small watersheds, Technical Release 55. Detention shall be designed using 2, 10, and 25 year storm events.

2. Water quality for the specific watershed must comply with the appropriate Municipal Storm water Management Plan.

3. Erosion and Sedimentation – All activities shall be conducted in such a way as to minimize accelerated erosion and resulting sedimentation. Measures to control erosion and sedimentation shall at a minimum meet the standards of the Huntingdon County Conservation District and Chapter 102 (Erosion Control) of Title 25, Rules and Regulations of the Pennsylvania Department of Environmental Protection.

## SECTION 509 PUBLIC USE AND SERVICE AREA

A. Public Open Spaces:

1. In reviewing subdivision plans, the Municipal Planning Commission, if applicable, and Municipal Officials shall consider whether community facilities, especially schools, in the area are adequate to serve the needs of the additional dwellings proposed by the subdivision, and shall make such report thereon as they deem necessary in the public interest.

2. Subdividers and the Municipality shall give earnest consideration to providing facilities or reserving areas for facilities normally required in residential neighborhoods, including churches, libraries, schools and other public buildings; parks, playgrounds and playfields, shopping and local business centers. Areas provided or reserved for such community facilities shall be adequate to provide for building sites, landscaping and off-street parking as appropriate to the use proposed. Prior to the preparation of plans, subdividers of large tracts should review with the Municipal Planning Commission, if applicable, or Municipal Officials the minimum standards for various community facilities applicable to the tract being subdivided.

3. In subdivisions which are intended to provide housing, the Municipal Planning Commission, if applicable, or Municipal Officials shall consider the need for suitable open areas for recreation and shall make a recommendation thereon. However, if the Municipality has a formally-adopted recreation plan, then the land area to be dedicated, or the fees to be paid in lieu thereof, shall conform to said recreation plan and shall be a condition precedent to Final Plan approval.

B. Community Assets:

Consideration shall be shown for all natural features such as large trees, water courses, historic areas and structures, and similar community assets which, if preserved, will add attractiveness and value to the remainder of the subdivision.

C.  Utility Easements:

1.  A temporary construction easement of thirty (30) feet and a permanent maintenance easement of fifteen (15) feet shall be provided for poles, wires, conduits, storm and sanitary seers, gas, water, and heat mains and/or other utility lines intended to service the abutting lots.  No structures or trees shall be placed within such easements.

2.  To the fullest extent possible, easements shall be centered on or adjacent to rear or side lot lines.

3.  There shall be a minimum distance of fifty (50) feet, measured in the shortest distance, between any proposed dwelling unit and any petroleum, petroleum products, or natural gas transmission line which traverses the subdivision.

4.  Subdividers are urged to avail themselves of the services provided by the various public utility companies in determining the proper locations for utility line easements.

5.  Utility service for residential development is recommended to be provided through the use of underground facilities in accordance with the standards and approval of the utility company having appropriate jurisdiction.

### ARTICLE VI
### IMPROVEMENT REQUIREMENTS

#### SECTION 601 GENERAL REQUIREMENTS

Physical improvements to the property being subdivided shall be provided, constructed, and installed as shown on the Record Plan, in accordance with the requirements of these regulations, or other Municipal Ordinances or Regulations.

A.  As a condition to review of a Final Plan by the Municipal Planning Commission, if applicable, or Municipal Officials, the subdivider shall agree with the Municipality as to the installation of all improvements shown on the Plan and required by these or other Municipal Ordinances or Regulations.

B.  All improvements installed by the subdivider shall be constructed in accordance with the design specifications of the Municipality.

Where there are no applicable Municipal Design Specifications, improvements shall be constructed in accordance with specifications furnished by the Municipal Engineer, Pennsylvania Department of Transportation, Pennsylvania Department of Environmental Protection, Pennsylvania Department of Forests and Waters, or such other State agency as applicable.  If there are no applicable Municipal or State regulations, the Municipality may authorize that specifications be prepared by the Municipal Engineer or an Engineering Consultant.

48

C.  Supervision of the installation of the required improvements shall in all cases be the responsibility of the Municipal Engineer, water and/or sewer authority, or of the appropriate state regulatory agency.

## SECTION 602 REQUIRED IMPROVEMENTS

The following improvements shall be installed by the subdivider or a guarantee suitable to the Municipality shall be provided by the subdivider which shall ensure the provision of the improvements at the standards set forth in these regulations.

A  Street Grading:

All streets shall be graded at full right-of-way width.  See Appendix 2.

B.  Cartway Paving:

All township streets shall be paved to full cartway width (as shown on the Final Plan) in accordance with Municipal Specifications.  See Appendix.1 for paving specifications.

C.  Curbs:

Curbs are to be installed when deemed necessary by the Municipal Engineer based on the need to control storm water runoff and/or on-street parking and approved by the Municipality.

D.  Sewers:

1.  Storm Sewers:

Storm sewers and related facilities shall be installed consistent with the design principals and requirements contained in Article V of these regulations.

2.  Sanitary Sewage Disposal System(s):

a.  Sanitary sewage disposal systems shall be provided consistent with the design standards and requirements contained in Article V of these regulations.

b.  Whenever a subdivider proposes that individual on-site sanitary sewage disposal systems shall be utilized within the subdivision, the subdivder shall either install such facilities or shall require (by deed restriction or otherwise), as a condition of the sale of each lot or parcel within the subdivision, that such facilities shall be installed by the purchaser of such lot or parcel at the time that a principal building is constructed and in accordance with these regulations.

49

      c. In all other cases, the subdivider shall provide a complete community or public sanitary sewage disposal system. The design and installation of such public system shall be subject to the approval of the Pennsylvania Department of Environmental Protection and such system shall be further subject to satisfactory provision for the maintenance thereof.

E.  Water Supply:

     1. Water supply system(s) shall be installed consistent with design principles and requirements contained in Article V of these regulations.

     2. Where the subdivider proposes that individual on-site water supply system shall be utilized within the subdivision, the subdivder shall either install such facilities or shall require (by deed restriction or otherwise), as a condition of the sale of each lot or parcel within the subdivision, that the facilities shall be installed by the purchaser of such lot or parcel at the time that a principal building is constructed and in accordance with these regulations.

     3. Wherever economically feasible, the subdivision shall be provided with a complete public or community water distribution system.

F.  Fire Hydrants:

    Wherever a public or community water supply system is provided, fire hydrants shall be installed as required by the local water supplier of all existing and proposed structures, measured by way of accessible streets.

G.  Markers:

    Permanent reference markers of precast concrete or poured on-site concrete shall be installed by a professional land surveyor, as that term is defined by Act No. 367 of 1945. Precast monuments shall be at least six (6) inches square at the top and bottom and at least thirty (30) inches in depth, with a steel dowel. Poured on-site markers shall be at least nine (9) inches in diameter and at least thirty (30) inches in depth with a steel dowel. Monuments shall be set at all corners and angle points of the boundaries of the original tract to be subdivided prior to approval of the Plan. Markers shall be installed at all lot corners and shall consist of iron or steel bars at least eighteen (18) inches long, and not less than three quarter (¾) inch in diameter.

H.  Street signs:

    Street name signs shall be installed at all street intersections. The design and placement of such signs shall be subject to approval by the Municipality.

I. Street Lights:

In accordance with the conditions to be agreed upon by the subdivider, the Municipality, and the appropriate public utility, streetlights are required to be installed in all subdivisions. However, whether or not streetlights are initially installed, the developer shall be responsible for providing utility easements for future street lighting installation upon consultation with the public service utility company involved.

J. Recreational Facilities:

As a condition precedent to final plan approval, the subdivider, upon agreement with the Municipality, shall dedicate land for the construction of recreation facilities, pay fees in lieu thereof, or reserve private land, or a combination thereof, for park or recreational purposes only if the Municipality has a formally-adopted recreation plan. The standards for determining the proportion of a development to be dedicated and/or the amount of any fee to be paid in lieu thereof shall be indicated in Section 509 of this Ordinance.

## SECTION 603 RECOMMENDED IMPROVEMENTS

The following improvements, intended to enhance the sales value of the subdivision as well as to benefit the Municipality are recommended.

