# ORIGINAL ~to cl

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL AND
SANDRA Y. CORNEAL

**FILED**
HARRISBURG, PA

CASE NO. 1:00-CV-1192

vs.

MAY 12 2003

(JUDGE RAMBO)

JACKSON TOWNSHIP, et al.

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

JURY TRIAL DEMANDED

## DEFENDANTS, JACKSON TOWNSHIP, W. THOMAS WILSON, MICHAEL YODER, RALPH WEILER, BARRY PARKS, DAVID VAN DOMMELEN AND ANN I. WIRTH'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

The only remaining claims in this matter are Plaintiffs' substantive due process claim, and their state law claims for civil conspiracy against the individual Defendants and for alleged violations of the Pennsylvania Constitution.  Defendants filed a Motion for Summary Judgment asserting that the undisputed material facts of record failed to demonstrate that Plaintiffs' substantive due process rights were violated, that Plaintiffs' state law claims are not viable, and that the individual Defendants are entitled to qualified immunity.  Plaintiffs have now responded. Their response demonstrates that summary judgment for Defendants is appropriate. The record evidence does not demonstrate that the Defendants' actions constitute an abuse of government power, which "shocks the conscience" such that Plaintiffs can sustain a substantive due process violation.  Rather, the undisputed material facts of

record demonstrate only that the Defendants' actions were and remain a matter of land use policy.   For this reason and those set forth in Defendants' original Memorandum of Law and below, Defendants' Motion for Summary Judgment must be granted and Plaintiffs' remaining claims against Defendants must be dismissed with prejudice.

## II.    ARGUMENT

### A. PLAINTIFFS' HAVE NOT MET THEIR SUMMARY JUDGMENT BURDEN OF DEMONSTRATING A MATERIAL DISPUTE OF FACT WITH REGARD TO THEIR SUBSTANTIVE DUE PROCESS CLAIM

In order to sustain a substantive due process claim, a Plaintiff must demonstrate that Defendants engaged in an abuse of government power that "shocks the conscience." See Schieber v. City of Phila., 320 F.3d 409, 417 (3d Cir. 2003). In other words, "... to generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.'" Schieber, 320 F.3d at 417 (citations omitted).   The Supreme Court has reiterated that conduct that, "... shocked the conscience and was so brutal and offensive that it did not comport with the traditional ideas of fair play and decency would violate substantive due process." County of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S. Ct. 1708, 1717 (1978) citing Breithaupt v. Abram, 352 U.S. 432, 435, 77 S. Ct. 408, 410 (1957) (internal

citations omitted).  As the Supreme Court stated in the <u>Lewis</u> decision:

> We have ... rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guaranty due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process... it is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience – shocking level.

<u>Lewis</u>, 523 U.S. at 849, 118 S. Ct. at 1718.

In rejecting the less demanding "improper motive" standard previously employed in land use cases and in adopting the "shocks the conscience" standard, the Third Circuit noted that its holding brings this appellate circuit, "... into line with several other Courts of Appeals that have ruled on substantive due process claims in land-use disputes." <u>See United Artists Theatre Circuit, Inc. v. Township of Warrington, Pa.</u>, 316 F.3d 392, 402 (3d Cir. 2003).  In <u>Chesterfield Development Corp. v. City of Chesterfield</u>, 963 F.2d 1102, 1104-05 (8th Cir. 1992), the Court held that allegations that the city arbitrarily applied a zoning ordinance were insufficient to demonstrate a substantive due process claim.  Further, in dicta, the Court stated that the, "... decision would be the same even if the city had

knowingly enforced the invalid zoning ordinance in bad faith … a bad-faith violation of state law remains only a violation of state law." See Chesterfield Development Corp., 963 F.2d at 1105.  In PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 32 (1st Cir. 1991), a developer brought a civil rights action against a Puerto Rican agency and its former administrator following the agency's rejection of construction permits.  The 1st Circuit determined that even assuming that the agency engaged in delay tactics and refused to issue permits for the developer's project, based on considerations outside the scope of its jurisdiction, "… such practices, without more, do not rise to the level of violations of the Federal Constitution under a substantive due process label." Rodriguez, 928 F.2d at 32.  As the Third Circuit observed, "… land-use decisions are matters of local concern, and such dispute should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives." Warrington, 316 F.3d at 402.

