# ORIGINAL 2 to cv

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID B. CORNEAL AND         :
SANDRA Y. CORNEAL                CASE NO. 1:00-CV-1192

       vs.               :           (JUDGE RAMBO)

JACKSON TOWNSHIP, et al.          JURY TRIAL DEMANDED

**FILED**

**MAY 1 2 2003**

**MARY E. D'ANDREA, CLERK**

**PER_____ HBG, PA DEPUTY CLERK**

### RESPONSE OF DEFENDANTS, JACKSON TOWNSHIP,
### W. THOMAS WILSON, MICHAEL YODER, RALPH WEILER,
### BARRY PARKS, DAVID VAN DOMMELEN AND ANN I. WIRTH TO
### THE "ADDITIONAL UNDISPUTED MATERIAL FACTS"
### FILED BY PLAINTIFFS

Defendants respond to the Additional Undisputed Material Facts in Opposition to Defendants' Statement of Material Facts filed by Plaintiffs as follows:[1]

57.     Admitted.

58.     Denied as stated. Corneal testified that he put out feelers sometime in around the time period as stated.

59.     Denied as stated. To the contrary, Defendant, Wilson's nephew looked into the possibility of purchasing part of the property, but in no had any concrete present plans to purchase any property.

---

[1] It is indeed ironic that Plaintiffs in their Answer to Defendants' Statement of Material Facts state in their Introduction "Defendants' second statement of material facts contains vast amounts of irrelevant facts and conclusions of law both of which are completely inappropriate for inclusion in a Local Rule 56.1 Concise Statement of Undisputed Material Facts." They propose 148 additional facts which are irrelevant, and certainly anything but "a short and concise statement of the material facts."

60.   Admitted.

61.   Admitted.

62.   It is admitted that the Corneals, Hewitt and Smith entered into a contract as stated.  As the contract is in writing, Plaintiffs' characterization of the writing is denied.

63.   Denied as stated.  A moratorium was an enacted at the January 2000 meeting of the Township Board of Supervisors.

64.   Denied.  To the contrary, at her deposition Ms. Wirth did not recall previous discussions.

65.   Denied.  To the contrary, at her deposition Ms. Wirth did not recall such discussions.

66.   Admitted.

67.   Admitted.

68.   It is admitted that Van Dommelen testified as stated.

69.   Admitted.

70.   Admitted.

71.   Admitted.

72.   Admitted.

73.    Denied as stated.  The matter was brought forth at a public meeting and discussed.

74.    Denied as stated.  It is unknown what is meant by "formally submitted".  The moratorium was discussed.

75.    Admitted.

76.    It is admitted that at his deposition, Yoder was not so familiar.

77.    Admitted.

78.    Admitted.

79.    Admitted.

80.    Admitted.

81.    Admitted.

82.    It is admitted that Defendant, Wilson did not directly consult with the Township Solicitor.

83.    Denied.  To the contrary, Solicitor Newton was consulted.

84.    Admitted.

85.    Denied.  To the contrary, while Defendant Wilson may have not spoken to the Solicitor, the Solicitor was consulted regarding matters concerning the Corneals attempt to subdivide the property.

86.     Admitted.  By way of further response, the sewage modules were not signed as ER regulation and statute requires subdivision approval.

87.     It is admitted that the letter states that conversation took place.

88.     Denied.

89.     Denied as stated.  To the contrary, while Ms. Wirth is not aware of any statute requiring submission, she is also aware that the practice policy and custom in Huntingdon County and a practice followed by Jackson Township since she has been involved with the Township is to have such plans submitted to the Huntingdon County Planning Commission.

90.     Admitted.

91.     It is admitted that at his deposition, Mr. Yoder was not aware.

92.     It is admitted that at his deposition, Mr. Yoder was unable to state that he was aware of the process for submission of subdivision applications.

93.     Admitted.

94.     Admitted.

95.     Admitted.

96.     Admitted.

97.     Denied as a conclusion of law.

98.   Admitted.

99.   Admitted.

100.   Admitted.  By way of further response, this revised plan was submitted to the Huntingdon County Planning Commission after Mr. Corneal had declared that he was no longer subdividing the property.

101.   Admitted.

102.   Admitted.

103.   Denied.

104.   Admitted.

105.   Denied.

106.   Denied.  To the contrary, it is believed and therefore averred (Plaintiffs seem to agree (see purposed fact No. 100 herein), at the time Corneal made such request, he was actively still attempting to subdivide the property.

107.   Denied as stated.   It is admitted that Corneal had informed the Township that he was not going to subdivide the property, despite the fact that he was still actively attempting to subdivide the property.  Moreover, as this constituted an equivalent subdivision, subdivision approval was necessary prior to approval by the Township of the sewer modules.

