IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID B. CORNEAL and** | : | **CIVIL NO. 1:CV-00-1192** |
| **SANDRA Y. CORNEAL,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JACKSON TOWNSHIP, Huntingdon** | : | |
| **County, Pennsylvania,** *et al.* | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Before the court are Defendants' renewed motion for summary judgment and Plaintiffs' motion for partial reconsideration of the court's order of December 23, 2002. The parties have briefed the issues, and the matters are now ripe for disposition.

## I.        Background

Plaintiffs, David and Sandra Corneal ("the Corneals"), filed this case alleging the following: violations of their rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution (Count I); that Defendants engaged in a civil conspiracy in violation of Pennsylvania common law (Count II); that Defendants intentionally interfered with the Corneals' contractual relations (Count III); and that Defendants' actions violated the Pennsylvania Constitution (Count IV). Defendants in this action include the following: (1) Jackson Township, Pennsylvania; (2) W. Thomas Wilson; (3) Michael Yoder; (4) Ralph Wiler; (5) Ann L. Wirth, Jackson Township Secretary; (6) David Van Dommelen, Jackson Township's building permit officer; and (7) Barry Parks, Sewage Enforcement Officer for

Jackson Township.  Defendants Wilson, Yoder, and Wiler are members of the
Jackson Township Board of Supervisors ("the Board").  The court has subject
matter jurisdiction over this action based on 28 U.S.C. §§ 1331 and 1367.

### A.  Facts

Construing all genuine disputes of fact in favor of the Corneals, the non-
moving party, the following constitutes the relevant factual background to the instant
motions.  In 1998, the Corneals, who reside in State College, Pennsylvania, acquired
a ninety-five acre tract of land located in Jackson Township, Huntingdon County,
Pennsylvania.  The property had previously been part of the estate of Defendant
Wilson's grandfather.  When the Corneals purchased the property, a house and a
barn were already located on it.  The Corneals planned to subdivide and sell a portion
of the tract.  To assist them in obtaining approval from the Township, the Corneals
had the tract surveyed and prepared a subdivision plan.  The Corneals also hired
Defendant Parks, the Township's Sewage Enforcement Officer ("SEO"), to test the
tract's suitability for an on-site septic system.  Defendant Parks located suitable sites
on the tract.  After identifying the suitable septic sites, the Corneals hired Defendant
Wilson's private firm, Eagle Excavation, to conduct percolation tests.  The tests were
successful, and the Corneals paid Eagle Excavation for its services.  At the time
Defendant Wilson's firm performed the percolation tests, the Township had not
enacted a moratorium on land use subdivision.  After receiving the proposed sewage
modules from the Corneals' agent, David Simpson, Defendant Parks reviewed and
signed them.

During August and September of 1999, the Corneals prepared a
subdivision plan and marketed one of the lots, a twenty-five acre tract, on which sat

2

the pre-existing house and barn.  On October 7, 1999, the Corneals entered into a contract to sell the tract for $150,000 to John Hewett, Jr. and Joann Smith ("the Buyers").  In accordance with the contract's terms, the Buyers submitted a down payment of $4,000 and agreed to pay $500 per month against the purchase price until settlement, scheduled for June 30, 2000.

During this period, Jackson Township did not have a subdivision ordinance to govern the development of land.[1]  However, at its meeting in January of 2000, the Board, by unanimous vote, decreed a temporary moratorium on subdividing property pending the enactment of a formal ordinance governing subdivision and land development.  The moratorium was not enacted pursuant to a resolution or any other formal action.  It merely appeared in the meeting's minutes.  Besides its appearance in the meeting minutes, no other documents exist relating to the moratorium.

The Corneals presented their original subdivision plan to the Board at the Township meeting in February of 2000.  The plan indicated that the original ninety-five acre tract would be subdivided into three lots.  On the largest of those lots, the Corneals planned to build their own home.  Because of the newly-imposed moratorium, Defendants Wilson, Yoder, and Wiler refused to review the Corneals' subdivision plan.  Within several days of the Board's refusal to review the plan, the Corneals submitted the plan to the Huntingdon County Planning Commission ("CPC"), pursuant to the Board members' advice.  The CPC reviewed the plan and, by way of a letter dated February 24, 2000, provided comments and

---

[1]  Huntingdon County has a Land Development Guide ("the Guide").  However, the Guide is not an ordinance pursuant to the provisions of the Municipalities Planning Code ("MPC").  *See* 53 Pa. Cons. Stat. § 10101, *et seq.*

recommendations.  The CPC recommended that the Township deny approval of the plan in light of the Township's pending subdivision ordinance and the moratorium against subdividing property.

At the Board's meeting on April 3, 2000 Mr. Corneal requested that the Board sign five sewage modules.  The Board, however, refused to do so.  Mr. Corneal then stated that he was no longer planning on subdividing his property, but that he needed the sewage modules to obtain a building permit to begin construction of his own home.  The Board, however, refused to issue five sewage modules for one house.[2]  Moreover, the Board claimed that if they were to sign the sewage modules, that would be the same as permitting the Corneals to build their house, and that this would constitute a subdivision, prohibited by the moratorium, because the tract already had an existing dwelling located on it.