A. Shade Trees:

Every effort must be made by the subdivider to preserve existing shade trees and, in addition, deciduous hardwood trees with a minimum caliber of one and one-half (1 ½) inches should be provided in accordance with conditions to be agreed upon by the Municipality. Where provided, such trees should be planted between the sidewalk and the building reserve (setback) line at least five (5) feet from the sidewalk or between the curb and the sidewalk provided the planting strip is a minimum of six (6) feet wide. If no curb or sidewalk is provided, trees shall set back a minimum of ten (10) feet from the street ROW.

B. Sidewalks:

1. When required by the Municipality, sidewalks with a minimum width of four (4) feet shall be installed on both sides of all streets except that no sidewalks shall be required along service streets.

2. All sidewalks, curbs, and gutters shall be installed in accordance with these regulations and with curb, gutter, or sidewalk ordinances of the Municipality.

## ARTICLE VII
### *SUPPLEMENTARY LAND DEVELOPMENT REQUIREMENTS*

## SECTION 701   GENERAL REQUIREMENTS AND INTENT

In accordance with the definition in this Ordinance, as per the Pennsylvania Municipalities Planning Code (MPC), Land Development may include various types of development and subdivision of land.  In this regard, Article V delineates design standards and construction requirements which are intended to apply to all types of development, while Appendix I applies standards to the design of Mobile Home Parks.  It is recognized by the Board of Supervisors that certain types of Land Development may have needs and requirements unmet by these provisions alone.  This Article provides such supplementary standards for various forms of non-residential development such as commercial retail, professional offices, and manufacturing uses.  It is the intent of this Article to supplement and not replace any of the standards and requirements of the above referenced previous Articles.

## SECTION 702   SUBMISSION REVIEW PROCEDURES AND PLAN REQUIREMENTS

The submission review plan and design procedures contained in this ordinance shall be required for all Land Development proposals.  In addition, the following may be required for proposals for Commercial, Retail, Professional Office and manufacturing uses:

(a)     A traffic study analyzing the capacity of area streets and intersections abutting the development.  The study shall include an analysis of capacities, levels of service, and improvements required to maintain acceptable levels of service.

(b)     A landscape plan prepare by a landscape design professional.

(c)     A hydro geological study of the proposed development as directed by the Township Engineer or Township Supervisors.

(d)     A Stormwater Management Plan in accordance with the Township Stormwater Management provision herein.

## SECTION 703   PARKING REQUIREMENTS

Non-residential development shall be designed in a manner that maximized benefits and minimizes conflicts in relation to parking and traffic safety.  Specific supplementary requirements are as follows:

(a)     All non-residential proposal shall meet the following:

(1)     In cases where more than a single row of parking  spaces are required due to projected parking demand and/or site conditions the following design configurations shall be followed:

- A minimum parking bay widith of 45 feet shall be provided for 45-degree [diagonal] parking, with a one-lane parking lane having a minimum width of 14 feet.
- A minimum parking bay width of 61 feet shall be proved for 90-degree [head-in] parking with a two-way parking lane having a minimum width of 25 feet.

(2) All parking areas shall be stabilized with compacted stone or gravel, or with a bituminous or concrete surface, and include adequate drainage control as approved by the Township.

(3) Parking areas shall be designed so that vehicles need not back out onto a public right-of-way.

(b) Commercial land developments within the scope of these regulations shall provide stabilized parking areas. The minimum number of 9 foot x 18 foot parking spaces to be provided will vary depending upon use and/or interior and/or gross square footage areas as summarized below:

| | | | |
|---|---|---|---|
| (1) | Department Stores | - | 1 space per 200 square feet |
| (2) | Other Retail | - | 1 space per 300 square feet |
| (3) | Banks and Related | - | 1 space per 250 square feet |
| (4) | Offices | - | 1 space per 500 square feet |
| (5) | Houses of Worship | - | 1 space for every 5 seats |
| (6) | Hotels/Motels | - | 1 space per unit |
| (7) | Supermarkets | - | 1 space per 200 square feet |
| (8) | Sit-Down Restaurants | - | 1 space per 333 square feet |
| (9) | Fast-food Restaurants | - | 1 space per 35 square feet |
| (10) | Community Buildings | - | 30% of capacity in persons |

For uses not classified above, not less than three (3) square feet of stabilized parking area, inclusive of access lands, for every one (1) square foot of interior floor area.

In addition, stabilized truck loading, unloading, and maneuvering can be accommodated within the property lines. All commercial establishments in excess of 10,000 square feet of gross floor area shall provide a loading dock/berth. The gross floor area at which point a second dock/berth is required will vary with use as summarized below:

| | | | |
|---|---|---|---|
| (1) | Wholesale | - | 40,000 square feet |
| (2) | Retail | - | 20,000 square feet |
| (3) | Offices/Services | - | 100,000 square feet |
| (4) | Restaurants | - | 25,000 square feet |
| (5) | Hotels/Schools | - | 100,000 square feet |

53

(c)     Industrial developments within the scope of these regulations shall provide a minimum of paved off-street parking in the ratio of one (1) parking space for every employee anticipated during the peak work shift. In addition, paved truck loading areas shall be provided such that all truck loading, unloading, and maneuvering can be accommodated within the property lines.

(d)     In addition to the requirements for commercial and industrial parking areas noted in (b) and (c) above, parking facilities provided shall also include the following:

    (1)     Illumination: All parking areas shall be illuminated by light standards with a maximum height of forth (40) feet, with sharp cut-off shields on the fixtures to allow the direction of lighting on the lot and to avoid glare above the lot and on adjacent properties.

    (2)     Interior Landscaping: All parking areas shall include interior landscaping of at least ten (10) percent of the area of the parking lot, exclusive of any buffer areas. The interior of the parking area includes that area between the frontage or buffer yard any any paved walkways or the structure, when a walkway is not necessary.

    (3)     Sidewalks: The principal access point for commercial, service and industrial establishments abutting the parking lot shall have a paved walkway with a minimum width of five (5) feet.

    (4)     Access Drives: Each parking area shall include adequately sized access drives having a minimum width of twelve (12) feet when separate exit and entrance lanes are provided, and twenty (20) feet when combined exit and entrance lanes are provided.

    (5)     Special access designation: Fire lanes and handicap parking stalls appropriately located in relation to the structure shall be designated by signage and pavement markings.

SECTION 704   SUPPLEMENTARY REQUIREMENTS: COMMERCIAL AND INDUSTRIAL

(a)     Proposed developments with drive-in facilities shall meet the following standards:

    (1)     No more than two (2) driveways shall be provided to any one property from a public right-of-way.

    (2)     Driveways shall be no closer than thirty (30) feet from any adjacent property line.

    (3)     The maximum width of driveways shall be no wider than twenty (20) feet.

(4)     Gasoline or other fuel pumps shall be no closer than twenty-five (25) feet to any public right-of-way.

(b)     All proposed structures and buildings shall be no closer than thirty (30) feet to any right-of-way line.  Flexibility of setbacks may be permitted in village and other settings.

(c )    Proposals for industrial and commerce uses shall meet the following additional requirements:

(1)     A minimum fifty (50) foot buffer shall be provided around the development.  A larger buffer of trees shall be required adjacent to agricultural areas.  Outdoor storage areas shall be landscaped or enclosed by opaque fence.

(2)     Illumination shall be of the sharp cut-off variety avoiding glare above and onto adjacent properties.

(3)     Loading docks are required and shall be at least fourteen (14) feet wide and have a clearance of at least fourteen (14) feet, and shall not be located in the front of the building.

(4)     Manufacturing buildings may not cover more than twenty-five percent (25%) of the lot.

*ARTICLE VIII*
*MOBILE HOME PARK STANDARDS*

## SECTION 801 MOBILE HOME PARK REGULATIONS

Establishing minimum standards for Mobile Home Parks, establishing requirements for the design, construction, alteration, extension and maintenance of mobile home parks and related utilities and facilities.