In this regard, the 1st Circuit made the following relevant observation:

> … every appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but '[i]t' is not enough simply to give the state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under §1983.

Warrington, 316 F.3d at 402, citing Creative Environments, Inc. v. Estabrook, 680

4

F.2d 822, 833 (1st Cir. 1982). By applying the "shocks the conscience" standard, in a land use context, the Court is prevented from being, "cast in the role of a 'zoning board of appeals.'" Warrington, 316 F.2d at 402, citing Estabrook, 680 F.2d at 833.

Plaintiffs have not met their summary judgment burden of demonstrating a material dispute of fact with regard their substantive due process claim. There is no evidence, which demonstrates that Defendants' actions 'shock the conscience." Rather, the undisputed material facts of record demonstrate that Defendants' actions were a matter of land use policy. The record evidence demonstrates that the process of drafting and adopting the subdivision and land development ordinance (hereinafter "SALDO") began well before Plaintiffs sought to develop their property. (See Exhibit "2"; Exhibit "3", p. 59). Prior to August 1999, the Supervisors began the process of the preparation of the ordinance pertaining to the subdivision and development of land in Jackson Township.[1] Ms. Wirth testified that probably between 1997 and 1998 the issue of the subdivision and land development ordinance was first raised within the Township among the Township Supervisors. (Exhibit "3", p. 59). In this regard, there is absolutely no evidence to support Plaintiffs'

---

[1] A true and correct copy of a letter dated August 2, 1999 from Denson Groendal to Jackson Township Supervisors is attached hereto as Exhibit "33".

allegation that the SALDO was adopted to prevent the Corneals from developing their property. Rather, particularly in light of the citizens' letter attached hereto as Exhibit "33", the process of drafting and adopting the SALDO was a matter of land use planning and policy and was completely unrelated in any way to Mr. Corneal. The facts of record do not support any other reasonable inference or conclusion.

In January 2000, Jackson Township imposed a moratorium. (Exhibit "9"). At the time the Jackson Township Board of Supervisors imposed the moratorium on new subdivisions, the Pennsylvania Courts endorsed moratoriums. See Naylor v. Township of Hellum, 717 A.2d 629, 633 (Pa. Cmwlth. 1998), reversed 565 Pa. 397, 773 A.2d 770 (2001). All of Defendants' actions must be viewed in this historical context; the Defendants believed that they had properly enacted a moratorium which they had a right to enforce, as they revised and prepared to adopt the SALDO. Importantly, the moratorium was in effect one month before Corneals' first proposed subdivision was even drafted. (Exhibit "9"). Pursuant to Mr. Simpson's testimony, he was advised by Ann Wirth on or about January 25, 2000 that the Township was working on a subdivision and land development ordinance and that there was a moratorium in effect; Mr. Simpson advised Mr. Corneal of this information. (Exhibit "10", p. 16). Additionally, Mr. Simpson testified that at the

6

time of that phone call, he had not completed the plans for the proposed Corneal subdivision. (Exhibit "10", p. 17). Again, the moratorium was not imposed in order to prevent the Corneals from developing their property. Simply, the facts of record do not support any other reasonable inference or conclusion.

The undisputed material facts of record demonstrate that there were no improper actions taken by the Township officials which could be characterized as so egregious or arbitrary as to be conscience shocking in the constitutional sense. There were no subdivisions approved during the moratorium; indeed, other subdivisions, besides Mr. Corneal's were held in abeyance. (Exhibit "3", pp. 124-125, Exhibit "8", pp. 123-124). Again, pursuant to the Department of Environmental Protection policies, by way of the Sewage Facilities Act, the Township's insistence on proper sewage tests, modules and permits was not capricious or "conscience shocking," but rather was mandated by DEP standards and regulations. (Exhibit "8", pp. 21-23, 28-30; Exhibit "10", p. 23; 35 P.S. §750.2 et seq.