108.   Admitted.

109.   Admitted.

110.   Admitted.

111.   Denied as stated.  It is admitted that Mr. Corneal made such a request.  It is denied that he was not still seeking subdivision approval.

112.   Admitted.

113.   Admitted.

114.   Admitted.

115.   Denied as stated.  It is admitted that a permit was not issued.  The reasons therefore is it was still believed that Mr. Corneal was attempting to subdivide his property and that therefore subdivision approval as well as sewage modules were required.

116.   Admitted.

117.   Admitted.

118.   Admitted.

119.   Denied as stated.  To the contrary, while it is admitted that Defendant, Ann I. Wirth had a conversation with Mr. Parks, it was Mr. Parks who informed Ms. Wirth that a privy permit could not be issued for the property, as there was

running water on the property.

120.   Denied as stated.  To the contrary, Mr. Parks informed the Supervisors that a privy permit could not be issued for the property.

121.   Admitted.

122.   Admitted.

123.   Denied as characterized.   It is admitted that the Township sought assurances that wetlands were not being impacted.  It is further admitted that Mr. Parks had approved sites for on lot sewage disposal.   The relationship is characterized by Plaintiffs that these two facts are not admitted.

124.   Admitted.

125.   Admitted.  By way of further response, Mr. Parks was instructed to go back to the property as a result of unauthorized construction activity on the property to see if any of the sites had been disturbed.  By way of further response, Mr. Parks in fact found that a site was disturbed and therefore could not be used for on lot sewage.

126.   Admitted.

127.   Admitted.

128.   Admitted.

129.  Admitted.

130.  Admitted.

131.  Admitted.   By way of further response, it is further unusual that unauthorized construction activity would take place on a lot disturbing an approved area for sewage disposal.

132.  Admitted.

133.  Admitted.

134.  Admitted.

135.  Admitted.

136.  Admitted.

137.  Admitted.   By way of further response, Mr. Wilson had frequent conversations with Mr. Patterson concerning the protection of streams and waterways within the Township.

138.  Denied as stated.  It is admitted that Mr. Wilson's call to Mr. Patterson concerned potential wetland violations.  It is unknown what is meant by a "private complaint".

139.  Denied as stated.  It is admitted that Defendant Wilson raised the issue. It is denied that this was at a "private meeting".

140.   Denied as stated.  It is admitted that Mr. Corneal went to Mr. Van Dommelen's home.  It is unknown whether he was doing this "pursuant to the Township Building Ordinance".

141.   Admitted.

142.   Admitted.

143.   Admitted.

144.   Admitted.

145.   Admitted.

146.   Admitted.

147.   Denied as stated.  To the contrary, sewage and related subdivision approval was necessary prior to issuing a building permit.

148.   Admitted.

149.   Admitted.

150.   Admitted.

151.   Admitted.

152.   Admitted.  By way of further response, Mr. Van Dommelen had never been presented with a situation where the Township was unaware as to the exact

plans of a building permit and further, whether the property was going to be subdivided prior to building.

153.   See answer to 152.

154.   Denied.  To the contrary, when faced with the same situation with any other resident of Jackson Township, Mr. Van Dommelen's response would have been the same.

155.   Admitted.

156.   Admitted.

157.   Admitted insofar as Mr. Van Dommelen had no information that an applicant would be subdividing the property.

158.   Admitted.  By way of further response, Mr. Van Dommelen was treated both disrespectfully and rudely by Mr. Corneal and did not want to subject himself to additional abuse from Mr. Corneal.

159.   Admitted.

160.   Admitted.

161.   Admitted.

162.   Admitted insofar as there were no additional plans known to subdivide and/or build on the property.

163. Admitted.

164. Admitted.

165. Admitted.

166. Admitted.

167. Admitted.

168. Admitted.

169. Admitted.

170. Admitted.  At the time of his deposition, Mr. Wilson did not have such knowledge.

171. Admitted.

172. Admitted.

173. Admitted.

174. Admitted.

175. Admitted.

176. Admitted.

177. Admitted.

178. Admitted.

179. It is admitted that Ms. Wirth did not so recall at her deposition.

180.  It is admitted that Mr. Yoder was not aware of such ordinance at his deposition.

181.  Admitted.

182.  Admitted.

183.  It is admitted that Mr. Yoder did not personally seek such advice.

184.  It is admitted that Mr. Yoder testified that he did not recall the Supervisors seeking the advice of Solicitor Newton.  By way of further response, Ms. Wirth was the named contact between the Supervisors and Solicitor Newton.

185.  Admitted.

186.  Admitted.

187.  Admitted.

188.  Denied.

189.  Admitted.

190.  Admitted that such lawsuit was filed.  Plaintiffs' characterization of the lawsuit is denied.

191.  Admitted.

192.  Admitted.

193.   Denied.  To the contrary, Mr. Williams at his deposition testified that he thought the requests by the Township were reasonable.