Mr. Corneal then requested a privy permit so that he could begin construction of his two story garage and art studio.  The Board members, however, indicated that they were not permitted to issue privy permits; that the Corneals would have to get that from Defendant Parks, the SEO.  After that meeting, Mr. Corneal called Defendant Parks and requested a privy permit.  Defendant Parks indicated that Defendant Wirth had called him and instructed him not to issue the Corneals a privy permit.  However, during his deposition, Defendant Parks indicated that he was without authority to issue the Corneals a privy permit, which – according to state

---

[2]According to the Board, because their tract already had an existing dwelling on it, the Board would have essentially granted the Corneals a subdivision if it had granted their request for a building permit to construct their own home.  Similarly, Defendants contend that if Defendant Van Dommelen had granted Mr. Corneals' building permit application with respect to the house, his granting of that permit would have essentially caused a subdivision due to the existing dwelling on the property.  (*See* Van Dommelen Depo. at p. 49.)

regulations – could only be issued to lots subdivided before 1972 and which did not have piped and running water connected to any other structure on the lot. Because the Corneals' tract had an existing structure on it with piped and running water, Defendant Parks would be unable to issue a privy permit to the Corneals.[3] The Corneals then called Larry Newton, an attorney and Township Solicitor, to discuss the situation, but the Corneals did not receive a substantive response.

The Corneals revised the plan in hopes of receiving approval. They developed a new plan that reflected not three lots, but only two. One of these lots would be sold to the Buyers under the terms of their already existing contract with the Corneals. The other lot would contain the residual amount of land, approximately sixty-nine acres, on which the Corneals would build a house, an art studio, and a garage. The Corneals submitted the revised plan to the CPC. On April 20, 2000, the CPC recommended conditional approval by the Township, pending adoption of the proposed land development ordinance. The CPC found that the revised plan appeared to conform to the proposed ordinance. The Corneals, however, never submitted the revised two-lot subdivision plan to the Township. According to Mr. Corneal, he felt that such a submission would be futile due to the Township's moratorium. (*See* Corneal Depo. at p. 114.)

Wanting to begin developing the land, the Corneals constructed a one and a half (1.5) mile driveway through the tract at some point in the Spring of 2000. The Corneals originally requested Defendant Wilson's firm, Eagle Excavation, do the work. However, Defendant Wilson later refused the job. While constructing the

---

[3]Even if the Corneals had received approval to subdivide the property between the portion containing the existing structures and the remainder, they still would not have been eligible for a privy permit because the property would have been subdivided subsequent to 1972.

driveway, the United States Army Corps of Engineers and the Commonwealth of Pennsylvania Department of Environmental Protection approached the chosen contractor to investigate a complaint that the Corneals were violating wetlands regulations. The complaint was found to be without merit. The Corneals contend that Defendants Wilson and/or Defendant Wirth filed the complaint.

Next, Mr. Corneal went to Defendant Van Dommelen, the Township's Building Permit Officer, to obtain a building permit for his garage. Defendant Van Dommelen, however, refused to issue the permit because the Board had instructed him not to issue any permits to the Corneals. Defendant Van Dommelen even called Defendant Wilson, in Mr. Corneal's presence. During that conversation, Defendant Wilson told Defendant Van Dommelen: "don't you dare issue [David Corneal] a permit." (Wilson Depo. at p. 128.) Defendant Van Dommelen, however, had granted every other building permit application submitted to him in 2000. (Van Dommelen Depo. at p. 103.) Although Defendant Van Dommelen never refused to provide any other person in the Township with a permit, he refused to even provide the Corneals with a permit *application*. (*See id.* at p. 56.) During his conversations with Mr. Corneal, Defendant Van Dommelen referred to Mr. Corneal as a "trouble making yuppie from over the mountain." (*Id.* at p. 71.) He used this term to describe Mr. Corneal because Mr. Corneal "just behaves like someone who wants to get their own way and his age group." (*Id.* at p. 73.)

On May 1, 2000, the Corneals received a letter from the Buyers' attorney. The letter informed the Corneals that the Buyers had terminated the agreement to purchase the tract due to difficulties with the Township in obtaining subdivision approval. The Buyers also requested that their down payment of $4,000

6

be refunded along with the $3,000 in payments ($500 per month) paid to the Corneals in expectation of the settlement date of June 30, 2000. The Buyers' attorney, Harvey Reeder, shared an office with Township Solicitor Larry Newton at all times relevant to this litigation. Reeder asked Newton if he believed that the Corneals would be able to convey the property to the Buyers by the previously agreed upon settlement date of June 30, 2000. Newton responded that he did not believe the Corneals would be able to do so. After the Buyers pulled out of their contract to purchase the subdivided portion of the Corneals' land, Defendant Wilson's nephew approached Mr. Corneal about the possibility of purchasing the tract.

On either July 7 or July 10, 2000, the Board approved its subdivision ordinance, along with driveway and privy ordinances. The Corneals began construction without a permit from the Township at some point in July of 2000. In October 2000, the Township brought suit against the Corneals to enjoin their construction. The parties, however, settled that matter. Since the filing of the instant lawsuit on June 30, 2000, the Township has granted the Corneals all permits and approvals necessary to begin development of their tract.