The following terms shall have the meaning indicated when used hereinafter:

A.  Mobile Home

A transportable, non-motorized, non-recreational vehicle (RV), single family dwelling intended for permanent occupancy, contained in one (1) unit, or in two (2) or more units designed to be joined into one (1) integral unit capable of again being separated for repeated towing, which arrives at a site complete and ready for occupancy except for minor and incidental unpacking and assembly operations, and constructed so that it shall be used without a permanent foundation.

B.  Mobile Home Lot

A parcel of land in a mobile home park, improved with the necessary utility connections and other appurtenances necessary for the erections thereon of a single mobile home which is leased by the park owner to the occupants of the mobile home.

All mobile home lots shall be addressed in conformance with the "Huntingdon County Street Naming and Addressing Ordinance and Policy" and be approved by the county addressing office.

C.  Mobile Home Park

A parcel of land under a single ownership which has been placed and improved for the placement of mobile homes for non-transient use, consisting of two or more mobile home lots.

D.  Mobile Home Stand

That part of an individual lot which as been reserved for the placement of the mobile home, appurtenance structures or additions.

E.  Refuse

All putrescible and nonputrescible solids, except body wastes, including garbage, rubbish, ashes, and dead animals.

## SECTION 802  PERMITS AND LICENSES

A.  It shall be unlawful for any person to construct, alter or extend any mobile home park within the limits of the Township unless he holds a valid permit issued by the Department of Environmental Protection in the name of such person and also a licence issued by the Township hereunder.

1.  All applications when necessary for review and approvals shall be made by the owner to the Pennsylvania Department of Environmental Protection, Department of Labor and Industry, Department of Transportation or other appropriate agency as applicable.

## SECITON 803  SUBMISSION OF PLANS AND SPECIFICATION TO THE TOWNSHIP

Any person, firm or operation from or after the passage of this Ordinance who proposes to operate or maintain any premises, area, tract or piece of land for use as a mobile home park shall first submit to the Township a plan for layout and design thereof, including a legal description and map clearly setting forth the following information:

A.  Name and address of applicant.

B.  Interest of the applicant in the mobile home park.

C.  Location and legal description of the mobile home park.

56

D.   A sketch plan shall be presented to the Planning Commission for review and comment prior to the preparing and final plans to accompany and applications.

   1. The sketch plan may be free hand superimposed on a plot plan of the property to be used for the mobile home park.  The sketch shall indicate general topography locations for mobile homes or groups thereof, accessory buildings, accesses, circulation and parking areas.

E.   Complete engineering plans and specification of the proposed park.

## SECTION 804  FEES

See resolution for fee schedules.

## SECTION 805  INSPECTION OF MOBILE HOME PARKS

The Township (Agent as appointed by the Township Supervisors) is hereby authorized to make such inspections as are necessary to determine satisfactory compliance with this Ordinance and regulations issued hereunder.

## SECTION 806  REQUIRED SEPARATION BETWEEN MOBILE HOMES

Mobile home shall be separated from each other and from buildings and structures by at least twenty (20) feet, provided that mobile homes placed end to end may have a clearance of fifteen (15) feet where opposing rear walls are staggered.

## SECTION 807  REQUIRED RECREATIONAL AREAS

Where a proposed park, playground, school, easement or other public use shown in the Comprehensive Plan, or in the opinion of the Planning Commission is necessary, the Board of Supervisors may require the reservation of such area within the mobile home park or land development in a reasonable manner.   Such areas should be in total approximately six (6) percent of the mobile home park area.

## SECTION 808  REQUIRED SETBACKS, BUFFER STRIPS AND SCREENING

A.   All mobile homes shall be at least twenty-five (25) feet from park property boundary lines.

B.   There shall be a minimum distance of twenty-five (25) feet between an individual mobile home and adjoining pavement of a park street, adjoining recreation area, adjoining park area or other common use.

C.   All mobile home parks located adjacent to industrial or commercial land use shall be provided with screening such fences or dense vegetative growth along with property line separating the park and such adjacent non-residential uses.

D.    Mobile homes and other structures in the mobile home park shall not be located within the required setbacks from public roads or rights-of-way intended to be dedicated as public roads.  The following setbacks shall be required.

1.  Front Yard

Arterial Streets: 60 feet from right-of-way line

Collector Streets: 40 feet from right-of-way line

Local Streets: 40 feet away from right-of-way line

## SECTION 809 PARK STREET SYSTEMS

A.    General Requirements

All mobile home parks shall ble provided with safe and convenient year-round vehicular access from abutting pubic streets or roads to each mobile home lot. Alignment and grade shall be properly adapted to topography and shall meet with the approval of the Planning Commission.  No vehicular way shall have a grade in excess of ten (10) percent.

B.    Access

Access to mobile homes shall be designed to minimize congestion and hazards at the entrance road connecting the park streets with a public street or road shall have a minimum paved cartway width of twenty-six (26) feet within wich parking shall be prohibited.   There shall be a clear sight triangle of twenty (20) feet measured along the edges of the entrance road cartway from their point of junction with the public cartway.

Roadways shall be paved and of adequate with to accommodate anticipated traffic and, in any case, shall meet the following minimum requirements:

1)    Where parking is permitted on both sides, a minimum road pavement width of thirty-six (36) feet will be required.

2)    Where parking is limited to one side, a minimum road pavement width of twenty-seven (27) feet will be required.

3)    Where parking is prohibited on either side, a minimum road pavement width of twenty (20) feet will be required.

4)    Dead-end streets will be provided a turn-around at the closed end with a minimum outside roadway radium of sixty (60) feet.

C.     Required illumination of the park street system

All parks shall be furnished with lighting units so spaced and equipped with luminaries placed at such mounting heights as will provide for the same movement of pedestrians and vehicles at night.

D.     Street Construction and Design Standards

All streets shall be proved with a smooth, hard and dense surface which will be durable and well-drained under normal use and weather conditions.

## SECTION 810   REQUIRED OFF-STREET PARKING AREAS

A.     Off-street parking areas shall be provided in all mobile home parks for the use of park occupants and guests.  Such areas shall be furnished at a rate of one and one-half (1 ½) spaces per mobile home lot.

B.     Required car parking spaces shall be so located as to provide convenient access to the mobile home but shall not exceed a distance of two hundred (200) feet from the mobile home that it is intended to  service.  Paving of parking areas shall be a smooth, dense, solid and dust-free surface capable of use thoughout the year.

## SECTION 811   MOBILE HOME STANDS

The area of the mobile home stand shall be improved to provide an adequate foundation for the placement of the mobile home thereby securing the superstructure against uplift, sliding, or rotation in accordance with the Federal Housing Administration Regulations and Township standards.

A.     The mobile home stand shall not heave, shift or settle unevenly under the weight of the mobile home due to frost action, inadequate drainage, vibration or other forces acting on the superstructure.

1)  The foundation of the mobile home stand shall, at a minimum, consist of four concrete pads placed to support the four wheels, jacks or other supports of the mobile home.  The pads shall each measure at least four (4) feet by two (2) feet and shall extend thirty (30) inches below the finished surface grade of the mobile home stand.

B.     The mobile home stand shall be provided with anchors and tie downs such as cast-in-place "deadmen" eyelets imbedded in the concrete foundation, screw hangers, arrowhead anchors or other approved devices securing the stability of the mobile home.  Anchors and tie-downs shall be placed in at least four (4) locations around the pad area and shall be able to sustain a minimum tensile strength of 3,000 pounds.

C.    A mobile home park shall have an average gross area per mobile home lot of not less than forty-three thousand five hundred sixty (43,560) square feet.

    1)  The minimum width of a mobile home lot shall be forty (40) feet.

    2)  The minimum depth of a mobile home lot shall be one hundred (100) feet or at least forty (40) percent longer than the mobile home to be placed thereon.

D.    The clustering of mobile home lots or sites is encouraged to provide for conservation of open space and to provide for efficient development of streets and utilities. No mobile home lot shall be less than four thousand (4,000) square feet. In order to approve the "cluster plan", the Township shall apply the following test:

The number of mobile home lots times four thousand (4,000), plus the area of common open space in square feet, divided by the number of mobile home lots shall equal at least forth-three thousand five hundred sixty (43,560) square feet.