At all times, Mr. Corneal's plans included a proposed subdivision. Again, when Mr. Corneal purchased his property, it included an already existing house and a barn. (Exhibit "7", p. 24). Initially, Mr. Corneal intended to subdivide his

property into five or six lots. (Exhibit "7", p. 41). The initial subdivision plan proposed three lots; the revised plan, dated April 7, 2000 included two proposed lots and lot 2 provided for a house and a studio.[2] In February, March and April, each of the proposals, which Mr. Corneal submitted, to the Huntingdon County Planning Commission included proposed plans for subdivisions of his existing lot.[3] (Exhibits "12", "15"). In this regard, the Township's refusal to sign Corneal's sewer modules in April of 2000 was appropriate since it would have constituted subdivision approval. Specifically, the Supervisors' refusal to sign the proposed sewage modules at this juncture, while the moratorium was still in effect and where the proposed development created by default a subdivision due to the existing structure, was neither arbitrary nor capricious, such that it "shocks the conscience" of the Court. Similarly, the Township's refusal to issue permits in April of 2000 was appropriate since subdivision approval was necessary prior to the issuance of those permits. In other words, the record evidence demonstrates that the Defendants' actions were a matter of land use policy at that time. Their actions were not

---

[2] A true and correct copy of Corneal's proposed subdivision plan dated 4/7/00 is attached hereto as Exhibit "14". While Defendants previously identified Exhibit "14" as the proposed subdivision plan, dated 4/7/00, Defendants' Appendix of Exhibits inadvertently included the wrong document as Exhibit "14".

[3] A true and correct copy of a letter from HCPC to Ann Wirth dated 2/24/00 is attached hereto as Exhibit "12". While Defendants previously identified Exhibit "12" as the letter from HCPC to Ann Wirth dated 2/24/00, Defendants' Appendix of Exhibits inadvertently included the wrong document as Exhibit "12".

irrational, or made in a vacuum, but rather were sufficiently tied to the legitimate state interest within their province of land use planning and policy.

While Plaintiffs claim that "at every step of the land development process", the Defendants took the actions designed only to prevent the Corneals from developing their property, such is belied by Mr. Corneal's own actions. The Corneals commenced construction of a driveway on their property in the spring of 2000. Mr. Corneal ultimately did construct an apartment on top of the garage, without the requisite permits and/or approval. (Exhibits "21" and "22"). On this basis, again, the Supervisors and/or the officers' decisions with regard to Corneal's request were not without a rational factual basis. Corneal did not seek to comply with the requisite ordinances even with the expiration of the moratorium until the Solicitor sent him a cease and desist request on July 28, 2000. Ultimately, the Township filed a suit to enjoin Corneal's continued construction and to force compliance with the Sewage Facilities Act in the building permit ordinance. (Exhibit "24"). Corneal's continued development demonstrates that he was not deterred in the development of his property by the Township's actions, which again were appropriate and legitimate based on the moratorium and the pending subdivision and land development ordinance. Mr. Corneal only complied with the

permit process after legal action by the Township was instituted, contrary to Plaintiffs' allegations. Mr. Corneal always had at his disposal, the state law action of mandamus, as well as the land use appeal process to the Board of Supervisors and/or to the Court of Common Pleas. He never availed himself of these avenues of redress for the alleged egregious interference by the Township with the development of his property. In any regard, by the spring of 2001, Mr. Corneal completed his construction and by the early summer of 2001, all of Plaintiffs' applications and various permits had been granted and all outstanding sewage issues had been resolved. (Exhibit "2"; Exhibit "4", pp. 122-124).