194.   It is admitted that this is quoted testimony from Mr. Williams' deposition.

195.   Admitted except insofar as Mr. Fasic had no knowledge concerning municipal planning and land use policy, practice and customs in Huntingdon County and Jackson Township.

196.   Admitted only that this is a quote from Mr. Fasic's report.

197.   Admitted only that this is a quote from Mr. Fasic's report.

198.   Admitted that these are "from Mr. Fasic's report."

199.   Admitted except insofar as Mr. Heist had no knowledge of policy, practice or custom in Huntingdon County and Jackson Township.

200.   Admitted only that this is a quote from the report of Mr. Heist.

201.   Admitted only that this is a quote from the report of Mr. Heist.

202.   Admitted only that this is a quote from the report of Mr. Heist.

203.   Admitted only that this is a quote from the report of Mr. Heist.

204.   Admitted only that this is a quote from the report of Mr. Heist.[2]

Respectfully submitted,

**MAYERS, MENNIES & SHERR, LLP**

BY: _____

ANTHONY R. SHERR, ESQUIRE
**Attorney for Defendants**

3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440
(610) 825-0300
Fax (610) 825-6555

---

[2] In another bit of irony regarding Plaintiffs' attorney and statements in this matter are their citations to a Stipulation of Facts. The Stipulation of Facts was done pursuant to the Middle Districts' Local Rule requiring pretrial procedure. Most of the Stipulations were made in correspondence to Ms. Montgomery dated March 18, 2003 enclosed hereto and designated as Exhibit "1". The Court is directed to proposed Stipulations Nos. 1 through 20, which have never been responded to by Plaintiffs.

# EXHIBIT "1"

# MAYERS, MENNIES & SHERR LLP
### ATTORNEYS AT LAW

RICHARD J. MENNIES
JOSEPH B. MAYERS
ANTHONY R. SHERR
LISA G. FADEN*
LORI J. MILLER**
JOHN A. ANASTASIA
GRACE P. MANNO***

Also Admitted in New Jersey*
Also Admitted in Illinois**
Also Admitted in Texas***

3031 WALTON ROAD, BUILDING A
SUITE 330, P.O. BOX 1547
BLUE BELL, PA 19422-0440

TEL: (610) 825-0300
FAX: (610) 825-6555

OF COUNSEL
RONALD H. SHERR

E-mail tsherr@mmsllp.com

March 18, 2003

**_VIA FAX AND REGULAR MAIL_**

Bridget E. Montgomery, Esquire
**Eckert, Seamans Cherin & Mellott**
213 Market Street, 8th Floor
Harrisburg, PA 17101

RE:    **Corneal v. Jackson Township, et al.**
       **C.A. No. 1:00-CV-1192 – Judge Rambo**

Dear Ms. Montgomery:

Despite your obnoxious and unprofessional behavior, I am mindful of my obligations pursuant to the Rules, and, therefore, provide you with the following responses to your proposed Stipulations of Facts. It is my recollection that we have worked through No. 37. We agreed to stipulate to the following with exceptions as noted:

Nos. 38, 40, 42, 43, 44, 46 [with the exclusion of the word "merely"], 49 and 50 [with the inclusion of the words "at her deposition" at the beginning of both sentences], 51, 52, 53 [with the inclusion of "at her deposition" at the beginning of the sentence], 54 [with the exclusion of the word "only"], 57, 59, 61, 62, 63, 65, 71, 74 [with the exclusion of Defendant, Wirth and substituting the words" at the meeting, Mr. Corneal was told"], 75, 77 [we note that 77 merely restates No. 68], 78, 79, 80, 81 [with the substitution of the word "did" for the "does"], 82, 84, 85, 86, 87, 88, 90, 93, 95, 97, 98, 99, 100, 101, 102, 103, 106, 108 [with the exclusion of the words "despite the fact that"], 109, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122 [with

Bridget E. Montgomery, Esquire
March 18, 2003
Page 2

the deletion of "an initiative of a private complaint against Corneal for potential wetlands violations and discussed potential wetlands violations by Corneal"], 124, 125, 126, 127, 128 [if you include the words at the end after building permit "at the time"], 129, 130, 132, 133, 134, 135, 136, 138, 139, 140, 141, 144, 145, 146, 147, 148 [with the inclusion of "that is not going to have water" after the word garage], 149, 150, 151, 152 [with the exclusion of the word "purportedly"], 153, 154, 157 [with the inclusion of the word "at his deposition"], 158, 159, 160, 161, 162 [with the substitution of "at her deposition" at the beginning of the sentence], 163- 164 [we would like the inclusion of the words "at his deposition"], 165, 166, 169, 172, 173, 174, and 175.