**B.    Procedural History**

On June 30, 2000, the Corneals filed their original complaint in this matter. In that document, the Corneals named Newton as a defendant along with the captioned Defendants. In Count I of that document, the Corneals claimed that Defendants, acting under color of state law, deprived them of their clearly established right and privilege to own, use, dispose, and develop their property as protected by the United States Constitution. In Counts II through IV, the Corneals made claims for civil conspiracy, intentional interference with contractual relations, and violations

of the Pennsylvania Constitution.  All Defendants filed a motion to dismiss the complaint.  On March 29, 2001, the court granted the Township's motion to dismiss Count III of the original complaint, regarding the claim of intentional interference with contractual relations.  The court held that the claim was barred by the Pennsylvania Subdivision Torts Claim Act ("the PSTCA").  *See* 42 Pa. Cons. Stat. § 8541, *et seq*. However, the court refused to dismiss Count III as to the individual Defendants. Additionally, the court granted Newton's motion to dismiss him as a defendant in the case.  The Corneals filed a motion for reconsideration on April 12, 2001, and an amended motion for reconsideration on July 27, 2001.  On September 12, 2001, the court denied the motion for reconsideration.  On October 18, 2001, however, the court granted the Corneals leave to file an amended complaint.  The Corneals filed an amended complaint on November 6, 2001.  Like the original complaint, the amended complaint alleged violations of substantive and procedural due process (Count I), state law claims for civil conspiracy (Count II), intentional interference with contractual relations (Count III), and violations of the Pennsylvania Constitution (Count IV).

After the conclusion of discovery, the parties filed cross-motions for summary judgment.  On December 23, 2002, the court issued an order denying the Corneals' motion for summary judgment, and granting in part and denying in part Defendants' motion for summary judgment.  *See Corneal v. Jackson Township*, No. 1: CV-00-1192, order (M.D. Pa. Dec. 23, 2002).  Specifically, the court granted summary judgment in favor of all Defendants on the Corneals' procedural due process claim and their claim for intentional interference with contractual relations

(Count III).  Additionally, the court granted summary judgment in favor of the Township on the Corneal's claim for civil conspiracy (Count II).

However, the court denied Defendants' motion for summary judgment in several respects.  Most importantly, the court held that a trial was required on the Corneals' claim that Defendants violated their substantive due process rights under the Fourteenth Amendment to the United States Constitution.  Relying principally on *Midnight Sessions Ltd. v. City of Philadelphia*, 945 F.2d 667 (3d Cir. 1991), *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988), and *DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell*, 53 F.3d 592 (3d Cir. 1995), the court held that there was a genuine dispute regarding whether Defendants had acted with an improper motive in imposing the subdivision moratorium and in blocking the Corneals from initiating construction on their property.  *See Corneal v. Jackson Township*, No. 1: CV-00-1192, memo. at Part III.A.2 (M.D. Pa. Dec. 23, 2002) [hereinafter "Initial Summary Judgment Memo."].  With respect to Counts II and IV – the Corneals' claims for civil conspiracy and violation of their due process rights under the Pennsylvania Constitution – the court likewise held that there was a material issue of fact regarding whether Defendants' acted with an improper motive.  *See id.* at Parts III.B.1 and 3.

*Midnight Sessions*, *Bello*, and *DeBlasio* all stand for the proposition that, in the context of land use cases, allegations that a local executive body acted with an improper motive are sufficient to state a valid claim for violation of substantive due process under the Fourteenth Amendment to the United States Constitution.  Twenty-two days after the court issued its summary judgment opinion in the captioned matter, however, the Third Circuit Court of Appeals declared that

the "improper motive" test no longer governs substantive due process challenges to local land use decisions. *See United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 401 (3d Cir. 2003). Instead, challenges to those decision are valid only if the locality's actions "shock the conscience." *Id.* at 402. In light of the Third Circuit's holding, this court subsequently vacated its summary judgment decision regarding the Corneals' substantive due process claim, Count II, and Count IV. Additionally, the court ordered the parties to re-brief Defendants' summary judgment motion as to these issues in light of the Third Circuit's decision in *United Artists Theatre Circuit*. On April 1, 2003, Defendants filed the instant motion. Previous to the court's partial vacatur, the Corneals filed a motion for reconsideration of the court's decision to grant summary judgment in favor of the individual Defendants' on the intentional interference with contractual relations claim (Count III).

## II.        Discussion

### A.        Defendants' Motion for Summary Judgment

#### 1.        Legal Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting *Armbruster v. Unysis Corp.*, 32 F.3d 768, 777 (3d Cir. 1994) (internal quotation omitted)). A factual dispute is "material" if it might affect the outcome of the suit under the applicable

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 249.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985); *see also Reeder v. Sybron Transition Group*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Instead, they must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-323. " 'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-11 (3d Cir. 1989)).

## 2.    Application

### a.    Count I: Substantive Due Process

The crux of the Corneals' substantive due process claim is that Defendants acted in concert to frustrate the Corneals' effort to subdivide and develop their ninety-five acre tract of land.  According to the Corneals, Defendants needlessly complicated and delayed the Corneals' applications for permits and subdivision, thereby causing the Buyers to cancel their sales contract with the Corneals.  Drawing all genuine factual disputes in favor of the Corneals, it appears that Defendants intentionally opposed the Corneals' efforts, at least in part, because they did not like the Corneals.[4]  That is, they felt Mr. Corneal was a "trouble making yuppie from over the mountain."  (Van Dommelen Depo. at p. 71.)[5]  Finally, the Corneals also contend that Defendant Wilson intentionally held up the subdivision process so that the Corneals would be unable to convey a portion of the tract to the Buyers on June 30, 2000.  According to the Corneals, Defendant Wilson wished to

---

[4]The Corneals also contend that Defendant Wilson acted out of malice against them because the Corneals used Defendant Wilson's construction company, Eagle Excavation, for the initial percolation tests, but did not intend to use that firm for any of the remaining construction work.  However, their own recitation of the facts in this case belies this contention.  In their brief in opposition to Defendants' renewed motion for summary judgment, the Corneals state that after Eagle Excavation conducted the initial percolation tests and after the Board had enacted the moratorium on subdivision, Mr. Corneal attempted to use that firm – owned by Defendant Wilson – to construct a driveway.  According to the Corneals, "Defendant Wilson later refused the job, so the Corneals hired a different contractor."  (Pls. Br. in Opp. Renewed Mot. for Sum. J. at 10.)