The open space portion of the mobile home park shall be protected from development in perpetuity by appropriate deed restrictions and may not be severed from the mobile home park for further development.

## SECTION 812   WATER SUPPLY

An adequate, safe supply of potable water shall be provided to each mobile home lot. Where a public water supply of satisfactory quantity, quality and pressure is available connection shall be made thereto and its supply used exclusively. Where a satisfactory public water supply is not available, a private water system may be developed and used as approve by the Pennsylvania Department of Environmental Protection.

## SECTION 813   SEWAGE COLLECTION AND DISPOSAL

An adequate and safe sewage system shall be provided in all parks for conveying and disposing of sewage from mobile homes, service buildings and other accessory facilities. Connection shall be made to a public sewage system where available. Where public sewage is not available, an on-site disposal system shall be designed, constructed and maintained as approved by the Pennsylvania Department of Environment Protection.

## SECTION 814   ELECTRICAL DISTRIBUTION SYSTEM

Every park shall provide an electrical wiring system consisting of wiring, fixtures, and equipment and appurtenances which shall be installed and maintained in accordance with the local electrical power utility's specifications regulating such systems.

A.    An electrical outlet supplying at least one hundred (100) amps shall be provided for each mobile home lot. Where power lines are above the trailer park, they shall not be less than fifteen (15) feet above any trailer.

B.    The Planning Commission may require that power lines be installed underground where feasible.

## SECTION 815   REFUSE HANDLING

The storage, collection and disposal of refuse in the mobile home park shall be so conducted as to create no health hazards, rodent harborage, insect breeding areas, accident or fire hazards or air pollution and shall comply with health regulations governing mobile home parks.  Plans for refuse handling, storage and disposal shall be subject to review and approval by the Board of Supervisors, Planning Commission and Pennsylvania Department of Environmental Protection.

## SECTION 816   INSECT AND RODENT CONTROL

Grounds, building and structures shall be maintained free of insect and rodent harborage and infestation.  Extermination methods and other measures to control insects and rodents shall conform to the requirements of the Pennsylvania Department of Environmental Protection regulation governing mobile home parks.

## SECTION 817   FIRE PROTECTION

A.    The mobile home park area shall be subject to all rules and regulations of the Township, County and Commonwealth pertaining to fire protection.

B.    Mobile home park area shall be kept free of litter, rubbish and other flammable materials.

C.    Portable fire extinguishers of a type approved by the area Fire Marshall shall be kept in public service buildings and under park control.

## ARTICLE IX
### *RECREATIONAL AND SEASONAL LAND DEVELOPMENT STANDARDS*

## SECTION 901   GENERAL REQUIREMENTS

A Recreational and Seasonal Land Development includes the improvement and development of land for seasonal and/or leisure time activities.  Such developments are for temporary occupancy and are not intended now or in the future for year-round dwelling purposes, and may include travel trailers, motor homes, campers, lots intended for tents, and land intended for various other outdoor recreational activities such as hunting and fishing.  However, developments comprising cottages, cabins, second homes, other permanent and fixed dwelling structures, and any recreational and seasonal lots for sale are excluded from this Article and are viewed as residential subdivisions in relation to this Ordinance.

A.  Classification: Whenever any land development is proposed, before any contract is made for the sale or lease of any part thereof, and before any permit for development in such proposed land development shall be granted, the owner or his agent, shall apply for and secure approval of such proposed land development in accordance with the following procedures for development, which includes a maximum of two (2) steps for a Minor and three (3) steps for a Major Development as follows:

1.  Minor Development - includes ten (10) or fewer campsites for recreational and/or seasonal use.
    a.    Sketch Plan (optional)
    b.    Final Plan

2.  Major Development  - includes eleven (11) or more campsites for recreational and/or seasonal use
    a.    Sketch Plan (optional)
    b.    Preliminary Plan
    c.    Final Plan

B.  Pre-Application Consultation:  Prior to filing an application for approval of al land development with the Township, the owner or his authorized agent, shall meet with the Jackson Township Board of Supervisors for an official classification of his proposed land development.  The Jackson Township Board of Supervisors shall determine whether the proposal shall be classified as a Minor Development or a Major Development.  At this time, the Jackson Township Board of Supervisors shall advise the owner or his authorized agent as to which of the procedures contained herein must be followed.

C.  Official Filing Date: For the purpose of these regulations, the official filing date shall be the date of the regular meeting of the Jackson Township Board of Supervisors next following the date the application and plans are received at the Township Building providing that said regular meeting shall occur more than thirty (30) days following the submission of the application, the official filing date shall be the thirtieth (30th) day following the day the application has been submitted.  On receipt of an application for land development approval the Jackson Township Board of Supervisors shall affix to the application both the date of submittal and the official filing date.

D.  Huntingdon County Planning Commission Review:  All plans shall be submitted to and reviewed by the Huntingdon County Planning Commission in accordance with its then prevailing rules and regulations.  The Township shall forward to the applicant a copy of any report of the Huntingdon County Planning Commission.  The Township shall not approve an application until th County report is received or until the expiration of thirty (30) days from the date the application was forwarded to the County.

## SECTION 902   SUBMISSION AND REVIEW OF "SKETCH PLAN" (OPTIONAL)

The submission and review of the Optional Sketch Plan for land developments shall follow the procedures outlined in Article III, Section 303.

## SECTION 903 OFFICIAL SUBMISSION AND REVIEW OF THE "PRELIMINARY PLAN"

The submission and review of the Official Preliminary Plan shall follow the procedures outlined in Article III, Section 304. Prior to the review and approval of the Preliminary Plan, the applicant must make application and meet all requirements of the Pennsylvania Department of Environmental Protection Regulations, Title 25, Chapter 191, regarding Organized Camps and Campgrounds, as well as any other State government regulations which may apply.

## SECTION 904   OFFICIAL SUBMISSION AND REVIEW OF THE "FINAL PLAN"

The submission and review of the Final Plan shall follow the procedures outlined in Article III, Section 305.

## SECTION 905   RECORDING OF THE "FINAL PLAN"

The recording of the Final Plan shall follow the procedures outlined in Article III, Section 306.

## SECTION 906   PERFORMANCE GUARANTEES

The submission of required performance guarantees shall follow the procedures outlines in Article III, Section 305.

## SECTION 907   PLAN REQUIRMENTS

Plan requirements for all recreation and seasonal land developments shall follow the requirements delineated in Article IV.

## SECTION 908   DESIGN STANDARDS

Recreational and seasonal land developments shall be designed pursuant to the applicable standards and requirements contained in Article V and Article VI in this Ordinance, except for the following:

A.  Section 501 – Streets
B.  Section 503 – Lots and Parcels

The following design standards apply to recreational and seasonal land developments not covered elsewhere in this Ordinance.

A.  Streets: The land development shall be designed to provide an access and internal traffic circulation system adequate to accommodate the type and volume of traffic to be generated, and shall be constructed to provide a sound, all-weather driving surface, reasonably smooth, free from mud, dust, and/or standing water. All private streets shall be considered to be required improvements. The following minimum standards apply to all private streets:

1.  Right-of-Way Width – 40 feet

2.  Cartway Width – 16 feet fro two-way roads, 10 feet from one-way roads.

3.  Cartway Construction – Six (6) inches of suitable, compacted and graded stone base material to provide a permanent and all-weather surface which will facilitate storm drainage management.

4.  Minimum Allowable Grade- The maximum allowable grade for private roads shall be a 10 percent (10%) slope. However, special drainage measures and considerations will be required on grades exceeding a six (6) percent slope, including special roadway cross sections, grading, shoulder construction and stabilization, cross drainage structures, and cut-and-fill slopes, as recommended and/or accepted by the Township Engineer.

5.  Cul-de-sac minimum standards – While there are no minimum or maximum length requirements, excessively long segments are discouraged dure to emergency vehicle access considerations. A turnaround area shall be provided at the terminus of all dead-end and/or cul-de-sac segments having an unobstructed maneuvering area equal to a fifty (50) feet turning radius.