In summary, the record evidence fails to demonstrate that Defendants' actions were "conscience shocking," such that Plaintiffs can demonstrate a claim for a substantive due process violation. The Supervisors, Township Secretary and the Municipal Ordinance Officers did not act arbitrarily, but rather their actions were always a matter of land use policy. Like the cases relied upon by the Third Circuit in the Warrington decision and the Warrington decision itself, there is no evidence that the Township "knowingly enforced the invalid zoning ordinance in bad faith ..." See City of Chesterfield, 963 F.2d at 1104-05. There is no evidence in this case that the Township engaged in delay tactics for the purpose of refusing to issue

permits.  See Rodriguez, 928 F.2d at 32.  Rather, as outlined above, the Township had enacted a temporary moratorium and was in the process of drafting and approving a subdivision and land development ordinance.  No other subdivisions were approved during this period and others were held in abeyance similar to Mr. Corneal's.  Simply, these land use decisions were a matter of local concern and do not rise to the level nor can they be transformed into substantive due process claims based on Plaintiffs' allegations. On this basis, Defendants' Motion for Summary Judgment must be granted as to Plaintiffs' remaining claims.

### B. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The individual Defendants are entitled to qualified immunity with regard to Plaintiffs' only remaining federal claim that is their substantive due process claim. Again, the Supreme Court has held that, "... government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Essentially, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.  Malley v. Briggs, 475 U.S. 335, 341 (1986).

While Plaintiffs object to Defendants' entitlement to qualified immunity based largely on the alleged improprieties and the imposition of the moratorium, such is no longer at issue in this case. Again, Plaintiffs failed to challenge either the propriety of the moratorium or other land use decisions via a mandamus action, zoning or other land use appeal. Plaintiffs' arguments in this regard speak largely to the alleged anomalies of the imposition of the moratorium and the adoption of the subdivision ordinance. The Corneals rely on two expert reports in support of their argument against qualified immunity. However, a review of the expert reports demonstrate that their primary focus is upon the alleged procedural anomalies with regard to the permit process and/or the adoption of the moratorium in this case. The reports in this regard are longer relevant. On this basis, they do not create a disputed issue of fact with regard to the qualified immunity entitlement.

Rather, there is absolutely no evidence of record that the individual Defendants, including the members of the Board of Supervisors, the Township Building Permit Officer, Sewage Enforcement Officer and the Township Secretary acted in any way other than reasonably in this matter as set forth in more detail in Argument A above. Plaintiffs did not violate a known right of Plaintiffs knowingly or improperly. There is absolutely no record evidence that other developers and/or

individual property owners were given subdivision approval or allowed to begin development of subdivided property. In light of the fact that each of the individual Defendants believed that the building moratorium was lawful pending the adoption of the subdivision and land development ordinance, there is no record evidence from which a jury could conclude that the reasonable officials' in the Supervisors', Secretary's, Mr. Parks' and Mr. Van Dommelen's position at the relevant time could have believed that their conduct was unlawful. See Good v. Dauphin County Social Services, 891 F.2d 1087, 1092 (3d Cir. 1989). Accordingly, based on the reasonable behavior under the circumstances, as more fully set forth in Defendants' primary Memorandum of Law in Support of their Motion for Summary Judgment, Defendants are entitled to qualified immunity and must be dismissed from this action with prejudice.

## III.   CONCLUSION

For all the foregoing reasons, Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann

I. Wirth respectfully request that this Honorable Court grant their Motion for Summary Judgment.

Respectfully submitted,

**MAYERS, MENNIES & SHERR, LLP**

BY: _____

ANTHONY R. SHERR, ESQUIRE
Attorney for Defendants

3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440
(610) 825-0300
Fax (610) 825-6555

14

## CERTIFICATE OF SERVICE

I, Cheryl Zeigler, hereby certify that on the 12th day of May 2003, a true and correct copy of Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth's Reply Memorandum of Law in Support of their Motion for Summary Judgment, was served by first class regular mail, postage prepaid upon the following:

Bridget E. Montgomery, Esquire
Adam M. Shienvold, Esquire
Eckert, Seamans Cherin & Mellott
213 Market Street, 8th Floor
Harrisburg, PA 17101

BY: _Cheryl Zeigler_____
Cheryl Zeigler
Legal Assistant to Anthony R. Sherr