Accordingly, we will not stipulate to Nos. 45, 52, 68, 70, 73, 91, 92, 104, 131, 137 and 142.

With respect to my proposed stipulations, and since you obviously desire something more formalized than my handwritten notes and typewritten chain of events, which I was going to request that you stipulate to, please let me know whether you will stipulate to the following factual statements:

1.   Jackson Township receives $22,000.00 in tax revenue from its citizens, and has a total budgeted revenue of $98,000.00.

2.   The Township had begun considering and working on a subdivision and land development ordinance prior to Mr. Corneal purchasing his property in Jackson Township.

3.   The first time that Ann Wirth heard that Mr. Corneal had purchased property and was seeking to subdivide his property was when she received the letter from Andy Patterson dated January 11, 2000.

4.   A Moratorium on the acceptance and consideration of land use and subdivision plans in the Jackson Township was enacted at the January 4, 2000 Township Meeting.

5.   Prior to Mr. Corneal purchasing his property in Jackson Township, and continuing through the present, all subdivision and land development plans were reviewed by the Huntingdon County Planning Commission prior to being reviewed by the Township.

6.   This policy existed in most municipalities in Huntingdon County.

2

Bridget E. Montgomery, Esquire
March 18, 2003
Page 3

7. The Township adopted its Subdivision and Land Development Ordinances at the July 10, 2000 meeting.

8. In September 2000, Mr. Corneal was provided with copies of the Land Development and Subdivision Ordinances.

9. On February 24, 2000, the Township received a letter from the County recommending denial of Mr. Corneal's proposal noting that the proposed house and garage were proposed in steep slope areas and the construction should not take place in those areas and also that the hydric soils, which are typically found in wetland areas and near streams were noted. It recommended that the Township should further investigate the building sites.

10. Mr. Corneal sent a letter to the County on April 11, 2000, which indicated that he was still attempting to subdivide his property.

11. David and Sandra Corneal purchased the Gavasi property on June 15, 2000.

12. On July 7, 2000, David and Sandra Corneal transferred the property to Sandra Y. Corneal.

13. The Township received a letter from the County Assessment Office indicating that on July 13, 2000 rollback taxes were due as a result of this transfer.

14. Mr. Corneal was sent a letter by Larry Newton on July 28, 2000 indicating that Corneal was building without permits and that he was to cease and desist.

15. On August 3, 2000, Mr. Corneal reversed the transfer of the property to Sandra Y. Corneal and it was transferred back to David and Sandra Corneal.

16. On September 1, 2000, Mr. Corneal applied for a building permit, which had no drawings, plot plan or sewage modules.

17. A meeting occurred on November 14, 2000 at the Huntingdon County Courthouse between Terry Williams, counsel for Corneal and Township officials.

18. On February 5, 2001, applications for building permits and driveway permits were submitted.

19. A second meeting took place at the Courthouse between Williams and Township officials in February 2001.

20. Permits and Corneals' sewage module were resubmitted to the Township in April of 2001.

With respect to your exhibit list, we do not object to the authenticity of any of the proposed documents. We object to the expert reports for the reasons as stated in our Motions in Limine. With respect to your witness list, with the exception to our previously stated objections to Mr. Fasic and Mr. Heist, we do not object to the presentation of any of the other witnesses listed.

3

Bridget E. Montgomery, Esquire
March 18, 2003
Page 4


     With respect to the correspondence, which you handed me yesterday purporting to be your current settlement demand (which you admitted in front of me was merely a restatement of your prior demand which I had previously responded to), we have the following response: In full final and complete settlement of this matter of any and all claims Mr. and Mrs. Corneal had or would have including any claim for attorney's fees we are willing at this time to offer $15,000.00.

     As the issues concerning the action, which had been filed by the Township in Huntingdon County have been resolved to all parties' satisfaction completely and wholly separate from this lawsuit, we will not address 1(a) and/or 2.

     I look forward to hearing from you in this regard.


               Very truly yours,



               ANTHONY R. SHERR

ARS/cz

# CERTIFICATE OF SERVICE

I, Cheryl Zeigler, hereby certify that on the 12th day of May 2003, a true and correct copy of Defendants, Jackson Township, W. Thomas Wilson, Michael Yoder, Ralph Weiler, Barry Parks, David Van Dommelen and Ann I. Wirth's Response to the "Additional Undisputed Material Facts" Filed by Plaintiffs, was served by first class regular mail, postage prepaid upon the following:

Bridget E. Montgomery, Esquire
Adam M. Shienvold, Esquire
Eckert, Seamans Cherin & Mellott
213 Market Street, 8th Floor
Harrisburg, PA 17101

BY: _____
Cheryl Zeigler
Legal Assistant to Anthony R. Sherr