[5]It appears that the Corneals' argument against summary judgment is premised, in large part, on this statement.  While the Corneals, as the non-moving party "are entitled to all inferences which are fairly supported by the evidence . . . [they] are not permitted to build their case on mere 'opprobrious epithets' of malice . . . or the 'the gossamer threads of whimsey, speculation and conjecture.' " *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 830 (1st Cir. 1992) (quoting *Snowden v. Hughes*, 321 U.S. 1, 10 (1943) and *White v. The Hearst Corp.*, 669 F.2d 14, 19 (1st Cir. 1962 (internal quotations omitted)).

prevent this contract from culminating so that he or his nephew could purchase the property, which belonged to Defendant Wilson's grandfather until 1960.

"To succeed in a substantive due process claim under Section 1983, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.' " *Grimm v. Sweeney*, 249 F. Supp. 2d 571, 608 (E.D. Pa. 2003) (quoting *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)).  Ownership of property subject to a local land use regulation is a property interest entitled to substantive due process protection.  *See DeBlasio*, 53 F.3d at 600.[6]  As stated previously, in the context of land use decisions, only conduct which is so irrational as to "shock the conscience," gives rise to a substantive due process violation.  *See United Artists*, 316 F.3d at 401-02.

While the Third Circuit in *United Artists Theatre Circuit* made clear that the "shocks the conscience" test governs substantive due process challenges to land use decisions, it did not decide whether the defendants' actions in that case were enough to survive a motion for summary judgment.  316 F.3d at 402 ("Having found that the District Court applied the wrong standard for evaluating United Artists' substantive due process claim . . . [w]e vacate the District Court's denial of the Supervisors' summary judgment motion and remand the case for further proceedings to determine whether United Artists can survive the Supervisors' summary judgment motion. . . .").  However, the court cited with approval lines of cases from the First

---

[6]Although *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d at 401, overruled that aspect of *DeBlasio* dealing with the standard to be applied in substantive due process challenges to executive action, it left undisturbed *DeBlasio*'s holding that property subject to local land use regulations is a property interest protected by substantive due process.

and Eighth Circuits applying this standard. *See Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32 (1ˢᵗ Cir. 1992); *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102 (8ᵗʰ Cir. 1992); *PFZ Props., Inc. v. Rodriguez*, 928 F.2d 28 (1ˢᵗ Cir. 1991); *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822 (1ˢᵗ Cir. 1982). These cases stand for the proposition that unless the locality's decision was "truly irrational," no substantive due process violation occurs. *Bituminous Materials, Inc. v. Rice County*, 126 F.3d 1068, 1070 (8ᵗʰ Cir. 1997). "[T]o sustain such a claim, plaintiff must prove that the government action in question is 'something more than . . . arbitrary, capricious, or in violation of state law.' " *Id.* (quoting *Chesterfield Dev. Corp.*, 963 F.2d at 1104). "Thus, even allegations of bad faith enforcement of an invalid zoning ordinance do not, without more, state a substantive due process claim." *Id.*

    As best this court can discern, to survive summary judgment under the "shocks the conscience" test, rather than the "improper motive" test, the Corneals must have adduced evidence from which a reasonable jury could conclude that the Board's actions did not serve any rational land use purpose.[7]  *See Dolan v. City of Tigard*, 512 U.S. 374, 387 (1994) (holding that absence of nexus between permit condition and legitimate state interest converts valid land regulation into an "out-and-out plan of extortion").  As a result, unless the evidence indicates that the challenged

---

[7]To hold that evidence need only demonstrate that improper motives played a part in the Board's decision – as the Corneals continue to claim – would be to revert to *Bello*'s "improper motive" test, which the Third Circuit has rejected. *See United Artists Theatre Circuit*, 316 F.3d at 401.  In adopting the "shocks the conscience" test as a replacement for the "improper motive test," the Third Circuit implied that the "shocks the conscience" test was more stringent than the "improper motive" test. Moreover, the Eight Circuit and First Circuit cases which the Third Circuit cited with approval confirm this. *See, e.g., Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32 (1ˢᵗ Cir. 1992); *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102 (8ᵗʰ Cir. 1992).

decision is completely unrelated in any way to a rational land use goal, there is no violation of substantive due process. The corollary of that rule being that where the locality's decision is related in any way to some rational goal, then no due process violation occurs even if the locality may have exceeded the scope of its jurisdiction. *See also infra* at p. 21-22.