The internal street and roadway system shall be privately owned and appropriately noted on the Final Plan, and provide safe and convenient access to all camp sites and facilities. The alignment and gradients of all internal streets and roadway shall be properly adapted to the topography, to the types of anticipated traffic, and to the satisfactory control of surface water. Points of connection between the private street and roadway system and the existing public street system shall be designed to avoid congestion and hazardous intersections, in accordance with Section 503.4, Intersections.

B.  Lots: Individual campsites shall comprise a minimum area of at least 2400 square feet, with no more than a total of fifteen (15) individual campsites per acre. Each campsite shall be accessible from the private street/roadway system without the necessity to cross any other campsite. In addition, recreation vehicle campsites shall have a minimum width of forth (40) feet, and a minimum depth of sixty (60) feet or 30 percent (30%) longer than the maximum length of the recreational vehicle anticipated to occupy the space.

C.    Parking:  Parking spaces shall be provided to accommodate the number and size of vehicles anticipated.  Parking spaces for all campsite users shall be on the campsite lot.   In addition, a minimum of one (1) parking space for every two (2) campsites shall be provided for visitors.  Parking spaces for visitors may be on a common parking area.  The parking spaces shall be of a compacted and graded stone base material to provide a permanent and all-weather surface, and support the types, lengths, and weights of vehicles anticipated to use the facility.

D.    Campsites: Individual campsites and accessory buildings shall be designed to be at least fifty (50) feet from any arterial highway, or thirty-five (35) feet from any other type of public right-of-way.   Recreational vehicle campsites for trailers, campers, and/or motor homes shall contain a stabilized vehicular parking pad of shale, gravel, stone, paving, or other suitable material, and shall be dimensioned that when any space is occupied, no portion of any camping unit shall be within ten (10) feet of any portion of any other camping unit or accessory building, and at least fifteen (15) feet from any internal private roadway.

E.    Relationship with Adjoining Properties:   The design of proposed land developments governed by this section shall take into account potential effects and impacts on adjacent properties.   A landscaped buffer strip having a minimum width of twenty (20) feet shall be provided along the perimeter of the land development, within which no campsites shall be located.

F.    Minimum Acreage: The minimum size for a Recreation Vehicle Park is five (5) acres, of which 10 percent (10%) shall be set aside and developed as common use areas for open and unenclosed recreation facilities;, which my include any required buffer areas.

## SECTION 909  IMPROVEMENTS

Where appropriate the applicant of any land development shall be required to provide the following improvements, or a suitable guarantee pursuant to Section 306, and address at least the following:

A.    Streets and access roads, including boat parking areas, driveways, curb cuts, and traffic control devices.

B.    Utilities including, where applicable, stormwater management facilities, sanitary sewer facilities, water facilities, pumping facilities, gas lines, electrical facilities, telephone, and other facilities.

C.    Any proposed amenities including recreational fac;ilities, meeting facilities, and screening and landscaping.

D.    Any other improvements which may be required for approval.

E.      Procedures and mechanisms guaranteeing the perpetual private maintenance of all improvements by the owner and/or operator of the facility.

## SECTION 910 MINIMUM FACILITIES

At a minimum, land developments proposed under this Article shall include certain facilities, depending upon the type of camping areas planned.

A.      Camping areas intended to primarily serve the needs of overnight tenting campers shall include toilet facilities.

B.      Camping areas intended to primarily serve the needs of overnight camper, trailer, and motor home users shall include the availability of electric service to individual campsites, central travel trailer sanitary and water stations, and toilet facilities.

C.      Camping areas intended to serve as longer term destinations shall include back-in parking at campsites, individual electric and water connections, central travel trailer sanitation station, and central toilet and shower facilities.

The above are minimal requirements, subject to more stringent requirements imposed by the regulations of Title 25, Chapter 191 of the Pennsylvania Department of Environmental Protection.  The applicant may provide enhanced facilities such as laundry, picnic, swimming, and other facilities.  The applicant shall specify the manner in which all facilities are to be privately maintained.

## ARTICLE X
## ADMINISTRATION, AMENDMENT, SEVERABILITY

### SECTION 1001 REVISION AND AMENDMENT

A. The Municipal Officials may, from time to time on their own motion revise, modify, or amend these regulations in order to increase their effectiveness or to expedite the approval of subdivision plans.

B. Any revisions, modification, or amendments to these regulations shall be made in accordance with the procedures as provided in Act 247, Article V, Section 505, after a public hearing on the proposed revisions, modifications, or amendments.

In addition, in the case of amendment other that that prepared by the Municipal Planning Commission, the Municipal Officials shall submit each amendment to the Municipal Planning Commission (if applicable) and County Planning Commission for recommendations at least thirty (30) days prior to the date fixed for the public hearing on such proposed amendment.

C. Proposed Subdivision and Land Development Ordinance and amendments shall not be enacted unless notice of proposed enactment is given in the manner set forth in Act 247, Article V, Section 506. The municipal officials shall publish the proposed ordinance or amendment once in a newspaper of general circulation in the municipality not more than sixty (60) days nor less than seven (7) days prior to passage.

## *SECTION 1002 MODIFICATIONS*

A. The municipality may grant a modification or waiver from the requirements of one or more of the provisions within this Subdivision and Land Development Ordinance if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification or waiver will not be contrary to the public interest and that the purpose and intent of the Ordinance is observed.

B. All requests for a modification or waiver shall be in writing and shall accompany and be part of the application for subdivision or land development review. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision(s) of the Ordinance involved, and the minimum modification necessary.

C. The municipality shall keep a written record of the action on all requests for modifications and/or waivers.

D. In reviewing the subdivider's requests for a modification/waiver from these Regulations, the following criteria should be used:

1. An unnecessary hardship should be established upon a finding of fact.

2. The particular hardship must stem from these regulations.

3. The situation must be unique, not one shared similarly by other properties in the neighborhood.

4. The hardship cannot be self-created by the property owner.

5. Hardship is not to be construed to mean that less profit will be made under the existing regulations than might be realized with the granting of a modification/waiver.

6. The hardship must be suffered by the parcel of land under question and not be other parcels owned by the subdivider or by the community as a whole.

7. If these regulations were in existence at the time of the purchase of the parcel of land under question, the conditions of the parcel itself or the neighborhood must have changed since the time of the purchase. The changed condition must have a unique bearing on the parcel under question.

E. In granting modifications/waivers, the Municipality may impose such condition as will, in its judgement, secure substantially the original objectives of the now modified requirements.

F. In order to encourage flexibility, economy, and ingenuity in the layout and design of subdivision and land developments, and to encourage the provisions of amenities not otherwise required by this Ordinance or other applicable regulations, the Municipality may waive, modify, reduce, or otherwise alter the standards and requirements of this Ordinance, provided, that such actions do not conflict with the purposes of this Ordinance.

## SECTION 1003 RECONSIDERATION, MEDIATION, AND APPEALS

A. If, upon the judgement of the Municipality, the subdivider has additional relevant information to present, any subdivider aggrieved by a finding, decision, or recommendation of the Municipality may request and receive reconsideration of the original finding, decision, or recommendation by the Municipality.

B. The Municipality may offer a mediation option as an aid in completing proceedings authorized by Article V, Section 508 of Act 247: "Approval of Plats". In exercising this option, the Municipality and mediating parties shall meet the stipulations and follow the procedures set fourth in Article IX, Section 908.1 of Act 247, as re-enacted and amended.

C. Any subdivider aggrieved by a finding, decision, or recommendation of the Municipality may appeal such finding, decision, or recommendation to the Court of Common Pleas.

D. All subdivision and land development appeals shall be filed not later than thirty (30) days after issuance of notice of the decision or report of the Municipality. All appeals shall be in accordance with the provisions of Article V, Act 247.

## SECTION 1004 FEES

A. The Municipal Officials shall establish by resolution a collection procedure and Schedule of Fees to be paid by the subdivider at the time of filing a Preliminary Plan.

B. The Schedule of Fees shall be posted in the Municipal Secretary's office or in such other place as the Municipal Officials may designate.

C. In the event the subdivider is required to pay additional fees at the filing of the Final Plan, such fees shall be collected by the Municipal Secretary prior to distributing the Final Plan. There shall be no refund or credit of any portion of the fee should the subdivider fail to apply for final approval within the required period for time or if the Final Plan covered only a section of the subdivision for which Preliminary Approval has been obtained.