In its research of this issue, the court has only uncovered a single case where a plaintiff's substantive due process challenge to a local land use decision survived a summary judgment motion under the "shocks the conscience" test. *See Collier v. Town of Harvard*, CV No. 95-11652-DPW, 1997 U.S. Dist. LEXIS 23582 (D. Mass. Mar. 28, 1997). In that unpublished case, the plaintiffs sought to expand their small herb house, located in the historic district of Harvard, Massachusetts, into a larger year-round residence. This plan required that the plaintiffs obtain several permits and zoning variances from Harvard's Zoning Board of Appeals ("ZBA"). The ZBA was advised on such matters by the Harvard Planning Board ("HPB"). One of the plaintiffs' neighbors, Richard DeBoalt, was a member of the HPB. Previous to the plaintiffs' filing of the necessary applications, DeBoalt had sought an easement from the plaintiffs for rear access to his property. DeBoalt also vehemently opposed the plaintiffs' plans. When the HPB considered the plaintiffs' application, DeBoalt attended the HPB's confidential discussion, but did not vote. The HPB recommended that the ZBA deny the plaintiffs' application. At some point, the ZBA chairperson visited the plaintiffs at their home and instructed them that the application process "would go more smoothly" if they granted DeBoalt his requested easement. *Id.* at *7 n.5. In the days before the plaintiffs' second application was scheduled to be heard by the ZBA, DeBoalt's counsel faxed the plaintiffs' counsel a letter

indicating that DeBoalt had no objection to the application, but that he was "waiting for a copy of a draft easement from [the plaintiffs]." *Id.* at *24. Later, on the day of the ZBA's meeting, DeBoalt's counsel faxed the plaintiffs' counsel a letter stating that "the agreement and easement need to be finalized today because the meeting is tonight." *Id.* at *8. The plaintiffs, however, refused to issue DeBoalt an easement, even after he indicated that he would introduce evidence that would preclude relief from the ZBA if he did not get the easement. Subsequently, the plaintiffs received a proposal from the ZBA laying out a plan that the plaintiffs would be required to adopt if they wished to obtain the permits necessary for their plan. Among those requirements, the proposal stated that the plaintiffs should "bite the bullet and accept responsibility for negotiating access accommodation with [his] neighbors (the Town and DeBoalt)." *Id.* at *10. No compromise regarding the easement occurred, and the plaintiffs' permit applications were denied. At the summary judgment phase, the court held that there was a genuine issue of material fact regarding whether DeBoalt acted out of purely improper personal motivations and whether members of the ZBA assisted him in his allegedly nefarious endeavor. Essentially, *Collier* involved an allegation of governmental extortion. That is, the plaintiffs' applications would have been approved if they simply capitulated to the public official's request for an easement across their property. As a result, the court found that a reasonable jury could have concluded that the ZBA's decision to deny the plaintiffs' application was fueled solely by personal motivations totally devoid of any rational land use planning concerns. Thus, *Collier* fell within the very narrow class of challenges to local land use decision which are "truly horrendous." *See Welch v. Paicos*, 66 F. Supp. 2d 138, 169 (D. Mass. 1999) (discussing *Collier*).

In the case at bar, the court cannot say that the Board's decisions were so totally unrelated to any legitimate land use planning goal that a reasonable jury could conclude that the Board's actions were totally irrational.  It is undisputed that the Township did not have a subdivision ordinance in effect in January of 2000. Likewise, it is beyond dispute that the Township had been working on developing such an ordinance in conjunction with Huntingdon County officials for approximately two years before the Corneals submitted their original subdivision proposal.  Several citizens had voiced concern to the Board regarding the fact that the Township did not have any restrictions regarding subdividing of property.  These citizens encouraged the Board to develop such a plan to preserve the Township's rural character.  While the Board may have caught wind of the Corneals' plans and hastily decided to impose a moratorium, that decision served the purpose of maintaining the status quo of land development during the final approval process of the subdivision ordinance. Although the evidence could indicate that the Corneals' plans were the fulcrum for the Board's action, there is no indication that they were singled out for particularly harsh treatment.[8]  In fact, the Township refused to review any subdivision proposals while the moratorium was in effect.  Although the Corneals point to a litany of other decisions relating to the issuance of building permits and sewage modules, those decisions are properly viewed as extensions of the Board's initial decision to halt all subdividing in the Township until the Board could enact a comprehensive land use

---

[8]The Corneals point to the fact that Defendant Van Dommelen granted all other building applications submitted to him, but he refused to even provide the Corneals with a permit application.  While other applicants sought similar permits, no other permit applicant was similarly situated.  Unlike the other applicants for building permits during the pendency of the moratorium, the Corneals needed to subdivide their property to be eligible for the building permits they sought, due to the existing dwelling on their property.  (*See* Van Dommelen Depo. at 49.)  Of course, the Corneals were not allowed to subdivide because the Board had enacted a moratorium on all subdivision.

ordinance.  Moreover, subsequent to the enactment of the Township's subdivision ordinance in July of 2000, the Corneals received all necessary permits and approvals to develop their land.