D.  No Final Plan shall be approved unless all fees and charges have been paid in full to the Municipality.

## SECTION 1005 REMEDIES, ENFORCEMENT, AND JURISDICTION

A.  In the event that any improvements which may be required have not been installed as provided in this Ordinance or in accord with the approved Final Plan, the Municipality is hereby granted the power to enforce any corporate bond, or other security by appropriate legal and equitable remedies to effect completion of said improvements.  If proceeds of such bond, or other security are insufficient to pay the cost of installing or making repairs or corrections to all the improvements covered by said security, the Municipality may, at its option, install part of such improvements in all or part of the subdivision or land development and may institute appropriate legal or equitable action to recover the monies necessary to complete the remainder of the improvements.  All of the proceeds, whether resulting from the security or from any legal or equitable action brought against the developer, or both, shall be used solely for the installation of the improvements covered by such security, and not for any other municipal purpose.

B.  In addition to other remedies, the Municipality may institute and maintain appropriate actions by law or in equity to restrain, correct or abate violation, to prevent unlawful construction, to recover damages and to prevent illegal occupancy of a building, structure or premises.  The description by metes and bounds in the instrument of transfer or other document used in the process of selling or transferring shall not exempt the seller or transferor from such penalties or from the remedies herein provided.

C.  The Municipality may refuse to issue any permit or grant any approval necessary to further improve or develop any real property which has been developed or which has resulted from a subdivision of real property in violation of this Ordinance.  This authority to deny such a permit or approval shall apply to any of the following applicants:

1.  The owner of record at the time of such violation.

2.  The vendee or lessee of the owner of record at the time of such violation without regard as to whether such vendee or lessee had actual or constructive knowledge of the violation.

3.  The current owner of record who acquired the property subsequent to the time of violation without regard as to whether such current owner had actual or constructive knowledge of the violation.

4.  The vendee or lessee of the current owner of record who acquired the property subsequent to the time of violation without regard as to whether such vendee or lessee had actual or constructive knowledge of the violation.

As an additional condition for issuance of a permit or the granting of an approval to any such owner, current owner, vendee or lessee for the development of any such real property, the Municipality may require compliance with the conditions that would have been applicable to the property at the time the applicant acquired an interest in such real property.

D. Any person, partnership, or corporation who or which has violated the provisions of this Ordinance shall, upon being found liable therefor in a civil enforcement proceeding commenced by the Municipality, pay a judgement of not more than $500.00 plus all court costs, including reasonable attorney fees incurred by the Municipality as a result thereof. No judgement shall commence or be imposed, levied, or payable until the date of the determination of a violation by the District Magistrate. If the defendant neither pays nor timely appeals the judgement, the Municipality may enforce the judgement pursuant to the applicable rules of civil procedure. Each day that a violation continues shall constitute a separate violation, unless the District Magistrate determining that there has been a violation, further determines that there was a good faith basis for the person, partnership, or corporation violating the Ordinance to have believed that there was no such violation, in which event there shall be deemed to have been only one such violation until the fifth day following the date of the determination of a violation by the District Magistrate and thereafter each day that a violation continued shall constitute a separate violation. The court of common pleas, upon cause shown, may grant an order of stay tolling the per diem judgement pending a final adjudication of the violation and judgment.

E. District Magistrates shall have initial jurisdiction in proceedings brought under enforcement remedies.

## SECTION 1006 KEEPING OF RECORDS

The Municipal Planning Commission, if applicable, and the Municipal Officials shall keep a record of their findings, decisions, and recommendations relative to all subdivision plans filed for review. Such records shall be made available to the public for review.

## SECTION 1007 RESPONSIBILITY

The subdivider shall be responsible for observing the procedures established in this Ordinance and for submitting all plans and documents as may be required.

## SECTION 1008 CONFLICTS

A. Whenever there is a difference between the minimum standards specified herein and those included in other Municipal Ordinances or regulations, the more stringent requirements shall apply.

B. All existing Ordinances or regulations or parts thereof which are contrary to the provisions of this Ordinance are hereby repealed to the extent necessary to give this Ordinance full force and effect.

## SECTION 1009 SEVERABILITY

Should any article, section, subsection, paragraph, clause, phrase, or provision of these Regulations be declared by a court or competent jurisdiction to be invalid, such judgement shall not affect the validity of the Regulations as a whole or any part or provision thereof other than the part so declared to be invalid or unconstitutional.

## SECTION 1010 EFFECTIVE DATE

This Ordinance shall become effective immediately upon adoption.

DULY ENACTED AND ORDAINED BY THE Municipality of Jackson Township, Huntingdon County, Pennsylvania this _____7_____ day of _____July_____, 20__, in lawful session duly assembled.


BY:

_Ralph Weiler_____

_D. Tomsuiles_____

_Michael A. Yoder_____


ATTEST:

_Ann L. Ward_____
Secretary

APPENDIX 1

STREET DESIGN CRITERIA

| Road Classification | Current ADT[1] | Design Speed | Flexible Pavement[2] Minimum Depths | Paved Cartway[3] Width | Shoulder[4] Width | Right-of-Way[5] |
|---|---|---|---|---|---|---|
| Minor Street (Local Street) | 21-250 * | 30 mph | Surface - 1½" - 3½"<br>Base Course - 4½" - 6"<br>Subbase - 6" | 18' | 4' to 8' | 33' |
| Collector Street | 250-400 * | 30 mph | Surface - 3½"<br>Base Course - 4" - 8"<br>Subbase - 6" | 20' | 8' | 36' |
| Collector Street | 400 and Over | 40 mph | Surface - 3½"<br>Base Course - 4" - 8"<br>Subbase - 6" | 22' | 8' | 38' |

SOURCE: Guidelines for the Design of Local Roads and Streets - Publication #70 (1990) PA Department of Transportation - Tables 2, 1 and 2.1.10.

NOTES:
1 - ADT - Average Daily Traffic
2 - Butuminous Surface and Base Course varies in thickness due to materials used (Table 2.1)
3 - Two Lanes
4 - Includes both left and right shoulders
5 - Right-of-Way includes an additional 4 feet beyond both shoulders for rounding (see Typical Roadway Section). Additional right-of-way pavement widths may be required by Municipal Officials.

* 1-20 ADT Minor Street Collector or Collector cartway should have a minimum of 6 inch base of #4 or #3 limestone chocked and surfaced with chips.

A-1

APPENDIX 2


STREET AND INTERSECTION DESIGN SPECIFICATIONS

Minimum street right-of-way and pavement widths shall be as set forth in the following table:

| STREET TYPE | RIGHT-OF-WAY WIDTH | CARTWAY WIDTH | SHOULDER WIDTH |
|---|---|---|---|
| Arterial | 70 feet | ** | 8 feet* |
| Collector | 60 feet | 20 feet | 6 feet* |
| Local | 50 feet | 18 feet | 2 feet |


\*     In curbed sections, shoulder width may be decreased at the discretion of the Supervisors as advised by the Planning Commission.

\*\*    As deemed appropriate by the Supervisors and the Township Engineer.

APPENDIX 3

STORM WATER RUNOFF CALCULATIONS
for:

All calculations require a storm of 25 years within a 24 hour duration.

Sites covering an area equal to or less than 1.00 acre shall be based on the Rational Method: Q-CIA
where
Q = RUNOFF FROM RAINFALL (CFS)
C = RUNOFF COEFFICIENT
I = INTENSITY (INCHES/HOUR)
A = AREA (ACRES)

Q after development must be less than or equal to Q prior to development. The following table shows the values of the Run Off Coefficient that are to be used in calculations:

| TYPE | SLOPE <2% | SLOPE <10% | SLOPE >10% |
|---|---|---|---|
| Bituminous Pavement | 0.90 | 0.95 | 0.95 |
| Concrete | 0.95 | 0.95 | 0.95 |
| Gravel | 0.20 | 0,25 | 0.30 |
| Rools | 0.95 | 0.95 | 0.95 |
| Grassed Areas | 0.25 | 0.30 | 0.30 |
| Earth-No Vegetation | 0.60 | 0.65 | 0.70 |
| Wooded Areas | 0.10 | 0.15 | 0.20 |

Minimum Recommended Storm Intensity = 1.68 INCHES/HOUR
Run-off is to be calculated as one of the types listed in the preceding table.
Q should be calculated for each type and combined into a total Q.