At best, the court finds that the totality of the facts, when viewed in the light most favorable to the Corneals, establishes that the Board may have acted with mixed motives; one related to a legitimate land regulation purpose (preserving land development status quo during the final approval process of the subdivision ordinance), the other related to illegitimate personal animus.[9]  This is not enough to establish a violation of substantive due process.  In *Bituminous Materials Inc. v. Rice County*, 126 F.3d 1068, 1071 (8th Cir. 1997), the Eighth Circuit, relying on *Chesterfield Development Corp.*, held that allegations of personal animus, alone, are not enough to survive a summary judgment motion in a substantive due process challenge to a local land use decision.  In that case, the plaintiff, BMI, challenged a decision by the Rice County, Minnesota Board of Commissioners to impose extra restrictions on BMI's permit to locate a temporary asphalt pit in Rice County.  At the summary judgment stage, BMI presented evidence that the Board's decision to impose the conditions was motivated by the Board's personal animus toward BMI's

---

[9]The Corneals also contend that Defendants acted out of desires of personal gain.  According to them, Defendants sought to frustrate the Corneals' efforts because the property in question, through 1960, belonged to Defendant Wilson's grandfather and Defendant Wilson's nephew twice approached the Corneals about purchasing the property.  No reasonable jury could conclude, based on this evidence, that this was the determinative factor in Defendants' decision to impose the moratorium.  Moreover, even if Defendant Wilson were ill motivated, it would be improper to impute that motive to any of the other Defendants without evidence that they possessed a similar motive and willingly participated in Defendant Wilson's alleged scheme.  *See Collins v. Nuzzo*, 244 F.3d 246, 251 (holding that for one member's improper motivation to be imputed to a legislative body for Section 1983 purposes, the evidence must indicate "both (a) bad motive on the part of at least a significant bloc of legislators, and (b) probable complicity of others" (quoting *Scott-Harris v. City of Fall River*, 134 F.3d 427, 438 (1st Cir. 1997) *reversed on other grounds sub nom. Bogan v. Scott-Harris*, 523 U.S. 44 (1998))).

permit officer.  In support of this claim, the permit officer indicated that when he requested that BMI not be subject to extra conditions that other gravel pit operators in the county were not subject to, one of the Board members replied, "We are the county, we make the rules and we can change them as we choose."  126 F.3d at 1071.  When confronted with evidence that the Board was treating BMI more harshly than other pit operators, another Board member stated to the permit officer, "We have been screwing you over."  *Id.*  Other Board members echoed these sentiments, making comments to the effect that they did not care if BMI ever did business in Rice County again and that the permit officer was an "SOB."  *Id.*

The district court, however, granted summary judgment in favor of Rice County.  On appeal, the Eighth Circuit upheld that decision, stating that "the Board had rational bases upon which to restrict BMI's permit."  *Id.* at 1070.  Specifically, the court held that Rice County citizens had expressed concerns about road damage, environmental damage, traffic safety and noise caused by BMI's operation of the gravel pit.  In discussing the evidence regarding the Board members' personal dislike of the permit officer, the court stated the following.

> We conclude that these allegations are far too insubstantial to support a substantive due process claim.  We acknowledge that there may be cases where land use decisions are so corrupted by the personal motives of local government officials that due process rights are implicated. . . . But it would be inconsistent with the high threshold we established in *Chesterfield* to hold that a substantive due process claimant will survive summary judgment by alleging that a land use planning decisionmaker does not like the plaintiff.  That sort of inquiry would indeed turn the federal courts into zoning boards of appeal.  Therefore, the district court properly dismissed BMI's substantive due process claim.

*Id.* (citations omitted).

19

Thus, it appears from these lines of cases that a substantive due process claim under the "shocks the conscience" test will survive summary judgment only if the plaintiff can present evidence from which a jury could conclude that the locality's decision was not rationally related to a legitimate land use goal. As a result, the plaintiff must demonstrate that the land use decision or regulation was so totally irrational that it could not possibly be the real reason for the locality's action or, alternatively, that the locality applied its decision selectively so that its land use concern could not have been legitimate despite the rational basis for it. While this is obviously an onerous burden to plaintiffs, the reason for it is not without logical support. As the First Circuit stated:

> Substantive due process, as a theory of constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach. To apply it to claims like the present would be to insinuate the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals. Clearly, it is no simple matter to decide what abuses to regard as abuses of "substantive" due process. Every litigant is likely to regard his own case as involving such an injustice. Thus, we have consistently held that the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes. In the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief. We have left the door slightly ajar for federal relief in truly horrendous situations. But, this circuit's precedent makes clear that the threshold for establishing the requisite "abuse of government power" is a high one indeed.

*Nestor Colon Medina & Sucesores*, 964 F.2d at 45.

When viewed under this standard, it is evident that the Corneals' claim does not constitute a substantive due process violation under the "shocks the conscience" test. Like the defendants in *Bituminous Materials Inc.*, the Board had rational reasons to enact a moratorium on subdividing property pending the

enactment of a comprehensive subdivision ordinance. Moreover, unlike the claim in *Bituminous Materials Inc.*, there is no evidence that the Board subjected the Corneals to disparate treatment. The Corneals have not presented any evidence that other developers or land owners were granted subdivision approval during the pendency of the moratorium or that the Board subjected the Corneals to more onerous conditions as other similarly-situated permit applicants. Thus, the Corneals have failed to adduce evidence from which a reasonable jury could conclude that Defendants' rational land use concern is a mere pretext.