If run-off storage is required, it should be calculated as R=C (0.4) (A). The amount of run-off to be stored should be the difference between the total run-off under existing conditions subtracted from the total run-off after development. In most cases there will be an increase in run-off after development.

where
R = RUN-OFF STORAGE FOR EACH TYPE MATERIAL (CUBIC FEET)
C = RUN-OFF COEFFICIENT
A = AREA (SQUARE FEET)

When more than one type of material is considered, the storage is considered to be the sum of each of the run-off storage types.

A-3

# WORKSHEET
## ----------

| EXISTING CONDITIONS | AFTER DEVELOPMENT |
|---|---|

$$I=1.68$$

$$I=1.68$$

| MATERIAL TYPE | C | A | MATERIAL TYPE | C | A |
|---|---|---|---|---|---|
| 1. | | | 1. | | |
| 2. | | | 2. | | |
| 3. | | | 3. | | |

$$Q_E = CIA$$

$$Q_A = CIA$$

$$R = C(0.4)A$$

$$R = C(0.4)A$$

If $Q_A$ (after development) is not less than or equal to $Q_E$ (existing conditions), then on site storage will be required.

If a pipe discharge is used then:

$$A = \frac{Q_E \text{(existing conditions)}}{c\sqrt{2gh}}$$

where
A=AREA OF PIPE DISCHARGE(SQ. FT.)
Q=EXISTING CONDITIONS
c=0.8(PVC PIPE RECOMMENDED)
g=32.2 ft/second squared
h=HEAD(FEET)

Sites covering one to five acres may use either the Rational Method or the SCS Method. If the SCS Method is used, you must follow the format as given in the U.S. Department of Agriculture Soil Conservation Field Manual.

Sites covering five acres or more must use the SCS Method.

# APPENDIX 4

## MINOR TO MINOR INTERSECTION



MINIMUM BUILDING
SET-BACK

75'    75'

75'

R/W

## COLLECTOR TO COLLECTOR INTERSECTION



MINIMUM BUILDING
SET-BACK

R/W

150'    150'

150'

## INTERSECTION SIGHT DISTANCE

A-4

APPENDIX 5.



SKETCH PLAN
TRELHAVEN TERRACE

TOWNVILLE TOWNSHIP — ANY COUNTY, PENNA.

SCALE — 1" = 100'

DATE — MARCH 15, 1974

LAND DEVELOPMENT ENGINEERS
TOWNVILLE, PENNSYLVANIA

OWNER - SUBDIVIDER

JOHN A. JONES

R.D. 1
TOWNVILLE, PENNSYLVANIA

NOTES:

1. PROPERTY TO BE SERVED BY EXISTING 10"
WATER MAIN IN WYNNWOOD ROAD.

2. PROPERTY TO BE SERVED BY INDIVIDUAL
SEPTIC SYSTEMS.

LOCATION MAP
SCALE = 1" =

A-5

Appendix 6



PRELIMINARY PLAN
of
TREEHAVEN TERRACE

TOWNVILLE TOWNSHIP
ANY COUNTY      PENNSYLVANIA
SCALE: 1"=100'     JUNE 1, 1974

LAND DEVELOPMENT ENGINEERS
TOWNVILLE, PENNSYLVANIA

SEAL

NORTH

SITE DATA

NUMBER OF LOTS —— 23
NUMBER OF ACRES —— 18.3
ZONING —— R-1
TYPE OF DEVELOPMENT—SINGLE FAMILY DETACHED

OWNER — SUBDIVIDER

JOHN A. JONES
R.D. 1
TOWNVILLE, PENNSYLVANIA

NEIGHBORHOOD MAP

SCALE: 1"=600'

A-6

Appendix 7



## FINAL PLAN
of
**TREEHAVEN TERRACE**
TOWNVILLE TOWNSHIP
PENNSYLVANIA
ANY COUNTY     OCTOBER 1, 1974
SCALE 1"=100'

100   0   100   200

LAND DEVELOPMENT ENGINEERS
TOWNVILLE, PENNSYLVANIA

SEAL

APPROVED BY THE (GOVERNING BODY) OF
( MUNICIPALITY) THIS ___ DAY OF
19__

APPROVED BY THE (MUNICIPALITY) PLANNING
COMMISSION THIS ___ DAY OF ___ 19__

REVIEWED BY:
_____ DATE
MUNICIPAL ENGINEER

REVIEWED BY THE ANY COUNTY PLANNING
COMMISSION THIS ___ DAY OF ___ 19
_____
CHAIRMAN     DIRECTOR

OWNER-SUBDIVIDER
JOHN A. JONES
R.D. 1
TOWNVILLE, PENNA.

SOURCE OF TITLE
RECORDED IN DEED
BOOK ___ VOLUME ___
PAGE ___

I CERTIFY THAT THIS SURVEY
AND PLAT ARE CORRECT.

_____
SIGNATURE

ON THIS, THE ___ DAY OF ___, 19 ___ BEFORE
ME, THE UNDERSIGNED OFFICER, PERSONALLY
APPEARED, ACCORDING TO LAW, DEPOSES AND SAYS
THAT HE IS THE OWNER AND/OR EQUITABLE OWNER
OF THE PROPERTY SHOWN ON THIS PLAN, AND THAT
HE ACKNOWLEDGES THE SAME TO BE RECORDED
PLAN, AND DESIRES THE SAME TO BE RECORDED
ACCORDING TO LAW, AND ANY HE, HIS ACT AND
AS SUCH ACCORDING TO LAW AND ANY NOT-
STREETS AND OPEN SPACES SHOWN AND NOT-
HERETOFORE DEDICATED ARE HEREBY DEDICATED
TO THE PUBLIC USE.

_____
OWNER'S SIGNATURE

_____
NOTARY      PUBLIC

MY COMMISSION
EXPIRES ___ 19 __

NEIGHBORHOOD MAP

NOTE:
1. PERMANENT MONUMENTS AND MARKERS WILL
BE INSTALLED UPON COMPLETION OF THE GRADING

2. OFF-STREET PARKING SPACE TO BE PROVIDED ON
EACH LOT.

3. ON-LOT INSPECTION AND APPROVAL OF SEPTIC
TANK AND TILE FIELD INSTALLATION.......

4. ETC.

5. ETC.

JOSEPH R. SMITH
(DEED REF. 3-17-56)

5.96 ACRES TO BE DEDICATED FOR PUBLIC PARK

JOSEPH R. SMITH
(DEED REF. 3-17-56)

LUCY L. LANTENSCHLAGER
(OLD REF. 1-21-74)

WYNWOOD ROAD

A - 7



TYPICAL ROADWAY SECTION

N.T.S.

APPENDIX 9

**JACKSON TOWNSHIP**
R.D. 1, Box 389A
Petersburg, PA 16669
Telephone: 814-667-2992

## APPLICATION FOR SUBDIVISION OR LAND DEVELOPMENT APPROVAL

FILE NO._____
DATE_____

Name of Plan:_____

Type of Plan:_____

Owner's Name:_____

Address:_____

Applicant's Name:_____

Address:_____

Billing Address for Engineering Services:_____

_____

Location of Project:_____

Size of Project:_____ Acres:_____ Number of lots or units:_____

Drawings Prepared by:_____

Date of Drawings:_____ Latest Revision Date:_____

FEES:_____ DATE PAID:_____

I/We certify that the above information is correct and further agree to reimburse Jackson Township for the cost of Engineering Services, Materials Testing and other site inspections as required by Jackson Township throughout the course of our development.