The Corneals, however, also argue that the Board did not have the power to enact the moratorium and that this fact, when combined with the other circumstantial and direct evidence in this case, indicates that there is a genuine dispute of material fact regarding whether the Board's actions "shock the conscience." The court, however, finds that even if the Board lacked the authority to enact the moratorium and may not have followed the proper procedure for enacting it, these facts will not insulate the Corneals' claim from summary judgment. It is undisputed that in January of 2000, before the Corneals had even submitted their original subdivision plan, the Board enacted a moratorium on any and all subdividing or conveying of property located in the Township. Before enacting this measure, Defendant Wirth consulted with Newton, the Township's solicitor, regarding whether the Township had the power to enact a moratorium. He indicated that the Board had such power. (*See* Newton Depo. at p. 25.) Although this conclusion appears to have been wrong in light of Pennsylvania law, an error of state law does not amount an actionable claim for violation of substantive due process. *See Chesterfield Dev. Corp.*, 963 F.2d at 1105 (8th Cir. 1992) ("A bad-faith violation of state law remains

only a violation of state law."); *Welch v. Paicos*, 66 F. Supp. 2d at 167 ("Even when a planning board abuses its discretion, or disobeys state law in some manner, the federal courts will not automatically find a due process violation.").[10]

In summation, the court finds that the Corneals have failed to adduce facts from which a reasonable jury could conclude that the Board's actions were wholly divorced from any rational and legitimate land use concerns, *i.e.* that the Board's actions "shock the conscience." At best, the evidence, viewed in the light most favorable to the Corneals, indicates that the Board's actions were based on mixed motives which at least partly were related to rational and legitimate land use concerns. Accordingly, the court will grant summary judgment in favor of the Board on the Corneals claim in Count I for violation of their substantive due process rights.[11]

b.    Count II: Civil Conspiracy

---

[10]Moreover, while it is disputed whether Defendants enacted the moratorium in bad faith, it is undisputed that Defendants inquired with Solicitor Newton as to whether the Township had the authority to impose such a temporary moratorium. (*See, e.g.,* Yoder Depo. at p. 68.) Solicitor Newton indicated that it did. As it turns out, that advice was incorrect. Although at that time, Pennsylvania law indicated that localities had the authority to impose temporary moratoria on land development, they could only undertake such action while in the process of amending a previously-enacted subdivision ordinance. *Naylor v. Township of Hellam*, 717 A.2d 629, 633 (Pa. Commw. Ct., 1998). However, Jackson Township had not enacted a subdivision ordinance before imposing its moratorium in January of 2000. Thus, its actions were not in compliance with the Commonwealth Court's decision in *Naylor*. In any event, the Pennsylvania Supreme Court later overturned the Commonwealth Court's decision, holding that any and all moratoria on land development violate the Pennsylvania Constitution. *Naylor v. Township of Hellam*, 773 A.2d 770, 776-77 (Pa. 2001) ("However much a rapidly expanding municipality may wish to declare 'time out' and stop all development, such effect, by whatever means achieved, would be constitutionally impermissible.").

[11]In support of summary judgment on the substantive due process claim, the individual Defendants argue that they are entitled to qualified immunity. Because the court has held that the facts, even in the light most favorable to the Corneals, do not constitute a violation of substantive due process, the court need not address whether the individual Defendants are entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (1985) (holding that the first step in analyzing a claim of qualified immunity is to determine whether the alleged right is constitutionally recognized).

In Count II of the amended complaint, the Corneals claim that Defendants' actions constituted a civil conspiracy. Under Pennsylvania law, to recover for civil conspiracy, three elements must be proven: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000).

In response to Defendants' initial motion for summary judgment, the court denied that motion, holding that "there is a material issue of fact as to Defendants' motives." *Corneal v. Jackson Township*, No. 1: CV-00-1192, memo. at p. 22 (M.D. Pa. Dec. 23, 2002) (citing portion of opinion denying summary judgment as to the Corneals' substantive due process claim). The court went on to state, "Resolution of this issue is imperative. If Defendants' motivation was not improper, then the Corneals cannot establish the first element of a civil conspiracy." *Id.* Thus, the court's decision to deny summary judgment was premised on its decision that there was a material issue of fact regarding the Corneals' substantive due process claim.

Because the court has now vacated that decision and held that Defendants' actions did not constitute a violation of due process, the Corneals' claim in Count II must fail as well. The Corneals have failed to adduce evidence from which a reasonable fact finder could determine that the individual Defendants committed an unlawful act or committed a lawful act for an unlawful purpose. Accordingly, the court will grant summary judgment in favor of the individual Defendants as to this claim.

c.    Pennsylvania Constitutional Claims

In Count IV, the Corneals allege various violations of the Pennsylvanian Constitution.  *See* Pa. Const. Art. I, §§ 1, 17, and 26.[12]  In response to Defendants' initial motion for summary judgment as to these claims, the court made various findings.  First, the court held that a private right of action for monetary damages exists for violation of the Pennsylvania Constitution.  Second, the court held that PSTCA does not bar such claims against local governments.  Third, the court held that Pennsylvania's due process protections are co-extensive with those protections guaranteed pursuant to the Fourteenth Amendment to the United States Constitution.  Finally, because the court held there was a genuine issue of fact as to whether Defendants violated the Corneals' substantive due process rights under the United States Constitution, the court held that an identical issue existed with respect to the claim pursuant to the Pennsylvania Constitution.  The court has now held that Defendants are entitled to summary judgment on the Corneals' substantive due process claim under the United States Constitution.  *See supra* at Part II.A.2.a. Therefore, the court must make the same ruling as to the Corneals' claim for violation of the Pennsylvania Constitution.  Accordingly, the court will grant summary judgment in favor of Defendants on Count IV.