Signature:_____ Date:_____
          Owner or Authorized Agent

A-9

APPENDIX  10

## JACKSON TOWNSHIP

## APPLICATION FOR CONSIDERATION OF A SUBDIVISON AND/OR LAND DEVELOPMENT PLAN

File No._____

Date of Receipt/Filing:_____
(For Township Use Only)

The undersigned hereby applies for approval under the Jackson Township Subdivision and Land Development Ordinance for the Plan, submitted herewith and described below:

1.    Plan Name:_____

      Plan No:_____    Plan Date:_____

2.    Project Location:_____
_____

3.    Name of Property Owner(s):_____
      Address:_____    Phone No._____

4.    Land Use and Number of Lots and/or Units (indicate answer by number of lots or units):

      _____Single Family (Detached)    _____Commercial
      _____Multi-Family (Attached-Sale)    _____Industrial
      _____Multi-Family (Attached-Rental)    _____Institutional
      _____Mobile Home Park    _____Other (please specify)
                           _____

5.    Total Acreage:_____

6.    Application Classification:

      _____Pre-Application Review    _____Revised Plan
      _____Concept Plan    _____Lot Add-On Plan
      _____Preliminary Plan    _____Minor Plan
      _____Final Plan

7.    Name of Applicant (if other than owner):_____
      Address:_____    PhoneNo._____

A-10

8.    Firm Which Prepared Plan:_____

      Address:_____Phone No._____

      Person Responsible for Plan:_____

9.    Is a Zoning Variance, Special Exception and/or Conditional Use Approval Necessary?

      _____ If yes, please specify:

      _____

10.   Type of Water Supply Proposed:              _____    Public

                                                  _____    Semi-Private

      *Please indicate if a capped system is proposed.*    _____    Individual

11.   Type of Sanitary Sewage Disposal Proposed      _____    Public

                                                  _____    Semi-Private

                                                  _____    Individual

      *Please indicate if a capped system is proposed.*

12.   Lineal Feet of New Street_____

      Identify All Street(s) Not Proposed for Dedication_____

      _____

13.   Sewer Facilities Plan Revision of Supplement Number _____ and Date
      Submitted_____

      The undersigned hereby represents that, to the best of his knowledge and belief, all information
listed above is true, correct, and complete.

      Date:_____    _____
                                         Signature of Landowner or Applicant

APPENDIX 11
APPLICATION FOR REVIEW OF A <u>MINOR</u> SUBDIVISION PLAN

The undersigned hereby applies for Review by the Municipality of the <u>Minor</u> land subdivision plan submitted herewith and described below:

1.  Name of Subdivision:_____ Plan Date:_____

    County Deed Book No.:_____ Page No.:_____

    County Tax Map No.:_____ Parcel No.:_____

2.  Name of property owner(s):_____
    (If corporation, list corporation name and address and two (2) officers of corporation)

    Address:_____

    _____ Phone No._____

3.  Name of applicant:_____
    (If other than owner)

    Address:_____

    _____ Phone No._____

4.  Applicant's interest (if other than owner):_____

5.  Engineer or surveyor responsible for plan:_____

    Address:_____

    _____ Phone No._____

6.  Total acreage:_____ Number of lots:_____(Maximum of 5)

7.  Acreage of adjoining land in same ownership (if any):_____

8.  Type of development planned:    _____ Single-family
                                    _____ Two-family
                                    _____ Row
                                    _____ Multi-family
                                    _____ Commercial
                                    _____ Industrial
                                    _____ Other (Specify)

9.  Are lots adjoining paved public or private streets?  _____ Yes  _____ No
    (If no, minor subdivision classification may be denied.)

A-11

10. Are lots accessible to existing water supply?  _____ Public
_____ Individual on-site

11. Are lots accessible to existing sanitary sewage disposal?  \_\_\_\_\_ Public
\_\_\_\_\_ Individual on-site

12. Will this subdivision adversely affect the natural resources of the municipality?

\_\_\_\_\_ No                \_\_\_\_\_ Yes

(If yes, minor subdivision classification must be denied.)

13. Will this subdivision adversely affect adjoining property?

\_\_\_\_\_ No                \_\_\_\_\_ Yes

(If yes, minor subdivision classification must be denied.)

14. Will this subdivision adversely affect present or future development of the municipality (as outlined in a municipal plan)?

\_\_\_\_\_ No                \_\_\_\_\_ Yes

(If yes, minor subdivision classification must be denied.)

15. Is proposed development compatible with the existing zoning ordinance (if any)?

\_\_\_\_\_ No                \_\_\_\_\_ Yes

Current zoning district of subdivision _____

The undersigned certifies that to the best of his/her knowledge and belief, all the above statements are true, correct, and complete. The undersigned acknowledges that no extension of any public facility (street, water, sewer, etc.) will be required for the type of development being planned.

Signature of owner / applicant _____ Date_____

APPENDIX  12
## APPLICATION FOR REVIEW OF A <u>PRELIMINARY</u> SUBDIVISION PLAN

The undersigned hereby applies for Review by this Municipality of the <u>Preliminary</u> land subdivision plan submitted herewith and described below:

1. Name of Subdivision:_____ Plan Dated:_____

   County Deed Book No.:_____ Page No.:_____

2. Name of property owner(s):_____
   (If corporation, list corporation name and address and two (2) officers of corporation)

   Address:_____

   _____ Phone No._____

3. Name of applicant:_____
   (If other than owner)

   Address:_____

   _____ Phone No._____

4. Applicant's interest (if other than owner):_____

5. Engineer or surveyor responsible for plan:_____

   Address:_____

   _____ Phone No._____

6. Total acreage:_____ Number of lots:_____

7. Acreage of adjoining land in same ownership (if any):_____

8. Type of development planned:     _____ Single-family
                                    _____ Two-family
                                    _____ Row
                                    _____ Multi-family
                                    _____ Commercial
                                    _____ Industrial
                                    _____ Other (Specify)

A-12

# APPENDIX 13
## APPLICATION FOR REVIEW OF A <u>FINAL</u> SUBDIVISION PLAN

The undersigned herby applies for Review by the Municipality of the <u>Final</u> land subdivision plan submitted herewith and described below:

1.  Name of Subdivision:_____ Plan Date:_____

    County Deed Book No.:_____ Page No.:_____

    County Tax Map No.:_____ Parcel No.:_____

2.  Name of property owner(s):_____
    (If corporation, list corporation name and address and two (2) officers of corporation)

    Address:_____

    _____ Phone No._____

3.  Name of applicant:_____
    (If other than owner)

    Address:_____

    _____ Phone No._____

4.  Applicant's interest (if other than owner):_____

5.  Engineer or surveyor responsible for plan:_____

    Address:_____

    _____ Phone No._____

6.  Total acreage:_____ Number of lots:_____

7.  Acreage of adjoining land in same ownership (if any):_____

8.  Type of development planned:    _____ Single-family
    _____ Two-family
    _____ Row
    _____ Multi-family
    _____ Commercial
    _____ Industrial
    _____ Other (Specify)

A-13

9.  Will construction of buildings be undertaken immediately?  _____Yes          _____No

    By Whom?                            _____Subdivider
                                         _____Other developers
                                         _____Purchasers of individual lots

10. Type of water supply proposed.           _____Public (municipal) system
                                         _____Semi-public (community) system
                                         _____Individual on-site

11. Type of sanitary sewage disposal proposed.    _____Public (municipal) system
                                              _____Live
                                              _____Capped
                                         _____Semi-public (community) system
                                         _____Individual on-site

12. Are all streets proposed for dedication?    _____Yes          _____No

13. Acreage proposed for park or other public or semi-public use:_____

14. Zoning changes, if any, to be requested:_____

    _____

15. Have appropriate public utilities been consulted?    _____Yes          _____No

16. Material accompany this application:

           Number                                Item

    a)_____          Final Plan
    b)_____          Copies of Deed Restrictions
    c)_____
    d)_____

The undersigned represents that to the best of his/her knowledge and belief all the above statements are true, correct, and complete.

The undersigned further represents that, except as otherwise specifically noted on the attached sheet, all proposed public improvements and facilities as shown on the Final subdivision plan are to be improved, constructed and completed, or a bond posted with the municipality in sufficient amount to cover full estimated cost of construction thereof, prior to sale, transfer or agreement of sale of any subdivided parcels as shown on the plan.

Date:_____    Signature of Owner or Applicant:_____
                                  (by):_____