**B.    Motion for Reconsideration**

**1.    Legal Standard**

---

[12]    Article I, Section 1 of the Pennsylvania Constitution provides, in relevant part: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are . . . acquiring, possessing and protecting property. . . ."  Section 17 states: "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed."  Finally, Section 26 states: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995).) " 'A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant.' " *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (quoting *Abu-Jamal v. Horn*, 2001 U.S. Dist. LEXIS 20813, No. CIV. A. 99-5089, 2001 WL 1609761, at *9 (E.D. Pa. December 18, 2001) (citations and internal quotation marks omitted)).

### 2.    Application

In Count III of their amended complaint, the Corneals claim that the individual Defendants intentionally interfered with the Corneals' contractual relationship with the Buyers.  The individual Defendants moved for summary judgment, arguing that the Corneals failed to adduce sufficient evidence to prove that the individual Defendants intended to harm the contractual relationship between the Buyers and the Corneals.  The court granted that motion.  In doing so, the court stated the following.

> In this case, the Corneals contend that Newton, acting alone or in concert with the other Defendants, informed the Buyers that the subdivision plan would not be approved and that no permits for the development of the tract would be granted.  Even if the Corneals could show that this in fact occurred, Newton is no longer a party to this action.  Thus, in order to recover, the Corneals would have to demonstrate some sort of nexus between Newton's actions and Defendants.  It is clear that the Corneals have failed to adduce any such evidence.  The Corneals cite the fact that Newton and the Buyer's attorney shared an office and a common secretary.  Even if Newton did tell the Buyer's attorney to extinguish their contract with the Corneals, there is no evidence indicating that he did so at the behest of Defendants.  In short, nothing in the record connects Newton's actions, whatever they may have been, to any of the individual Defendants.

(Initial Summary Judgment Memo. at 25.)

The Corneals contend that this holding constitutes an error of law.  Disregarding the fact that there is no evidence of a connection between Newton's actions and any of the individual Defendants, the Corneals argue that the court erred by failing to consider other evidence regarding Defendant Wilson's motive for interfering with the contract and his knowledge of the contract's existence.  However, without a connection between Newton and any of the individual Defendants,

Newton's actions cannot be considered as part of the individual Defendants' alleged plan to sabotage the Corneals' land contract. The evidence does not even establish "a wink and a nod" connection between Newton's actions and the individual Defendants.

Thus, to find in favor of the Corneals on this claim, a jury would have to conclude that the individual Defendants' imposed the land development moratorium and permit decisions to frustrate the Corneals' attempt to sell off a portion of their tract. That is, the court would have to conclude that the destruction of the Corneals' contractual relationship with the Buyers was a foreseeable consequence of Defendants' land use decisions. No reasonable jury, however, could come to this conclusion based on evidence that a single member of the Board knew of the contract, that his company had performed some percolation tests for the Corneals, and that his grandfather owned the Corneals' property over thirty years ago. Tellingly, there is no evidence that Defendant Wilson knew that the Corneals and the Buyers were scheduled to settle on June 30, 2000 or that any Defendant knew that the Buyers had revoked the contract when the Board enacted the subdivision ordinance in July of 2000. Such evidence would be necessary to prove that Defendants' actually intended to undermine the Corneals' contract through the imposition of land use regulations and would likewise go a long way in establishing that the moratorium was a pretext for frustrating the Corneals' contractual relationship with the Buyers. However, the Corneals have presented no such evidence.

Because there was no genuine issue of material fact regarding the Corneals' claim for intentional interference with contract, the court granted summary judgment in favor of Defendants. On reconsideration, the Corneals have not

27

demonstrated that the court committed a clear error of law in coming to this conclusion.  Accordingly, the court will deny the Corneals' motion.

**IV.**          **Conclusion**

As stated above, in light of the Third Circuit's decision in *United Artists Theatre Circuit v. Township of Warrington*, the court will grant summary judgment in favor of Defendants' on the Corneals' substantive due process claim in Count I and their remaining claims in Counts II and IV.  Additionally, the court will deny the Corneals' motion for reconsideration of the court's order granting summary judgment as to their claim in Count III for intentional interference with contractual relations.  An appropriate order will issue.


                                                   s/Sylvia H. Rambo
                                                   Sylvia H. Rambo
                                                   United States District Judge

Dated:  July 28, 2003.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID B. CORNEAL and SANDRA Y. CORNEAL,** : | **CIVIL NO. 1:CV-00-1192** |
| **Plaintiffs,** : | |
| : | |
| **v.** : | |
| : | |
| **JACKSON TOWNSHIP, Huntingdon County, Pennsylvania,** *et al.* : | |
| : | |
| **Defendants.** : | |

## <u>ORDER</u>

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT:**

(1) Defendants' renewed motion for summary judgment on Plaintiffs' substantive due process claim in Count I, and on Counts II and IV is **GRANTED**;

(2) Plaintiffs' motion for reconsideration of that portion of the court's order of December 23, 2002 which granted summary judgment in favor of Defendants' on Count III is **DENIED**; and

(3) As a result of this memorandum and order, in addition to that portion of this court's memorandum and order dated December 23, 2002 which was not vacated, the Clerk of Court shall enter judgment in favor of Defendants and against Plaintiffs on Counts I, II, III and IV and to close the case file.


    s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge

Dated:  July 28, 2003.